UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 OCT 15 P 2: 00

CLERK'S OFFICE

BY: _____ DEPUTY

BRETT KIMBERLIN,
    Plaintiff,

    v.                    No.

NATIONAL BLOGGERS CLUB,
ALI AKBAR,
PATRICK FREY,
ERICK ERICKSON,
MICHELLE MALKIN,
GLENN BECK,
AARON WALKER,
WILLIAM HOGE,
LEE STRANAHAN,
ROBERT STACY MCCAIN,
JAMES O'KEEFE,
MANDY NAGY,
BREITBART.COM,
THE FRANKLIN CENTER,
SIMON&SCHUSTER INC.,
KIMBERLINUNMASKED
MERCURY RADIO ARTS
THE BLAZE
ACE OF SPADES
REDSTATE

*Pwb* 13 CV 3059

## COMPLAINT FOR DAMAGES
## VIOLATION OF CIVIL RIGHTS, RICO AND STATE LAW TORTS

### INTRODUCTION

1. Plaintiff Brett Kimberlin ("Kimberlin") hereby brings this complaint to recover damages inflicted by Defendants, defined below, for engaging in a criminal racketeering enterprise that violated his civil rights and which includes widespread mail fraud, wire fraud, money laundering, intimidation, assault, extortion, threat of extortion, obstruction of justice, and gang activity for the purpose of harming Plaintiff and depriving him of his civil rights. Specifically, the Defendants (1)

1

created false and defamatory narratives stating that Plaintiff engaged in, ordered, directed and/or facilitated the criminal swatting of individuals, (2) provided false information to media outlets, politicians and law enforcement officials accusing Plaintiff of involvement in said swattings, (3) repeatedly published defamatory statements that Plaintiff committed swattings, and then (4) enriched themselves by fraudulently raising tens of thousands of dollars and increasing traffic on their websites based on those false narratives. Some of the Defendants conspired to and/or did assault Plaintiff and then used gang activity to threaten him against exercising his right to redress through access to the courts. The Defendants used gang activity to threaten, harass and intimidate others who rejected their false narratives about Plaintiff, including journalists, judges and Maryland State's Attorneys. These torts were intentional and caused Plaintiff physical harm and emotional distress.

2. Swatting is the calling of the police using a spoofed phone number and telling the police that a major crime occurred at the address associated with that address in order to cause a large police response.

3. Defendants repeatedly made the false, slanderous and defamatory statements about Plaintiff's involvement in swatting month after month for more than a year, causing the publication of thousands of articles, blog posts, Twitter tweets and radio and television broadcasts attributing the swattings to Plaintiff.

4. None of the Defendants ever contacted Plaintiff for comment or response to these false, slanderous and libelous statements prior to or after their publication.

5.  Plaintiff asserts claims against Defendants arising from violations of (1) the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 USC 1962(c); (2) conspiracy under RICO, 18 USC 1962(d); (3) the Civil Rights Act under 42 USC 1983, (4) conspiracy under the Ku Klux Klan Act under 42 USC 1985, (5) assault, (6) defamation; (7) fraud, (8) invasion of privacy, and (9) infliction of emotional distress.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this action pursuant to 28 USC 1331 (federal question), 28 USC 1332 (diversity of citizenship), and 18 USC 1964(c) (RICO).

7.  This Court has supplemental jurisdiction over the causes of action based on state law pursuant to 28 USC 1367(a), as the state law claims arise out of the same nucleus of operative facts which support the federal claims.

8.  Venue is proper in the District of Maryland under 18 USC 1965 and 28 USC 1391, in that Plaintiff resides in Maryland, the actions of Defendants took place in Maryland, the injury occurred in Maryland, and a substantial portion of the communications, transactions, events or omissions occurred in Maryland.

## PARTIES

9.  Plaintiff Kimberlin is the Director of Justice Through Music, a Maryland based 501(c)(3) non-profit that uses music to inspire and educate young people to get involved with civic participation.  Plaintiff has held that position for ten years and resides and works in Montgomery County Maryland.

10.     At all relevant times, Defendants are a "person" within the meaning of that term as defined by RICO, 18 USC 1961(3).

11.     At all relevant times, Defendants were engaged in interstate commerce or in the production of goods or services for sale or use in interstate commerce.

12.     Defendant James O'Keefe resides at 1214 W. Boston Post Road #145, Mamaroneck, NY 10543 and is a gadfly who portrays himself as a "citizen journalist." He recently authored,"Breakthrough: Our Guerilla War to Expose Fraud and Save Democracy," published by Defendants Simon & Shuster, and released through its Threshold Division.  Simon & Shuster has is headquartered at 1230 Avenue of the Americas, New York, New York 10020.

13.     Defendant Aaron Walker is an unemployed attorney who resides at 7537 Remington, Rd, Manassas, Virginia. 20109.

14.     Defendant Lee Stranahan is a blogger who resides at 13824 Methuen Green Street, Dallas, Texas 75240. Defendant Mandy Nagy is a blogger who resides at 10 Sussex, CT 07921.  Both Defendants write for Defendant Breitbart.com which is located at 149 S. Barrington #735, Los Angeles, CA 90049.

15.     Defendant Robert Stacy McCain is a blogger who resides at 21819 Academy Terrace, Hagerstown, Maryland 21740.

16.     Defendant William Hoge is a blogger who resides at 20 Ridge Road, Westminster, Maryland 21157.

17.     Defendant Ali Akbar resides at 200 Capstone Drive, #108, Lynchburg, VA 24502 and is the self proclaimed head of the National Bloggers Club.

18.     Defendant Glenn Beck is a radio and television personality who resides at 1270 Avenue of the Americas, 9th Floor New York, New York 10020.

19.     Michelle Malkin is a blogger who resides at 445C E. Cheyenne Mountain Blvd. #104, Colorado Springs, Colorado 80906.

20.     Defendant Erick Erickson is a blogger and television commentator who resides at 736 Waverly Pt, Macon, Georgia 31210.

21.     Defendant Ace Of Spades is a blog created by Michelle Kerr and is located at 3131 Homestead Road, #3E Santa Clara, California 95051.

22.     Defendant Patrick Frey is a blogger who resides at 3547 Seaglen Drive, Rancho Palos Verdes, California 90275. He is employed as an Assistant State's Attorney for Los Angeles.

23.     Defendant Twitchy is a blogging platform owned or operated by Defendant Michelle Malkin through Twitchy LLC to promote stories created by her and other members of Twitchy. It is headquartered at 445C E. Cheyenne Mountain Blvd. #104, Colorado Springs, Colorado 80906.

24.     Defendant The Glenn Beck Program/Mercury Radio Arts, is a media company created to promote Defendant Glenn Beck and is located 1270 Avenue of the Americas, 9th Floor New York, New York 10020.

25.     Defendant The Blaze Inc, Is a media company owned by Defendant Glenn Beck and created to promote Defendant Glenn Beck and his worldview, and is located at 1133 Avenue of the Americas, 34th Floor, New York, New York 10036.

26.     Defendant RedState is a media company owned/or directed by Defendant Erick Erickson and is located at 1 Massachusetts Avenue, NW Ste 600, Washington, DC, 20001.

## STATEMENT OF FACTS

27. In September 2010, Andrew Breitbart, the owner of Breitbart.com, a media company, contacted Defendants Patrick Frey and Mandy Nagy and others, and conspired with them to target Plaintiff for a smear campaign. Mr. Breitbart was closely associated with Defendant Frey and chose him because of his position as a Los Angeles Assistant District Attorney and as the owner of the blog, Patterico's Pontifications.

