UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

FILED _____ ENTERED
_____ LODGED ___ AD RECEIVED

JAN 1 7 2014

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

BRETT KIMBERLIN,
Plaintiff,

v.                                      No. PWG 13 3059

NATIONAL BLOGGERS CLUB, et al.,
Defendants

## PLAINTIFF'S RESPONSE TO DEFENDANTS HOGE AND WALKER'S MOTIONS TO DISMISS

Now comes Plaintiff and responds in opposition to Defendants Hoge and Walker's

Motions to Dismiss. The Court must deny a Motion to Dismiss under Rule 12(b)(6)

of the Federal Rules of Civil Procedure unless it "appears beyond doubt that Plaintiff

can prove no set of facts in support of his claim which would entitle him to

relief." *Conley v. Gibson,* 355 U.S. 41, (1957). "The question is whether in the light

most favorable to the Plaintiff, and with every doubt resolved in his behalf, the

Complaint states any valid claim for relief." 5A Wright & Miller, Federal Practice and

Procedure: Civil 2d § 1357, at 336. The Court, when deciding a motion to dismiss,

must consider well-pled allegations in a complaint as true and must construe those

allegations in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236

(1974); *Jenkins v. McKeithen,* 395 U.S. 411, 421-22 (1969). The Court must further

disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412

F.2d 712, 715 (4th Cir.1969); *Lujan v. National Wildlife Federation,* 497 U.S. 871

(l990) ("a complaint should not be dismissed for insufficiency *unless it appears to a*

*certainty that plaintiff is entitled to no relief under any state of facts which could be*

*proved in support of the claim.*") (emphasis added).

1

## Maryland's Three-Year Statute of Limitations Applies to Plaintiff's False Light Invasion of Privacy Claim

1. Defendants argue that Plaintiff's claim of False Light Invasion of Privacy is barred by Maryland's one year statute of limitations, and they cite *Smith v. Esquire*, 494 F. Supp. 967 (D. Md. 1980), in support of their argument. This is without merit.

2. In 1988, Maryland's highest Court rejected the reasoning of *Smith* in *Allen v. Bethlehem Steel Corp.*, 314 Md. 458 (1988):

   We disagree with *Smith*. What the district court judge said in *Smith* may be true, but the Maryland statute of limitations is vividly clear. An action for libel and slander shall be filed within one year of the date it accrues. Courts Art. § 5-105. Other tort actions shall be filed within three years of the date they accrue. Courts Art. § 5-101. Nowhere in § 5-101 does it provide an exception for "false light" cases. Even though we recognize the district court judge's view as to how the statute of limitations will be avoided, that "loophole" must be plugged by the Legislature.

   Clearly, Maryland general three-year statute of limitations applies to the False Light Invasion of Privacy Claim.

## Defendants Have Portrayed Plaintiff In False Light

3. As set forth in the Complaint, Defendants have repeatedly imputed and stated that Plaintiff is a swatter or involved with swatting. The Defendants are members of Defendant National Bloggers Club, which continues to state on its website that Plaintiff is a swatter. Exhibit A. These published statements are false and portray Plaintiff in false light. A plaintiff may prove a claim of false light invasion of privacy by showing: (1) that the defendant gave publicity to a matter that places the plaintiff before the public in a false light; (2) that a reasonable person would find that the false light in which the

2

other person was placed highly offensive to a reasonable person; and (3) that the defendant had knowledge of or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the defendant placed the plaintiff. *Bagwell v. Pennisula Regional Medical Center*, 665 A.2d 297 (1995).

4. Clearly, Plaintiff has properly alleged a false light invasion of privacy claim.

### Plaintiff's Defamation Claim is Not Barred By Maryland's One-Year Statute of Limitations

5. Defendants argue that Maryland's one-year statute of limitations bars Plaintiff's defamation claim because "all alleged statements by Mr. Hoge were made more than one year before filing of the instant suit." Hoge at 11. See also Walker at 41. These arguments are without merit for a multitude of reasons.

6. On June 8, 2012, Defendant Hoge wrote a letter and published it on his blog stating that Plaintiff was a swatter who should be investigated and put in prison. Complaint at 28. Defendant Walker on his personal blog and on his personal Twitter account has repeatedly stated and imputed that Plaintiff swatted him. Complaint 16 et seq.

7. These publications were part of a campaign that continues to this day to falsely accuse Plaintiff of crimes in order to harm him and raise money for the Defendants. This campaign constitutes discrete acts by and a conspiracy among the Defendants, and the overt acts of this conspiracy accusing Plaintiff of swattings did not stop on June 8, 2012. In fact, Defendant Ali Akbar, on behalf of Defendant National Bloggers Club of which Defendants Hoge and

3

Walker are members, stated on his blog on October 14, 2013, that Plaintiff
was responsible for the swattings. Exhibit A. Defendant Akbar uses that blog
to raise funds for Defendants Hoge and Walker and other bloggers to pay for
legal costs in this case involving Plaintiff. Exhibit A. Defendants Hoge and
Walker, in turn, ask readers on their blogs and on Twitter accounts to donate
to the National Bloggers Club. Therefore, Defendants Hoge and Walker, as
members of the National Bloggers Club, which continues to raise money
based on false assertions of Plaintiff's involvement in swatting, defamed
Plaintiff as a swatter as late as October 14, 2013, well within the one-year
statute of limitations.

