UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

FEB 14  P 3: 49

BRETT KIMBERLIN,
        Plaintiff,

v.                                          No. PWG 13 3059

NATIONAL BLOGGERS CLUB, et al
        Defendants.

### PLAINTIFF'S RESPONSE TO DEFENDANTS MALKIN AND TWITCHY'S MOTION TO DISMISS

Now comes Plaintiff and responds in opposition to Defendants Malkin and

Twitchy's Motions to Dismiss. The Court must deny a Motion to Dismiss under Rule

12(b)(6) of the Federal Rules of Civil Procedure unless it "appears beyond doubt

that Plaintiff can prove no set of facts in support of his claim which would entitle

him to relief." *Conley v. Gibson,* 355 U.S. 41, (1957). "The question is whether in the

light most favorable to the Plaintiff, and with every doubt resolved in his behalf, the

Complaint states any valid claim for relief." 5A Wright & Miller, Federal Practice and

Procedure: Civil 2d § 1357, at 336. The Court, when deciding a motion to dismiss,

must consider well-pled allegations in a complaint as true and must construe those

allegations in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236

(1974); *Jenkins v. McKeithen,* 395 U.S. 411, 421-22 (1969). The Court must further

disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412

F.2d 712, 715 (4th Cir.1969); *Lujan v. National Wildlife Federation*, 497 U.S. 871

(1990) ("a complaint should not be dismissed for insufficiency *unless it appears to a*

*certainty that plaintiff is entitled to no relief under any state of facts which could be*

*proved in support of the claim.*") (emphasis added).

1

## Who is Michelle Malkin and What is Twitchy

Defendant Michelle Malkin is a firebrand conservative commentator, blogger, and journalist who regularly appears on FOX News and other Tea Party affiliated websites. Her popularity among the far right has garnered her more than 660,000 Twitter followers and led to her launching Twitchy two years ago. Twitchy is a Twitter platform that allows users to spread their tweets to a much greater audience. Exhibit A.

Twitchy is so effective for spreading the conservative message that it was just sold to Salem Communications, the largest Evangelical media conglomerate in the country. Exhibit B.

Defendant Malkin is a key figure in the RICO charge alleged by Plaintiff in this case due to her close involvement with Defendant National Bloggers Club and its President, Ali Akbar. As noted in Plaintiff's other Responses, The National Bloggers Club is a criminal enterprise that falsely and publicly portrays itself as a 501(c)(3) non-profit accepting tax deductible donations. In fact, however, it never even applied for 501(c)(3) status but solicited and accepted tens if not hundreds of thousands in donations based on that false and fraudulent representation.

Defendant Malkin is not merely close friends with Defendant Akbar, but admits that she is in fact on the board of his fraudulent National Bloggers Club. Exhibit C. She used her reputation and contacts to provide gravitas and credibility to that fraudulent enterprise.

Specifically, Defendant Malkin and her Twitchy platform propelled to the national media and more than a half million followers the defamatory narrative that Plaintiff

2

was a swatter who targeted conservative bloggers.  She published articles stating falsely that Defendant Walker was fired for blogging about Plaintiff. Exhibit D.

This led to calls by Senators and Congress Members to have the Attorney General investigate Plaintiff for swatting. Id.  It led to death threats and other threats to Plaintiff and his family.  It led to loss of funding opportunities to his employer.

In a *Politico* article dated February 8, 2014, entitled "Michelle Malkin Girds for 2014 GOP Civil War," the reporter states: "Twitter is Malkin's weapon of choice. Battles with her almost always devolve into wars…Taunting quips from foes bring out the full force of her Twitter arsenal, with snappy replies, catchy hashtags and the mobilization of a legion of energized followers." Exhibit A. Defendant Malkin states in the article: "I see the practically unlimited power that social media has to help push the issues and cause and people I care about.  I know what I am good at." The article goes on to state: "She has turned her online savvy into the thing most traditional news organizations have been struggling with: making money."

## Making Money And Destroying Plaintiff

Defendant Malkin befriended Defendant and convicted felon and fraudster Ali Akbar, and joined his criminal National Bloggers Club Enterprise to destroy the reputation and property of Plaintiff.  She used Defendant Twitchy to magnify the harm of the publications and blog posts she wrote and linked to.  Defendant Malkin knew that Defendant National Bloggers Club was not a 501(c)(3) non-profit when she asked her "legion" of followers to donate money to it in order to protect conservative bloggers from Plaintiff's criminal swatting.  Yet she was perfectly content to defraud those donors nonetheless.

