**TUESDAY, FEBRUARY 11, 2014**

# My Motion to Strike Convicted Perjurer and Document Forger Brett Kimberlin's Oppositions to the Motion to Dismiss

*This is the latest post in what I half-jokingly call* **The Kimberlin Saga**®. *If you are new to the story, that's okay! Not everyone reads my blog. The short version is that Kimberlin has been harassing me for over two years, his worst conduct being when he attempted to frame me for a crime. I recognize that this might sound like an incredible claim, but I provide video and documentary evidence of that fact; in other words, you don't have to believe my word. You only have to believe your eyes. So, if you are new to the story, go to this page and you'll be able to catch up on what has been happening.*

So last week, I pointed out that Michelle Malkin and Non-party Twitchy filed a motion to dismiss that included the explosive allegation that Brett Kimberlin forged a summons of Twitchy in a corrupt attempt to fool Twitchy into believing that it was a party, when it wasn't. And I pointed out that Brett's only response to those allegations so far was to move to amend the pleadings to add Twitchy as a party. And as I wrote back then:

This is in essence a motion for leave to amend, and Twitchy will have the right to oppose it. And there are legal standards which govern whether one should be granted. What are those standards, you might ask? Well, hold on and you will see over the next few days.

Well, that day has arrived, for today I am going to present to you my motion to strike all three oppositions that Brett filed to the motions to dismiss ("MTD") filed by John Hoge, DB Capital Strategies ("DBCS"), The Franklin Center ("TFC"), and I.

Previously you can see John's MTD here and his reply to Brett's opposition here; DBCS' here; TFC's motion here, and Brett's opposition and their reply, here; and my memorandum supporting my MTD here.

And so without further ado, here's the first of three filings I made that day, my motion to strike those oppositions:

Motion to Strike Opps

There are three major issues presented there. The first is that he purported to sign a declaration that didn't have the proper affirmation. Unfortunately, there isn't much we can do if he chooses to go down to the courthouse and just add the correct words and sign it again, but there you go. Second, by adding all these additional allegations he has made what amounts to an improper amendment to his complaint. So it should be struck for that reason. I also address any suggestion that he should be allowed to have a de facto amendment, by pointing out that one of the reasons why courts deny a person an opportunity to amend is when they demonstrate bad faith. So I spent a great deal of time discussing evidence of Kimberlin's bad faith. This was actually hard to write because evidence of his bad faith was rolling in as I wrote it at times; it was a moving target, if you will. Finally he failed to give the proper signature block, which isn't the most powerful argument, but it's a nice way to say, "your honor, he isn't doing this even when you remind him. He isn't taking you even slightly seriously."

Judges don't like it when you don't take them seriously.

The motion is identical except this copy is unsigned and my personal information has been redacted. And of course I am not bothering to include the exhibits. Most of the exhibits are print outs from websites, or in one case a download of a video from a website, or transcripts I have shared with you before. They are:

Exhibit D: Interview between Glenn Beck and Patrick Frey.

Exhibit E: portions of the February 8, 2012 peace order hearing.

Exhibit F: the email quoted here.

Exhibit G & H: caption pages for this suit. You will just have to trust it is what I tell you it is, as John has and as Malkin and Twitchy has.

Exhibit I: a website showing the cost of certified mail in 2013.

Exhibit J: this alleged chat between Patrick Frey and Barrett Brown.

Exhibit K, L: this page and this page, respecgitively.

Now that only leaves Exhibit A, B, and C. What are they? Well, they are the very same three Oppositions, only I went through them and crossed out all new allegations using ~~strikethrough~~. I explained the reason for this in this passage in my opposition:

In order to aid this court's analysis, Exhibits A, B, and C to this Motion to Strike are copies of the Plaintiff's Oppositions to H&W, DBCS and TFC respectively, but in those copies all new facts have been struck out. The court can use these exhibits either to see how difficult it would be to simply disregard every single new allegation or to aid it in disregarding such allegations if it should choose to do so.

