IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | | |
|---|---|---|---|
| BRETT KIMBERLIN, | * | | |
| Plaintiff, | * | | |
| v. | * | Civil Action PWG 13-3059 | |
| NATIONAL BLOGGERS CLUB, et al., | * | | |
| Defendants | * | | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**NON-PARTY TWITCHY'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CORRECT CASE CAPTION**

Michael F. Smith
The Smith Appellate Law Firm
1717 Pennsylvania Avenue N.W., Suite 1025
Washington, D.C. 20006
(202) 454-2860
Bar No. 29941
**Counsel for Defendant Michelle Malkin
and non-party Twitchy**

Date: February 18, 2014

## **TABLE OF CONTENTS**

**Page**

INDEX OF AUTHORITIES..................................................................................................ii

FACTS..................................................................................................................................1

ARGUMENT........................................................................................................................3

I.      Each of the grounds that justify denial of leave to amend a complaint
     is present here, and Mr. Kimberlin's motion should be denied......................................3

     A.     Mr. Kimberlin has acted in bad faith with regard to the very thing he
            requests of this Court, permission to add Twitchy as a defendant.....................3

     B.     Both Twitchy and this Court would be prejudiced by Twitchy's addition
            as a defendant..................................................................................................6

     C.     Amendment also would be futile.......................................................................7

CONCLUSION/RELIEF REQUESTED..............................................................................8

CERTIFICATE OF SERVICE..............................................................................................9

ADDENDUM - UNPUBLISHED CASES

# INDEX OF AUTHORITIES

**Page**

**Cases**

*ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002)....................8

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989)..................................................7

*Canon USA, Inc. v. Lease Group Resources, Inc.*,
   2005 U.S. Dist. LEXIS 7452 (E.D. Va. April 19, 2005)...................................................4

*In re Computer Communications, Inc.*, 824 F.2d 725 (9th Cir. 1987).........................................5

*In re DePugh*, 409 B.R. 84 (S.D. Tex. Bkrptcy. 2009)........................................................4

*In re Fugazy Express, Inc.*, 982 F.2d 769 (2d Cir. 1992)....................................................4

*Guidry v. Georgia Gulf Lake Charles L.L.C.*, 479 Fed. Appx. 642 (5th Cir. 2012).............................4

*Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 Fed. Appx. 31 (5th Cir. 2012)..............................4

*Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) (en banc)....................................................6

*Martinez v. Target Corp.*, 384 Fed. Appx. 840 (10th Cir. 2010) .............................................5

*Matrix Capital Mgmt. Fund., L.P. v. BearingPoint, Inc.*, 576 F.3d 172 (4th Cir. 2009).....................3, 8

*Mayfield v. NASCAR*, 674 F.3d 369 (4th Cir. 2012).......................................................3, 6, 8

*Moore v. Jahani*, 2010 U.S. Dist. LEXIS 44511 (D. Colo. April 8, 2010)......................................7

*Nemet Chevrolet v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009).................................8

*United States v. Cowan*, 116 F.3d 1360 (10th Cir. 1997).....................................................6

*United States v. Reich*, 479 F.3d 179 (2d Cir. 2007)........................................................7

*Wolf v. Fauquier Co. Bd. of Comm'rs*, 555 F.3d 311 (4th Cir. 2009)..........................................4

*Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002).................................................8

**Statutes and court rules**                                                                                  **Page**

18 U.S.C. § 505..................................................................................................................6-7

Communications Decency Act, 47 U.S.C. §§ 230(c)(1), 230(e)(3)............................................8

Fed. R. Civ. P. 12(b)(6)..................................................................................................8

Fed. R. Civ. P. 15(a)(1)..................................................................................................3

**Other authorities**

Black's Law Dictionary 149 (8th ed. 2004)................................................................................4

## FACTS

Mr. Kimberlin filed his first complaint on October 15, 2013, naming 20 defendants in its caption, though not Twitchy. R.1. Two days later he filed his First Amended Complaint (FAC), adding several factual allegations in the body, and a 21st defendant in the caption, but still not including Twitchy. R.2. With his original complaint he submitted 19 proposed summonses for the Clerk to issue, including one for Twitchy. R.1-2. The Clerk on November 12, 2013 issued 18 summonses – each one that Mr. Kimberlin requested, except for Twitchy, for which the Clerk did not issue a summons. R.4.

As of late December 2013, several defense motions were pending before the Court, along with one from Mr. Kimberlin asking for more time to respond to them. On December 30, the Court issued a Letter Order addressing the motions. With regard to Mr. Kimberlin's extension request, the Court noted that it was "impossible to make an informed ruling" without knowing the status of service on the various defendants. R.21, Letter Order, p. 2. Thus, this Court granted the motion in part, gave Mr. Kimberlin until January 17 to respond to the then-pending motions, and directed that

> by or before January 10, 2014, Plaintiff SHALL FILE a status report containing, with respect to each Defendant:
>
> i) Whether that Defendant has been served;
> ii) If so, the date and method of service; and
> iii) If not, the efforts that Plaintiff has undertaken to serve said Defendant. [*Id*].

