UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

BRETT KIMBERLIN,
Plaintiff,

v.                                    No. PWG 13 3059

NATIONAL BLOGGERS CLUB, et al
Defendants.

**MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT ACE OF SPADES FOR
MULTIPLE CONFLICTS OF INTEREST**

Now comes Plaintiff Brett Kimberlin and moves this Court to disqualify attorney

Paul Alan Levy from representing Defendant Ace of Spades because of his many

conflicts of interest.  In support of this motion, Plaintiff states (1) Mr. Levy has

represented Plaintiff in past legal matters and has consulted with him on various

matters recently, (2) Mr. Levy represented Plaintiff's anonymous co-defendant in

*Aaron Walker v. Brett Kimberlin,* and Aaron Walker is a Defendant in the present

case, (3) Mr. Levy contacted that anonymous defendant after filing his motion in this

case with an ominous warning for her to tell Plaintiff to back off this case, (4) Mr.

Levy published a blog post attacking Plaintiff and sent that post to his prior client

which she considered to be improper influence and a threat to turn on the former

client like Mr. Levy has turned on Plaintiff,  and (5) Defendant Ace of Spades

published a blog post after the filing asking his many readers to donate money to

Mr. Levy.

## STATEMENT OF FACTS

### Prior Representation Of Plaintiff

As Plaintiff states in his attached affidavit, Mr. Levy formally represented Plaintiff in past civil matters. Exhibit A. Also, over the past several years, Plaintiff has had several discussions with Mr. Levy that fall under the attorney client rubric. Plaintiff has never waived his attorney client relationship with Mr. Levy and in fact, prior to Mr. Levy's filing in this case, Plaintiff informed Mr. Levy that he would be laboring under a conflict of interest if he represented Defendant Ace of Spades. Id. Despite this warning, Mr. Levy went ahead with his conflicted representation.

### Prior Representation Of Plaintiff's Civil Co-Defendant

In 2012, Defendant Aaron Walker sued Plaintiff in this Court in *Walker v. Kimberlin* et al, case number JFM 12-1852, which was assigned to Judge Motz. One of the other defendants in that case was an anonymous blogger named BreitbartUnmasked. ("BU") Mr. Levy represented BU in that case when Defendant Walker and Defendant DB Capitol Strategies, which was the law firm representing Defendant Walker, attempted to learn the identity of BU. Mr. Levy contacted Attorney Dan Backer, the attorney for DB Capitol Strategies, to discuss removing BU from that case, which Mr. Backer rejected.

In the instant case, part of the RICO case allegation is that Dan Backer, on behalf of Defendants Aaron Walker and DB Capitol Strategies, engaged in extortion by attempting to get Plaintiff fired from his employment with Justice Through Music in exchange for dismissing Justice Through Music from the suit. Shortly after that extortion attempt, Judge Motz dismissed the case out of hand as without merit.

### Improper Threat By Mr. Levy

Mr. Levy wrote a blog post about his filing in this case that constitutes a direct attack on Plaintiff in a way that an attorney should not do to a former client. Exhibit B. He then immediately sent that post to his former client BU with a link to the post and the following ominous language: "I'm afraid your buddy Brett has gone too far. Maybe his friends can talk him out of this."

**From:** Paul Alan Levy [mailto█████████████
**Sent:** Tuesday, February 18, 2014 11:58 PM
**To:** 'BU'
**Subject:** I am afraid your buddy Brett has gone too far

http://pubcit.typepad.com/clpblog/2014/02/brett-kimberlins-attack-on-free-speech.html

Maybe his friends can talk him out of this

According to a blog post on the BU website, this email was taken by BU as an attempt by Mr. Levy to improperly influence this case and as a veiled threat that if BU wanted to remain anonymous, she had better tell Plaintiff to back off of this lawsuit. Exhibit C.

### Improper Quid Pro Quo By Mr. Levy And Defendant Ace of Spades

Shortly after Mr. Levy wrote his blog post attacking Plaintiff, Defendant Ace of Spades published his own blog post, in which he asked his readers to donate to Mr. Levy to reward him for representing Defendant Ace of Spades. Exhibit D. That post has had close to 300 comments and many of his readers stated that they were donating to Mr. Levy.

## ARGUMENT

Mr. Levy is laboring under a conflict of interest because he previously represented Plaintiff, he previously represented co-defendant of Plaintiff's in case brought by two of the Defendants in the instant case, and he is now accepting money from Defendant Ace of Spade's readers in order to attack Plaintiff. This is adversely affecting Plaintiff.

As Plaintiff states in his declaration, he did not waive his attorney-client relationship with Mr. Levy and specifically invoked it when he learned that Mr. Levy was planning to represent Defendant Ace of Spades. Plaintiff now believes that Mr. Levy will use confidences he has learned from Plaintiff to adversely affect Plaintiff. In fact, Mr. Levy has already adversely attacked Plaintiff in his filing and in his blog post on behalf of Ace of Spades.