28. On or about October 11, 20120, Defendant Nagy then wrote an article about Plaintiff that appeared on Breitbart.com. Defendant Frey followed that article with a similar article on his Patterico's Pontification's blog.

29. On October 13, 2010, Plaintiff sued a blogger named Seth Allen for defamation in the Circuit Court for Montgomery Count. On November 16, 2011, the Circuit Court entered judgment in Plaintiff's favor, and issued an injunction against Mr. Allen.

30. In 2011, Defendant Walker was co-hosting Defendant Frey's blog using the name, Aaron Worthing, a supposed attorney from Manassas, Virginia. Defendant Frey supervised Defendant Walker in that capacity.

31. On or about August 17, 2011, Seth Allen sent an email to Andrew Breitbart, and Defendants Walker, Frey and Nagy telling them that he was planning to come to Maryland and "murder" Plaintiff. Defendant Frey, an Assistant District Attorney, did not contact Plaintiff or law enforcement officials to report the murder threat.

6

32. In December 2011, Defendant Walker, using his pseudonym Aaron Worthing, contacted Seth Allen and offered to file post-judgment motions to overturn the judgment entered against Mr. Allen. Defendant Walker, still using the pseudonym, then prepared and filed numerous pleadings for Mr. Allen attacking Plaintiff and the judge who issued the judgment.

33. Defendants Walker, Nagy, and Frey consulted with one another on those legal pleadings prior to and after their filing. Both Defendants Frey and Nagy provided data and assistance to Defendant Walker with regard to those pleadings.

34. On or about December 31, 2011, Plaintiff discovered that "Aaron Worthing" was not a real attorney but that Aaron Worthing was actually Defendant Aaron Walker, an attorney licensed in Virginia.

35. Plaintiff also discovered that Aaron Worthing was the publisher of a blog dedicated to attacking the Muslim faith and the Prophet Mohammed. That blog was called "Everyone Draw Mohammed," and it solicited vile, pornographic and insulting depictions of the Prophet from people all over the world. In December 2011, Defendant Walker had published more than 800 insulting depictions of the Prophet.

36. On or about January 5, 2012, Plaintiff, by motion, advised the Circuit Court Judge in the Seth Allen case that the attorney assisting Mr. Allen was not Aaron Worthing but rather was Aaron Walker.

37. On January 9, 2012, at a hearing on a Motion for Contempt against Mr. Allen, Defendant Walker appeared uninvited and interrupted the

proceedings from the viewing area, demanding that the Judge seal the proceedings because he had been identified as Aaron Walker, and everyone would know that he was the publisher of the Muslim hate blog.

38. After the hearing was concluded, Defendant Walker followed Plaintiff out of the courtroom, assaulted him and took his iPad from him. Courthouse security responded, retrieved the iPad and urged Plaintiff to seek medical assistance. Petitioner went to the Emergency Room at Suburban Hospital where he was evaluated, treated and given medicines for his physical injuries, including contusion to the eye, possible concussion, and back pain.

39. On January 12, 2013, Defendant Walker was terminated from his employment as an attorney for Professional Health Care Resources after the employer discovered that he was the publisher of the Muslim hate blog, that he was publishing the blog during work hours, and that he was incompetent. Outside counsel for the company notified Defendant Walker in writing these reasons for his termination.

40. In January 2012, Defendants Walker, Frey, and Nagy, in concert, concocted a false narrative that Plaintiff (1) caused Defendant Walker's job termination, (2) was not assaulted, and (3) falsified his hospital records.

41. In February 2012, Andrew Breibart told Defendant Stranahan and other Defendants that they should target Plaintiff at all costs. Defendant Stranahan stated that he took this as an order from Andrew Breitbart to put all available resources into this. Defendant Stranahan wrote: "This would have been a big deal: putting real journalistic resources and a huge

platform into the Kimberlin story. It's what Andrew wanted."

https://twitter.com/Stranahan/statuses/381955531889704960

42. In February and March 2012, Defendants Walker, Frey, Nagy, Akbar and Stranahan, in concert, planned ways to push their false narrative into the media in order to (1) demonize Plaintiff, (2) create a witch hunt, (3) cause maximum harm to Plaintiff, (4) portray Defendant Walker as a victim, and (5) raise significant funds from people who believed the false narrative.

43. In February 2012, Defendant Akbar advised Defendants Walker, Frey, Nagy, Stranahan, and others that he was launching a new entity called the National Bloggers Club to bring together Republican bloggers to collectively coordinate their messaging about specific issues, and target specific individuals. Defendant Akbar later stated that he can order bloggers in the National Bloggers Club to target people or not target people. Defendant Akbar has stated that he is in a supervisory position over the other bloggers in the Club.

44. Defendants Akbar, Walker, Frey, Stranahan, Nagy and others decided that Plaintiff would be the first smear target of the National Bloggers Club. They decided to have an "Everyone Blog About Brett Kimberlin Day" on May 25, 2012 where scores of bloggers would write smear stories about Plaintiff, post them online, and tweet about them on Twitter.

45. In May and June 2012, the National Bloggers Club bloggers generated hundreds of posts and tens of thousands of tweets smearing Plaintiff. During that time and continuing until the present, Defendant Akbar

solicited donations on his and other websites for the Defendant National
Bloggers Club, and falsely told donors that their donations were tax
deductible and that National Bloggers Club was a 501(c)(3) organization.
https://www.lsnewsgroup.com/wp-content/uploads/2013/01/NBC-Feb-
9-2012-Letter.pdf Defendant National Bloggers Club raised tens of
thousands of dollars based on those fraudulent representations. Even after
people asked for proof that Defendant National Bloggers Club was granted
501(c)(3) status, and Defendant Akbar failed to provide that proof,
Defendants continued to solicit donations for Defendant National Bloggers
Club. As of October 17, 2013, the National Bloggers Club continues to raise
money on a donate page stating falsely: "National Bloggers Club, Inc. is a
501(c)(3) -- status pending"

https://secure.piryx.com/donate/c97AfwVc/Remembering-Breitbart/

46. As a result of these smear blogs and articles, Plaintiff received many threats
of injury and death by people who read and believed the false narratives.
These were received by email, phone and blog posts. Several readers called
Plaintiff, his family, his neighbors and his children threatening, intimidating
and smearing Plaintiff. Several other readers came to Plaintiff's home and
took photographs of the home and of him and his child. This caused
Plaintiff and his family extreme emotional distress.

47. Examples of these threats are:

- I'll be bringing the straw for you. It's now not a matter of if.
  Brett Kimberlin, neck broken by 110lbs Female Marine.
- Brett Kimberlin is done....... the hunter is the hunted
- We know who you are. We're coming for you. You will pay.

- I don't get intimidated & get on my bad side & you'll get
  the full wrath. Not just from but. (sic) I have my own. The extreme
  wing of the TP has arrived. This message is for Mr. K. It would not suit
  the best interests of all people involved in your movement to shut the
  F&*K up & that includes you. ...

48. Several of the threats that Plaintiff received stated that he would be harmed

    or killed if he appeared in court or cooperated with the police.  For

    example,

- If Brett does not start to act like a grown up and quit calling the police on
  people like a little punk. There will be hell to pay.
- Army Of Davids sent a message.... Don't show up in court Tuesday or you
  are dead. This is your only warning.

49. As part of Defendant Walker's fraudulent plan to portray himself as a

    victim of Plaintiff, Defendant Walker filed numerous false criminal charges,

    Peace Orders and civil suits against Plaintiff in 2012 and 2013.  Each of

    these filings made false claims and allegations against Plaintiff, and the

    judges and/or the State's Attorney in Montgomery County Maryland, Prince

    William County Virginia, and the United States District Court in Greenbelt,

    Maryland rejected each.  Despite these rejections, Defendants continued to

    repeat their false narratives as concocted by Defendants Walker, Frey,

    Nagy, Stranahan and others.