8. Since Plaintiff has alleged a conspiracy in this case, the statute of limitations
does not begin until the last overt act of the conspiracy. *Shessler v. Keck*, 271
P.2d 588, 292 (2d Dist. CA 1954) ("where the complaint alleges that all the
allegedly libelous acts were committed pursuant to a conspiracy formed by
the defendants, the statute of limitations does not commence to run against
any of the libelous acts until commission of the last over act done in
furtherance of the conspiracy.") The conspiracy alleged by Plaintiff is a
continuing one that has not yet ceased.

9. Moreover, the statute of limitations does not apply because the Defendants
were responsible for causing threats to Plaintiff of death and harm if he went
to court or contacted the authorities. *See* Complaint at 12. Defendant Hoge
took these threats even further by twice filing false criminal charges against
Plaintiff in February and March 2013, which were nolle prossed, and then

4

filing a false Peace Order against Plaintiff in March 2013, which was denied and which he then appealed in May 2013, and that was also denied. Exhibit B. Defendant Walker attempted to file criminal charges against Plaintiff in Howard County on or about March 13, 2013 and when that was rejected, he filed a Peace Order on the same day, which was also rejected. Exhibit C. These false charges were intended to instill fear in Plaintiff and did intimidate Plaintiff not to seek redress. Defendant Walker also filed two malicious civil suits against Plaintiff in 2012, which were intended to stop him from seeking redress. In fact, in *Walker v. Kimberlin* et al, 12-CV-01852-JFM, filed in this Court, Defendant Walker asked the Court to prohibit filing any suits or pleadings in court unless first getting permission from a court appointed administrative law judge.

10. Defendants Hoge and Walker continue to intimidate Plaintiff every day of the week and raise money based on their exploitation of their false narratives. In fact, they filed motions in this case to require Plaintiff to file all pleadings under oath so they could file more harassing criminal charges against Plaintiff based on their delusional conclusions of perjury. This Court properly denied those motions on December 30, 2013. They write at least one daily post on their blogs about Plaintiff and send hundreds if not thousands of tweets a month about Plaintiff filled with all sorts of intimidating language, graphics, and threats of imprisonment and doom. All of these are accompanied by a donate button to help them raise money to target Plaintiff. See e.g., Exhibits D and E. Many of these posts accuse Plaintiff of crimes and

discuss every nuance of every pleading filed by Plaintiff with commentary that Plaintiff will be jailed or sanctioned by this judge or that judge. Id. The purpose for these threats and intimidation tactics is to chill Plaintiff's right to redress.

11. It is well established that the statute of limitations can be tolled where the defendant engages in conduct that threatens or intimidates a party against seeking redress. In such a case, the defendant is estopped from relying on the statute of limitations until after the intimidating or threatening behavior ceases. Cf. *Murphy v. Merzbacher*, 346 Md. 525, 532, 697 A.2d 861 (1997).

12. Clearly Plaintiff has brought this defamation claim within one year of Defendant Hoge and Walker's defamation and intimidation tactics, and therefore there is no statute of limitations bar to Plaintiff's defamation claim.

## Plaintiff's Has Established All The Elements Of Defamation

13. A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person.

> "To recover for defamation under Maryland law, a plaintiff must establish that: (1) the defendant made a defamatory statement regarding the plaintiff to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff suffered harm thereby." *Holt v .Camus*, 128 F. Supp. 2d 812, 815 (D. Md. 1999).

14. Defendants Hoge and Walker argue that Plaintiff is defamation proof because (1) he was convicted of a crime that occurred in 1979 and (2) is a public figure. These arguments are without merit.

15. The Defendants, through their various frivolous lawsuits, Peace Orders and
criminal charges against Plaintiff, have been trying to get a judge, any judge,
to rule that Plaintiff is a public figure. On each and every occasion, this
argument has failed. In fact, when Defendant Walker filed a motion for such
a finding in another defamation case brought by Plaintiff, *Kimberlin v. Allen*,
Montgomery County Circuit Court #339254, which resulted in a favorable
judgment for Plaintiff, Judge Quirk denied the motion on February 2, 2012.
Defendant Walker made the same argument in a civil case in Prince William
County Virginia but the judge implicitly rejected it when he excoriated
Walker for filing a frivolous and malicious suit against Plaintiff. The judge
dismissed that case on December 4, 2012. See Exhibit F. Now Defendants
Hoge and Walker are making the same argument that has been repeatedly
rejected by other courts.

| | |
|---|---|
| Docket Date: | **02/09/2012** Docket Number: **140** |
| Docket Description: | **ORDER, FOR APPROPRIATE RELIEF** |
| Docket Type: | **Ruling** Filed By: **Court** Status: **Denied** |
| Ruling Judge: | **QUIRK, JOSEPH M** |
| Reference Docket(s): | **Motion: 119** |
| Docket Text: | **ORDER OF COURT (QUIRK, J.) THAT DEFENDANT'S MOTION TO DECLARE BRETT KIMBERLIN AS A PUBLIC FIGURE RATHER THAT PRIVATE CITIZEN (D.E. #119) IS DENIED, ENTERED. (COPIES MAILED)** |

16. Plaintiff is the Director of a Maryland based non-profit that works with
famous bands and artists to inspire youth to get involved with civic
participation. In that capacity, Plaintiff has an impeccable reputation. Yet
Defendants Hoge and Walker and the other Defendants spend thousands of

hours each year, with tens of thousands of blog posts, tweets, and frivolous court filings trying to destroy Plaintiff's livelihood with false allegations of crimes, such as swattings.