Defendant Akbar as President of National Bloggers Club has not only defrauded many people out of tens of thousands of dollars based on the false narratives about Plaintiff, but he has also never filed any tax returns or other normal business filings since launching The National Bloggers Club in January 2012. He has never provided any transparency to members of the Club or any accounting to the public of how much money he raised and how it was spent. These practices are normal for non-profits. Defendant Akbar has been avoiding service in this case and another defamation case filed by Plaintiff in Montgomery County Circuit Court because he does not want to provide information about the fraudulent National Bloggers Club.

Incredibly, Defendant Malikin and every single one of the Defendants who have filed responses to the Complaint have ignored the elephant in the room – that The National Bloggers Club is the heart of the RICO Enterprise because it engaged in a pattern of racketeering in order to harm Plaintiff. It did this by committing mail fraud, wire fraud and money laundering on a massive scale. The Defendants have acted as though this essential fact does not exist because it undermines all their arguments against the RICO case.

The Defendants have not produced any evidence that The National Bloggers Club is a 501(c)(3), because they cannot. They have not produced any evidence that the Defendants did not defraud people when they asked them to make tax-deductible donations to the National Bloggers Club. They have not produced any evidence that they did not share in proceeds and glory of the massive fraud perpetrated by Ali Akbar and The National Bloggers Club. They have not even attempted to justify their behavior. Instead, all of the Defendants argue technicalities in the hope that

4

the Court will dismiss this case without ever asking why supposedly legitimate people, companies and organizations joined and conspired with a convicted felon named Ali Akbar who was on probation for fraud and theft to harm Plaintiff. These Defendants became part and parcel of and gave credibility to a fraudulent Enterprise called The National Bloggers Club and did so in order to harm Plaintiff and his property.

### Specific Responses to Defendants Malkin and Twitchy

1. Defendants Malkin and Twitchy state that they have only made a few defamatory references about Plaintiff and swattings (M2D 2) as if that justifies the tort. Multiply those two by 660,000 Twitter followers and millions of readers, and that shows the devastating toll of these defamatory mentions. Tweets can be more damaging than blog posts or articles as rock star Courtney Love found out when she was sued for defamation over a single tweet, which resulted in a $430,000 settlement judgment. Exhibit E.

2. Defendant Twitchy falsely states that Twitchy is not a Defendant in this case because it is not listed in the caption of the case. However, Twitchy is a named Defendant in multiple paragraphs of the suit so it has notice and an opportunity to respond. The failure to include Twitchy in the caption was an oversight by Plaintiff, and Plaintiff has filed a motion with the Court to correct that. If the Court denies the Motion to Correct Caption, Plaintiff will ask for leave to file a Second Amended Complaint at which time he will also correct other deficiencies that the various Defendants have raised in their responses.

3. In Foman v. Davis, 371 US 178 (1962), the Court put it this way:

"It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." _Conley_ v. _Gibson_, 355 U. S. 41, 48. The Rules themselves provide that they are to be construed "to secure the just, speedy, and inexpensive determination of every action." Rule 1. ...
Rule 15 (a) declares that leave to amend  "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."

Clearly, the remedy for oversights and mistakes by Plaintiff, a pro se litigant, is

not dismissal of a Complaint but rather granting leave to amend the complaint

to correct the deficiencies. _Laber v. Harvey_, 438 F. 3d 404 (4th Cir. 2006).

Plaintiff hereby requests leave to amend the Complaint for all Defendants.

### **Plaintiff Does Not Wear A Scarlett Letter**

4.  Defendants Malkin and Twitchy argue in their Motion that their conduct is

    justified because Plaintiff was convicted of crimes 35 plus years ago.  Reading

    their brief is absolutely shocking because it makes the same arguments made

    in bygone eras where blacks were hanged because of their color, where

    women were burned as witches because they were different, where gays were

    tortured and tied to fence posts to die because of their sexual orientation, and

    where Jews and Gypsies were exterminated in the name of ethnic purity.  In

    all these cases, the actors justified their behavior on the grounds that the

    victims were not worthy of life because they were lesser humans.