I am going to give you those oppositions in just a moment, but, no, I am not going to then re-post them here with the new allegations crossed out. Instead I will give you a sample page of what this looked like...

Kimberlin v. NBC Res DBCS M2D (OCR) Cross Out Sample

...and ask you to imagine for yourself how the rest might have looked (or if you are really dying to know, go on PACER and download it). That is not to say every page looked like the

proverbial partially declassified government document. There are several pages where he discusses (and lies about, very often), the law and in that case he often actually deals with facts he previously alleged. But still try to imagine the judge looking over page after page where almost everything on the page is crossed out as a new allegation. *Heh.*

(And please note that I also eliminated all of Brett's exhibits, since they had never been included before.)

Of course, no presentation would be complete without giving Brett a chance to speak for himself. So... here's his opposition to my Motion to Dismiss...

Kimberlin      v      NBC      Res      Hoge      W      M2D      (OCR) (Redacted) **by** AaronWorthing

...and his opposition to DBCS' MTD...

Kimberlin      v.      NBC      Res      DBCS      M2D      (OCR) (Redacted) **by** AaronWorthing

And he replies to similar allegations by Mr. Hoge in the document posted here.

Of course we are not done with all the blizzard of documents yet, not by a long shot. No, we are still waiting on 1) my actual reply and 2) DBCS' reply. DBCS has asked for an extension and has been granted one, so they haven't filed theirs at all, yet. And my reply will be coming tomorrow.

Also sharp-eyed readers will notice that I said three things were filed the Monday before last. So what was the third thing? It was simply a motion to exceed the page limit in filing my reply. Yes, filed at the same time as my reply. I expect that to be granted as a matter of course and in any case, I made sure the first twenty five pages were the most important, though there is good stuff

after that. I probably won't bother to share that with you because there isn't really much there.

And as usual, dear reader, you should be very reluctant to credit anything Brett is alleging. He is a convicted perjurer and a downright compulsive liar. He is the kind of guy that if he says the sky is blue, you need to go to a window and check. Indeed, as you can see in my motion to strike he lied and then amazingly presented proof of his lies for you to see. Seriously, how did he think he could get away with lying about the contents of his own exhibits?

**WEDNESDAY, FEBRUARY 12, 2014**

# Convicted Perjurer Brett Kimberlin's Silly Opposition to My Motion for Leave to Exceed Page Limitation

*This is the latest post in what I half-jokingly call **The Kimberlin Saga®**. If you are new to the story, that's okay! Not everyone reads my blog. The short version is that Kimberlin has been harassing me for over two years, his worst conduct being when he attempted to frame me for a crime. I recognize that this might sound like an incredible claim, but I provide video and documentary evidence of that fact; in other words, you don't have to believe my word. You only have to believe your eyes. So, if you are new to the story, go to this page and you'll be able to catch up on what has been happening.*

**Update: This is not the first time Brett Kimberlin has, on record, demonstrated bigotry toward me. Go here and read about the last time.**

Well, dear reader, we are going to have a last minute programming change. Yesterday, I said I would share my reply

to Brett Kimberlin's opposition to my motion to dismiss. I also said that I wasn't going to share my motion for a leave to exceed the page limitations. That was my intention, but sometimes events take over and plans change.

You see, two things happened today. First, the judge's order granting my motion for leave to exceed the page limit was posted on PACER. Truly, that was no big whoop or any big surprise. Here's the order:

Order Granting MFL by AaronWorthing

So the judge said, more or less, "yeah, this is a complex case, and you aren't going over by much so go ahead." Again, nothing surprising, there. And it said Brett had fourteen days in which to oppose it...

...which would be stupid, because it would come off as petty and silly unless he had some great grounds to oppose. So the last thing an intelligent person would do would be to oppose it... and he certainly wouldn't oppose it on whiny, non-factual grounds, right? Right?