Mr. Kimberlin within days of the Letter Order, on January 3, 2014, mailed Twitchy a copy of a "First Amended Complaint" that listed Twitchy in the caption, along with the apparently forged summons, and represented them both as authentic court documents. *See* R.41-1, 1/27/14 Memorandum supporting Twitchy and Mrs. Malkin's Motion to Dismiss, pp. 3-5 and its Ex B.

On January 9, 2014, Mr. Kimberlin filed with this Court his Status Report Re Service of Complaint, as the Court's letter order had directed. R.27. In it, he told this Court that the report would

1

update the Court on his service efforts "on the 22 Defendants in this case." *Id.*, p. 1. However, at that point Mr. Kimberlin knew there were not "22 Defendants," and that Twitchy was not a defendant, because a) the Clerk had declined to issue a summons for Twitchy, b) he already had created a summons for Twitchy from the one the Clerk actually issued for Defendant Aaron Walker, and mailed it to Twitchy, and c) he also had mailed Twitchy the doctored FAC showing it in the case caption, rather than sending it a copy of R.2, the FAC actually on file. Nonetheless, Mr. Kimberlin's report to this Court repeatedly referenced Twitchy as a "defendant," and represented to the Court various efforts he had made to serve it the complaint, along with the Waiver of Service of Summons form (in October) and the summons (on January 3). *Id.*, ¶¶ 1, 4.

At no time did Mr. Kimberlin tell this Court he had "inadvertently left Twitchy off the caption list on the very front of the Complaint," as his motion now states. Rather, he simply passed Twitchy off to the Court as one of the "22 Defendants" on whom he was diligently trying to make service of the FAC.

On January 27, 2014, Twitchy and defendant Michelle Malkin, who *is* named in the caption, filed their Motion to Dismiss the FAC, and served it on Mr. Kimberlin via first-class mail. R.41. The accompanying Memorandum, R.41-1, sets forth at length the circumstances regarding Mr. Kimberlin's mailing to Twitchy of the doctored "FAC" listing it in the caption, and the falsified summons. Only after receiving that Memorandum did Mr. Kimberlin file the instant motion, asking this Court to "correct a clerical error in the caption of his Complaint." Motion, p. 1.

Mr. Kimberlin's motion offers no explanation for how Twitchy ended up in the caption of the "FAC" he mailed to it on January 3, when the actual FAC on file with the Court lacks Twitchy in its caption. He offers no explanation for how a summons was created and mailed to Twitchy where the

Clerk refused to issue such a summons. And, he offers no explanation for how it came to be issued on the form the Clerk used for the summons to Defendant Walker, or how it was dated November 12, 2013 and addressed to "Twitchy, c/o Salem Communications," when Twitchy was not purchased by a Salem affiliate until the following month, and the sale was not announced publicly until December 10, 2013.

Instead, Mr. Kimberlin asks this Court to let him simply add Twitchy to the caption, to correct what he repeatedly calls a mere "clerical error." Motion, p. 1.

## ARGUMENT

I.   **Each of the grounds that justify denial of leave to amend a complaint is present here, and Mr. Kimberlin's motion should be denied.**

Where (as here) leave must be obtained to amend a complaint, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(1). Certainly, that directive "gives effect to the federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities." *Mayfield v. NASCAR*, 674 F.3d 369, 379 (4th Cir. 2012), *citing Matrix Capital Mgmt. Fund., L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). Nonetheless, there are three instances in which leave to amend should be denied: where "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Id*. Mr. Kimberlin has hit the trifecta: though any one of those three situations will warrant denial of leave to amend, each is present here.

A.   **Mr. Kimberlin has acted in bad faith with regard to the very thing he requests of this Court, permission to add Twitchy as a defendant.**

For purposes of denying leave to amend a complaint, "bad faith" has been defined as "a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive and implies the conscious doing of a

3

wrong because of dishonest purpose or moral obliquity." *In re DePugh*, 409 B.R. 84, 103 (S.D. Tex. Bkrptcy. 2009) (citation omitted). In *DePugh*, the court held that the "utter disregard" of a party and its counsel for, and their failure to comply with, applicable court rules and orders, constituted willful ignorance that amounted to bad faith, since counsel certainly was aware of those requirements from prior cases. 409 B.R. at 103-104. So it is here. Mr. Kimberlin did not simply mail Twitchy a copy of the actual FAC (R.2) that lacked Twitchy in its caption, nor did he omit the summons. Instead he mailed Twitchy a doctored FAC and a falsified summons, in an effort to deceive it into thinking it had been named as a defendant and summoned from California into this Court. That was the "conscious doing of a wrong because of dishonest purpose or moral obliquity," and it compels denial of Mr. Kimberlin's motion. *See also*, *Wolf v. Fauquier Co. Bd. of Comm'rs*, 555 F.3d 311, 318 (4th Cir. 2009), *citing* Black's Law Dictionary 149 (8th ed. 2004) (defining "bad faith" outside the context of insurance law as "dishonesty of belief or purpose").