Mr. Levy has also made an implied threat to his former client BU that she had better tell Plaintiff to back off of this case or Mr. Levy was going to harm Plaintiff's interests, and he linked to the blog post to show BU what he was capable of doing to a former client if he did not heed such warnings. BU felt that Mr. Levy was threatening her and improperly trying to get her to influence Plaintiff to drop this legal action, which would be adverse to Plaintiff's interests.

Mr. Levy's conflicts of interest are multiple and violate many provisions of the Code of Professional Responsibility and ABA Model Code of Professional Responsibility. These are:

**DR 2-101 -Publicity in General.**

(A) -A lawyer shall not, on behalf of himself, his partner, associate or any other lawyer affiliated with him or his firm, use or participate in the use of any form of public communication containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim.

Mr. Levy used his blog post to make false, deceptive, self-laudatory and unfair statements or claims about this case and about Plaintiff. For example, he states:

"Released from prison in 2000, Brett Kimberlin has now turned his jailhouse lawyer skills on a new pool of victims: Bloggers who dare to publicly mention, on their small-scale electronic newspapers, Brett Kimberlin's criminal record. And the avalanche of frivolous, vexatious, and outright malicious lawsuits begins anew, as well as more alarming harassments.

To portray the Defendants in this case as "victims" is preposterous, and to state that they are small-time electronic newspapers is incredible, or to state that Plaintiff has filed an avalanche of frivolous, vexations, and outright malicious lawsuits "anew" as well as more alarming harassments is outright defamation. Plaintiff is the victim who has been falsely accused by the Defendants of serious crimes in a multi-year campaign. Defendants Beck, Malkin, Ace of Spades, James O'Keefe, Simon & Schuster and the others are not small scale by any stretch of the word since they reach tens of millions of readers and viewers and have a combined worth in the hundreds of millions. What does Mr. Levy mean by "anew?" He has not identified any other frivolous, vexations, and outright malicious lawsuits brought by Plaintiff because there are none. And what other "alarming harassments" is he talking about? Is he alleging that Plaintiff is involved with swattings?

And Mr. Levy states:

Various sides have sought my assistance in connection with various aspects of this series of lawsuits. …. On the other hand, at one point I agreed to represent an anonymous blogger in opposing an effort by a Kimberlin adversary to obtain her

identifying information so that the adversary could sue her for defamation along with Kimberlin himself. Happily, I was able to talk the plaintiff's lawyer out of pursuing such discovery; in fact, he had an attack of good judgment and dismissed the case altogether.

The last sentence of this statement by Mr. Levy is pure fiction. The "plaintiff's

lawyer" in that case was Dan Backer, who works for Defendant DB Capitol

Strategies, and Mr. Backer emphatically refused to stop discovery and did not

dismiss the case at all but tried to use it to extort Plaintiff's employer into firing him,

and it was Judge Motz who dismissed the case in a very unfavorable decision.

Clearly, these public statements are adverse to Plaintiff, are meant to harm him, and

are false, misleading, deceptive and unfair in violation of the above disciplinary rule.

### DR 2-103 -Recommendation of Professional Employment.

(C) -A lawyer shall not request a person or organization to recommend or promote the use of his services or those of his partner or associate, or any other lawyer affiliated with him or his firm, as a private practitioner.

### DR 5-107 -Avoiding Influence by Others Than the Client.

(A) -Except with the consent of his client after full disclosure, a lawyer shall not:
(1) -Accept compensation for his legal services from one other than his client.
(2) -Accept from one other than his client any thing of value related to his representation of or his employment by his client.

Mr. Levy, within minutes of filing his pleading electronically with this Court,

posted his defamatory blog post. And shortly thereafter, Defendant Ace of Spades

promoted the use of Mr. Levy's services by posting a laudatory post about Mr. Levy

and linking to Mr. Levy's post, and asking his readers to donate big time to Mr. Levy.

Mr. Levy has written a blog post about the matter here. If you like reading motions, you can read his response in opposition to Kimberlin's motion here. It was just submitted yesterday. Mr. Levy is taking this case *pro bono* -- donating his time and expertise. However, Public Citizen does, of course, take donations, and if the mood strikes you to support someone, on principle, who is himself taking on a fight not his

own, on principle, you can donate to <u>Public Citizen's efforts to protect online speech,</u> <u>to protect the First Amendment, here.</u> ...

If you were thinking of hitting the donation button for me recently, hit it instead for Mr. Levy. He's already spent a lot of time on this case, and will undoubtedly spend a lot more. <u>http://ace.mu.nu/archives/347274.php</u>

Clearly, it appears that there was coordination between Mr. Levy and Defendant

Ace of Spades to use his multitude of readers to promote the use of Mr. Levy's

services and to compensate Mr. Levy by people "other than his client" even though

Mr. Levy professed to take the case "pro bono."