50. Defendants conspired to intimidate State Attorneys in Montgomery and

    Howard County Maryland, and Judge Richard Jordan and Judge Cornelius

    Vaughey in Montgomery County after they rejected Defendants' false

    narratives.  Specifically, Defendant Walker sanctioned Seth Allen's attacks

    of Judge Jordan online, and then Defendant Walker, using the pseudonym

Aaron Worthing, filed pleadings for Mr. Allen defending those attacks.
Defendants Walker, Hoge, Frey and Stranahan attacked Judge Vaughey
online which resulted in the judge being targeted by having his home
phone number and address posted online, causing the head of courthouse
security to provide special security for him. Defendants Walker and Hoge
called on their followers to contact Montgomery County States Attorney
John McCarthy and demand that he arrest and prosecute Plaintiff based on
their false narratives. In March 2013, Defendants Hoge, Walker, McCain
and Stranahan launched "Everyone Blog About Howard County State's
Attorney Day," which resulted in threats by phone and email to the State's
Attorney over a period of several weeks.

http://theothermccain.com/2013/04/08/e-mail-from-a-former-maryland-resident-to-howard-county-md-states-attorney/

http://allergic2bull.blogspot.com/2013/03/everyone-blog-about-howard-county-md.html

http://hogewash.com/2013/03/25/everyone-blog-about-the-howard-county-states-attorney-day/

51. At some point between December 2011 and May 2012, Defendants Walker,
Frey and others concluded that they had to create a more sinister false
narrative against Plaintiff that would result in criminal and Congressional
investigations. Therefore, they decided to very publicly falsely accuse
Plaintiff of "swatting conservative bloggers in order to silence them."

52. Defendant Frey was allegedly swatted on June 30, 2011 at his home in California. At the time, he told the police that he thought it was because he was writing about Congressman Anthony Weiner. However, in 2012, Defendant Frey, in concert with others, including Defendants Walker, Nagy and Stranahan, began publicly implying and stating that Plaintiff had him swatted. Some of these statements were in writing and others were oral. For example, http://allergic2bull.blogspot.com/2012/05/breaking-another-critic-of-convicted.html.

53. Defendants quickly realized that their allegations of swatting against Frey one year earlier were not believable so they concocted a plan to get the swatting smear into the mainstream media, and they did that by recruiting Defendant Erick Erickson, who blogged at the highly trafficked RedState and was a paid commentator at CNN. On or about May 15, 2012, Defendant Erickson contacted his local police and told them that he was going to write about Plaintiff on RedState and might be swatted. And, as predicted, on May 27, 2012, Erickson was swatted and the police he had earlier told to expect the swatting came to his home in Georgia. Defendant Nagy wrote about the swatting incident for Breitbart.com and posted the video from the CNN broadcast. http://www.breitbart.com/Big-Government/2012/06/08/Erickson-CNN-SWATting

54. Defendant Erickson and many other Defendants and members of the National Bloggers Club wrote extensively about Defendant Erickson's swatting and falsely blamed Plaintiff for doing it, both directly and by

implication.  For example, http://www.examiner.com/article/bloggers-observe-day-of-silence-to-urge-congressional-action-over-swatting

http://www.redstate.com/erick/2012/05/29/one-metric-on-impact-swatting/

http://www.redstate.com/erick/2012/05/25/daily-koss-neal-rauhauser-bomber-brett-kimberlin-and-political-terrorism/

55. Defendant Erickson appeared on CNN Television on June 8, 2012 and imputed that Plaintiff was responsible for the swatting through "his fan club."  Defendant Erickson even pushed back against the reporter's protests that there was no evidence of Plaintiff's involvement, saying that "the same fact pattern" applied where the bloggers wrote about Plaintiff and within weeks they are swatted.

56. On June 25, 2012, Defendant Walker was allegedly swatted at his home in Virginia.  He and other Defendants stated publicly in print and on radio that Plaintiff was responsible for the swatting. Defendant Walker appeared on Huff Post Live, imputing that Plaintiff swatted him. http://live.huffingtonpost.com/r/segment/swatting-lapd/5166cb75fe34442d70000390.  And he posted on his Twitter account. "As for TSG and stack, they were at least the tools of Kimberlin and Rauhauser, who had a hand in **SWATting** him, too." https://twitter.com/AaronWorthing/status/342499727444688896

57. On or about May 25, 2012, Defendant Glenn Beck provided a platform on his radio/television broadcast for Defendants Walker and Frey to accuse

Plaintiff of swatting. Specifically, Defendant Beck allowed Defendants

Walker and Frey to appear via audio on his radio/television program and

impute, imply and state that Plaintiff targeted Defendant Frey with

swatting and caused Defendant Walker to be fired. Defendant Frey

specifically stated that the swatting "happened to another guy writing

about the same story," and Defendant Frey stated that Plaintiff "could have

gotten me killed." http://www.youtube.com/watch?v=o8F0gXl8bUE

58. On May 25, 2012, Defendant The Blaze published an article entitled, "Do

You Know What 'Swatting' Is? Victims Tell Beck How They Were Targeted

By Terrorist Brett Kimberlin," and said title and article imputed that

Plaintiff swatted conservative bloggers.

http://www.theblaze.com/stories/2012/05/25/do-you-know-what-

swatting-is-victims-tell-beck-how-they-were-targeted-by-terrorist-brett-

kimberlin/

59. On May 25, 2012, Defendant Glenn Beck published an article on his

GlennBeck.com site titled "Glenn Talks To Bloggers About Brett Kimberlin

Terrorism" in which he imputes that Plaintiff swatted Defendant Frey.

http://www.glennbeck.com/2012/05/25/glenn-talks-to-bloggers-about-

brett-kimberlin-terrorism/

60. On June 8, 2012, Defendant Ace of Spades published "National Day of

Blogger Silence" to focus attention on the false narrative that Plaintiff was

responsible for swattings. In the article, Defendant Ace of Spades imputed

that Plaintiff was involved with the "crime" of swatting: "They are literally

going to *get someone killed.* That is their endgame here."

http://ace.mu.nu/archives/329849.php

61. On June 25, 2012, Defendant Stranahan wrote an article in Breitbart.com, implying that Plaintiff was responsible for the swatting of Aaron Walker.

http://www.breitbart.com/Big-Government/2012/06/25/Blogger-Aaron-Walker-Swatted

62. On June 25, 2012, Defendant Frey wrote an article on Patterico's Pontifications implying that Plaintiff was responsible for the swatting of Defendant Walker, and even told other bloggers to call the police if they planned to write about Plaintiff because they could be swatted.

http://patterico.com/2012/06/25/aaron-walker-swatted/

63. On May 27, 2012, Defendant Erick Erickson published an article on Defendant RedState implying that Plaintiff was somehow involved with swatting him:

Last week we spent a lot of time writing about Brett Kimberlin and the incident involving blogger Patterico where someone spoofed his phone number and told 911 he had shot his wife.
Tonight, my family was sitting around the kitchen table eating dinner when sheriffs deputies pulled up in the driveway.
Someone called 911 from my address claiming there had been an accidental shooting.
It wasn't nearly the trauma that Patterico suffered, but I guess the Erickson household is on somebody's radar.
Luckily it was two sheriffs deputies who knew me and I had already, last week, advised the Sheriff's Department to be on the look out for something like this. http://www.redstate.com/erick/2012/05/27/swatting-the-ericksons/

64. On June 25, 2012, Defendant Twitchy published an article titled, "Aaron Walker Swatted," which compiled dozens of tweets that together impute

that Plaintiff committed the swatting.

http://twitchy.com/2012/06/25/aaron-walker-swat-ted/

65. Defendants Erickson, Walker, Frey and others contacted Members of the House and Senate, telling them that Plaintiff was responsible for the swatting and urging them to demand a criminal investigation by the Department of Justice. As a result Senator Saxby Chambliss and 87 House Members signed letters urging the Department of Justice to investigate and prosecute the person who swatted "conservative bloggers." These letters in conjunction with the false statements by Defendants imputed that Plaintiff was involved in the swattings. For example, Defendant Robert Stacy McCain reported about the letters and urged mainstream reporters to "peel… that big onion" around Plaintiff's connections to the swattings.

http://theothermccain.com/2012/06/11/florida-rep-sandy-adams-leads-85-house-republicans-in-swatting-letter/

66. Two FBI agents came to Plaintiff's home on or about July 1, 2012, and interviewed Plaintiff about the swattings. On or about August 20, 2013, another FBI agent interviewed Plaintiff's wife after Defendant Walker contacted the agent and told him to surprise her at a location known to Defendant Walker.