17. Defendants Hoge and Walker and the other Defendants have acted with extreme malice in their defamatory conduct. They have created a cottage industry with their false narratives against Plaintiff, lining their pockets with tens of thousands in donations, increasing their web ranking on Internet search engines, and inciting their readers to hate Plaintiff, to attack him, to stalk him, and to harass him, his family and anyone, including judges, prosecutors and reporters, who supports him or rejects their false narratives. In fact, Defendants Hoge and Walker were the creators of a campaign against the Howard County Prosecutors which resulted in weeks of threats and harassment to that office simply because they would not prosecute Plaintiff and others for the false crimes concocted by Hoge and some of the other Defendants. Exhibit G. Clearly, Defendants Hoge and Walker and the other Defendants acted with reckless disregard for the truth in falsely stating and publishing that Plaintiff was a swatter or was involved with swattings. *New York Times Co. v. Sullivan*, 376 US 254 (1964).

## Plaintiff Has Properly Alleged Violation of RICO and Conspiracy to Violate RICO

18. Defendants Hoge and Walker argue that Plaintiff has not alleged two predicate acts or the existence of a RICO Enterprise. These arguments are without merit.

8

19. The National Bloggers Club ("NBC"), an organization of which Defendants Hoge and Walker are members, has publicly stated that it is a 501(c)(3) non-profit which accepts tax-deductible donations. Exhibit H. This is false because it has neither applied for nor been granted 501(c)(3) status by the Internal Revenue Service. Exhibit I.

20. NBC has raised more than $10,000 in donations as a result of its fraudulent representations. That money has been sent to NBC by mail and by wire/Internet across state lines. As such, NBC engaged in wire fraud and mail fraud under 18 USC 1341 and 1343. NBC received scores if not hundreds of donations in this way, and each donation constitutes a separate predicate act under RICO. *Wang Laboratories v. Burt,* 612 F.Supp. 441 (D.Md.1984) (each act is a separate offense under RICO even if there is but one scheme involved).

21. On information and belief, NBC deposited the funds it received from its fraudulent fundraising scheme into a federally insured bank(s), and laundered them for the purposes of its members in violation of 18 USC 1957. Again, each financial transaction constitutes a predicate act under RICO.

22. The Defendants, including Defendants Hoge and Walker, knew that NBC was fraudulently raising funds when media reports in May 2012 identified NBC President and Defendant Ali Akbar as a convicted felon from the State of Texas. Those media reports disclosed that NBC had never applied for or received 501(c)(3) status from the IRS. Exhibit J. Some of those media

reports demanded that NBC and Defendant Akbar disclose the IRS approval, but that disclosure never occurred because there was no IRS approval. Id.

23. Once Defendant Akbar was exposed as a felon and huckster, the Defendants continued to raise funds through another Defendant, DB Capitol Strategies, which falsely published on its website that Plaintiff was involved with swatting conservative bloggers. See Response to DBCS' Motion to Dismiss. Dan Backer and DBCS had been connected to Defendant Akbar for several years, and had been paying Defendant Akbar's Vice & Victory Agency for political messaging, website development, and other things, dating back two years. See FEC Expenditures at Exhibit K. This fact alone implies guilty knowledge by the Defendants that raising funds through NBC while falsely portraying it as a 501(c)(3) was illegal and constituted fraud.

24. As demonstrated in great detail in Plaintiff's Response to Defendant DB Capitol Strategies' Motion to Dismiss, it, through its attorney Dan Backer, then filed a malicious and frivolous lawsuit in this Court against Plaintiff and two non-profits with which he is involved requesting that this Court prohibit Plaintiff from filing any pleadings in Montgomery County Courts without first getting permission from a federal administrative judge. *Walker v. Kimberlin*, JFM 12-1852 (Nov. 28, 2012). Judge Motz dismissed that case out of hand but not before Defendant DB Capitol Strategies (1) tried to get Plaintiff fired from his non-profit job in return for dismissing the non-profits from the suit, and, when that did not work, and (2) issued a document hold to a foundation that funded those non-profits falsely asserting that Plaintiff and the non–

profits were engaged in criminal activity. These actions by Defendant DB Capitol Strategies constituted attempted extortion under 18 USC 1951. In essence, Defendant DB Capitol on behalf of Defendant Walker said: "fire Plaintiff or we will destroy the funding base of the non-profits." And when Plaintiff was not fired, they followed through with their threat by sending a document hold letter laced with false allegations of criminal activity by Plaintiff and the non-profits to the non-profit's largest institutional funder. And that funder in turn ceased funding the non-profit. This not only demonstrates extortion, but it also meets the injury to property or business requirement of 18 USC 1964.

25. This conduct by Defendant DB Capitol Strategies, on behalf of Defendant Walker, also violates 18 USC 1513(e) because it was meant to retaliate against Plaintiff for providing information to state and federal law enforcement about the conduct of the Defendants. Indeed, both Defendants Walker and Frey complained bitterly that Plaintiff was "fucking" with them, Exhibit T, when all Plaintiff ever did was provide information to law enforcement officials and the Courts about their conduct. Section 1513(e) provides as follows:

**(e)** Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, *including interference with the lawful employment or livelihood of any person,* for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both. (emphasis added).