5.  In the United States, there are more than seven million people in prison, on

    probation or on parole, and there are tens of millions more who, like Plaintiff,

have served their sentences and are no longer under supervision. In the United States, there is a presumption that once a person serves his sentence and moves on to a legitimate lifestyle that the person should be able to so unmolested by other members of society.

6. In the case of Plaintiff, he served his sentence, was released from parole, and got a job as director of a non-profit dedicated to using music and artists to inspire young people to engage in civic participation. In that capacity and in an individual capacity, Plaintiff does not blog and does not tweet. Yet, the Defendants have, based on numerous false narratives, joined together in a criminal Enterprise to create an online vigilante mob to destroy Plaintiff, his employer and his property right to a livelihood free from molestation and harassment. They did this by creating a fraudulent non-profit that raised tens of thousands of dollars through wire and mail fraud to attack Plaintiff. That criminal Enterprise, The National Bloggers Club, is the quintessential RICO Enterprise because it engaged in wholesale fraud for the purpose of harming Plaintiff and his property while enriching Defendants, either monetarily or through increased Search Optimization Results from Google and other search engines.

7. The Defendants, under the leadership of The National Bloggers Club, on whose Board Defendant Malkin sits, have generated literally tens of thousands of blog posts, tweets and other articles falsely accusing Plaintiff of swattings and other crimes. And they did this by using the same tactic that counsel for Defendant Malkin/Twitchy does in his Motion to Dismiss – state that Plaintiff

7

was convicted of perjury in 1972 and other crimes in 1980, and then impute or state that because of those convictions, he committed swattings in 2012/2013. This is a false equivalency and it is an abhorrent and shameful position for any attorney in the United States to take.

8. Plaintiff does not wear a Scarlett Letter on his forehead. He is a father, husband, and productive member of society and the community. His reputation as the Director of Justice Through Music is impeccable. The Defendants have no right under law or otherwise to pillory, harass, stalk, defame or otherwise ostracize Plaintiff for any reason, including that he was convicted of crimes 35 plus years ago.

9. There are many examples of how profoundly sinister and criminal the Defendants' conduct has been. But here is one that will drive this home: For many years, since the 2004 Orange Revolution in Ukraine (Plaintiff's wife is Ukrainian), Justice Through Music has given voice to activists and musicians worldwide who have opposed oppressive governments. During the Green Revolution in Iran, Justice Through Music was the leading organization in the United States supporting the Iranian Youth Movement. This important work was noticed by the State Department, which for years thereafter brought scores of young activists from around the world to the United States as part of its *International Visitor Leadership Program* to learn how to use social media and the arts to effectuate change in their respective countries. And every year, those activists from Iran, Turkey, Kazakhstan, Egypt, Yemen, Libya, Saudi Arabia, Tunisia, Bahrain, Jordan and elsewhere came to the offices of Justice

Through Music to meet with Plaintiff and other staffers to learn, experience and ask questions. Exhibit F. Some of those activists went back to their countries and kept in touch and provided videos of their ongoing struggles so Justice Through Music could post them for the world to see.  Some of those videos could not be posted from their home countries because of reprisals from their governments.

10. When the Defendants decided to destroy Plaintiff and Justice Through Music, they contacted the State Department and posted articles complaining that the Department was sending activists to Justice Through Music for training and educational purposes.  They told the Department that Plaintiff was a criminal, a swatter and a terrorist. See e.g., Exhibit G, the May 25, 2012 article by Defendant The Blaze entitled, "Why is the State Department Partnering with Speedway Bomber Brett Kimberlin." And as a result, the State Department no longer brings these activists to Justice Through Music, and the activists no longer know that they have an advocate for their cause of freedom and democracy, and they do not know that they can rely on Justice Through Music to post their videos when their own governments target them.

## The RICO Case

11. Defendants Malkin/Twitchy make a host of arguments against Plaintiff's RICO claim.  Although Plaintiff believes that his Complaint states a strong RICO claim, as noted above, he seeks leave to amend the Complaint to correct any legitimate deficiencies raised by any of the Defendants.