Um, you did read the headline, right?

Well of course Brett filed an opposition, and... it is a piece of work. I will have an opportunity to reply to it (indeed, since I

haven't been served yet, the clock isn't ticking on it just yet), but some of the claims in it are just silly. For instance, he writes that every single motion I have ever filed against him was denied, which is false. And he falsely claims that each post is asking for people to send me money, when in fact I have never written a post asking *anyone* to send me money. Yes, I have asked you to send money to others, particularly legal defense funds (*psst, donate to BomberSuesBloggers, please!*), but not to me. And the part about the Scarlett Letter is just too hilarious for words. Can you say "persecution complex?"

And of course his claim that I am engaged in unauthorized practice of law is just silly. I have never pretended to represent anyone's interests but my own.

So now it is necessary to show you my motion for leave to exceed the page limit, which you can read here:

Motion for Leave to Exceed Page Limitation **by** AaronWorthing

Really, truly, this document is not interesting *except that it shows you what he was opposing.* And you can see his opposition, here:

BK&#x27;s Opp. to MFL

Normally I would wait until my response is filed so his allegations are rebutted at the same time they are presented, but seriously, dear reader, they rebut themselves. I actually laughed out loud reading some of it.

And yes, I noticed the way he has proven himself to be a bigot before the court. That will not go unnoticed or un-commented-on when I file my reply.

And given the way I have hammered him recently for his bad faith, was this really a smart time to tell provable lies to the court? (Hint: no.)

So that is it for today. Tomorrow, you will finally get to see my reply to his opposition to my motion to dismiss that made him scream like a little girl in this filing. Seriously, he's like a little girl who thinks if she whines long enough she will get her way, another poor choice in strategy on his part.

**THURSDAY, FEBRUARY 13, 2014**

# My Reply to Convicted Terrorist Brett Kimberlin's Opposition to My Motion to Dismiss His Silly RICO Suit

*This is the latest post in what I half-jokingly call **The Kimberlin Saga**®. If you are new to the story, that's okay! Not everyone reads my blog. The short version is that Kimberlin has been harassing me for over two years, his worst conduct being when he attempted to frame me for a crime. I recognize that this might sound like an incredible claim, but I provide video and documentary evidence of that fact; in other words, you don't have to believe my word. You only have to believe your eyes. So, if you are new to the story, go to this page and you'll be able to catch up on what has been happening.*



So as the snow falls on the mini-blizzard here in the D.C. area (something like 6-10 inches, which is moderately impressive for the area in my experience), I am going to finally drop on you my reply to Brett Kimberlin's Opposition to my motion to dismiss that I filed nearly two weeks ago. Or really, my reply to his opposition*s* because as I stated earlier, he has sewn all three oppositions together. I previously shared with you his oppositions here and here. And yesterday I showed how he apparently was extremely, extremely upset with my Reply. So what is so horrible about it, you wonder?

Well, nothing, really. But don't take my word for it, judge for yourself, below the fold:

Reply to Opp to MTD

(Your computer is not screwing up. The first page is only a half page for the title.)

There are two exhibits. They are described in the motion (the second one is mistakenly labeled Exhibit C, oh well). John Hoge has already shown you the first one, at least the non-certified version of it. As for the second exhibit, the Amended Complaint in the state case, I will ask around if anyone has published it. If they haven't, maybe I will Friday.

I will say that I was frankly surprised at the poor quality Kimberlin's oppositions. If I was writing Brett's opposition and wasn't limited by honesty or ethics as he isn't, I could have written one that was at least fifty times better than what he wrote.

And of course his claim that I was purporting to represent anyone but myself is laid bare for the tawdry lie that it is. Yes I addressed federal claims that related wholly to other persons, especially my friend Patrick Frey. I admit I would be very happy personally if Patrick benefits from what I filed, but it also represents an act of "enlightened self-interest" as one of my professors used to say.* If every federal claim is dismissed for every Defendant, then the court no longer even has jurisdiction over the state law claims. So even if the judge normally would not dismiss the state law claims, if every federal claim is dismissed, he would dismiss those claims for want of jurisdiction. That gives me a direct, personal stake in whether the federal claims against the other Defendants are dismissed, even when my personal conduct is not at issue.