A party to litigation who unilaterally engages in self-help rather than first petition the District Court for the relief it requests, should be sanctioned by being denied that relief. *Guidry v. Georgia Gulf Lake Charles L.L.C.*, 479 Fed. Appx. 642, 643 (5th Cir. 2012); *Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 Fed. Appx. 31, 39 n.4 (5th Cir. 2012) (party not free to unilaterally alter deadline for expert witness disclosure in response to perceived discovery shortcoming, and district court properly excluded expert's testimony as a sanction); *Canon USA, Inc. v. Lease Group Resources, Inc.*, 2005 U.S. Dist. LEXIS 7452 (E.D. Va. April 19, 2005)[1] (citation omitted) (lessor that unilaterally deducted from court-ordered payments amounts it disputed, then filed motion asking for permission to do so, held in civil contempt and ordered to repay the amounts along with attorney fees); *In re Fugazy Express, Inc.*, 982

---

[1] Copy attached as an Addendum, per Local Rule 105.5.

F.2d 769, 776 (2d Cir. 1992) (dismissing for lack of jurisdiction appeal from contempt finding and sanctions for party that transferred FCC license without seeking relief from automatic stay; "nothing in the code suggests a party may engage in self-help in derogation of the automatic stay....[o]nly the court may lift the stay"), *citing In re Computer Communications, Inc.*, 824 F.2d 725, 731 (9th Cir. 1987) ("[j]udicial toleration of an alternative procedure of self-help and post hoc justification would defeat the purpose of the automatic stay").  Here, Mr. Kimberlin is on even shakier ground than the litigants in any of those cases.  The self-help to which he resorted appears to have involved criminal conduct, and he does not even bother to offer this Court "post hoc justification" for his action.  His attitude instead is one of, no harm, no foul, as if he had simply misspelled a party's name on the case caption, or transposed two digits in the case number.

But as the next section discusses, there is a foul, and there is harm: to Twitchy, to this Court, and to the judicial process.  A party caught with its hand in the cookie jar should not be rewarded with a cookie, but rather should be told, at a minimum, to get its hand out of the jar and that it will receive no snack.  "Sometimes it is more convenient to seek forgiveness than ask permission, but such strategy is a risky one."  *Martinez v. Target Corp.*, 384 Fed. Appx. 840, 847-848 (10th Cir. 2010) (where plaintiff submitted untimely expert reports and sought leave only after defendant moved to strike, district court was within its discretion in striking them; had plaintiff needed for financial reasons to rely on those experts "she should have been candid with the court and opposing counsel and her candor should have been timely, thereby giving others an opportunity to be heard on the issue").  Mr. Kimberlin's bad faith to date with regard to Twitchy, including his attempt to pawn off doctored court documents rather than seek this Court's approval to fix them, justifies denial of his request.

### B. Both Twitchy and this Court would be prejudiced by Twitchy's addition as a defendant.

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Mayfield*, 674 F.3d at 379, *quoting Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc). The timing that prejudices Twitchy here is not the age of this litigation; none of the 21 defendants has even answered the complaint yet. Rather, what prejudices Twitchy is that Mr. Kimberlin only filed this motion seeking permission to add it as a named defendant, after it and Mrs. Malkin exposed his fraudulent attempt to deceive it into believing it already had that status, via his act of mailing a forged summons and doctored FAC. Moreover, Mr. Kimberlin did not file this motion until after he had affirmatively tried to deceive this Court in his January 9, 2014 "Status Report," telling the Court he had made "formal service" to Twitchy the previous week, when he had to have known that was untrue. R.27, p. 1. And of course, the motion came only long after the original doctoring of the FAC, falsification of the summons, and the mailing of both. Granting Mr. Kimberlin's request here would simply reward this serial misconduct by giving him a Clerk-generated summons to take the place of the one he "prepared" himself, and putting the Court's imprimatur on the false case caption he altered and tried to pass off unilaterally.