**DR 4-101 -Preservation of Confidences and Secrets of a Client.**

(A) -"Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.
(B) -Except when permitted under DR 4-101(C), a lawyer shall not knowingly:
(1) -Reveal a confidence or secret of his client.
(2) -Use a confidence or secret of his client to the disadvantage of the client.
(3) -Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

Again, Plaintiff did not waive any attorney client relationship but rather invoked

it fully both in communications to Mr. Levy and to Defendant Ace of Spades. Mr.

Levy, however, totally ignored Plaintiff's invocation by representing Defendant Ace

of Spades, and then attacking Plaintiff in both his motion and in his blog post with

outright falsehoods and ad hominem character assassination.  These falsehoods and

attacks carried much greater weight to the average reader because Mr. Levy

previously represented Plaintiff.  Therefore, they would believe that they were true

and that Plaintiff shared confidences with Mr. Levy that he is now divulging in court

filings and in his blog post.  Clearly, this violation of the attorney client relationship

is embarrassing to Plaintiff and likely to disadvantage and be detrimental to him.

### DR 7-106 (G) –Extrajudicial Publicity

A lawyer or law firm associated with a civil action shall not during its investigation
or litigation make or participate in making an extrajudicial statement, other than a
quotation from or reference to public records, that a reasonable person would
expect to be disseminated by means of public communication and that relates to:
(1) -Evidence regarding the occurrence or transaction involved.
(2) -The character, credibility, or criminal record of a party, witness, or prospective
witness.
(3) -The performance or results of any examinations or tests or the refusal or failure
of a party to submit to such.
(4) -His opinion as to the merits of the claims or defenses of a party, except as
required by law or administrative rule.
(5) -Any other matter reasonably likely to interfere with a fair trial of the action.

   As noted above, Mr. Levy, within minutes of filing his pleading in this case,

violated the above disciplinary rule by making extrajudicial statements attacking

Plaintiff in his blog post, making outright false and unfair statements, coordinating

with his client Defendant Ace of Spades to link to his blog post to give it massive

readership and raise money for Mr. Levy, and adversely affect Plaintiff in the eyes of

the public, the legal community, and to any potential jury pool.

   Clearly, Mr. Levy's actions demonstrate that he has "differing interests," which is

defined by the Rules as "every interest that will adversely affect either the judgment

or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse,

or other interest."

**Mr. Levy's Conduct Violates The Code Of Professional Responsibility And The Maryland Lawyer's Rules Of Professional Conduct On Conflicts Of Interest**

The Code of Professional Responsibility as mirrored by the Maryland Lawyer's

Rules of Professional Conduct specifically prohibits the kinds of conflicts of interest

exhibited by Mr. Levy.

**RULE 1.7 CONFLICT OF INTEREST: GENERAL RULE**
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the
representation involves a conflict of interest. A conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be
materially limited by the lawyer's responsibilities to another client, a former client
or a third person or by a personal interest of the lawyer.

As stated above, Mr. Levy is representing Defendant Ace of Spades in a way that is

directly adverse to the interests of Plaintiff.

**RULE 1.8 CONFLICT OF INTEREST: CURRENT CLIENTS: SPECIFIC RULES**
(b) A lawyer shall not use information relating to representation of a client to the
disadvantage of the client unless the client gives informed consent ….
(c) A lawyer shall not solicit any substantial gift from a client, including a
testamentary gift….

Mr. Levy is using information relating to the representation of Plaintiff to

disadvantage him without his informed consent.  In fact, Mr. Levy is doing so in spite

of Plaintiff's statement that he is laboring under a conflict of interest.

Moreover, as detailed above, Mr. Levy has coordinated with Defendant Ace of

Spades for both a substantial financial and testamentary gift in the form of a

laudatory blog post and a request for donations.

**RULE 1.9 DUTIES TO FORMER CLIENTS**
(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent....

Mr. Levy has represented Plaintiff's co-defendant BU, in a related case involving some of the same parties in the instant case in which that co-defendant's interests are materially adverse to the interests of Defendant Ace of Spades, and that former client has not given informed consent to allow that conflict or waived that conflict.

### Conclusion

Mr. Levy is laboring under multiple conflicts of interest that are adversely affecting Plaintiff. These conflicts violate Disciplinary Rules, the Code of Professional Responsibility and the Maryland Lawyer's Rules of Professional Conduct. Therefore, this Court should disqualify him from representing Defendant Ace of Spades in this matter.

Respectfully submitted,

Brett Kimberlin
8100 Beech Tree Rd
Bethesda, MD 20817
(301) 320 5921
justicejtmp@comcast.net

## Certificate of Service

I certify that I have served a copy of this Response on Lee Stranahan, Ron Coleman, Catilyn Contestable, Michael Smith, and Mark Bailen by email, and on Defendants Hoge, The Franklin Center, McCain and Walker by First Class mail this 21st day of February, 2014.