67. In 2012 and 2013, Defendant Walker repeatedly contacted state and federal law enforcement officials and falsely told them that Plaintiff committed the swattings and demanded that they arrest him.

68. Defendant Walker attempted to use discovery in his frivolous Virginia civil lawsuit to demand documents from Plaintiff to bolster his false swatting allegations. The judge in the case denied those discovery requests.

69. Defendant Walker filed a federal lawsuit in the District of Maryland asking the federal court to prohibit Plaintiff from seeking redress in State of Maryland courts based on the false narrative that Plaintiff engaged in criminal and unethical conduct.

70. Defendants Walker and DB Capital Strategies attempted to use Defendant Walker's frivolous federal lawsuit to extort a settlement that would require the termination of Plaintiff's employment at the non-profit, and the disclosure of protected information from his employer.

71. Defendant DB Capital Strategies posted on its website that it was suing Plaintiff in federal court to defend bloggers from "swatting," imputing that Plaintiff was responsible for those swattings.
http://bloggersdefenseteam.com/?about Defendant DB Capital Strategies wrote on its blog that Plaintiff's "victims" were "swatted," implying that Plaintiff was involved with the swattings. "Kimberlin 'associates' are suspected in far more sinister forms of harassment - including the 'SWATting' of an Assistant DA in California."

http://bloggersdefenseteam.com/?narrative

72. Defendant DB Capital Strategies raised tens of thousands of dollars based on this false narrative and is still raising funds even though Judge Motz dismissed its frivolous suit against Plaintiff on November 26, 2012.

73. Defendant Walker's attorney in the state and federal lawsuits, Dan Backer, who is the director of DB Capital Strategies, refused Plaintiff's repeated requests to remove the false and defamatory information from the DB Capital website.

74. Defendant Michelle Malkin used her blog and Twitter compiler, Twitchy, to repeatedly state that Plaintiff committed the swattings. For example, on May 30, 2012, she wrote a blog post titled "Breakthrough: Fox News Covers Brett Kimberlin/Patterico Swattings." http://michellemalkin.com/2012/05/30/breakthrough-fox-covers-brett-kimberlin-patterico-swatting-bloggers-continue-pressing-the-story/

75. On April 8, 2013, Defendant Michelle Malkin published an article on her blog titled, "More Celebrities Swatted, Meanwhile Anti-Brett Kimberlin Bloggers Still Under Fire." http://michellemalkin.com/2013/04/08/more-celebrities-swat-ted-meanwhile-anti-brett-kimberlin-bloggers-still-under-fire/ Defendant Malkin imputed that Plaintiff was responsible for the swatting of Defendants Frey and Walker. The first commenter to the article said: "Brett Kimberlin needs to wake up with a horse's head in his bed."

76. Defendant Frey is an Assistant District Attorney in Los Angeles, California by day and by night he blogs as Patterico. Defendant Frey has repeatedly stated, directly and by implication, that Plaintiff swatted him. For example, on May 25, 2012, Defendant Frey headlined an article about swatting with Plaintiff's name prominently displayed said in the article that he could have been killed, and imputed that Plaintiff was responsible for the swatting.

http://patterico.com/2012/05/25/convicted-bomber-brett-kimberlin-neal-rauhauser-ron-brynaert-and-their-campaign-of-political-terrorism/

77. Defendants Frey, Walker, Stranahan, Nagy, McCain and others have used Defendant Frey's job description – "Assistant District Attorney" – to give credibility to their statements smearing Plaintiff as a swatter. This job description has been published in articles, in tweets, in emails, and in letters. For example,

- Defendant Frey wrote "I am that L.A. County Prosecutor."

  http://patterico.com/2012/05/25/convicted-bomber-brett-kimberlin-neal-rauhauser-ron-brynaert-and-their-campaign-of-political-terrorism/

- "Los Angeles County Deputy District Attorney Patrick Frey has an unusual night job."

  http://www.laweekly.com/2012-11-08/news/patrick-frey-swatting-patterico-deadly-game/full/

- "It's a phone call that could have gotten me killed," Patrick Frey, a deputy district attorney at Los Angeles County District Attorney's Office...."

  http://www.foxnews.com/politics/2012/05/31/conservative-bloggers-say-theyre-being-harassed-for-postings/

- "LA Weekly recounts the story of Deputy District Attorney Patrick Frey, the well-known conservative blogger Patterico, being SWATted last summer" http://www.breitbart.com/Big-

Government/2012/11/08/LA-Weekly-Interviews-Patterico-About-His-SWATting

- "Another blogger who was SWAT-ted, Patrick Frey, a Los Angeles assistant district attorney, went through the terrifying experience in July of 2011"

  http://www.washingtontimes.com/blog/watercooler/2012/jun/10/picket-fla-congresswoman-leads-effort-demanding-sw/

- "In October of 2010, I was contacted by J. Patrick Frey, a.k.a. "Patterico" of Patterico's Pontifications. Patrick is a Deputy District Attorney in Los Angeles in the hard core gang unit."

  http://allergic2bull.blogspot.com/2012/05/how-brett-kimberlin-tried-to-frame-me_17.html

78. Defendant Frey relies on his job as Assistant District Attorney to maintain a leadership and supervisory position in the conservative blogging hierarchy and in the instant racketeering enterprise. His orders are followed, his directives are heeded, his legal analysis is unquestioned, and his statements are believed.

79. Plaintiff has repeatedly informed the Los Angeles County District Attorney's Office about the tortious conduct of Defendant Frey but his supervisors have told Plaintiff that they have given Defendant Frey permission to act that way as long as he does not do it while physically at the District Attorney's Office.

80. Defendant Frey acts under color of the law of the State of California, which has given him full authority and permission to smear Plaintiff, falsely accuse Plaintiff of swatting, and defame Plaintiff.

81. Defendant Frey, as an official of the State of California, has used his position to intimidate, harass, stalk, threaten and harm Plaintiff, directly and through others. Defendant Frey masquerades as a law abiding state official by day, and then by night he calls on his readers to harass his targets, including Plaintiff. All the while, Defendant Frey and his employer maintain official plausible deniability by asserting that he is acting alone and off duty, yet he wears the title of Assistant District Attorney by day and by night and uses it on his blog, in talking to media, and to bolster his stature, credibility and standing.

82. Defendant Frey has stated that Plaintiff should be arrested and jailed for various reasons. Because these statements come from an Assistant District Attorney, they carry much greater weight than would such calls coming from a regular citizen.

83. Defendant Frey secretly contacted Barrett Brown and sought his help and the help of the hacker group Anonymous to intimidate Plaintiff. http://pastebin.com/WGdG5cBD Mr. Brown refused that request and posted his chat logs with Defendant Frey.