26. Defendants Hoge and Walker assert that the obstruction of justice claims cannot be predicate acts because there was no "official proceeding" pending involving Plaintiff. However, there were official proceedings as well as federal involvement. First, the swattings occurred across state lines, which therefore brought them under the jurisdiction of federal law enforcement. Second, the FBI was investigating the swattings and in fact came unannounced to Plaintiff's home to interview him about the swattings. Third, 87 Congress Members and at least one US Senator wrote letters to the Attorney General requesting a federal criminal investigation. Exhibit L. And fourth, Congress Members raised the issue of swatting on the floor of the House on at least one occasion. Therefore, the Defendants' actions are also prohibited by 18 USC 1512(b), which includes engaging "in misleading conduct toward another person, with intent to influence, delay, or prevent the testimony of any person in an official proceeding, which includes "a proceeding before Congress." They also violated section 1512(d) by harassing Plaintiff for years so he would not seek redress in federal courts or talk to federal law enforcement officials.

27. The Defendants falsely told the FBI, Senators and Congress Members that Plaintiff was involved with the swattings and then intimidated Plaintiff by engaging in conduct that resulted in him being repeatedly threatened not to appear in court or talk to law enforcement officials. They sued, harassed, stalked, threatened him with prison, with job loss and caused death threats against him for seeking redress. Defendant Walker assaulted him in the

Montgomery County Circuit Courthouse so severely that he had to go to the Emergency Room at Suburban Hospital, where he was treated and given medicine for contusion to the eye, pain and dizziness. And when Plaintiff contacted the police about the assault, Defendant Walker created the false narratives and conceived the National Bloggers Campaign against Plaintiff in retaliation for seeking redress and the administration of justice. All of this constitutes obstruction of justice and retaliation under the "Omnibus Clause" of 18 USC 1503, which states:

Whoever ... *corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice,* shall be fined not more than $5,000 or imprisoned not more than five years, or both." (emphasis added).

28. The Defendants also engaged in a conspiracy to threaten, assault and intimidate Plaintiff and therefore their conduct is prohibited by 18 USC 1512(k).

29. All of these obstruction of justice statutes constitute predicate acts under RICO.

### Plaintiff Properly Alleged the Existence of a RICO Enterprise

30. Plaintiff has alleged in the Complaint that the National Bloggers Club is a fraudulent Enterprise because it falsely portrays itself as a 501(c)(3) non-profit when it is not. It raises money based on that fraudulent representation and it uses false accusations of criminal activity by Plaintiff to fleece people out of money to run its fraudulent activities. It engages in wire and mail fraud, as well as money laundering.

31. Most of the Defendants are members of, paid by or otherwise involved with the National Bloggers Club in some fashion. Defendant Ali Akbar is the boss, Patrick Frey is the consigliore, DB Capitol Strategies is the legal muscle, and various other Defendants are the lynch mob, taking orders from Defendants Akbar and Frey to harass Plaintiff through various means such as physical assault, stalking, malicious legal filings, and false allegations online.

32. Most of the Defendants have been or are involved with a common scheme to harm Plaintiff with false narratives of crimes in order to raise funds, increase their ranking on Internet search engines, and incite their readers to act in some harmful way against Plaintiff and his employer.

33. The Defendants have conspired with one another in their common purpose through a course of conduct, which has lasted for more than two years, involving scores of predicate acts and intent to violate the laws of the United States and the rights of Plaintiff. The Complaint sets forth in great detail that the Defendants have both a formal and informal framework, with daily and sometimes hourly contact through various networks, mainly through the Internet, for carrying out its objectives. The Defendants function as a continuing unit to achieve the common purpose of harming Plaintiff in every and any way possible. This clearly satisfies the RICO Enterprise requirement. *Boyle v. United States*, 556 U.S. 938 (2009).

34. 18 U.S.C. § 1961(1) defines "racketeering activity" to include "any act or threat involving ... extortion ... [or] any act which is indictable under any of the following provisions of Title 18, United States Code: ... section 1341

14

(relating to mail fraud), section 1343 (relating to wire fraud)...." The
Complaint clearly alleges more than two acts in furtherance of the conspiracy
that may be in violation of the mail and wire fraud statutes. Additionally, the
Complaint alleges acts of extortion and money laundering which are "acts"
included in the definition of "racketeering activity." The Complaint alleges
other predicate acts including obstruction acts. These acts were done in
order to injure Plaintiff, his property, his livelihood and his employer.

35. In order for a plaintiff to have standing to bring a RICO claim, he must allege
an "injury in his business or property" by reason of a violation of RICO. 18
U.S.C. § 1964(c). In *Wang Laboratories v. Burt*, 612 F.Supp. 441 (1984),
this Court found that "Wang's allegations of injury to its business reputation
and customer goodwill in addition to its loss of revenues satisfied the injury
requirement of 18 U.S.C. § 1964(c)." *See Kimmel v. Peterson,* 565 F.Supp. 476,
495 (E.D.PA 1983) (Plaintiff's allegations of monetary losses as a result of
defendant's fraud sufficiently allege "injury" under 18 U.S.C.§1964(c)).
*Hellenic Lines, Ltd. v. O'Hearn,* 523 F.Supp. 244, 248 (S.D.N.Y. 1981) (the
corporation was injured for purposes of RICO if, as alleged, it sustained
monetary damages).

36. Defendants Hoge and Walker joined the Enterprise and committed predicate
acts in order to cause maximum harm to Plaintiff, his livelihood, his property,
and his employer. In fact, one their main goals in the Enterprise was to drive
Plaintiff out of business and intimidate him from exercising his First
Amendment right to redress. In *Northeast Women's Health Center v.*

15

*McMonagle*, 868 F.2d 1342 (3rd Cir. 1989), the Court addressed a similar fact

situation where activists used threats, intimidation, violence and extortion in

an attempt to drive a health clinic out of business.