9

12. Defendants are correct that "RICO is concerned about eradicating organized,
long-term, habitual criminal activity….." And that is precisely why Plaintiff
filed this RICO Complaint—The National Bloggers Club is an organized, long-
term, habitual criminal enterprise that has been engaged in massive mail
fraud, wire fraud and money laundering for more than two years. It is not an
"ordinary commercial" operation but rather an enterprise created and/or
joined by the various Defendants in order to defraud, extort and harm people,
including Plaintiff. This case does not involve "ordinary business contract or
fraud disputes" but rather massive, extended, widespread and intentional
ongoing fraud directed by a felon convicted of fraud, and joined by the other
Defendants, and given credibility and gravitas by Defendant Malkin who
joined its Board and signed off on the fraud. The pattern of racketeering was
and is dangerous because the Enterprise creates false narratives and then tells
unsuspecting victims to donate to a fake 501(c)(3) in order to protect them
from the supposed harm portrayed in the false narrative.

13. Defendants assert that Plaintiff's allegations are "fantastic," (M2D at 8) but
then argue that they amount to something routine. To the contrary, one
would be hard pressed to find another instance in recent history where an
online mob engaged in a multi-year defamation campaign which falsely
accused a person of a horrible crime combined with massive fraud from
thousands of victims. That is what happened in this case.

14. Defendants argue that Plaintiff has not alleged harm to his business or
property. (M2D 9). To the contrary, Plaintiff has alleged that his business and

property interests were harmed.  Indeed, he has alleged that Defendants attempted to get him fired from his employment, and tried to destroy his employer and its funding.  See Plaintiff's Response to DB Capitol Strategies for a full briefing on this harm to his employer and his livelihood.  It is well established a RICO claim is properly pleaded where the Defendants conspired to deprive a person of his livelihood and his liberty, as Plaintiff has alleged in the instant case.  The Ninth Circuit, in an *en banc* decision, analyzed the RICO statute and found that where a Plaintiff alleges "any property interest valid under state law," he meets the business and property requirement of RICO. *Diaz v. Gates*, 420 F3d 897 (en banc) (9th Cir. 2005).

15. In the instant case, Plaintiff has alleged what amounts to interference with contract and interference with business relations, which are both torts under Maryland state law.  The tort of interference with contract is well established under Maryland law and it includes "maliciously or wrongfully infring[ing] upon an economic relationship." *Macklin v. Logan*, 639 A. 2d 112 (1994). And there are two general types of actions for interference with business relationships including "inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *K&K Management Inc. v Lee*, 557 A.2d 965 (Md. 1989).

16. Plaintiff has alleged in the Complaint that the Defendants conspired to and attempted to interfere with his economic relationship with his employer,

Justice Through Music, through the predicate acts of fraud and extortion.  This is sufficient to meet the injury to property requirement of RICO.

17. But a business does not have to be a formal business.  Plaintiff's business is not simply as an employee of Justice Through Music, but he is also in the music business as a composer, producer, and activist.  Plaintiff has composed songs and produced videos for several award winning documentaries, including "The Devil Came on Horseback," "Countdown to Zero," and "Gasland."  The conduct of the Defendants has harmed this "business" too by destroying his reputation so that he cannot work in this arena any longer.

18. In the event the Complaint is not clear enough, Plaintiff is prepared to file an Amended Complaint specifically adding the torts of interference with contract and interference with business relationships.

19. Defendants argue that Plaintiff has failed to show that Defendant Malkin is connected to the operation of the RICO Enterprise.  (M2D 10). This argument is without merit.  The Complaint alleges a relationship and a conspiracy between Defendant Malkin and Defendant National Bloggers Club.  That relationship is not merely informal or friendly, but rather as stated above and established by Exhibits C and D, she is formally on the Board of The National Bloggers Club.  In fact, on February 25, 2013, Defendant Akbar sent a notice to his Google Group stating both that The National Bloggers Club is a 501(c)(3) and that Michelle Malkin is on its Board of Directors. See Exhibit H ("Board members include myself, Dennis Pedrie, Andrew Langer, Bruce Carroll, Michelle Malkin, Glenn Reynolds, John Hawkins, and Matt Margolis. We are a

Texas filed non-profit and have our c3 status pending.") The National Bloggers Club has spent the past two years engaged in mail fraud, wire fraud and money laundering by defrauding thousands of victims with is false narratives and false and public portrayals that it is a 501(c)(3) non profit. This conduct of the Enterprise affected interstate commerce because the fraud took place nationwide, with victims in almost every state, and wire and mail sent across state lines.