And yes, I asked for a dismissal for all parties on page 1 and 31 of my Reply. I think I might have even repeated that sentiment a few times within. But the justification wasn't because I represented them but instead I suggested it in the interests of "judicial economy." If that phrase sounds familiar, it is because it is the same exact phrase Brett used when asking for an extension, which you can read here. Indeed unlike myself, Brett has absurdly claimed to advance the interests of the Defendants in this case in that same motion, making his complaints that I am doing so wholly hypocritical.

But is any of this a surprise? What it comes down to is this. Anyone Brett targets is not allowed to fight him. If he files a motion in court, you are not allowed to oppose him. You are not allowed to hire a lawyer to help you to oppose him. Any such lawyer is presumed to be evil or in some kind of conspiracy to do something or other with you. Brett is allowed to send those

motions to be doxxed all over the internet and treated as gospel truth by people like "Baghdad Blob" Bill Schmalfeldt, but if you dare to share your motions with the world you are evil, evil, evil. If you dare to report that Brett has engaged in any kind of criminal, immoral or merely creepy behavior, you are harassing him and inciting dangerous violence against him. This is true even if you specifically tell people not to do anything like that because everyone knows you can convince them to do such violence by a reverse psychology Jedi mind trick. On the other hand he is allowed to falsely claim you hate all Muslims and try to rile up terrorists to kill you and your wife. Because this is Brett's First Amendment and you're just living under it. Got it?

As for his whiny opposition that I shared with you yesterday, I think the best and simplest explanation is that it amounts to almost a primal scream as he saw how effectively I toppled what few arguments he had left. I think it is a sign of fear that my Motion to Dismiss and my Reply might get the whole case dismissed, for everyone and with prejudice. He hasn't shown any injury in relation to his RICO claims and the judge is very likely to latch on to that as a reason to dismiss them. He hasn't alleged invidious animus or a federal nexus as required by 42 U.S.C. §1985. And for all his whining he is nowhere near claiming that Patrick Frey was acting as a state actor under §1983. Not to mention that his foul ups related to the statute of limitations in relationship to his defamation and false light, and his failure to allege any distress or damage by such distress. There is a saying in law, and although its exact wording varies I like this version the best: if the facts are against you, pound the law; if the law is against you, pound the facts; and if the facts and the law are against you, pound the table. Brett's opposition that I shared with you yesterday represented him pounding the table and pretty impotently, too. Don't think the judge won't notice that—especially not after I finish pointing it out. After all, I have a right to reply to that, too.

Indeed, I am really wondering if he has gotten to the point where he believes the case is doomed and is just trying to inflict

maximum damage while he can. Or perhaps he was drunk as he wrote that opposition I shared yesterday. Seriously, I am grasping at straws here, because that thing is awful even by Brett standards.

Finally, looking back in this post I linked to a moment ago, I found where I had written this when discussing the judge's decision to deny my motion to require the Plaintiff to verify all documents:

I would say that I concur with John's analysis, here, but I would add that in relation to the motion to require verification, that this is one of those times when I just can't tell you, dear reader, about all of the strategy involved, and therefore I cannot tell why it really, truly doesn't bother me overly much that the motion to require verification was denied. I figured it was a long shot (at least at this stage of the game), but even if it failed, it would likely further other important goals, setting the stage for other motions down the road.

Well, that was then and this is now. And the motion I was setting the stage for has arrived. You see, dear reader, I was playing three dimensional chess against Brett Kimberlin...

(That's me, chilling...)