Such relief not only would prejudice Twitchy, but would be even more detrimental to the court. In *United States v. Cowan*, 116 F.3d 1360, 1363 (10th Cir. 1997), the 10th Circuit affirmed a conviction under 18 U.S.C. § 505, which makes it a felony to forge the signature "of any judge, register, or any other officer" of a federal court, and described the statute's purpose: "to protect the reputation and integrity of the federal courts [and] their official documents and proceedings, rather than simply to outlaw a narrow category of fraud." As the court noted, the statute applies "whenever someone attempts to impugn this integrity by forging a federal judge's signature onto a document in order to make that

6

document appear authentic." *Id.*; *accord United States v. Reich*, 479 F.3d 179, (2d Cir. 2007) (Sotomayor, J.) (affirming conviction under 18 U.S.C. § 505 and obstruction-of-justice statute of attorney who forged magistrate judge's signature to court order and faxed it to opposing counsel; § 505 "is concerned not with protecting private parties from financial loss, but with protecting the integrity of a government function – namely, federal judicial proceedings"). A party who is exposed trying to perpetrate a fraud in the Court's name, and who deceived the Court in a Status Report it ordered him to file, should not be rewarded with the very thing he was attempting to obtain via that fraud and deceit.

As Twitchy elsewhere points out, Mr. Kimberlin's so-called "clerical error" in fact constitutes an attack on this Court as an institution. R. 41-1, Memorandum, *citing Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) ("[t]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public...."). Such an act warrants vigorous sanction, rather than a reward for the perpetrator in the form of the very relief he tried to obtain through that misconduct. *See Moore v. Jahani*, 2010 U.S. Dist. LEXIS 44511, *5 (D. Colo. April 8, 2010) (ordering pro se plaintiff to show cause "why he should not be sanctioned by the dismissal of this lawsuit for his apparent deceit in creating a fictitious court order, affixing my signature to it, and tendering it to this Court").

### C. Amendment also would be futile.

Finally, Mr. Kimberlin's request to add Twitchy as a named defendant should be denied as futile. Though Twitchy has joined in Mrs. Malkin's Motion to Dismiss, its argument at this point is limited to seeking dismissal based on the outrageous circumstances surrounding the summons and "FAC" Mr. Kimberlin mailed to it. Assuming Twitchy was added as an actual defendant, all the substantive shortcomings in the FAC that Mrs. Malkin identifies in that motion would apply with equal force to

Twitchy, and justify dismissal of all claims against it.  None of the counts state a valid claim against Twitchy and thus should be dismissed under Rule 12(b)(6), and all impinge on Twitchy's First Amendment rights.  Twitchy is no more within the court's personal jurisdiction than is Ms. Malkin, under *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) and *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002).  And Twitchy will have additional defenses available to it, such as immunity under the Communications Decency Act, 47 U.S.C. §§ 230(c)(1), 230(e)(3).  *Nemet Chevrolet v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009).

Because the addition of Twitchy as a 22nd defendant would be futile, it should be denied.  *Mayfield*, 674 F.3d at 379; *Matrix Capital Mgmt. Fund.*, 576 F.3d at 193.

## CONCLUSION/RELIEF REQUESTED

For the foregoing reasons, non-party Twitchy asks this Court to deny Mr. Kimberlin's "Motion to Correct Case Caption," and award Twitchy its costs, including attorney fees, incurred in having to respond, along with such additional relief as the Court deems just.

    Respectfully submitted,

    /s/ Michael F. Smith

    Michael F. Smith
    The Smith Appellate Law Firm
    1717 Pennsylvania Avenue N.W.
    Suite 1025
    Washington, D.C.  20006
    (202) 454-2860
    Bar No. 29941
    **Counsel for Defendant Michelle Malkin and non-party Twitchy**

Date:  February 18, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above Memorandum that was electronically filed in this case on February 18, 2014, along with the accompanying Proposed Order, were served the same day on the following parties in the following manner:

1. Via ECF, through counsel:

    A. DB Capitol Strategies

    B. The Franklin Center

    C. Redstate
       Erick Erickson
       Simon & Schuster
       Mercury Radio Arts
       Glenn Beck
       James O'Keefe
       The Blaze

2. Via mail, first-class, postage prepaid, addressed to:

    A. Breitbart.com
       149 South Barrington Avenue #735
       Los Angeles, CA 90049

    B. Ace of Spades
       3131 Homestead Road #3E
       Santa Clara, CA 95051

3. Via email to:

    A. Brett Kimberlin

    B. Ali Akbar

    C. KimberlinUnmasked

    D. Patrick Frey and Ronald Coleman, Esq.

    E. Lee Stranahan

      F.      Mandy Nagy

      G.      Aaron Walker

      H.      Robert S. McCain

      I.      William Hoge

By: /s/ Michael F. Smith

Dated: February 18, 2014



5 of 5 DOCUMENTS

**JOHN MOORE, Plaintiff, v. DR. SAM JAHANI, DR. STEVE PADUA, DELTA COUNTY HOSPITAL, and INSURANCE COMPANYS [sic] FOR THE DEFENDANTS, Defendants.**