Brett Kimberlin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

BRETT KIMBERLIN,
    Plaintiff,

v.                                                         No. PWG 13 3059

NATIONAL BLOGGERS CLUB, et al
    Defendants.

**DECLARATION OF PLAINTIFF BRETT KIMBERLIN RE ATTORNEY PARUL LEVY**

I, Brett Kimberlin, pursuant to the provisions of 28 USC 1746, that the following is true and correct under penalty of perjury.

1. Paul Levy has represented me in the past and I have consulted with him on various legal matters over the past several years that I considered to be under the attorney client umbrella.

2. Mr. Levy also represented an anonymous co-defendant of mine in a case brought by Aaron Walker in this Court before Judge Motz. Mr. Levy contacted Mr. Walker's attorney, Dan Backer, who is the senior partner at the law firm DB Capitol Strategies. Both Aaron Walker and DB Capitol Strategies are defendants in the instant case. Judge Motz dismissed that case out of hand.

3. Mr. Levy contacted me prior to filing his pleading in the instant case on behalf of Defendant Ace of Spades and asked me to drop my attempts to serve that defendant. I told Mr. Levy and I wrote an email to the defendant stating that Mr. Levy would be laboring under a conflict of interest if he

$Ex\ A$

represented Defendant Ace of Spades. Those communications were very clear that I did not waive my attorney client relationship.

4. Mr. Levy filed a pleading in this case and published a blog post which are adverse to me. They attack me, defame me and amount to character assassination by my former attorney, Mr. Levy. Because they come from Mr. Levy, they carry more weight than would similar attacks by persons who did not have an attorney client relationship with me.

5. I was informed by a reporter that Mr. Levy had sent an email to my former co-defendant in the Judge Motz case shortly after Mr. Levy published his blog post and filed his pleading in this case. In that email, which I saw a copy of in an article, Mr. Levy tells the former client that I have gone too far and to back off of this case. The email then referenced the blog post Mr. Levy published attacking me.

6. I was shocked that Mr. Levy would contact a former client to tell them that I had gone too far and to back off from a civil action to redress tortious wrongs against me. I also took this as an ominous threat by Mr. Levy to take some unethical action against me if I did not back off.

7. I find it unethical and abhorrent for Mr. Levy to publish a blog post and a pleading attacking me personally, both stating falsehoods to adversely affect the instant case and me.

8. Mr. Levy's conduct has embarrassed me, been detrimental to me, and has the very real possibility of disadvantaging me in the instant case.

Dated his 24th day of February 2014.      Brett Kimberlin

Wednesday, February 19, 2014

# Brett Kimberlin's Attack on Free Speech

by Paul Alan Levy

Somewhat more than 25 years ago, I represented a federal prisoner named Brett Kimberlin who made a sensational accusation against a sitting Senator who was running for Vice-President – Kimberlin claimed that, during his extensive career as a drug dealer, one of his customers had been a then-law-student who was the scion of a major newspaper publisher, Dan Quayle. Apparently hoping to block Kimberlin's access to the major media, prison authorities put him in solitary confinement. Kimberlin was in prison for some horrifying crimes– the planting of several bombs in Speedway, Indiana - and we had no idea whether Kimberlin was telling the truth about Quayle. But the Justice Department was not punishing him on the theory that his speech was deliberately false and defamatory (in which case it would have been unprotected by the First Amendment; but how would the Justice Department have known whether Quayle was or was not a drug customer anyway?), and even thugs have the right to criticize public officials. So we pursued documents about his confinement under the Freedom of Information Act, hoping to set up a *Bivens* action against the responsible federal officials. (The action under *Bivens* and other authorities was brought by pro bono attorneys from Arnold & Porter and was ultimately settled after several denials of summary judgment and trips to the DC Circuit and even the Supreme Court).

Ex B

**Lawsuits by and Against Kimberlin over Free Speech Activities**

After his release from prison, Kimberlin reinvented himself as an activist on such issues as addressing flaws in electronic voting as well as encouraging young people to register to vote, but the liberal direction of his politics made him the logical target of attacks from the right-wing end of the blogosphere, which recalled his criminal career and argued that it colored everything he had done since.  Some of his non-profit activities are creditable indeed, but it seems to me that Kimberlin has been undone by overconfidence in the skills that he developed as a jailhouse lawyer:  Kimberlin has responded to the online criticism with a campaign of pro se litigation, suing both individuals and groups of critics; some of his critics have sued Kimberlin and others who support Kimberlin.   There has been plenty of excess on both sides, as far as I am concerned.