84. Defendant Walker has written many letters to people and officials using Defendant Frey's job position in order to enhance the credibility of his false statements against Plaintiff. Defendant Walker has used Defendant Frey –

"Assistant District Attorney"—as a reference, and urged people to contact Assistant District Attorney Frey to verify Defendant Walker's false statements about Plaintiff. http://allergic2bull.blogspot.com/2011/12/i-respond-to-brett-kimberlins-motion.html

85. Defendant Frey uses the legal training, legal contacts, and legal resources he has developed as an Assistant District Attorney to target Plaintiff with smears, false narratives and legal analysis.

86. Defendants have repeatedly stated that their goal is to have Plaintiff arrested and jailed, and destroy his ability to raise funds for his non-profit employer.

87. Defendants' business model is to create false narratives about Plaintiff in order to raise funds for themselves while driving their blogs to higher rankings of Internet search engines such as Google.

88. On June 26, 2012, Defendant The Franklin Center published a press release and held a webinar which stated:

Convicted domestic terrorist Brett Kimberlin and his associates have repeatedly terrorized bloggers and others who highlight his story with over 100 frivolous lawsuits and 4 SWATting attacks. SWATting is a dangerous tactic that involves calling a police department to report a false crime to get a SWAT team dispatched to the victim's house. The attacks have included bloggers Patterico, Erick Erickson, and as recently as last night, Aaron Worthing. http://franklincenterhq.org/5833/franklin-center-joins-lee-stranahan-popehat-aaron-walker-mandy-nagy-and-others-to-discuss-protection-of-the-free-press/

89. On June 26, 2013, Defendant Robert Stacy McCain published the above press release on his blog under the headline, "#TCOT #BrettKimberlin #SWATting Important Event 9:30 p.m. ET Tonight!"

http://theothermccain.com/2012/06/26/tcot-brettkimberlin-swatting-important-event-930-p-m-et-tonight/

90. More than 15,000 results come up on Google when pairing "Brett Kimberlin with Swatting."

91. Defendant James O'Keefe published a book in June 2013, called "Breakthrough," which was published by Defendant Simon & Shuster through its Threshold Division. In that book, Defendant O'Keefe published the following:

"Kimberlin deserves his own book. He's the scary dude who pioneered the art of 'swatting' – that is convincing the police of a domestic incident severe enough to trigger a SWAT response at the home of a political opponent. Of late, he has focused his demonic energy on citizen journalists." page 250.

92. On April 8, 2013, Defendant Michelle Malkin wrote an article for her blog implying that Plaintiff was responsible for swatting conservative bloggers:

"Conservative bloggers and activists rallied behind the victims of left-wing convicted domestic terrorist Brett Kimberlin and his cabal. A year later, the survivors of those SWATting attacks are still fighting for their security and free speech rights." http://michellemalkin.com/2013/04/08/more-celebrities-swat-ted-meanwhile-anti-brett-kimberlin-bloggers-still-under-fire/

93. On October 1, 2013, Defendant KimberlilnUnmasked stated the following on the About page of his blog:

"This blog is for the purpose of further exposing and highlighting the sick pathologies and actions of Brett Kimberlin and his associates, ….. This blog is an attempt to document their actions on behalf of the many people they've targeted and continue to target online and in person. The most terrifying methodology they've used against their ideological foes is SWATting, which is why many people are keeping their heads down, hoping that not mentioning them will make them stop."
http://kimberlinunmasked.blogspot.com/p/about.html

94. On June 26, 2012, Defendant Robert Stacy McCain wrote an article on

    ViralRead that implied that Plaintiff swatted Aaron Walker.

    "This latest attack follows similar tactics used against Patrick Frey and Erick
    Erickson after they became interested in the ongoing Kimberlin saga."
    http://www.viralread.com/2012/06/26/aaron-walker-swatted/

95. On June 12, 2012, Defendant Robert Stacy McCain, posted an article on his

    blog that imputed and stated that Plaintiff committed swattings.

    Of course, since the DOJ is led by the corrupt and racist Eric Holder, and the
    victims of the Brett Kimberlin SWATing are Conservatives and the
    perpetrators are Liberal political activists.
    http://theothermccain.com/2012/06/06/sen-saxby-chambliss-requests-
    doj-investigate-swatting/

96. On June 8, 2012, Defendant Hoge wrote a letter to a Congressman and

    imputed that Plaintiff was involved with swattings, that he should be

    investigated by the FBI and sent to prison. Defendant Hoge published that

    letter along with a blog post. http://hogewash.com/2012/06/06/a-

    senator-takes-notice/

97. On June 7, 2012, Defendant Akbar gave an interview to The Examiner in

    which he imputed that Plaintiff was responsible for swattings.

    http://www.examiner.com/article/aclj-to-defend-conservative-bloggers-

    targeted-over-brett-kimberlin-coverage

98. On October 14, 2013, Defendant Akbar launched a new fundraising

    campaign based on the false narratives that Plaintiff swatted and caused

    Defendant Walker to lose his job. www.bombersuesbloggers.com. When a

    person clicks the DONATE button, it redirects to the same National

    Bloggers Club donate site that Defendant Akbar previously used to raise

money based on his false claim that Plaintiff is a swatter.  "Kimberlin's 2 year campaign of harassment, has led to bloggers losing jobs, threats of violence, and police 'SWATTings'…."  On the same day, Defendant Ali sent tweets to many of the Defendants in this suit to garner their help in raising more money based on false narratives about Plaintiff.

99. Members of Defendant National Bloggers Club read articles written by Defendants Frey, Walker, Ace Of Spades, Stranahan, Erickson, and McCain, and then published their own articles linking to those articles specifically stating that Plaintiff swatted conservative bloggers.  For example,

- http://www.bob-owens.com/2012/06/another-conservative-blogger-swatted-by-leftist-domestic-terrorists/
- http://www.youtube.com/watch?v=T150f46AwIM "CNN Discusses Brett Kimberlin Swatting Cases With Erick Erickson"
- http://newsbusters.org/blogs/tom-blumer/2012/05/28/brett-kimberlin-and-swatting-where-establishment-media-0
- http://neosecularist.com/tag/brett-kimberlin-swatting/
- http://legalinsurrection.com/2012/05/a-brett-kimberlin-situation-could-happen-to-you/
- http://americanpowerblog.blogspot.com/2012/05/brett-kimberlin-and-swatting-where-is.html
- http://granitegrok.com/blog/2012/05/the-kimberlin-files-continue-swatting-the-ericksons
- http://www.usmessageboard.com/politics/225838-brett-kimberlin-strikes-again-another-swatting-attack-against-conservatives.html
- http://patdollard.com/2012/05/swatting-patterico-alleges-campaign-of-terror-attempted-murder-by-neal-rauhauser-ron-brynaert-and-brett-kimberlin/

100.     Defendants McCain, Walker, Frey, Stranahan, DB Capital Strategies, and Akbar raised and continue to raise money on their websites based on their false narrative about the swattings.  They solicited those funds in interstate commerce through the use of the Internet, the telephone and mail.  Those funds were transferred and received through interstate

commerce and placed in banks insured by the Federal Deposit Insurance Corporation.

101. Defendants' solicitation of funds based on the false swatting narrative constitutes wire, mail, and bank fraud in interstate commerce.

102. Defendant Akbar's solicitation of funds based on the false assertion that Defendant National Bloggers Club is a 501(c)(3) non-profit and all donations to Defendant National Bloggers Club are tax deductible constitutes fraud.