> The "right" on which the Center's case was predicated was the right to continue to operate its business. The Center's extortion claim was that Defendants used force, threats of force, fear and violence in their efforts to force the Center out of business. The court told the jury that, "[s]pecifically, defendants are charged with attempting and conspiring to extort from the Center its property interest in continuing to provide abortion services[;] from its employees, their property interest in continuing their employment with the Center[;] and from patients, their property interest in entering into a contractual relationship with the Center."
>
> Rights involving the conduct of business are property rights. As we pointed out in *United States v. Local 560*, 780 F.2d 267, 281 (3d Cir. 1985), ... other circuits which have considered this question are unanimous in extending the Hobbs Act to protect intangible, as well as tangible, property. *(Citations omitted)*. It is, of course, no defense to extortion that Defendants did not succeed in their ultimate goal, although, as McMonagle's own letter admitted, Defendants' activities did contribute to the Center's loss of its lease at the Roosevelt Boulevard location. ... Attempted extortion and conspiracy to commit extortion are crimes under the Hobbs Act, *see* 18 U.S.C. § 1951(a), and "any act which is indictable under [the Hobbs Act]" is a predicate offense under RICO. 18 U.S.C. § 1961(1)(B).

37. Plaintiff had a "property interest" in continuing his employment as the

director of a non-profit that he had worked at for the previous eight years.

He had a "property interest" in being able to raise funds for that business to

pay his salary and the other salaries and expenses of the business. Yet,

Defendants Hoge and Walker conspired with the other Defendants, and

attempted and engaged in conduct intended to deprive Plaintiff of those

property interests. They have stated many times that they want to destroy

the non-profits by stopping their funding and urged others to demand the

same. See e.g., Exhibit M and N.

35. Clearly, Plaintiff has alleged injury to his business reputation, his property and his loss of revenues to satisfy the injury requirement of RICO.

## Plaintiff Properly Alleges Conspiracy to Violate the Ku Klux Klan Act of 1871 Under 42 USC 1985

36. To state a claim under 42 U.S.C. § 1985, a plaintiff must show that the Defendants conspired with a state actor who acted under color of law under 42 USC 1983 by violating a victim's Constitutional right. *West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. at 49, quoting *United States v. Classic*, 313 U.S. 299, 326 (1941). Generally, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Atkins*, 487 U.S. at 50. See also *Griffin v. Maryland*, 378 U.S. 130, 135 (1964) ("If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law"). Defendant Frey acted under color of state law when he relied on the authority of his State role as a prosecutor to threaten to and actively criminally investigate Plaintiff. A nexus exists between the wrongful act (the issuance of the threats and the attempts to investigate and imprison Plaintiff for swattings) and Defendant Frey's abuse of his authority as a prosecutor for Los Angeles County.

17

37. Defendant Frey is a Los Angeles District Attorney who has used his position under color of law to harass, retaliate against, intimidate, threaten and attempt to imprison Plaintiff, and incite others to do the same. He is the person all the Defendants rely on to give their false narratives credibility. He is the equivalent of the Alabama Sheriff by day and the Klan leader by night directing his hooded followers to destroy his perceived enemies, including Plaintiff. He regularly contacts the Defendants through email, phone, direct messages and other means of communication to facilitate his tortious destruction campaigns.

38. When Plaintiff complained to Defendant Frey's supervisors about his conduct, Defendant Frey retaliated against Plaintiff by concocting the false swatting narrative. He wrote an email to Defendant Walker telling him that he had contacted and met with the FBI in Texas and elsewhere, and provided false information about Plaintiff. Exhibit O. He contacted Barrett Brown, the head of the hacking group Anonymous and tried to interest him in Plaintiff. Exhibit P. There was an implicit quid pro quo in that request because Brown was facing legal problems of his own. Frey counseled Defendant Walker on how to file and prepare legal filings against Plaintiff to make him appear odious: "No, You have to start with ten seconds of labeling him a convicted bomber and convicted perjurer, and say this is established by major media stories and by published court decisions. Then say he obtained the injunction by repeatedly perjuring himself and that you can prove it. ... Ethos first. Then logos. Then pathos." Exhibit Q. Frey threatened to criminally

investigate Nadia Naffe after she gave Plaintiff evidence about Defendant O'Keefe targeting Plaintiff. Exhibit R.

39. In an email from Defendant Frey to Defendant Walker on December 22, 2011, Frey complimented Walker on a pleading and then said, "This kicks ass. They are going to go apeshit. When you blog it, *I'll send it to Glenn Reynolds and tell him that I think this is the guy who swatted me....*" (emphasis added). Exhibit S. Mr. Reynolds is a well-known conservative author, professor and blogger. This email clearly shows that Frey was using Defendant Walker to create a situation Frey could use to falsely accuse Plaintiff of swatting.

40. In another email exchange with Defendant Walker, Walker tells Frey, "Now he [Kimberlin] is going to learn not to fuck with me either." To which Frey replied: "Yeah, but he is 'fucking' with me. Just not in court. He sends bullshit interrogatories that he has to know will never get answered. But mostly he is trying to make me miserable, publishing my address, *hiring people to swat me,* Google bombing me, defaming me, mocking me and so on. .... I just want you to understand that Kimberlin is behind all the things that have happened to me, and that he is truly dangerous and a psychopath." (emphasis added). Exhibit T. Of course, Plaintiff never hired anyone to swat Defendant Frey, never posted his address, wasn't behind anything, and never even published online a single word or tweet about Frey.