20. Clearly, the Complaint alleges that Defendant Malkin knew of the fraud, false narratives, and money laundering and agreed with other Defendants, including Defendant Akbar to participate in the affairs of the conspiracy. In this case, there were not merely two predicate acts but rather thousands since each money transaction with or by The National Bloggers Club constituted a separate act of mail fraud, wire fraud or money laundering.

21. Again, if the Court or Defendants want more specificity, then Plaintiff can file an Amended Complaint or RICO Statement, but dismissal of the Complaint is not warranted.

22. Plaintiff has alleged that Defendants Malkin/Twitchy caused him harm by joining the Enterprise, and using her credibility, legion of followers and her gravitas to commit massive fraud to thousands of victims and to harm Plaintiff's property interests. Defendant Malkin's participation was a major factor in convincing Dan Backer and Defendant DB Capitol Strategies to file two malicious lawsuits against Plaintiff, including the federal case before

Judge Motz that Mr. Backer attempted to use to extort Plaintiff's termination from his employment.

23. Incredibly, on March 7, 2013, Defendant Akbar tweeted the following: "#Brett Kimberlin picked a fight with Andrew Breitbart that we're going to finish. He'll go to jail this time #BlogBash." Exhibit I. This demonstrates that The National Bloggers Club was being used to deprive Plaintiff of his liberty based on false criminal charges.

24. Defendants argue that Plaintiff has failed to properly plead predicate acts. (M2D 13). This is wholly without merit. Plaintiff has alleged and provided exhibits to various Motions to Dismiss showing that Defendant National Bloggers Club repeatedly and publicly falsely stated that it was a 501(c)(3) non-profit that could accept tax deductible donations. Not a single Defendant has even addressed this issue let alone provided any refutation of this allegation. Why? Because Defendant National Bloggers Club never even applied for 501(c)(3) status with the IRS, and never filed any IRS 990 return. If someone or some entity makes false claims that induce people to part with their money, and does that in interstate commerce, then that constitutes fraud, either by wire or mail depending on how the money was transferred.

25. Defendant Malkin was an integral part of the fraud because she gave a relatively unknown person, Ali Akbar, media exposure, credibility and gravitas as President of The National Bloggers Club to commit his wholesale fraud without question upon thousands of victims of that fraud. In other words, without the backing of Defendant Malkin, Defendant Akbar would not

have been known to Defendant Malkin's 660,000 Twitter followers or her millions of readers.  Moreover, once Defendant Akbar was exposed as a convicted felon and fraudster on probation in the State of Texas, Defendant Malkin hid that fact from her readers and helped him cover up that fact.  To this day, she has continued to back him and has never once said a word publicly about his status a felon and fraudster.  This kind of behavior demonstrates guilty knowledge and involvement.  See Defendant Akbar's Criminal Records from the Tarrant County Texas Court. Exhibit J.

26. Defendant Malkin asserts that Plaintiff failed to allege a pattern of racketeering.  (M2D 14). Once again, this is without merit since the Complaint properly pleads that the Defendants engaged in a continuing pattern and relationship which had the same or similar purposes – to engage in massive fraud, money laundering, obstruction of justice and extortion in order to harm the business and property interests of Plaintiff.  The predicate acts alleged by Plaintiff were not limited to a few weeks or months but rather continue to the present day.  The National Bloggers Club is still raising funds based on false narratives about Plaintiff.  Its public pronouncements of 501(c)(3) status are still available on the Internet.  The Defendants and their lawyers are still insisting that the Defendants were justified in falsely accusing Plaintiff of involvement with swattings.

27. The criminal activity that has occurred in this case, with fraud on a wholesale level, money laundering, extortion, assault, obstruction of justice, is truly mind boggling, especially because it involves so many people and organizations that

15

portray themselves as law abiding.  Why would these supposed upstanding people and organizations partner with convicted felon and fraudster Ali Akbar and falsely tell their conservative friends to donate to a fake and fraudulent non-profit in order to attack and harm Plaintiff?  Why did Defendant Malkin cover up for Defendant Akbar when he was exposed as a convicted felon and fraudster?  Clearly, the answers to these questions are, because the Defendants were part of the fraud, they were getting enriched in some fashion, and they were afraid to admit that they were part of the fraud.  This massive criminal Enterprise constitutes a "threat to social well-being."