...and this part of my reply is what we call "checkmate" when asking for dismissal with prejudice:

Further, this court should also grant that dismissal with prejudice. As this court noted in *Bhari Info. Tech. Sys. Private, Ltd. v. Sriram*, 2013 U.S. Dist. LEXIS 169622, *13 n.2 (D. Md. 2013), "[t]he determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." When determining whether to dismiss a claim with prejudice, "courts apply the same standard as if a motion for leave to amend [had] been filed." *Loren Data Corp. v. GXS, Inc.* (D. Md. August 30, 2011) case number DKC 10-3474 (internal quotation marks omitted). Accordingly, just as leave to amend should be denied when a Plaintiff has demonstrated bad faith, *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006), a motion to dismiss with prejudice should be granted when bad faith is shown, *180S, INC. v. Gordini USA, Inc.*, 602 F.Supp.2d 635, 639 (D. Md. 2009). Not only has this court previously found this same Plaintiff to have acted in bad faith, but his bad faith in this case is demonstrated in Mr. Walker's accompanying Motion to Strike pp. 4-22. For the reasons stated therein, this court should find that the Plaintiff has acted in bad faith and dismiss the instant case with prejudice.

You see when I was first researching the law for this case, I quickly found Judge Grimm's decision in *Bhari Info. Tech.*, which in turn led me to the *Gordini USA, Inc.* which set out at least one consideration when a court determines whether to grant a motion to dismiss with prejudice or not: whether or not the Plaintiff has demonstrated bad faith. So part of the purpose of that motion was to start to plant the seed in the judge's mind that Brett Kimberlin was acting in bad faith. This is not to say that I also didn't want the motion for its own benefit but sometimes a thing can have more than one purpose. And that purpose was the hope that this might lead the judge to realize on his own—without my saying so—that Brett's case should be dismissed with prejudice. But there is also no good reason not to remind the judge in my Reply... when Brett no longer has a

chance to respond.  As I told you before, the pattern is motion => opposition => reply.  There are no further steps after that.  And of course Brett has been extremely generous in supplying me with examples of his bad faith. So...



Indeed things worked out better than I hoped: I admit I was surprised that Brett actually had the ~~stupidity~~ nerve to attempt to forge a summons on Twitchy but I was downright tickled when Twitchy's lawyer called him on it.  There is no guarantee that any of it will work.  But still part of me wants to light a cigar and say:



And I don't even smoke!

Anyway, that is probably the last document in this case I will be sharing in the near term, but that of course won't be the last document filed. I still get to reply to the silly opposition that Brett filed yesterday and it's going to be a doozy. Seriously, he is going to *hate* what I say in it, because it will logically and factually dismantle him further. So get out the popcorn, dear reader because I will share that the moment it doesn't prejudice my interests to do so. Just because his abuse of the court is an outrage doesn't mean we can't have fun while fighting it.

----------------------------------------

\* Let me give you an example of enlightened self-interest. A few years back I was at an ice cream shop and a very little girl—probably around 8 years old—made the mistake of licking her ice cream cone from the bottom up. The entire "sphere" of ice cream unfastened itself and rolled out of the cone and right onto the

floor and she looked devastated. We were probably five seconds away from her crying. But the man behind the counter said something like, "here, sweetie, let me get you another." So she handed him the cone, he gave her a new scoop and the little girl and her mother smiled and said thank you.

Watching this, my lawyer mind knew that as a matter of law they had no duty to give her a new scoop. But imagine how that scenario would have played out. The little girl would have cried. She would have associated this ice cream place ever so slightly with that sadness. Mom might have felt entitled to a new scoop and argued with the guy behind the counter and thought in general that these people were not very nice.

So what the guy did behind the counter was nice, giving her a free scoop. But it also was good business. Those people were more likely to come back now in the future, when if he didn't do that, they might have lost a customer. That's enlightened self-interest, when you do something that many people think is merely nice—and let me be clear, niceness is a factor in that decision—but you also recognize that this niceness makes solid business sense.