**Civil Action No. 10-cv-00425-BNB**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

**2010 U.S. Dist. LEXIS 44511**

**April 8, 2010, Decided
April 8, 2010, Filed**

**SUBSEQUENT HISTORY:** Motion denied by Moore v. Jahani, 2010 U.S. Dist. LEXIS 43371 (D. Colo., May 3, 2010)

**COUNSEL:** [*1] John Moore, Plaintiff, Pro se, Cedar Ridge, CO.

**JUDGES:** Boyd N. Boland, United States Magistrate Judge.

**OPINION BY:** Boyd N. Boland

**OPINION**

ORDER TO FILE AMENDED COMPLAINT AND TO SHOW CAUSE

Plaintiff, John Moore, has submitted a complaint for money damages. He has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. The Court must construe liberally Mr. Moore's filings because he is a *pro se* litigant. *See Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not act as a *pro se* litigant's advocate. *See Hall,* 935 F.2d at 1110. For the reasons stated below, Mr. Moore will be ordered to file an amended complaint and to show cause why he should not be sanctioned by the dismissal of this lawsuit.

In the complaint, Mr. Moore attacks the wrongful death of his mother, Dorothy Moore. He complains that Dr. Steven Padua would not put her on life support. He also asks that his mother's death certificate be quashed.

Mr. Moore's complaint fails to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the [*2] claims against them so that they may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas,* 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Fed. R. Civ. P. 8 are designed to meet these purposes. *See TV Communications Network, Inc. v. ESPN, Inc.,* 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd,* 964 F.2d 1022 (10th Cir. 1992).

Specifically, Rule 8(a) requires that a complaint "contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought . . . ." The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate the requirements of Rule 8. In order for Mr. Moore to state a claim in federal court, his "complaint must explain what [*3] each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007).

Other than demanding money damages as relief, Mr. Moore fails to comply with Rule 8. He fails to allege a basis for the Court's jurisdiction. He also fails to set forth a short and plain statement of his claims showing that he is entitled to relief. Therefore, Mr. Moore will be ordered to file an amended complaint that complies with the pleading requirements of Fed. R. Civ. P. 8. Mr. Moore is reminded that it is his responsibility to present his claims in a manageable format that allows the Court and the defendants to know what claims are being asserted and to be able to respond to those claims.

Of grave concern is Mr. Moore's submission dated April 5, 2010, including what appears to be a fraudulent order bearing the signature from my order of February 24, 2010, directing the clerk of the Court to commence this action and directing Mr. Moore to cure certain deficiencies. *See* documents number 1, 31. Mr. Moore is cautioned that [*4] forging or counterfeiting a Court document knowing it to be false, and placing a judge's signature on it for the purpose of making the document appear to be authentic, is a crime prohibited by 18 U.S.C. § 505, which provides:

> Whoever forges the signature of any judge, register, or other officer of any court of the United States, or of any Territory thereof, or forges or counterfeits the seal of any such court, or knowingly concurs in using any such forged or counterfeit signature or seal, for the purpose of authenticating any proceeding or document, or tenders in evidence any such proceeding or document with a false or counterfeit signature of any such judge, register, or other officer, or a false or counterfeit seal of the court, subscribed or attached thereto, knowing such signature of seal to be false or counterfeit, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 505. Section 505 does not require an intent to defraud. *United States v. Cowan,* 116 F.3d 1360, 1361-63 (10th Cir. 1997); *see also United States v. Reich,* 479 F.3d 179, 187 (2d Cir. 2007). "A forged signature on a document which the forger intends to appear authentic is the only [*5] intent requirement of § 505." *Cowan,* 116 F.3d at 1363. The purpose of § 505 includes protecting the reputation and integrity of the federal courts. *Id.*

Therefore, Mr. Moore also will be ordered to show cause why he should not be sanctioned by the dismissal of this lawsuit for his apparent deceit in creating a fictitious court order, affixing my signature to it, and tendering it to this Court. Accordingly, it is

ORDERED that the Plaintiff, John Moore, file **within thirty days from the date of this order** an amended complaint that complies with the directives of this order. It is

FURTHER ORDERED that the clerk of the Court mail to Mr. Moore, together with a copy of this order, two copies of the Court-approved complaint form that Mr. Moore is directed to use in submitting the amended complaint. It is

FURTHER ORDERED that the amended complaint shall be titled "Amended Complaint," and shall be filed with the Clerk of the Court, United States District Court for the District of Colorado, Alfred A. Arraj United States Courthouse, 901 Nineteenth Street, A105, Denver, Colorado 80294. It is

FURTHER ORDERED that Mr. Moore show cause **within thirty days from the date of this order** why he should not be [*6] sanctioned by the dismissal of this lawsuit for his deceit in creating a fictitious court order, affixing a judge's signature to it, and tendering it to the Court. It is

FURTHER ORDERED that the motions for service by the United States Marshal's Service (document number 7) and for a Court order (document number 10) are denied as premature. It is

FURTHER ORDERED that if Mr. Moore fails to file an amended complaint or to show cause as directed within the time allowed, the complaint and the action may be dismissed without further notice.