Various sides have sought my assistance in connection with various aspects of this series of lawsuits.  I had a chat with Kimberlin some time ago in which I suggested that his campaign to suppress criticism though litigation had rather gone overboard.  At the time, he told me that his critics were not just criticizing him, but were physically stalking him and criticizing his wife as well, and that he was not prepared to desist from litigation so long as that was happening.  On the other hand, at one point I agreed to represent an anonymous blogger in opposing an effort by a Kimberlin adversary to obtain her identifying information so that the adversary could [sue her for defamation along with Kimberlin himself]. Happily, I was able to talk the plaintiff's lawyer out of pursuing such discovery.

**Kimberlin's Current Lawsuit**

Most recently, Kimberlin has brought a RICO action that has nothing to do with physical stalking or criticism of his wife. *Kimberlin v National Bloggers Club, et al.*, brought this past fall in the United States District Court for the District of Maryland, names more than twenty of Kimberlin's critics, charging them with a conspiracy to defame him as being responsible for the "SWATting" of certain online critics (SWATting refers to the triggering of a visit by a police SWAT unit to the victim's home through the placement of a false call for help in connection a fictional violent crime).   The complaint, which runs on for 50 pages and more than 200 paragraphs, also includes a somewhat bizarre claim that his critics have improperly encouraged donations to something called the "National Bloggers Club" by falsely claiming that it enjoys tax exempt status, entitling its donors to deduct contributions to that entity.  A number of the allegations about the wrongful speech of the defendants are extremely vague, quoting selected words but asserting that they "impute" other wrongful conduct.

Among the defendants in the action is an anonymous blogger whom Kimberlin sued for allegedly "imputing" that Kimberlin was involved in SWATting. (Complaint paragraph 66, citing this blog post).  Because the blog post said nothing of the kind, I agreed to represent defendant "Ace of Spades" in opposing Kimberlin's request for judicial permission to pursue discovery to identify Ace of Spades.

As I usually do in these situations, I began by trying to persuade

Kimberlin to drop his discovery request because the blog post in question is not defamatory.  Kimberlin responded by detailing a number of different statements that Ace of Spades had made which, Kimberlin threatened, would be made the subject of an amended complaint.  And when Kimberlin learned that I had not been dissuaded, he sent Ace of Spades an email threatening that, unless Ace immediately accepted Kimberlin's unspecified terms, Kimberlin would unmask her and she might suffer the same fate as other bloggers whom Kimberlin had managed to identify (Kimberlin mentioned one blogger who had lost his job and suffered two years of unemployment).

**Opposition to Discovery Under *Dendrite***

Yesterday, therefore, we joined with the ACLU of Maryland in opposing Kimberlin's motion for leave to take discovery, arguing that the federal courts in Maryland should join the Maryland Court of Appeals in adopting the *Dendrite* balancing test.  Although Kimberlin has yet to identify any defamatory statements, not to speak of producing evidence of falsity, the case also presents a real possibility of employing the final, "balancing" stage of *Dendrite*, which the Maryland Court of Appeals endorsed in *Independent Newspapers v. Brodie*, because Ace has real reason to fear retaliation if she is identified.  This could involve either the economic consequences that Kimberlin threatened explicitly, or even physical consequences in light of the SWATting phenomenon visited by unknown persons on several bloggers involved in controversies with Kimberlin, not to speak of Kimberlin's own violent past.

# Why Paul     Alan Levy Is Embarrassing Himself For     Ace Of Spades

Written by: Xenophon on February 21, 2014.

Ace of Spades being, um, "anonymous" on television
Attorney Paul Alan Levy has been described as a "pioneer" in protecting
internet anonymity, so it is not really surprising that Ace of Spades would
want his representation against Brett Kimberlin's RICO lawsuit. However,
Mr. Levy will need to get his facts straight before he submits his motions,
and he will need to untangle major conflicts of interest before showing up
to court. When he announced that he was taking the case late Tuesday
night, Levy made some glaring factual errors:

*Various sides have sought my assistance in connection with various
aspects of this series of lawsuits.  I had a chat with Kimberlin some
time ago in which I suggested that his campaign to suppress
criticism though litigation had rather gone overboard.  At the time,
he told me that his critics were not just criticizing him, but were
physically stalking him and criticizing his wife as well, and that he
was not prepared to desist from litigation so long as that was
happening.  On the other hand, at one point I agreed to represent an
anonymous blogger in opposing an effort by a Kimberlin adversary
to obtain her identifying information so that the adversary could sue
her for defamation along with Kimberlin himself. Happily, I was
able to talk the plaintiff's lawyer out of pursuing such discovery; in*

Ex  C

*fact, he had an attack of good judgment and dismissed the case altogether.*

In fact, Mr. Levy agreed to represent this website in Aaron Walker's failed 2012 lawsuit against Kimberlin. Walker had attempted to drag us into that litigation by claiming we had libeled him by calling him a "useless attorney" at the behest of Mr. Kimberlin. In order to defend us, Mr. Levy required a one-month defamation review for our 1,200-word blog post and demanded extensive, meticulous documentation. As we will demonstrate, he clearly has not applied this same rigorous approach in taking on Ace of Spades as a client. Furthermore, Mr. Levy's assertion that he talked Dan Backer out of pursuing discovery in that case is a self-serving falsehood. Walker and Backer had their case dismissed with prejudice by Judge Motz, who did not cite Mr. Levy anywhere in his blistering decision. Mr. Backer, who had called *Walker v Kimberlin, et al* "the case of a lifetime," did not suffer an attack of good judgment. That is not what happened, and Mr. Levy knows it perfectly well.