### FIRST CLAIM FOR RELIEF
### RACKETEER INFLUENCES AND CORRUPT ORGANIZATIONS ACT UNDER 18 USC 1962(c) and 18 USC 1962(d)
(All Defendants)

103. Plaintiff re-alleges and incorporates every paragraph above.

104. Plaintiff's claims under the Racketeering Influenced and Corrupt Organizations Act, 18 USC 1961-68 ("RICO") are brought against all Defendants.

105. Plaintiff is a person with standing to sue within the meaning of 18 USC 1964(c).

106. Each of the Defendants is a "RICO person" within the meaning of 18 USC 1963(1).

107. All Defendants and unnamed persons constitute an association-in-fact, and therefore an enterprise ("The RICO Enterprise"), within the meaning of 18 USC 1961(4).

## The RICO Enterprise

108.     At all relevant times from November 2011 through the present day, The RICO Enterprise was an ongoing relationship, business and criminal, among all Defendants, with the common purpose of creating false narratives, publishing false narratives, using threats, extortion, intimidation, harassment, assault, fraud, and misuse of government agencies to smear and harm Plaintiff.

109.     At all relevant times, The RICO Enterprise was engaged in interstate commerce in that its activities and transactions relating to its activities as related above affected interstate commerce and frequently required travel, communications and financial transactions across state lines.

110.     At all relevant times, the members of The RICO Enterprise functioned as a continuing unit.

111.     At all relevant times, Defendants conducted or participate in, and conspired to conduct or participate in, the affairs of The RICO Enterprise through a pattern of numerous acts of racketeering in violation of 18 USC 1962(c) and 1962(d), related by their common goal to use false narratives about Plaintiff to fraudulently raise funds, increase readership, and sell products and services.

112.     Specifically, Defendants conducted or participated in and agreed to conspire to conduct the affairs of The RICO Enterprise by engaging in the following predicate acts of racketeering under 18 USC 1961(1):

- Mail fraud to further their unlawful scheme in violation of 18 USC 1341;

- Wire fraud to further their unlawful scheme in violation of 18 USC 1343;

- Obstruction of justice to further their unlawful scheme in violation of 18 USC 1503;

- Obstruction of criminal investigation to further their unlawful scheme in violation of 18 USC 1510;

- Obstruction of state and local law enforcement to further their unlawful scheme in violation of 18 USC 1511;

- Retaliation against a witness and victim to further their unlawful scheme in violation of 18 USC 1513;

- Extortion to further their unlawful scheme in violation of 18 USC 1951;

- Money laundering to further their unlawful scheme in violation of 18 USC 1957.

113.   Defendants' engagement in the above listed predicate acts in the conduct of affairs of The RICO Enterprise resulted in the individual financial gain of each Defendant, through actual funds, advertising and increased traffic to their publications, at the expense of business, property and personal injury to Plaintiff.

## Predicate Acts

## Mail Fraud, 18 USC 1341

114.    Defendants through The RICO Enterprise, solicited, enticed, persuaded, and induced citizens to send money through the United States Postal Service to Defendants National Bloggers Club, DB Capital Strategies, Akbar, McCain, Walker, Frey, Stranahan and Hoge based on the false narrative that Plaintiff was involved in or responsible for swattings.

115.    Defendants through The RICO Enterprise, solicited, enticed, persuaded, and induced citizens to send money through the United States Postal Service to Defendants National Bloggers Club and Akbar based on the false statements that Defendant National Bloggers Club is a 501c3 non-profit and that donations to it were tax deductible.

116.    Defendants *conspired* through The RICO Enterprise, to solicit, entice, persuade, and induce citizens to send money through the United States Postal Service to Defendants National Bloggers Club, DB Capital Strategies, Akbar, McCain, Walker, Frey, Stranahan and Hoge based on the false narrative that Plaintiff was involved in or responsible for swattings.

117.    Defendants *conspired* through The RICO Enterprise, to solicit, entice, persuade, and induce citizens to send money through the United States Postal Service to Defendants National Bloggers Club and Akbar based on the false statements that Defendant National Bloggers Club is a 501c3 non-profit and that donations to it were tax deductible.

118.     Defendants through The RICO Enterprise willfully, knowingly and intentionally committed and conspired to commit multiple predicate acts of mail fraud in violation of 18 USC 1341, as set forth in Plaintiff's First Claim for Relief.

### Wire Fraud, 18 USC 1343

119.     Defendants through The RICO Enterprise, solicited, enticed, persuaded, and induced citizens to transmit money through telecommunications and wire and Internet services to Defendants National Bloggers Club, DB Capital Strategies, Akbar, McCain, Walker, Frey, Stranahan and Hoge based on the false narrative that Plaintiff was involved in or responsible for swattings.

120.     Defendants through The RICO Enterprise, solicited, enticed, persuaded, and induced citizens to send money through telecommunications and wire and Internet services to Defendants National Bloggers Club and Akbar based on the false statements that Defendant National Bloggers Club is a 501c3 non-profit and that donations to it were tax deductible.

121.     Defendants *conspired* through The RICO Enterprise, to solicit, entice, persuade, and induce citizens to send money through telecommunications and wire and Internet services to Defendants National Bloggers Club, DB Capital Strategies, Akbar, McCain, Walker, Frey, Stranahan and Hoge based on the false narrative that Plaintiff was involved in or responsible for swattings.

122.    Defendants *conspired* through The RICO Enterprise, to solicit, entice, persuade, and induce citizens to send money through telecommunications and wire and Internet services to Defendants National Bloggers Club and Akbar based on the false statements that Defendant National Bloggers Club is a 501c3 non-profit and that donations to it were tax deductible.

123.    Defendants through The RICO Enterprise willfully, knowingly and intentionally committed and conspired to commit multiple predicate acts of wire fraud in violation of 18 USC 1343, as set forth in Plaintiff's First Claim for Relief.

### Obstruction of Justice; 18 USC 1503, 1510, 1511

124.    Defendants through The RICO Enterprise obstructed justice, obstructed a criminal investigation and obstructed local and state law enforcement efforts by falsely accusing Plaintiff of swatting, and provided false evidence to the FBI and state and local law enforcement officials asserting that Plaintiff was involved in the swattings. This false information caused federal, state and local law enforcement officials to waste valuable time and resources chasing false information provided by The RICO Enterprise.

125.    Defendants through The RICO Enterprise furthered their obstruction of justice by providing false evidence and information about Plaintiff to United States Senators and Congress Members with the knowledge that said false information would be provided to the Attorney General of the United States and to the Federal Bureau of Investigation.

126.   Defendants through The RICO Enterprise furthered their obstruction of justice by providing false information to the Montgomery and Howard County Maryland State's Attorney based on their false narrative that Plaintiff committed criminal acts.

127.   Defendants through The RICO Enterprise furthered their obstruction of justice by threatening Plaintiff and causing threats of injury and death to be directed at Plaintiff in order to intimidate him from cooperating with law enforcement officials and from exercising his right to seek legal redress.

128.   Defendants through The RICO Enterprise furthered their obstruction of justice by causing threats to be made to the Montgomery and Howard County Maryland State's Attorneys and to Judges Richard Jordan and Cornelius Vaughey because they rejected the false narratives brought to them by The RICO Enterprise.

129.   These willful, knowing and intentional acts constitute obstruction of justice in violation of 18 USC 1503, obstruction of a criminal investigation in violation of 18 USC 1510, and obstruction of state and local law enforcement in violation of 18 USC 1511.