41. In other emails to Walker and some of the other Defendants, he states that his office at the LA County District Attorney is "investigating" Plaintiff and

had asked Defendant Walker to keep quiet while the investigation proceeded. Exhibit U.

42. In another email dated December 19, 2011, he states: "Don't volunteer where you got this stuff. Just because of the investigation. But for that, I would be shouting all this from the hilltops, *but I still think we can put these guys in prison*, so I have to stay quiet." (emphasis added). Id.

43. In an email dated January 25, 2012, Defendant Frey told Defendant Walker while waiting for a jury in a case he was trying. "I'm having fun. This is what I do: prove things. I have a jury out so I have a little time tonight [to review the pleading Walker prepared regarding Plaintiff]. " Exhibit V.

44. In several emails on December 21, 2011, Defendant Frey discussed his planned meeting with the FBI the following day and setting up a sting operation with law enforcement to arrest Plaintiff. "I don't suggest lying unless it's done under supervision of law enforcement as part of a sting. ... But it only makes sense as part of a monitored sting." Exhibit W.

45. On January 5, 2012, Defendant Frey asked Defendant Walker to send him a letter about Plaintiff to share with his supervisors at the LA County Prosecutors Office and other law enforcement officials. Exhibit X.

46. The above emails clearly demonstrate that Defendant Frey directly communicated and conspired with several Defendants in this case, falsely accused Plaintiff of swattings, and wanted to have him arrested by the FBI or other law enforcement officers based on his accusations and a sting operation. He discussed criminal investigations with his supervisors at the

LA County District Attorney's Office and communicated with Defendant Walker while waiting for a jury. He falsely stated that Plaintiff hired people to swat him. These actions are not those of a private citizen but rather a person acting under color of law.

47. Not only did Defendant Frey act as a prosecutor in his private emails with co-defendants, but he also repeatedly imputed on his blog that Plaintiff swatted him. And this false accusation signaled his co-defendants to write articles and blog posts stating that Plaintiff swatted "Deputy District Attorney" Patrick Frey. See Complaint at 21-23.

48. On May 23, 2012, Plaintiff received a threat on his non-profit website contact page saying: "LEAVE HIM ALONE. DON'T GO THERE." Plaintiff interpreted this as a threat to leave Mr. Frey alone and not to contact his supervisors. When Plaintiff checked the contact logs on for that time and that website, he discovered that the email came from the "Los Angeles County Sheriff's Department," at IP Address 146.233.0.202 in Whittier, California. Exhibit Y. Only a person acting under color of law could convince an employee of the LA County Sheriff's Office to write a threat like that. The person who wrote it would have to feel that he would be "protected" by Defendant and Deputy District Attorney Frey against any blowback.

49. Defendant Frey routinely refers to himself on his blog as "Patterico," a "prosecutor in Los Angeles County...." http://patterico.com/aboutpatterico. Readers, commenters and reporters all believe that Frey's well-known online alter ego "Patterico" is a digital extension of John Patrick Frey, the Los

Angeles County Deputy District Attorney. In fact, Defendant Frey identifies himself as "Patterico" and describes "Patterico" as a prosecutor in Los Angeles County who prosecutes criminals. In his blog posts, Defendant Frey has made clear that "Patterico's Pontifications" is the product of a Deputy District Attorney. Frey has indicated that "Patterico's Pontifications" is linked to his position as a prosecutor. In a September 9, 2009 blog post entitled "Patterico Banned at the L.A. Times???," Frey wrote "[a]re they banning all Deputy District Attorneys? Or just the ones that make them look like fools on a daily basis?" Id. Frey's post shows that he perceives any purported ban on "Patterico" to be related to Frey's position as Deputy District Attorney. Id. Due to Frey's repeated references to his position as a prosecutor, other media outlets have viewed "Patterico's Pontifications" as inextricably linked to his position as a deputy district attorney. Moreover, Frey frequently invokes his position as a prosecutor to lend substance and weight to his opinions, including claiming that "we Deputy DA's are suspicious by nature;" disparaging a commenter's critique on his blog post by stating "[i]n your world, every prosecution is of an innocent person . . . your world has nothing to do with the world I know, and you are clearly 100% ignorant of the nature of the process you are discussing" asserting that "[b]eing a prosecutor is about presenting the truth" (Id.); and discussing inside information from the DA's Office. "Patterico's" invocation of his authority as a prosecutor is subtle and Frey has intentionally crafted "Patterico" to give the impression that "Patterico" speaks casual, offhand, and is almost always followed by a

22

"disclaimer." But when "Patterico" continuously and extensively identifies himself as a prosecutor, when he uses his public position to exert influence and lend credibility to his opinions, and when he threatens criminal prosecution, Frey has transformed "Patterico" into the virtual, online personification of the Deputy District Attorney John Patrick Frey. Thus, when "Patterico" speaks, he speaks with the authority and prestige of the Office of the District Attorney. By cloaking himself with the power of his government position, "Patterico" placed readers and Internet observers on notice that his expressions carried the weight and gravitas of a prosecutorial office of the state government. Like the off-duty police officer who flashes his badge and uses a department issued handgun, "Patterico" openly displays his credentials as a prosecutor. When "Patterico" issued his threat to investigate and imprison Plaintiff for swattings, the statement was uttered with the force of authority conferred on Frey by virtue of his position as a prosecutor on a matter in which Frey was uniquely endowed to act.