28. Defendants argue that Plaintiff has failed to allege the existence of an enterprise.  (M2D 17).  This is without merit because Plaintiff has alleged that The National Bloggers Club is a formal organization that functions as a continuing unit and that the Defendants, including Defendant Malkin, had and have a shared purpose and identifiable structure.   The Defendants over a long period of time pursued the Enterprise's purpose of defrauding victims in order to enrich themselves and harm the business and property of Plaintiff.  The Defendants all had relationships, friendships, business dealings, and they all shared in the largess from the fraud they perpetrated, either by financial enrichment or increased SEO n Google and other sites.  In short, they functioned as a unit and they got together to form as a whole, even with a name, and organizational structure, called The National Bloggers Club.

29. Once again, if there is any deficiency in this regard, the remedy is to allow Plaintiff to file an Amended Complaint rather than dismiss the case.

### The 1985 Count Against Defendant Malkin

30. The conspiracy to violate civil rights is just that, conspiracy.  The Complaint clearly alleges that Defendant Malkin conspired with Defendant Frey and the other Defendants to deprive Plaintiff of his civil rights to liberty, free speech and due process.  Defendant Malkin joined that conspiracy and promoted the false swatting narrative even using Defendant Frey's name in various posts and tweets as having been swatted by Plaintiff.

31. In fact, as noted in Plaintiff's Response to Defendants Walker and Hoge, at 19, Defendant Frey told Defendant Walker in an email dated December 22, 2011, that he would call journalist "Glenn Reynolds" to tell him that Plaintiff was "the guy who swatted me."  And Glenn Reynolds is on the Board of National Bloggers Club, Exhibit H, and is also the person who posted a photo of himself with a shotgun addressed to "Dear Brett Kimberlin." Exhibit K. This demonstrates conspiracy, intimidation, threats, obstruction of justice, and vigilante action.

32. Defendant Malkin gets it wrong when asserting that Plaintiff merely alleges that the Defendants gave false information to the police to cause a false arrest. Instead, what Plaintiff alleges is that Defendant Frey, acting under color of law, conspired with many of the other Defendants, including Defendant Malkin, to deprive Plaintiff of his liberty, his right to redress and speech, and his right to due process.  They did this through various means, including threats, intimidation, extortion, false narratives, and false statements to law enforcement and Members of Congress.

17

33. Like the Mississippi sheriff in 1960 who wore a gun by day and a white robe by night, Defendant Frey used his position as an LA County Deputy District Attorney to violate Plaintiff's civil rights and conspired with other Defendants, including Defendant Malkin to attack Plaintiff, to wear him down, to discredit him, to ostracize him, to retaliate against him, and to create a favorable environment so he could be arrested and not allowed to file for redress.  This meets the standards under 42 USC 1985.

### The Defamation and False Light Claims

34. Defendants state that Plaintiff has not alleged defamation or false light.  This is without merit.  Defendant Malkin, as reproduced by Defendant Twitchy, repeatedly stated and imputed that Plaintiff was involved with swatting conservative bloggers, which is a horrible crime.  False statements of criminal activity constitute per se defamation in Maryland. *Shapiro v. Massengill*, 105 Md. App. 743 (Md 1995) ("In the case of words or conduct actionable per se their injurious character is a self-evident fact of common knowledge of which the court takes judicial and need not be pleaded or proved.")

35. In *Hearst Corp. v. Hughes,* 297 Md. 112, 118, 466 A.2d 486 (1983), the court stated: "[I]t is defamatory 'to utter any slander or false tale of another ... which may impair or hurt his trade or livelihood.' 3 W. Blackstone,*Commentaries on the Laws of England* 123 (special ed. 1983). Thus, a statement 'that adversely affects [an employee's] fitness for the proper conduct of his business ... [is] actionable per se at common law."

36. Instructive to this case is that of *Mann v. National Review,* pending in the DC

Superior Court. In that case, a reporter for the National Review stated in

several articles that Michael Mann, a respected scientist, had "molested" data

and compared him to real life child molester Jerry Sandusky. The defendants

argued that this did not constitute per se defamation but the court disagreed:

"Accusing a scientist of conducting his research fraudulently, manipulating his
data to achieve a predetermined or political outcome, or purposefully
distorting the scientific truth are factual allegations. They go to the heart of
scientific integrity. They can be proven true or false. If false, they are
defamatory. If made with actual malice, they are actionable."
(Order attached as Exhibit K).