Mmm, if only Brett Kimberlin would develop a little enlightened self-interest and instead of brass knuckle reputation management, simply accepted that people were going to talk badly about him? Imagine if he simply recognized that this was the price of his criminal conduct instead of engaging in fresh criminal conduct in order to try to silence others? Imagine how much better off he would be today, if he was just nicer?

Title 16. Courts, Judges, and Attorneys
Chapter 800. Miscellaneous
**APPENDIX: IDEALS OF PROFESSIONALISM**

Professionalism is the combination of the core values of personal integrity, competency, civility, independence, and public service that distinguish lawyers as the caretakers of the rule of law.

These Ideals of Professionalism emanate from and complement the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), the overall thrust of which is well-summarized in this passage from the Preamble to those Rules:

"A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials."

A failure to observe these Ideals is not of itself a basis for disciplinary sanctions, but the conduct that constitutes the failure may be a basis for disciplinary sanctions if it violates a provision of the MLRPC or other relevant law.

## Preamble

Lawyers are entrusted with the privilege of practicing law. They take a firm vow or oath to uphold the Constitution and laws of the United States and the State of Maryland. Lawyers enjoy a distinct position of trust and confidence that carries the significant responsibility and obligation to be caretakers for the system of justice that is essential to the continuing existence of a civilized society. Each lawyer, therefore, as a custodian of the system of justice, must be conscious of this responsibility and exhibit traits that reflect a personal responsibility to recognize, honor, and enhance the rule of law in this society. The Ideals and some characteristics set forth below are representative of a value system that lawyers must demand of themselves as professionals in order to maintain and enhance the role of legal professionals as the protectors of the rule of law.

## Ideals of Professionalism

A lawyer should aspire:

(1) to put fidelity to clients before self-interest;

(2) to be a model for others, and particularly for his or her clients, by showing respect due to those called upon to resolve disputes and the regard due to all participants in the dispute resolution processes;

(3) to avoid all forms of wrongful discrimination in all of his or her activities, including discrimination on the basis of race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, with equality and fairness as the goals;

(4) to preserve and improve the law, the legal system, and other dispute resolution processes as instruments for the common good;

(5) to make the law, the legal system, and other dispute resolution processes available to all;

(6) to practice law with a personal commitment to the rules governing the profession and to encourage others to do the same;

(7) to preserve the dignity and the integrity of the profession by his or her conduct, because the dignity and the integrity of the profession are an inheritance that must be maintained by each successive generation of lawyers;

(8) to strive for excellence in the practice of law to promote the interests of his or her clients, the rule of law, and the welfare of society; and

(9) to recognize that the practice of law is a calling in the spirit of public service, not merely a business pursuit.

## Accountability and Trustworthiness

A lawyer should understand the principles set forth in this section.

(1) Punctuality promotes the credibility of a lawyer. Tardiness and neglect denigrate the individual, as well as the legal profession.

(2) Personal integrity is essential to the honorable practice of law. Lawyers earn the respect of clients, opposing counsel, and the courts when they keep their commitments and perform the tasks promised.

(3) Honesty and, subject to legitimate requirements of confidentiality, candid communications promote credibility with clients, opposing counsel, and the courts.

(4) Monetary pressures that cloud professional judgment and should be resisted.

## Education, Mentoring, and Excellence

A lawyer should:

(1) make constant efforts to expand his or her legal knowledge and to ensure familiarity with changes in the law that affect a client's interests;

(2) willingly take on the responsibility of promoting the image of the legal profession by educating each client and the public regarding the principles underlying the justice system, and, as a practitioner of a learned art, by conveying to everyone the importance of professionalism;

(3) attend continuing legal education programs to demonstrate a commitment to keeping abreast of changes in the law;

(4) as a senior lawyer, accept the role of mentor and teacher, whether through formal education programs or individual mentoring of less experienced lawyers; and

(5) understand that mentoring includes the responsibility for setting a good example for another lawyer, as well as an obligation to ensure that each mentee learns the principles enunciated in these Ideals and adheres to them in practice.