DATED April 8, 2010, at Denver, Colorado.

BY THE COURT:

/s/ Boyd N. Boland

United States Magistrate Judge



CANON U.S.A., INC., Plaintiff, v. LEASE GROUP RESOURCES, INC., Defendant.

1:03cv1192 (JCC)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

2005 U.S. Dist. LEXIS 7452

April 19, 2005, Decided

**SUBSEQUENT HISTORY:** Motion denied by Canon U.S.A., Inc. v. Lease Group Res., Inc., 2005 U.S. Dist. LEXIS 44621 (E.D. Va., Sept. 23, 2005)

**DISPOSITION:** [*1] Motions to modify Payment Order denied, and LGR's motion to hold Canon in civil contempt granted.

**COUNSEL:** For CANON U.S.A., INC., plaintiff: Russell James Gaspar, Cohen Mohr LLP, Washington, DC.

For LEASE GROUP RESOURCES, INC., LUIS G. ROGERS, defendants: Benjamin Sorrells Boyd, DLA Piper Rudnick Gray Cary, Washington, DC.

For LEASE GROUP RESOURCES, INC., counter-claimant: Benjamin Sorrells Boyd, DLA Piper Rudnick Gray Cary, Washington, DC.

For CANON U.S.A., INC., counter-defendant: Russell James Gaspar, Cohen Mohr LLP, Washington, DC.

**JUDGES:** James C. Cacheris, UNITED STATES DISTRICT COURT JUDGE.

**OPINION BY:** James C. Cacheris

**OPINION**

**MEMORANDUM OPINION**

This matter is before the Court on: (1) Canon's March 11, 2005 motion to modify the Court's Payment Order to permit Canon to deduct from future payments to LGR $ 108,295.88; (2) LGR's March 22, 2005 motion to hold Canon in contempt; and (3) Canon's April 1, 2005 motion to modify the Court's Payment Order to use funds payable to LGR to pay LGR's obligations to the Special Master in Civil Action No. 01-1086-A, and thereafter to deposit remaining funds payable to LGR in the registry of the Court. For the reasons stated below, the [*2] Court will deny Canon's motions to modify the Order and grant LGR's motion to hold Canon in contempt.

**I. Background**

This case arises out of leasing transactions between Canon, LGR, and the federal government. Plaintiff Canon U.S.A., Inc. ("Canon") sells and leases photocopier equipment, facsimile machines, and other products to federal agencies. Defendant Lease Group Resources, Inc. ("LGR") is a lease finance company. It purchases equipment that distributors, like Canon, have leased to end-user customers, in exchange for the assignment to LGR of lease payments.

Canon and LGR have entered into several thousand transactions. Federal agencies leased the equipment from Canon. LGR purchased, or committed to purchase, the equipment covered by the leases from Canon. Thereafter, LGR collected the monthly lease payments from the federal government lessees.

In July 2001, Canon brought this suit against LGR to collect, *inter alia,* approximately $ 4.7 million allegedly owed by LGR for maintenance of the equipment. In February 2002, the parties entered into a settlement agreement which resolved their disputes and dismissed the litigation.

After disputes arose between the parties, [*3] Canon and LGR agreed to submit the remaining accounting issues to a Special Master. On May 23, 2003, Judge Hilton entered an Order referring the matter to the

Special Master. On September 17, 2003, Canon filed this suit for, *inter alia,* breaches of the settlement agreement and fraud.

On December 2, 2003, LGR filed a motion for preliminary injunction seeking to prevent Canon from receiving or retaining any payments from Document Automation and Production Service ("DAPS") under a modified agreement that were payable to LGR prior to the modification. On December 8, 2003, the Court entered an Order staying this matter pending the report of the Special Master.

On December 23, 2003, the Court entered an Order, ("Payment Order,") denying the preliminary injunction, but requiring Canon to remit 77% of each payment it receives from DAPS to LGR within 11 days of the receipt of payment, and account for the payments from DAPS and the payments made to LGR. By Order entered January 21, 2005, ("Modification Order,") the Court required Canon to remit payments to LGR on the 1st and 15th of each month that include all LGR funds received by Canon up to and including 21 days before the payment date, [*4] and to list all invoices Canon disputes as not owing to LGR.