As a lawyer for Public Citizen, Levy was also involved in litigation over Kimberlin's case more than a quarter-century ago. Obviously, he has conflicts of interest here, and he exacerbated them immediately after posting his announcement by contacting the former proprietor of this website in what appears to be an effort to influence Mr. Kimberlin's litigation. Remember, this is a communication to someone Mr. Levy has previously defended, and who had no other role in any of these lawsuits besides reporting on them.

**From:** Paul Alan Levy [mailto█████████████]
**Sent:** Tuesday, February 18, 2014 11:58 PM
**To:** 'BU'
**Subject:** I am afraid your buddy Brett has gone too far

http://pubcit.typepad.com/clpblog/2014/02/brett-kimberlins-attack-on-free-speech.html

Maybe his friends can talk him out of this

The heart of Mr. Levy's argument is that Kimberlin's lawsuit is an 'assault on free speech.' He asserts that Ace of Spades "has real reason to fear retaliation if she is identified." (Levy always refers to anonymous defendants in the feminine.) We find this claim hilarious, as Ace has never been afraid to be seen in public and his pictures are available on Google. Ace has spoken at the Conservative Political Action Conference, and photographs from that event appear in his fans' blogs — for example, we found one in this post about "the ten hottest new media guys on the right." Is this person exposing Ace to retaliation? They have certainly opened him up for identification.

Ace's face is well-known enough that in 2008, the Village Voice was able to commission a cartoon version for satirical purposes. Rather than worry about retaliation at the time, his fans found it flattering.

Ace has also appeared on Fox News, where his face and voice were not obscured or altered in any way. So it is actually not true that Ace "fears retaliation." He is already a public person who, as far as we can tell, has spent more time on television in recent years than Brett Kimberlin has. What Ace genuinely fears is that he might lose the mystique of being the "anonymous" king of right wing bloggers. As things stand, he gets to have

his anonymity cake and eat it too, appearing in public and accepting the adulation of his adoring fans without using his real name. But Mr. Levy is being disingenuous by even raising this issue, because our sources tell us that Mr. Kimberlin recently offered Ace the chance to reach a settlement without giving up his identity. Kimberlin's objectives are to be made whole and have defamatory content removed from the internet, and outing Ace is not necessary to those ends.

Speaking of defamatory content: Mr. Levy asserts that Ace has not defamed Mr. Kimberlin, but we are quite sure that he did not do a defamation review  as thorough as the one he did while defending BU. Consider this post in which Ace asks Congress to pass an unconstitutional bill of attainder, declare Mr. Kimberlin guilty of an ongoing terror campaign, and forbid him from ever suing anyone ever again. It is the shortest of the three worst posts at Ace's blog.

*Released from prison in 2000, Brett Kimberlin has now turned his jailhouse lawyer skills on a new pool of victims: Bloggers who dare to publicly mention, on their small-scale electronic newspapers, Brett Kimberlin's criminal record. And the avalanche of frivolous, vexatious, and outright malicious lawsuits begins anew, as well as more alarming harassments.*

That was in June of 2012, more than a year before Mr. Kimberlin filed his first lawsuit against any of these people. Mr. Levy, who urged Mr. Kimberlin not to file any lawsuits against Ace or his fellow smear-merchants last year, is perfectly aware of the truth — but in his announcement, he seems to endorse the lie. He even echoes Ace by denigrating Kimberlin as a "jailhouse lawyer."

*After his release from prison, Kimberlin reinvented himself as an activist on such issues as addressing flaws in electronic voting as*

*well as encouraging young people to register to vote, but the liberal*
*direction of his politics made him the logical target of attacks from*
*the right-wing end of the blogosphere, which recalled his criminal*
*career and argued that it colored everything he had done since.*
*Some of his non-profit activities are creditable indeed, but it seems*
*to me that Kimberlin has been undone by overconfidence in the skills*
*that he developed as a jailhouse lawyer: Kimberlin has responded to*
*the online criticism with a campaign of pro se litigation, suing both*
*individuals and groups of critics; some of his critics have sued*
*Kimberlin and others who support Kimberlin. There has been*
*plenty of excess on both sides, as far as I am concerned.*