**Retaliation of a Witness and Victim; 18 USC 1513**

130.   Defendants through The RICO Enterprise have engaged in a multi year campaign of retaliation against Plaintiff in order to intimidate him from being a witness and for being a victim. This retaliation came in the form of threats of death and injury caused by false narratives created and

published by Defendants portraying Plaintiff as causing Defendant Walker's job termination and swatting conservative bloggers.  Other forms of retaliation were the assault of Plaintiff by Defendant Walker; the filing of false criminal charges, peace orders and frivolous civil suits against Plaintiff by Defendants Walker and Hoge; attempting to extort a settlement from Plaintiff in exchange for dismissing a malicious federal lawsuit; publishing defamatory stories accusing Plaintiff of swatting; repeatedly threatening Plaintiff with imprisonment based on false narratives; and threatening Plaintiff's family.

131.    These willful, knowing and intentional acts constitute retaliation of a witness and a victim in violation of 18 USC 1513.

### Extortion; 18 USC 1951

132.    Defendants through The RICO Enterprise engaged in extortion by filing a malicious federal lawsuit against Plaintiff and two non-profits, one of which employs Plaintiff, to limit his First Amendment right to redress and then demanding that his employer fire him and turn over protected business documents in exchange for a settlement of the case against the non-profits.

133.    These willful, knowing and intentional acts constitute extortion in violation of 18 USC 1951.

### Money Laundering; 18 USC 1957

134.    Defendants through The RICO Enterprise engaged in money laundering by creating an entity called the National Bloggers Club and then

falsely portraying it as a non-profit operating under the authorization of
the Internal Revenue Service, Section 501(c)(3). Defendant National
Bloggers Club did not apply for Section 501(c)(3) status prior to stating
publicly that the National Bloggers Club was a 501(c)(3) non-profit.
Defendants through The RICO Enterprise posted online, through a letter
and through word of mouth that donations made to Defendant National
Bloggers Club were tax deductible under Section 501(c)(3). Those
donations, in excess of $10,000, were funneled by various means in
interstate commerce to a bank account controlled by Defendant Ali Akbar,
and laundered for his own purposes, without any accounting and without
filing any Section 990 returns with the Internal Revenue Service.
Defendant Akbar refused all requests made to him and Defendant National
Bloggers Club to provide a copy of any Section 501(c)(3) determination
issued by the IRS for the National Bloggers Club. Defendant Akbar refused
all requests made to him and the National Bloggers Club for an accounting
of the funds he received and disbursed from his false narratives about
Plaintiff.

135. Defendants through The RICO Enterprise knew or had reason to know
that Defendant National Bloggers Club was not a 501(c)(3) non-profit and
that donations made to the National Bloggers Club were not tax deductible,
and that Defendant Akbar and the National Bloggers Club were committing
fraud by soliciting and receiving funds based on those fraudulent

representations and on Defendants' false narrative that Plaintiff was involved with swattings.

136. Defendants through The RICO Enterprise engaged in these monetary transactions derived through fraud in a value greater than $10,000 in interstate commerce. These monetary transactions included deposits, withdrawals, transfers and exchanges to, from and through financial institutions in the United States.

137. These willful, knowing and intentional acts constitute engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 USC 1957.

### Pattern of Related Racketeering Acts

138. Defendants engaged in the racketeering activity and commission of predicate acts as described in this Complaint, beginning in August 2010 and continuing until the present time.

139. As set forth above, Defendants have committed at least two predicate acts of racketeering activities in the past 10 years.

140. Defendants implemented the racketeering acts described in this Complaint as a business model for The RICO Enterprise.

141. Defendants' racketeering acts have or had similar purposes; to profit from the fraudulent narratives about Plaintiff, to profit from the money laundering schemes, and to increase the value of their websites and media operations through the use of those false narratives.

142.     As set forth above, Defendants' racketeering acts have or had similar participants; some in supervisory roles such as Defendants Frey and Akbar, and others in support roles such as the other Defendants.

143.     As set forth above, Defendants, through The RICO Enterprise, directed their activities at Plaintiff. The Defendants created The RICO Enterprise as a business model to raise funds through fraudulent means: create false narratives about Plaintiff such as swattings, demonize him with those false narratives, falsely portray Plaintiff as victimizing Defendants and violating their rights, breathlessly solicit donations it order to fight Plaintiff, falsely promise donors that their money will go to a 501(c)(3) non-profit, receive tens of thousands in donations, launder that money with no accountability, and spend or pocket that money while increasing traffic and value to their websites and media sites.

144.     Defendants' acts have or had similar methods of commission, such as common false narratives against Plaintiff, consistent practices with respect to collecting donations for a non-existent 501(c)(3) non-profit, and the use of stonewalling and lies when asked for transparency and accountability.

### Injury

145.     As a direct and proximate result of Defendants' willful, knowing and intentional acts, as set forth above, Plaintiff has suffered injury to his name, property and businesses, including, but not limited to: having his name falsely associated with swatting and other crimes and false narratives; having his employer defamed based on those false narratives; having to

spend untold hours, days and weeks defending against the false narratives; having to spend money defending against the false narratives; losing employment and funding opportunities, and other pecuniary and losses to real or personal property.

146.    Plaintiff is entitled to an award of damages in an amount to be determined at trial, including treble damages and other fees and costs associated with this action.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 USC 1983
### (Defendant Frey)

147.    Plaintiff-re-alleges and incorporates every paragraph above.

148.    Plaintiff asserts this claim under 42 USC 1983 for declaratory relief and damages against Defendant Frey.

149.    As set forth above, the actions of Defendant Frey -- such as creating false narratives about Plaintiff committing crimes, planning gang attacks on Plaintiff based on false narratives knowing that such attacks would result in threats of injury and death, failing to contact law enforcement when a person threatened to murder Plaintiff, and directing other Defendants to create false narratives and make false criminal accusations against Plaintiff in order to harm him -- were done under color of state law, specifically as an Assistant District Attorney for Los Angeles, California, with the knowledge and permission of his supervisors in the Los Angeles District Attorney's Office.

150.    Defendant Frey knowingly, willfully, maliciously, intentionally and without legal justification planned and acted to deprive Plaintiff of his civil and constitutional rights.

151.    Defendant Frey knowingly, willfully, maliciously, intentionally and without legal justification acted to deprive Plaintiff of his civil rights.

152.    As a result of the unlawful acts of Defendant Frey, Plaintiff suffered damages.

153.    Plaintiff seeks all appropriate relief, including declaratory, fees, costs, and damages, including compensatory and punitive, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### VIOLATIONS OF THE KU KLUX KLAN ACT OF 1871, 42 USC 1985

154.    Plaintiff-re-alleges and incorporates every paragraph above.

155.    Plaintiff asserts this claim pursuant to 42 USC 1985(3) for declaratory relief, and damages against Defendants.

156.    As set forth above, Defendants conspired, agreed, planned and coordinated with Defendant Frey, acting under color of law, for the purpose of depriving Plaintiff of his constitutional and civil rights, including his First Amendment right to seek redress from the courts, his Fifth Amendment right to due process, his constitutional right to privacy, his First Amendment right to speech, and his overarching right be safe in his everyday activities.

157.    Defendants knowingly, willfully, maliciously, intentionally, and without justification planned and acted to deprive Plaintiff of his rights.

158.   As a result of the unlawful acts of Defendants' conspiracy to violate his

rights, Plaintiff has suffered damages.

159.   Plaintiff seeks all appropriate relief, including declaratory, fees, costs,

and damages, including compensatory and punitive, in an amount to be

determined at trial.

### FOURTH CLAIM FOR RELIEF
### FRAUD AND NEGLIGENT MISREPRESENTATION

160.   Plaintiff re-alleges and incorporates every paragraph above.

161.   As set forth above, Defendants made materially false and untrue

statements and representations regarding Plaintiff's involvement in

swattings, and regarding the 501(c)(3) status of Defendant National

Bloggers Club.