In *Donnelly v. DeChristoforo*, 416 U.S. 637,648 n.23 (1974), the Supreme Court cited to opinion of Chief Justice Tauro of the Supreme Judicial Court of Massachusetts:

"Unlike a newspaper, the prosecutor ostensibly speaks with the authority of his office. The prosecutor's' personal status and his role as a spokesman for the government tend(ed) to give to what he . . . (said) the ring of authenticity . . . tend(ing) to impart an implicit stamp of believability.'" *Hall v. United States*, 419 F.2d 582,583-584 (5th Cir.).

Defendant Frey's threats were not made by a private individual in his personal capacity who happened to also work as a prosecutor during normal

business hours. Rather, "Patterico," the blogger and Internet persona, had a long, active online history and presence as the alter ego of Deputy District Attorney John Patrick Frey who used that presence to violate Plaintiff's rights.

50. Defendant Frey exploited the authority given him by virtue of his state office when he threatened to investigate and imprison Plaintiff for possible criminal violations. "[A]ction under color of law is always identified by reference to the relationship between defendant's alleged misconduct and his state-created duties and powers, rather than the status of the parties." *Anthony*, 845 F. Supp. at 1401.See *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000) (a public officer is acting under color of state law if he or she "is acting, purporting, or pretending to act in the performance of his or her official duties"); *Johnson v. Knowles*, 113 F.3d1114, 1117 (9th Cir. 1997) (public official's alleged wrongful conduct not performed under color of state law if conduct is not related to performance of official duties); *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 480 (9th Cir.1991) ("For conduct to relate to state authority, it must bear some similarity to the nature of the powers and duties assigned to the defendants," quoting *Murphy v. Chicago Transit Authority*, 638 F. Supp. 464, 468 (N.D. Ill. 1986)). By threatening to conduct and conducting a criminal investigation into Plaintiff, Defendant Frey spoke and acted with the authority of his office on a subject that uniquely related to his exclusive, state-authorized duties: criminal investigation and prosecution of criminal complaints. His threats of criminal investigation and

imprisonment were made in context of extensive efforts to intimidate and silence Plaintiff.

51. Defendant Frey clearly intended to prosecute and imprison Plaintiff even though he was not successful. Therefore, the "color of law" analysis applies because the wrongful act was completed when "Patterico" began his investigations and issued his threats to imprison Plaintiff for swattings and whatever other concoction he had in his mind. For purpose of the § 1983 "color of law" analysis, Plaintiff need only show that the wrongful act alleged is related to the performance of the state actor's duties. *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) ("the challenged conduct must be related in some meaningful way either to the officer's governmental status or to the performance of his duties"); *Anthony*, 845 F. Supp. at1400 ("[w]hether a state employee acts under color of law turns on the relationship of the wrongful act to the performance of the defendant's state duties"). The acts to investigate and imprison Plaintiff for false criminal violations were intended to retaliate against and silence Plaintiff. That misconduct, which led to Plaintiff's constitutional deprivation, was directly related to Defendant Frey's state-conferred authority as a Deputy District Attorney to investigate and prosecute violations of law. Because Defendant Frey abused the authority of his public position when he tried to imprison Plaintiff for a false crime, he acted under "color of law" for purposes of 42 U.S.C. §1983.

It is settled law that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal

prosecutions, for speaking out or exercising the right to redress. Cf., *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To show a First Amendment violation, Plaintiff must plead facts that demonstrate that Frey's actions "deterred or chilled" his speech or right o redress and that such deterrence "was a substantial or motivating factor" in Defendant Frey's conduct. *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012). Plaintiff need not show that his speech or redress was "'actually inhibited or suppressed.'" Id., citing *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9thCir.1999). The relevant inquiry is "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Lacey*, 693F.3d at 916-17. Plaintiff must allege facts ultimately enabling him to "'prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.' Id. at 917, citing *Hartman*, 547 U.S. at 260.

52. In the instant case, Defendant Frey, because he is prosecutor, became a leader of the conspiracy to violate Plaintiff's constitutional rights. The co-defendants looked to him for leadership and followed his direction, advice, both private and public, to falsely accuse Plaintiff of swattings in order to imprison Plaintiff. What greater violation of constitutional rights could occur to a living person than being imprisoned based on a false criminal charge? Defendant Frey called and met with the FBI and told them to arrest Plaintiff for the swattings, and Frey had his supervisors at the LA County District Attorney's Office criminally investigate Plaintiff in the hope that they would

find something on which to imprison him.

53. Clearly Defendants Hoge, Walker and the other Defendants conspired with Frey to violate Plaintiff's civil rights by publicly and privately pushing the false narrative concocted by Frey that Plaintiff was involved with swattings. Frey along with other Defendants are members of the National Bloggers Club, which made the false swatting meme its first and only campaign. Defendants Hoge and Walker have made Plaintiff's imprisonment their life's work over the past two years with thousands of tweets and blog posts smearing Plaintiff, their letters to Congress Members stating that Plaintiff was the swatter and should be imprisoned, and their false criminal charges against Plaintiff. This call for imprisonment was taken from Defendant Frey who stated in his December 11, 2011 email that he would phone a well-known reporter and say that Plaintiff was the person who swatted him. He also stated that he would meet with the FBI and set up a sting operation.

54. Plaintiff has alleged a very powerful case that the Defendants, including Hoge and Walker, conspired with Defendant Frey under 42 USC 1985 to violate Plaintiff's civil rights.