37. In the instant case, Defendants repeated published statements that Plaintiff

was involved with swattings impaired his trade and his livelihood. Not a single

one of the Defendants have ever disavowed these statements even after the

Complaint was filed in this case.

38. Plaintiff's criminal record from 35 plus years ago does not constitute a Scarlett

Letter on his forehead, and it is shameful for a respected attorney to make the

argument that Plaintiff is libel proof because of those ancient crimes. Plaintiff

adopts his arguments on this matter from his responses to the other

Defendants' Motions to Dismiss. Plaintiff is not a pubic figure but even if he

was, he has shown malice on the part of the Defendants. Plaintiff has properly

pleaded malice and will prove it at trial.

39. Defendant Malkin is not protected by any fair comment privilege. There is no

pubic interest in a citizen falsely accusing another citizen of a horrible crime

and then enriching himself or herself based on those defamatory statements.

40. Plaintiff adopts the arguments he made regarding false light in his responses to the other Defendants' Motions to Dismiss.

41. Plaintiff adopts the arguments he made regarding intentional infliction of emotional distress in his responses to the other Defendants' Motions to Dismiss.

42. Defendant Malkin argues that she has a First Amendment right to defame Plaintiff because he has been convicted of crimes during his youth. (M2D 29-35). Again, this is one of the most despicable and shameful arguments an attorney could ever make in the United States of America. It really deserves no response other than shame. According to counsel for Defendant Malkin, the felon class, consisting of tens of millions of Americans who have served their sentences, has no right under the law to sue for defamation or false light. According to him, the rest of society has the right under the First Amendment to defame, smear, trash, harass, stalk, bully and torment those felons with impunity simply because they are felons. Fortunately, our system of laws protects everyone equally and Maryland defamation laws do not discriminate against or make exceptions for certain classes of people. Shame on counsel for making such a profoundly elitist, immoral and indefensible argument. As former Justice Potter Stewart once wrote, the essence of a defamation claim is the right to protect one's good name. According to Stewart, this tort "reflects no more than our basic concept of the essential dignity and worth of every human being — a concept at the root of any decent system of ordered liberty." *Rosenblatt v. Baer*, 383 U.S. 75 (1966)(concurring opinion).

43. Plaintiff is not trying to silence anyone.  Instead, he is suing the Defendants for engaging in a massive fraud, using false narratives about him, to enrich themselves and harm Plaintiff.  Plaintiff is suing to seek redress for the Defendants' multi year defamation campaign.  It is well established that the First Amendment does not protect defamation, *Gertz v. Robert Welch, Inc.*, 418 US 323 (1974), and all the chest pounding by counsel will not change that.

44. Defendant Malkin was not engaged in "commentary."  Instead, she was a leader of the fraudulent National Bloggers Club and used her posts and tweets to her 660,000 followers to harm Plaintiff and incite a vigilante mob against him.  Plaintiff had nothing to do with swattings yet Defendant Malkin falsely and publicly accused him of that very horrible criminal act.

45. Defendant makes the sweeping argument that the First Amendment trumps all statutory remedies under federal and Maryland law simply because Defendant Malkin is a blogger journalist.  So, according to counsel, Defendant Malkin can engage in massive fraud, money laundering, defamation, and other tortious conduct with impunity simply by wrapping herself in the First Amendment.  Such an argument is so meritless and has been so thoroughly rejected, see *Gertz*, that it deserves no response.  The First Amendment does not protect such conduct, period.

**This Court Has Personal Jurisdiction Over Defendant Malkin**

46. Personal jurisdiction is appropriate in this case under Maryland's long-arm statute. *Carefirst of Maryland v. Carefirst Pregnancy Ctrs*, 334 F.3d 390 (4th Cir. 2003).  Specifically, out-of-state Defendant Malkin has acted in a manner that

21

injured Plaintiff by directing her tortious conduct toward Plaintiff and

Maryland with the knowledge and intent to cause Plaintiff maximum harm.

47. In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court found personal

jurisdiction over Florida reporters who had written defamatory articles about

a California actress, because "California [was] the focal point both of the story

and of the harm suffered." Id. At 789-90.  The writers' "actions were expressly

aimed at California ... and they knew that the brunt of injury would be felt by

[the actress] in the State in which she lies and works...."