## A Calling to Service

A lawyer should:

(1) serve the public interest by communicating clearly with clients, opposing counsel, judges, and the general public;

(2) consider the impact on others when scheduling events. Reasonable requests for schedule changes should be accommodated if, in the view of the lawyer, such requests do not impact adversely the merits of the client's position;

(3) maintain an open and respectful dialogue with clients and opposing counsel;

(4) respond to all communications promptly, even if more time is needed to formulate a complete answer, and understand that delays in returning telephone calls or answering mail may leave the impression that the communication was unimportant or that the message was lost, and such delays increase tension and frustration;

(5) keep a client apprised of the status of important matters affecting the client and inform the client of the frequency with which information will be provided, understanding that some matters will require regular contact, while others will require only occasional communication;

(6) always explain a client's options or choices with sufficient detail to help the client make an informed decision;

(7) reflect a spirit of respect in all interactions with opposing counsel, parties, staff, and the court; and

(8) accept responsibility for ensuring that justice is available to every person and not just those with financial means.

## Fairness, Civility, and Courtesy

A lawyer should:

(1) act fairly in all dealings as a way of promoting the system of justice;

(2) understand that an excess of zeal may undermine a client's cause and hamper the administration of justice and that a lawyer can advocate zealously a client's cause in a manner that remains fair and civil;

(3) know that zeal requires only that the client's interests are paramount and therefore warrant use of negotiation and compromise, when appropriate, to achieve a beneficial outcome, understanding that yelling, intimidating, issuing ultimatums, and using an "all or nothing" approach may constitute bullying, not zealous advocacy;

(4) seek to remain objective when advising a client about the strengths and weaknesses of the client's case or work;

(5) not allow a client's improper motives, unethical directions, or ill-advised wishes to influence a lawyer's actions or advice, such as when deciding whether to consent to an extension of time requested by an opponent, and make that choice based on the effect, if any, on the outcome of the client's case and not on the acrimony that may exist between the parties;

(6) when appropriate and consistent with duties to the client, negotiate in good faith in an effort to avoid litigation and, where indicated, suggest alternative dispute resolution;

(7) use litigation tools to strengthen the client's case, but avoid using litigation tactics in a manner solely to harass, intimidate, or overburden an opposing party; and

(8) note explicitly any changes made to documents submitted for review by opposing counsel, understanding that fairness is undermined by attempts to insert or delete language without notifying the other party or the party's lawyer.

A lawyer should understand that:

(1) professionalism requires civility in all dealings, showing respect for differing points of view, and demonstrating empathy for others;

(2) courtesy does not reflect weakness; rather, it promotes effective advocacy by ensuring that parties have the opportunity to participate in the process without personal attacks or intimidation;

(3) maintaining decorum in every venue, especially in the courtroom, is neither a relic of the past nor a sign of weakness; it is an essential component of the legal process;

(4) professionalism is enhanced by preparing scrupulously for meetings and court appearances and by showing respect for the court, opposing counsel, and the parties through courteous behavior and respectful attire;

(5) courtesy and respect should be demonstrated in all contexts, not just with clients and colleagues, or in the courtroom, but also with support staff and court personnel;

(6) hostility between clients should not become grounds for a lawyer to show hostility or disrespect to a party, opposing counsel, or the court;

(7) patience enables a lawyer to exercise restraint in volatile situations and to defuse anger, rather than elevate the tension and animosity between parties or lawyers; and

(8) the Ideals of Professionalism are to be observed in all manner of communication, and a lawyer should resist the impulse to respond uncivilly to electronic communications in the same manner as he or she would resist such impulses in other forms of communication.
Adopted March 9, 2010, eff. July 1, 2010.
MD Rules, Ideals of Professionalism, MD R CTS J AND ATTYS Ideals of Professionalism
Current with amendments received through 7/15/13