On March 11, 2005, Canon filed a motion to modify the Court's December 23, 2004 Payment Order, as modified by the Modification Order. Canon seeks modification of the Order to permit Canon to deduct from future payments to LGR $ 108,295.88 which Canon alleges that LGR was not entitled to receive. LGR opposes the motion and makes its own motion to hold Canon in contempt for allegedly engaging in self-help and unilaterally withholding $ 56,265.20 belonging to LGR. On April 1, 2005, Canon filed a motion to modify the Payment Order to use funds payable to LGR pursuant to the Payment Order to pay LGR's obligations to the Special Master in Civil Action No. 01-1086-A, and thereafter to deposit remaining funds payable to LGR in the registry of the Court pending the conclusion of proceedings on the Special Master's report in Civil Action No. 01-1086-A. These three motions are currently before the Court.

## II. Standard of Review

Federal Rule of Civil Procedure 60(b) permits a court to relieve a party from a final judgment, order, or proceeding if it is no longer equitable that the judgment [*5] should have prospective application, or for any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b) (5) - (6). As set forth in *Transp., Inc. v. Mayflower Servs., Inc.,* "the decision to grant Rule 60(b) relief from a final order is committed to the sound discretion of the district court and can be reviewed only for abuse of that discretion." 769 F.2d 952, 954 (4th Cir. 1985) (internal citations omitted).

## B. Civil Contempt

To hold a party in civil contempt, the following four elements must be established by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc,* 218 F.3d 288, 301 (4th Cir. 2000) (citing *Colonial Williamsburg Found. v. The Kittinger Co.,* 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992), [*6] aff'd, 38 F.3d 133, 136 (4th Cir. 1994)).

A court may "impose sanctions for civil contempt 'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *In re GMC,* 61 F.3d 256, 258 (4th Cir. 1995) (quoting *Connolly v. J.T. Ventures,* 851 F.2d 930, 932 (7th Cir. 1988) and citing *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303-04, 91 L. Ed. 884, 67 S. Ct. 677 (1947)). Although courts have broad discretion in fashioning remedies for civil contempt, which include "ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees," remedies and sanctions must be limited to either a remedial or compensatory purpose. *Id.* at 259; *see also Carbon Fuel Co. v. United Mine Workers of Am.,* 517 F.2d 1348, 1349 (4th Cir. 1975) (explaining that "civil contempt . . . is 'wholly remedial[,]' serves only the purpose of a party litigant, and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance") (citations omitted). Otherwise, [*7] a court, by venturing beyond the realm of compensatory or coercive remedies, *i.e.,* imposing punitive fines or sanctions "intended to vindicate the authority of the court," *id.,* will transform the proceeding into one for criminal rather than civil contempt. *See Carbon Fuel,* 517 F.2d at 1348 (giving no weight to fact that "proceedings were begun and designated as a civil contempt proceeding," and instead holding that "nature of the fine imposed determines the character of the proceedings without regard to the characterization of the proceedings, either procedurally or substantively, as made by the par-

ties themselves") (citing *Shillitani v. United States,* 384 U.S. 364, 370, 16 L. Ed. 2d 622, 86 S. Ct. 1531 (1966)).

### III. Analysis

#### A. Canon's motions to modify

Canon's March 11, 2005 motion seeks to set off from future payments $ 108,295.88 that it paid LGR pursuant to the Court's Payment Order for 33 photocopiers in Silverdale, Washington, that Canon claims belong to Canon, not LGR. Canon claims that the copiers were ordered under DAPS purchase order SA7065-01-F-0023, Modification P00002-1P03, which is one of the disputed leases that belongs to Canon pursuant to [*8] Article 8 and Appendix 11 of the parties' Settlement Agreement. LGR claims that the equipment is not on a disputed lease.

LGR has billed DAPS $ 14,066.40 per month for these copiers, and DAPS has paid Canon ten payments, or $ 140,644.00 for them. Canon has paid 77% of the payments it received from DAPS, or $ 108,295.88, to LGR on these copiers pursuant to the Court's Payment Order. This is the amount that Canon seeks to offset from its future payments to LGR.

Article 3.4 of the settlement agreement provides:

> Canon and LGR each acknowledges that it may have received Lease Payments from Lessees due and owing to the other. LGR and Canon each agree to cooperate with each other to develop pursuant to Section 3.6 below within 90 (ninety) days after the execution of this Agreement, a complete, current and accurate list of all lease payments held by Canon and all lease payments held by LGR under any Lease that is or was the subject of a transaction between Canon and LGR (respectively, the "Lease Payments Held by Canon" and "Lease Payments Held by LGR").

(Article 3.4).

Under the settlement agreement, LGR has forfeited its rights to any payments on the disputed leases. (Art. 8.1.2.2). [*9] A list of disputed leases is attached at Appendix 11 of the Settlement Agreement. Articles 8.1.2.4 and 8.1.2.5 direct LGR to remit payment of lease payments on disputed leases to Canon.