This is flabbergasting stuff, because Mr. Levy is perfectly familiar with just
how crazy the witch hunt has been. There have been no "logical targets,"
only convenient ones. In this post, Ace called Kimberlin "nefarious" and
referred to his "henchmen," a theme that encouraged further defamation
and actual litigation. Walker's 2012 lawsuit accused two men, Ron
Brynaert and Neal Rauhauser, of being Mr. Kimberlin's 'henchmen.' But
Mr. Kimberlin has never met Mr. Brynaert, and he has neither paid nor
directed Mr. Rauhauser to do anything to anyone. Later, defendant Robert
Stacy McCain made extraordinary efforts to connect a woman named
Melissa Brewer with Mr. Kimberlin; she has never met or spoken to the
gentleman, and contrary to McCain's assertions she has never written for
this website. For reasons that still make no sense to us, defendants also
fell all over themselves trying to "prove" that one of our regular
commenters is Alabama blogger Roger Shuler. The harassment campaign
against these supposed "henchmen" has led William Hoge to file hundreds
of criminal charges against Bill Schmalfeldt, a former writer for this site, for

the "crime" of tweeting at him. Hoge, Walker, and friends have filed dozens of peace orders against Schmalfeldt and Kimberlin.

Then there are the creepy parts of this story: people calling Mr. Kimberlin's neighbors, taking pictures of his daughters, calling and threatening his 80 year-old mother, sending him pictures of guns, signing him up for subscriptions to right wing magazines that flood his mailbox, causing his children to be bullied at school, and reporting him to the FBI so that they show up unannounced at his home and ask his family ridiculous questions. What corresponding "excesses" have been incurred by "the Kimberlin side"? Mr. Levy does not say, and cannot say — because there are none. We invite him to try.

Ace accused Kimberlin of harassment and abuse without any evidence. In his open letter to Congress, Ace accused Kimberlin of an unsolved murder and of operating a criminal scam, called him a menace to society and a "digital terrorist," and worried that he was building bombs in his basement. There was never anything "logical" about any of this, especially the hyperbolic accusations of SWATing. If that is not defamation, we invite Mr. Levy to explain what he considers to be defamation. Given our own experience with his workflow in defamation cases, just this one open letter to Congress ought to require months of review, and it is not the only defamatory post Ace wrote about Mr. Kimberlin. Yet as near as we can tell from our sources, Mr. Levy spent days, not weeks, studying the case before he took it.

Ace seems to be very pleased with his choice of representation, but we think Mr. Levy is in real danger of being embarrassed by the "jailhouse lawyer" because he wants the court to apply a different standard of defamation. We doubt the court will agree.

*Public Citizen filed a brief in opposition to that motion, arguing that the Maryland federal court should apply the same test for the identification of anonymous Internet speakers as Maryland courts, which follow the Dendrite test, and that Kimberlin has not met that test.*

That is false: Maryland courts use the Brodie test of defamation. In fact, Maryland courts created the Brodie test. Furthermore, Mr. Kimberlin passed that test months ago in his state case against Walker and friends. Levy is asking a federal court to apply a higher standard of proof to anonymous persons than the one used for journalists and publications. It is true that anonymous speech shares the same protections as non-anonymous speech, but not true that anonymous speech enjoys greater protection. This is a losing argument, and surely Mr. Levy knows that it will lose. But does he even really care?

Mr. Levy has already suffered a string of embarrassments lately. For example, he recently lost a big decision in the Hadeed Carpets v Yelp case, where a business seeks to determine whether its competitors have defamed the company by posing as customers. So why would he take on Ace's defense and offer up such a loser of an argument? The obvious answer is money. Levy's total defense of BU amounted to a few letters to Dan Backer. He never appeared in court or submitted a single motion. But he indicated to the previous proprietor of this site that he would do so if he was paid lots of money.

Later, when Bill Schmalfeldt faced bogus criminal charges and systematic defamation, the Maryland ACLU declined to help. Mr. Levy was not interested in defending our disabled journalist friend pro bono, either. Altogether, we have been unimpressed by either the organization or the attorney. But Ace has money at his back, and that changes everything.

Even if Levy gets embarrassed in the courtroom, he still stands to profit just by charging at hourly rates.

We suspect that Public Citizen and the Maryland ACLU are motivated by money as well. It is rare for either organization to insert themselves in someone else's civil case, but Ace linked directly to their donation button and asked readers to contribute to the organization. Because his blog has some of the highest traffic in the right wing universe, they may perhaps expect a dissonant windfall.

This is a strange triangulation, a bit like Stormfront holding a fundraiser for the Southern Poverty Law Center. Ace saw it as an opening to claim the mantle of bipartisan free speech interest, but this sordid saga has never been about politics or free speech. It is about money.