162.   As set forth above, Defendants knowingly or negligently failed to

disclose material and truthful facts regarding the swattings and the

501(c)(3) status of Defendant National Bloggers Club.

163.   Defendants intended that their false statements would induce others

to believe their false narratives and would induce them to send money to

Defendant National Bloggers Club.

164.   Many people relied on Defendants' fraudulent representations and

donated more than $10,000 to Defendant National Bloggers Club, including

many who did so believing that they would get a tax deduction for their

donation.

165.    Many people relied on Defendants' fraudulent representations about swattings, and then wrote blog posts and articles based on those false representations defaming Plaintiff as being involved with the swattings.

166.    Defendants further made false representations and/or omissions with the intent of obtaining favorable media exposure for their false representations, pressuring the United States Congress and FBI to investigate Plaintiff, and to harm Plaintiff.

167.    As a direct, proximate and foreseeable result of Defendants' knowing, willing, intentional and/or negligent actions, Plaintiff has been injured, including significant pecuniary, reputational, and other damages.

168.    Plaintiff is entitled to recover compensatory and punitive damages in an amount proven at trial.

### FIFTH CLAIM FOR RELIEF
### DEFAMATION

169.    Plaintiff re-alleges and incorporates every paragraph above.

170.    Defendants have intentionally, knowingly and/or recklessly published and disseminated the false and defamatory statements identified above regarding swattings on the Internet, on television, on radio and in print where they have been easily accessible, and were accessed my many people, including Plaintiff's family, children, friends, business associates and actual and prospective partners and others.

171.    Defendants' defamatory statements regarding Plaintiff's involvement in swattings have caused and continue to cause substantial injury to Plaintiff, his business and personal well-being.

172. The statements have caused and continue to cause deep embarrassment, humiliation, opprobrium, emotional distress and mental suffering to Plaintiff.

173. Defendants' false and defamatory statements and the implications drawn from them concerning Plaintiff are defamatory *per se* because they allege crimes and make Plaintiff appear odious, infamous, and/or frightening.

174. Defendants published these false and defamatory statements to third parties who reasonably understood the published statements to be defamatory.

175. Defendants were aware of the defamatory implication of their statements about Plaintiff, and intended and endorsed the defamatory implication.

176. Defendants published these false and defamatory statements about Plaintiff even though they knew that they were not based on fact or truth.

177. Defendants published these false and defamatory statements about Plaintiff with knowledge of their falsity and/or reckless disregard for their truth.

178. Alternatively, Defendants published these false and defamatory statements about Plaintiff negligently as the truth or falsity of what they were saying.

179. Each of the Defendants was directly involved and responsible for the false and defamatory statements that were published about Plaintiff.

180.    Defendants published these false and defamatory statements with both common law and actual malice, and with the intent of harming Plaintiff.

181.    Defendants published these false and defamatory statements day after day, week after week, with the attacks becoming more coordinated, aggressive and nastier as time progressed.

182.    Defendants' defamatory statements were repeated and republished by other media and bloggers, thereby compounding the harm to Plaintiff.

183.    None of the Defendants has retracted their defamatory statements or removed them from their websites, blogs or media outlets.

184.    Defendants also published these defamatory and false statements in order to increase traffic to their blogs and to raise money from unsuspecting readers who believed their statements.

185.    Defendants' false and defamatory statements have caused Plaintiff to sustain damages.

186.    Defendants' actions against Plaintiff were willful, wanton and malicious, were intended to deliberately harm Plaintiff, and were made with a callous indifference to Plaintiff.

187.    Thus, in publishing the numerous false and defamatory statements about Plaintiff, Defendants acted with an improper and outrageous motive or callous indifference to Plaintiff's rights and interests. As a result of Defendants' outrageous and repeated conduct, Defendants should be ordered to pay substantial compensatory and punitive damages.

## SIXTH CLAIM FOR RELIEF
## FALSE LIGHT INVASION OF PRIVACY

188.    Plaintiff re-alleges and incorporates every paragraph above.

189.    Defendants' statements and articles above contained false statements,
representations or imputations about Plaintiff that place him in a false
light.

190.    As stated above, Defendants portrayed Plaintiff as being involved with
swatting, a serious crime.

191.    The false light in which Defendants placed Plaintiff would be
considered highly offensive to a reasonable person.

192.    Defendants were each complicit in and responsible for casting
Plaintiff in a false light and violating his privacy.

193.    Defendants disseminated their articles on the Internet, television,
radio and in print where they were widely available to and accessible by
members of the general public across the globe.

194.    Defendants knew that their actions and statements had the effect of
casting Plaintiff in a false light but nevertheless continued to do so week
after week, article after article and tweet after tweet.

195.    Alternatively, Defendants were negligent in the publication of their
statements about Plaintiff, the effect of which was to portray Plaintiff in a
false light.

196.    Defendants' portrayal of Plaintiff in a false light, as stated above,
caused substantial injury to Plaintiff's reputation, business interests, and
mental well-being.

197.    Defendants' placing Plaintiff in a false light has caused Plaintiff to sustain substantial damages.

198.    Defendants' actions against Plaintiff were willful, wanton and malicious, and were intended to deliberately harm Plaintiff.

199.    Thus, Defendants acted with an improper and outrageous motive or careless indifference to Plaintiff's rights and interests. Defendants' outrageous conduct warrants the imposition of significant compensatory and punitive damages.

### SEVENTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

200.    Plaintiff re-alleges and incorporates every paragraph above.

201.    Defendants' defamatory and false statements, intentional misrepresentations and wide publication of false statements about Plaintiff's involvement in swatting constitute extreme and outrageous conduct.

202.    Defendants' causal and in concert relationship to the assault of Plaintiff by Defendant Walker, the many threats of death and injury to Plaintiff and his family, and the demands for Plaintiff's arrest and imprisonment on the basis of false statements about swattings, demonstrates malice with an intent to cause maximum harm to Plaintiff.

203.    Defendants' actions were done intentionally and/or recklessly in conscious disregard of the high probability that Plaintiff's mental distress would follow.

204. As a result of Defendants' actions, Plaintiff has suffered severe emotional distress and mental anguish.

## PUNITIVE DAMAGES

205. The actions or omissions of Defendants set forth in this Complaint demonstrate malice, egregious conduct, insult, and a perverse gratification from harm caused to Plaintiff. Such actions or omissions by Defendants were undertaken with either (1) maliciousness, spite, ill will, vengeance or deliberate intent to harm Plaintiff, or (2) reckless disregard of the profound wrongfulness of their actions or omissions, and their harmful effects on Plaintiff. Accordingly, Plaintiff requests an award of punitive damages beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

- Compensatory damages and consequential damages in an amount exceeding $75,000;
- Punitive damages as applicable to punish Defendants' reprehensible conduct and to deter future occurrence;
- Treble damages as authorized by RICO, 18 USC 1964(c);
- Declaratory relief in the form of an Order finding that Plaintiff had no involvement in any swattings;

- An order enjoining Defendants from engaging in future tortious conduct against Plaintiff;

- An order requiring Defendants to remove any defamatory statements about swatting by Plaintiff from blogs or media over which they have control;

- For equitable relief as appropriate pursuant to applicable law, including but not limited to issuing a temporary restraining order, a preliminary injunction and a permanent injunction that bars Defendants from retaliating against Plaintiff in any way for bringing this action.

- Costs and fees incurred in the prosecution of this action, and

- Further relief as this Court deems just and appropriate.

### JURY DEMAND

Plaintiff Kimberlin hereby demands a jury trial of all issues in this action triable as of right by a jury.

Respectfully submitted,

Brett Kimberlin-pro se

October 14, 2013