### Plaintiff Hereby Withdraws Fraud and Negligent Misrepresentation

55. Plaintiff hereby withdraws this Count of the Complaint for all Defendants.

### Plaintiff Has Properly Alleged Intentional Infliction of Emotional Distress

36. Defendants Hoge and Walker callously argue that Plaintiff has not made any allegation to demonstrate infliction of emotional distress. This is without merit.

27

37. I The Restatement (Second) of Torts, 46 at 71, provides: {"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." In comment (i) to the Restatement it is expressly stated that this rule also covers a situation where the actor knows that distress is certain, or substantially certain, to result from his conduct. In order to satisfy the element of extreme and outrageous conduct, the conduct "must be `so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Batson v. Shiflett*, 325 Md. 684, 733 (Md. 1992).

38. Illustrative of the cases which hold that a cause of action will lie for intentional infliction of emotional distress, unaccompanied by physical injury, is *Womack v. Eldridge*, 215 Va. 338 (1974). There, the defendant was engaged in the business of investigating cases for attorneys. She deceitfully obtained the plaintiff's photograph for the purpose of permitting a criminal defense lawyer to show it to the victims in several child molesting cases in an effort to have them identify the plaintiff as the perpetrator of the offenses, even though he was in no way involved in the crimes. While the victims did not identify the plaintiff, he was nevertheless questioned by the police, called repeatedly as a witness and required to explain the circumstances under which the defendant had obtained his photograph. As a result, plaintiff suffered shock, mental depression, nervousness and great anxiety as to what

28

people would think of him and he feared that he would be accused of molesting the boys. The court, in concluding that a cause of action had been made out, said: "Most of the courts which have been presented with the question in recent years have held that there may be a recovery against one who by his extreme and outrageous conduct intentionally or recklessly causes another severe emotional distress...."

39. In the instant case, Plaintiff has alleged that the Defendants, including Hoge and Walker, engaged in outrageous and extreme conduct by falsely publishing the defamatory statements accusing him of crimes and nefarious conduct, demanding that he be investigated, arrested and imprisoned for swattings, publishing tens of thousands of tweets and blog posts smearing Plaintiff and accusing him of crimes, filing three frivolous and malicious lawsuits against him, sending a defamatory letter to an institutional funder falsely accusing him of crimes, attempting to extort his employer into firing him, rallying extremists with false narratives to attack him, filing for sanctions in the amount of tens of thousands of dollars and imprisonment, and asking a federal court to deny him access to the courts. This abhorrent conduct has kept Plaintiff under siege for years, and caused extremists to come to his home, take pictures of him and his daughter, and make threatening calls to him, his family and his neighbors. No person in a civilized society should be made to endure such conduct.

40. Moreover, Defendants conspired with the other Defendants to imprison Plaintiff based on their false narratives that Plaintiff was involved with

29

swattings. This constitutes extremely outrageous conduct that intentionally inflicted emotional distress on Plaintiff. There are not many things in this country worse than being falsely accused of crimes and then having those false accusations incite a lynch mob to attack relentlessly and daily with tens of thousands of tweets and posts and articles, and stalkers over a period of years. This is atrocious and has absolutely no place in a civilized society.

41. Not a day goes by where Plaintiff is not attacked, online or in person, by one or more of the Defendants. Defendant Walker came to a court hearing in Montgomery County Circuit Court and, after the proceeding to which he was not a party, followed Plaintiff out of the courtroom and assaulted him so severely he ended up in the Emergency Room at Suburban Hospital. This resulted in days off of work and a fear that Defendants will again assault Plaintiff or his family. Defendants Walker, Hoge, McCain and Ali have stalked Plaintiff in public places. Defendants Walker, Hoge and DB Capitol Strategies have filed numerous false criminal and civil actions against Plaintiff over a two-year period, all which have been dismissed or denied. Defendants Hoge, Walker and some of the other Defendants publish daily taunts against Plaintiff and mock this suit with daily posts on their blogs, and continually assert that they are going to get Plaintiff imprisoned. They have attacked Plaintiff's employer and those who donate to that non-profit. The Defendants have tried to get Plaintiff fired. They have attacked Plaintiff's wife and teenage daughter and even reporters who have written favorably about Plaintiff. They have even attacked prosecutors who have refused their frivolous charges, Defendant

Walker has even imputed in a recent blog post that Plaintiff's daughter is fair game for destruction because of "corruption of blood." Exhibit Z.

42. All of this has been intended to inflict maximum emotional distress on Plaintiff. Plaintiff has had to install robust security devices and video cameras at his home and office, and take precautions for his family that no young child should have to be subjected to, all because the Defendants have created a lynch mob based on false narratives to terrorize Plaintiff and his family on a continuous multi-year basis. This clearly demonstrates that the Defendants, including Hoge and Walker, intentionally inflicted emotional distress.

Wherefore, for all the above reasons, Plaintiff has demonstrated that he entitled to relief and therefore that this Court should deny Defendants Hoge and Walker's Motions to Dismiss.

Respectfully submitted,

Brett Kimberlin
8100 Beech Tree Rd
Bethesda, MD 20817

## Certificate of Service

I certify that I have served a copy of this motion on Defendants Stranahan, Patrick Frey, Mandy Nagy, by email, and on Defendants DB Capitol Strategies, Hoge, The Franklin Center, and Walker by First Class mail this 17th day of January, 2014.

Brett Kimberlin