48. *In ALS Scan v. Digital Service Consultants,* 293 F.3d 707 (4th Cir. 2002), the

court held that, as a general matter, "[a] State may, consistent with due

process, exercise judicial power over a person outside of the State when that

person (1) directs electronic activity into the State, (2) with the manifested

intent of engaging in business or other interactions within the State, and (3)

that activity creates, in a person within the State, a potential cause of action

cognizable in the State's courts." *Id.* at 714.

49. Moreover, Plaintiff has charged the defendants with civil and RICO conspiracy,

alleging that the Defendant co-conspirators are subject to civil tort liability

based on acts taken in furtherance of the conspiracy by members of the

conspiracy. In *Mackey v. Compass Marketing, Inc.,* 391 Md. 117, 892 A.2d

479 (2006), the Maryland Court of Appeals held that co-conspirators are

"agents" under Maryland's long arm statute:

"As noted above, we have long recognized that the intent of the General
Assembly in enacting § 6-103(b) was to permit all exercises of personal
jurisdiction that are consistent with due process.   Therefore, given our
conclusion above that the conspiracy theory of jurisdiction is consistent with

due process, and the support in Maryland law for the proposition that co-conspirators act as agents of one another when they act in furtherance of a conspiracy, we conclude that the General Assembly intended a broad construction of the term "agent" and did not intend to require a showing that one exercises control over the other.   We hold that when the requirements of the conspiracy theory are met, one co-conspirator may be the "agent" of another co-conspirator within the meaning of § 6-103(b)."

Put differently, Plaintiff's conspiracy theory permits certain actions done in furtherance of a conspiracy by one co-conspirator to be attributed to other co-conspirators for jurisdictional purposes.  Defendant Hoge lives in Westminster, Maryland, and is a co-conspirator within the meaning of the long arm statute.  The other Defendants have all committed tortious acts in Maryland and conspired with Defendant Malkin.  Under *Mackey*, this alone is enough to establish personal jurisdiction.

### Defendant Malkin Focused On Plaintiff And Maryland

50. Applying *Carefirst*, *ALS, Mackey* and *Calder*, it is clear that Defendant Malkin did not merely post information on a passive website located in another state directed at another audience.  Instead, she actively, knowingly and intentionally focused and directed her blogs and Twitter accounts on Plaintiff, Plaintiff's business, Plaintiff's associates, and Plaintiff's activities, all of which are located in Maryland. Defendant Malkin targeted Plaintiff and her audience included Marylanders because that is where she could cause the greatest harm to Plaintiff.  Defendant Malkin used the other Defendants as her agents by having them gather information to defame Plaintiff, create material that she posted on her blogs, physically harass and stalk Plaintiff, and cross post the same tweets and the same information.

23

51. This issue has been addressed recently n this Court in the case of *Hare v. Richie,* (Aug. 29, 2012) Civil Action No. ELH-11-3488, attached as Exhibit L.  In *Hare*, the Court held that since the defendant not only published the defamatory information online but also allowed people to comment and urged them on, that the Court had personal jurisdiction.   The same applies here where Defendant Malkin not only published her defamatory posts and tweets, but she asked people to get involved, to post comments and tweets, demanded that Plaintiff be investigated, and incited her followers to engage in vigilante action against Plaintiff.  Clearly, the Court has personal jurisdiction over Defendant Malkin.

52. Defendant Malkin states without any affidavit that she did not receive a summons.  Plaintiff believes that he sent her the summons, and this Court cannot dismiss this case based on such an unsubstantiated allegation.  Moreover, Defendant Malkin has notice so there is no prejudice.

Wherefore, for all the above reasons, this Court should deny Defendants Malkin and Twitchy's Motions to Dismiss.

Respectfully submitted,

Brett Kimberlin
8100 Beech Tree Rd
Bethesda, MD 20817
(301) 320 5921
justicejtmp@comcast.net

Certificate of Service

I certify that I have served a copy of this Response on Lee Stranahan, Ron

Coleman, Catilyn Contestable, Michael Smith, and Mark Bailen by email, and on

Defendants Hoge, The Franklin Center, and Walker by First Class mail this 14th

day of February, 2014.

Brett Kimberlin

53.

54.

55.