Article 4.3.1 requires LGR to pay to Canon, "the dollar amount of Lease Payments held by LGR; **PLUS** the dollar amount of payments held by LGR that are owed to Canon pursuant to . . . Section 8.1.2.4." "Lease Payment" is defined in the as "the payment, by check, electronic funds transfer or other means of payment, made by or on behalf of the Lessee payable to Canon or LGR, as the case may be, under the terms of the Lease." (Article 1.2.12).

Judge Hilton's Order of Reference directs the Special Master to verify and account for "all transactions necessary to prepare and reconcile . . . (ii) the schedule of Lease Payments Held by LGR described in Article 3.4 of the Agreement (including all payments described in Article[] . . . 8.1.2.4 of the Agreement); (iii) the schedule of Lease Payments Held by Canon described in Article 3.4 of the Agreement . . . ." (Order of Reference, Hilton, J. at 2). The Court's Order staying the matter explains that the calculation of the amount under Article 4.3.1 of [*10] the Settlement Agreement has been referred to the Special Master. (*See* December 8, 2003 Order at 8).

The Court held on October 6, 2005 that Canon was not entitled to set off certain amounts LGR received on two disputed leases under 8.1.2.5 because those amounts were being considered by the Special Master. However, the Special Master is not considering lease payments on equipment not on a disputed lease. These are payments that Canon has received from DAPS and which Canon must now remit 77% of to LGR under the Court's Payment Order.

Since it is unclear whether the equipment in question was on a disputed lease, and resolution of payments on the disputed leases has been stayed pending the report of the Special Master, the Court will deny Canon's March 11, 2005 motion to modify the Payment Order. The Special Master's Report should determine whether the equipment in question is on a disputed lease.

Canon's April 1, 2005 motion to modify seeks to allow Canon to use funds payable to LGR pursuant to the Payment Order to pay LGR's obligations to the Special Master in Civil Action No. 01-1086-A, and thereafter to deposit remaining funds payable to LGR in the registry of the Court pending [*11] the conclusion of proceedings on the Special Master's report in Civil Action No. 01-1086-A. The Court refuses to interfere with the proceedings in Civil Action No. 01-1086-A and will deny Canon's April 1, 2005 motion to modify the Payment Order. Until such time as the Special Master's Report is received, the Court declines to modify its Payment Order pursuant to either party's present or future requests unless there is extraordinary good cause shown.

#### B. Civil Contempt

In its March 11, 2005 motion to modify, Canon leads the Court to believe that it has not yet deducted the amounts it seeks to offset. However, LGR has provided documentation showing that Canon has indeed already engaged in self-help by deducting a portion of the amount that it seeks to deduct in the future. (*See* LGR's Opp'n, Ex.

2). Exhibit 2 consists of two email exchanges between Carolyn Grant, Credit Manager of Canon's Government Marketing Division, and Rick Carter at LGR. Grant's email of March 4, 2005 states that Canon has withheld payments related to the equipment on lease SA7065-01-F-0023 P00002-1P0, the equipment that is the subject of Canon's motion to modify. The attachments to her March 4, 2005 email [*12] show that Canon deducted $ 14,066.30 for the equipment on each of invoices 51952, 52779, and 54243. The attachment to her March 18, 2005 email shows that Canon deducted $ 14,066.30 on invoice 54658. Thus, Canon has already deducted $ 56,265.20.

Because Canon has once again engaged in self-help, LGR seeks to have Canon held in contempt. LGR seeks the $ 56,265.20 and the attorneys fees it has incurred in responding to the motion to modify.

As the Court explained in its Memorandum Opinion dated October 6, 2004, withholding amounts that Canon believes it is entitled to withhold before the Court modifies its Payment Order is considered self-help and prohibited. *See Halderman v. Pennhurst State Sch. & Hosp.,* 673 F.2d 628, 637 (3d Cir. 1982) (where party could have filed a motion to Rule 60(b), but instead engages in self-help, the trial court was left with "no alternative except restoration of the status quo ante bellum by a coercive contempt order").

Canon must comply with the Court's Payment Order, until such time as the Court modifies the Order. The Court refuses to modify the Payment Order. Accordingly, the Court will hold Canon in civil contempt and order Canon to [*13] remit to LGR the $ 56,265.20 it has withheld for payments on the 33 photocopiers. The Court will also order Canon to pay LGR the reasonable attorneys fees LGR has incurred in responding to Canon's motion to modify. This includes the attorneys fees in connection with LGR's motion to hold Canon in contempt as this motion was necessitated by Canon's self-help measures.

### IV. Conclusion

For the reasons stated above, Canon's March 11 and April 1, 2005 motions to modify the Payment Order are denied, and LGR's motion to hold Canon in civil contempt is granted. An appropriate Order will issue.

April 19, 2005

Alexandria, Virginia

/s/ James C. Cacheris

UNITED STATES DISTRICT COURT JUDGE