The fraud charge at the heart of Mr. Kimberlin's lawsuit is not hard to understand. Defendants spent more than a year raising money to "defend themselves" from lawsuits he had never filed, trying to spur legislation against him, suing him, and holding a social media lynch mob to call for his head, spurring genuine acts of physical stalking and harassment. Mr. Kimberlin's RICO lawsuit against them has nothing to do with "logical targets" or political points of view. It is about them getting rich off the defamation of Mr. Kimberlin, whom they consider "libel-proof." Apparently, the money has convinced Mr. Levy and the underpaid, underfunded, underperforming lawyers at the Maryland ACLU that the defamers are right. Who knew the champions of free speech were so easily bought?
- See more at: http://www.breitbartunmasked.com/latest-news/why-paul-alan-levy-is-embarrassing-himself-for-ace-of-spades/#sthash.OfjCEDFL.dpuf

<span style="color:red">**February 19, 2014**</span>

# Paul Alan Levy, First Amendment Lawyer Specializing in Protecting Online Speech, Opposes Brett Kimberlin's Attempt to Convince a Court to Compel Production of My Personal Information

Paul Alan Levy is one of the nation's top First Amendment lawyers and the nation's top expert, period, in a particular specialized field-- in the defense of John Does, anonymous writers, from subpoenas seeking to "out" them as part of a lawsuit. And defending online speech as a general matter -- see this case, for example, which is pretty egregious.

He is the country's most authoritative jurist on this subject, and his track record consists almost entirely of wins.

He has kindly agreed to represent me in fighting Brett Kimberlin's motion to compel a third party to give him my name and address, so he can then sue me in a suit which, in my opinion, is entirely baseless, and once again an attempt to chill Free Speech rights.

Which is what this has been about since the beginning.

What makes me particularly happy that Mr. Levy is representing me is that he is, by his confession, a "lefty." It has bothered me from the outset of this entire affair that people who I thought might take an interest -- people in the left-leaning media who ought to care about attempts to chill and punish Free Expression, left-leaning bloggers whose very jobs put them in danger of having the same tactics used against them -- failed to do so.

Instead, what seems to have happened is everyone just "picked teams," based on the typical tribal impulses. If anyone on the left wrote about this -- not because they agreed, politically, with any of Brett Kimberlin's targets, but because they supported the *principle* that people ought to be free to comment on news and newsworthy stories without the threat of a lawsuit hanging over them. (One person did cover it, briefly, in an "Interesting Thing Going on on the Internet" sort of way, but without actually examining the issues raised.)

And as far as the media, I'm afraid, the idea seemed to be "a pox on both their houses." One guy is using the courts to pound critics and stifle free speech; but on the other hand, *these guys are conservatives*, so, of course, they are Unpeople, and They Were Probably Doing Something Bad Anyway.

I am very grateful that people like Mr. Levy exist, who do not simply pick tribes, but who undertake to support and defend important *principles*, whether any particular support of this principle might help someone on the right, or someone on the left, or someone not particularly political at all, like someone who anonymously criticizes a company's performance on a message board, and whose identity is then sought by a company willing to use a little bit of lawfare to shut down criticism.

I am heartened by this. I am not just heartened to have impeccable representation in this matter (and by this matter, I mean only the subpoena to out me), but I am heartened to know that even in this state of utter polarization, in which people routinely declare an allegiance to The Tribe Über Alles, there are still people who will fight for principle, not tribe, and for what's right, not what's politically agreeable to one's "side."

I should also note that the Maryland ACLU has agreed to serve as Mr. Levy's co-counsel in the matter. (Levy will be applying to the court to appear *pro hac vice*, just for this matter, and he needs Maryland co-counsel to do so, I think.)

I did not expect the Maryland ACLU, either, to come to my aid, but come to my aid they have.

Mr. Levy has written a blog post about the matter here.

If you like reading motions, you can read his response in opposition to Kimberlin's motion here. It was just submitted yesterday.

Mr. Levy is taking this case *pro bono* -- donating his time and expertise. However, Public Citizen does, of course, take donations, and if the mood strikes you to support someone, on principle, who is himself taking on a fight not his own, on principle, you can donate to Public Citizen's efforts to protect online speech, to protect the First Amendment, here.

I should note that Public Citizen is one of Ralph Nader's organizations. The donation button I've linked is specifically the donor button for the organization's First Amendment practice, not its other efforts.

Case 8:13-cv-03059-PWG   Document 96-1   Filed 03/04/14   Page 27 of 27

If you were thinking of hitting the the donation button for me recently, hit it instead for Mr. Levy. He's already spent a lot of time on this case, and will undoubtedly spend a lot more.

One last point: I know that this is obviously a newsworthy subject, and that people naturally like commenting on newsworthy subjects, particularly when the subject is one you personally know (sort of -- in a fake internet friend sort of way).

I would however just caution you all, as usual, to exercise judgment and discretion in commenting. The problem isn't the law, per se: The problem is, as ever, an extremely litigious person.