UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

BRETT KIMBERLIN,
Plaintiff,

v.                                             No. PWG 13 3059

NATIONAL BLOGGERS CLUB, et al
Defendants.

**PLAINTIFF'S REPLY TO ACE OF SPADE'S OPPOSITION TO MOTION FOR DISCOVERY TO IDENTIFY ACE OF SPADES**

Now comes Plaintiff Brett Kimberlin and replies to Defendant Ace of Spades' ("Ace") opposition to Plaintiff's Motion for a Subpoena to identify Ace.

### Statement

1. Plaintiff, as a pro se litigant, cannot simply issue a subpoena in this case. Instead, he has to request from the Court that the subpoena be issued.

2. Plaintiff has been unable to serve Defendant Ace despite his best efforts at contacting Ace via email, contacting the registrant of his blog, and sending the suit, certified mail, to that registrant, only to have it returned.

3. Ace runs his blog through an offshore host that does not respond to orders from American courts. Therefore, Plaintiff sought to learn the identity and address of Ace through a Virginia based company, Intermarkets, he pays to drive traffic to his site.

4. Plaintiff contacted Intermarkets several times by phone and talked with their executive staff and asked for the name and address of Ace but was told that Intermarkets would only provide that information via subpoena. Therefore,

1

because Intermarkets is located in Reston, Virginia, Plaintiff filed a Motion with the Alexandria US District Court under the miscellaneous docket asking for a subpoena. A hearing was held and the Judge told Plaintiff that he had to get the subpoena from this Court.

5. Plaintiff then asked the Clerk of this Court to issue the subpoena so Plaintiff could identify and serve Ace, but was told that Plaintiff would have to request the subpoena from the Court, which Plaintiff did. That motion is what triggered Ace's Opposition to Discovery.

6. This Court has not issued the subpoena and it has not been served on Intermarkets yet Ace has asked the Court to deprive Plaintiff of his statutory right to a subpoena to serve a litigant in this case. This request for special immunity from suit is without merit and grossly unfair to all the other Defendants who have been served and are engaged in the legal process set forth by statute.

7. Ace has waived his anonymity by making public appearances both at major conferences and as a commentator on FOX News before millions of people.

### ACE'S LAWYER IS LABORING UNDER CONFLICTS OF INTEREST

8. Ace's counsel, Paul Levy, prepared his motion, communicated with Ace, communicated with Plaintiff, and wrote about the motion in a blog post. Mr. Levy has also been Plaintiff's attorney and is using that attorney-client relationship against Plaintiff's interests.

9. Initially, Plaintiff moves this Court to disqualify attorney Paul Alan Levy from representing Defendant Ace because of his many conflicts of interest. In

support of this motion, Plaintiff states (1) Mr. Levy has represented Plaintiff in past legal matters and has consulted with him on various matters recently, (2) Mr. Levy represented Plaintiff's anonymous co-defendant in *Aaron Walker v. Brett Kimberlin*, and Aaron Walker is a Defendant in the present case, (3) Mr. Levy contacted that anonymous defendant after filing his motion in this case with an ominous warning for her to tell Plaintiff to back off this case, (4) Mr. Levy published a blog post attacking Plaintiff and sent that post to his prior client which she considered to be improper influence and a threat to turn on the former client like Mr. Levy has turned on Plaintiff, and (5) Defendant Ace published a blog post after the filing asking his many readers to donate money to Mr. Levy.

## FACTS REQUIRING DISQUALIFICATION

### Prior Representation Of Plaintiff

The attorney-client privilege exists to protect *the client's* interests, and therefore, only the client can decide whether to waive its protections. In the instant case, Plaintiff has taken all reasonable steps to prevent any waiver of the privilege. As Plaintiff states in his attached affidavit, Mr. Levy formally represented Plaintiff in past civil matters. Exhibit A. Also, over the past several years, Plaintiff has had several discussions with Mr. Levy that fall under the attorney client rubric. Plaintiff has never waived his attorney client relationship with Mr. Levy and in fact, prior to Mr. Levy's filing in this case, Plaintiff informed Mr. Levy that he would be laboring under a conflict of interest if he represented Defendant Ace. Id. Despite this warning, Mr. Levy went ahead with his conflicted representation.

### Prior Representation Of Plaintiff's Civil Co-Defendant

In 2012, Defendant Aaron Walker sued Plaintiff in this Court in *Walker v. Kimberlin* et al, case number JFM 12-1852, which was assigned to Judge Motz. One of the other defendants in that case was an anonymous blogger named BreitbartUnmasked. ("BU") Mr. Levy represented BU in that case when Defendant Walker and Defendant DB Capitol Strategies, which was the law firm representing Defendant Walker, attempted to learn the identity of BU. Mr. Levy contacted Attorney Dan Backer, the attorney for DB Capitol Strategies, to discuss removing BU from that case, which Mr. Backer rejected.

In the instant case, part of the RICO case allegation is that Dan Backer, on behalf of Defendants Aaron Walker and DB Capitol Strategies, engaged in extortion by attempting to get Plaintiff fired from his employment with Justice Through Music in exchange for dismissing Justice Through Music from the suit. Shortly after that extortion attempt, Judge Motz dismissed the case out of hand as without merit.

### Improper Threat By Mr. Levy

Mr. Levy wrote a blog post about his filing in this case that constitutes a direct attack on Plaintiff in a way that an attorney should not do to a former client. Exhibit B. He then immediately sent that post to his former client BU with a link to the post and the following ominous language: "I'm afraid your buddy Brett has gone too far.

4

Maybe his friends can talk him out of this."

> From: Paul Alan Levy [mailto:█████]
> Sent: Tuesday, February 18, 2014 11:58 PM
> To: 'BU'
> Subject: I am afraid your buddy Brett has gone too far
>
> http://pubcit.typepad.com/clpblog/2014/02/brett-kimberlins-attack-on-free-speech.html
>
> Maybe his friends can talk him out of this

According to a blog post on the BU website, this email was taken by BU as an attempt by Mr. Levy to improperly influence this case and as a veiled threat that if BU wanted to remain anonymous, she had better tell Plaintiff to back off of this lawsuit. Exhibit C.

### Improper Quid Pro Quo By Mr. Levy And Defendant Ace

Shortly after Mr. Levy wrote his blog post attacking Plaintiff, Defendant Ace published his own blog post, in which he asked his readers to donate to Mr. Levy to reward him for representing Defendant Ace. Exhibit D. That post has had close to 300 comments and many of his readers stated that they were donating to Mr. Levy.

### Argument on Disqualification

Mr. Levy is laboring under a conflict of interest because he previously represented Plaintiff, he previously represented co-defendant of Plaintiff's in case brought by two of the Defendants in the instant case, and he is now accepting money from Defendant Ace of Spade's readers in order to attack Plaintiff. This is adversely affecting Plaintiff.

As Plaintiff states in his declaration, he did not waive his attorney-client relationship with Mr. Levy and specifically invoked it when he learned that Mr. Levy was planning to represent Defendant Ace. Plaintiff now believes that Mr. Levy will

use confidences he has learned from Plaintiff to adversely affect Plaintiff. In fact, Mr. Levy has already adversely attacked Plaintiff in his filing and in his blog post on behalf of Ace.

Mr. Levy has also made an implied threat to his former client BU that she had better tell Plaintiff to back off of this case or Mr. Levy was going to harm Plaintiff's interests, and he linked to the blog post to show BU what he was capable of doing to a former client if he did not heed such warnings. BU felt that Mr. Levy was threatening her and improperly trying to get her to influence Plaintiff to drop this legal action, which would be adverse to Plaintiff's interests.

Mr. Levy's conflicts of interest are multiple and violate many provisions of the Code of Professional Responsibility and ABA Model Code of Professional Responsibility. These are:

**DR 2-101 -Publicity in General.**

(A) -A lawyer shall not, on behalf of himself, his partner, associate or any other lawyer affiliated with him or his firm, use or participate in the use of any form of public communication containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim.

Mr. Levy used his blog post to make false, deceptive, self-laudatory and unfair statements or claims about this case and about Plaintiff. For example, he states:

"Released from prison in 2000, Brett Kimberlin has now turned his jailhouse lawyer skills on a new pool of victims: Bloggers who dare to publicly mention, on their small-scale electronic newspapers, Brett Kimberlin's criminal record. And the avalanche of frivolous, vexatious, and outright malicious lawsuits begins anew, as well as more alarming harassments.

To portray the Defendants in this case as "victims" is preposterous, and to state that they are small-time electronic newspapers is incredible, or to state that Plaintiff has filed an avalanche of frivolous, vexations, and outright malicious lawsuits

6

"anew" as well as more alarming harassments is outright defamation. Plaintiff is the victim who has been falsely accused by the Defendants of serious crimes in a multi-year campaign. Defendants Beck, Malkin, Ace, James O'Keefe, Simon & Schuster and the others are not small scale by any stretch of the word since they reach tens of millions of readers and viewers and have a combined worth in the hundreds of millions. What does Mr. Levy mean by "anew?" He has not identified any other frivolous, vexations, and outright malicious lawsuits brought by Plaintiff because there are none. And what other "alarming harassments" is he talking about? Is he alleging that Plaintiff is involved with swattings?

And Mr. Levy states:

Various sides have sought my assistance in connection with various aspects of this series of lawsuits. .... On the other hand, at one point I agreed to represent an anonymous blogger in opposing an effort by a Kimberlin adversary to obtain her identifying information so that the adversary could sue her for defamation along with Kimberlin himself. Happily, I was able to talk the plaintiff's lawyer out of pursuing such discovery; in fact, he had an attack of good judgment and dismissed the case altogether.

The last sentence of this statement by Mr. Levy is pure fiction. The "plaintiff's lawyer" in that case was Dan Backer, who works for Defendant DB Capitol Strategies, and Mr. Backer emphatically refused to stop discovery and did not dismiss the case at all but tried to use it to extort Plaintiff's employer into firing him, and it was Judge Motz who dismissed the case in a very unfavorable decision. Clearly, these public statements are adverse to Plaintiff, are meant to harm him, and are false, misleading, deceptive and unfair in violation of the above disciplinary rule.

7

**DR 2-103 -Recommendation of Professional Employment.**

(C) -A lawyer shall not request a person or organization to recommend or promote the use of his services or those of his partner or associate, or any other lawyer affiliated with him or his firm, as a private practitioner.

**DR 5-107 -Avoiding Influence by Others Than the Client.**

(A) -Except with the consent of his client after full disclosure, a lawyer shall not:
(1) -Accept compensation for his legal services from one other than his client.
(2) -Accept from one other than his client any thing of value related to his representation of or his employment by his client.

Mr. Levy, within minutes of filing his pleading electronically with this Court, posted his defamatory blog post. And shortly thereafter, Defendant Ace promoted the use of Mr. Levy's services by posting a laudatory post about Mr. Levy and linking to Mr. Levy's post, and asking his readers to donate big time to Mr. Levy.

Mr. Levy has written a blog post about the matter here. If you like reading motions, you can read his response in opposition to Kimberlin's motion here. It was just submitted yesterday. Mr. Levy is taking this case *pro bono* -- donating his time and expertise. However, Public Citizen does, of course, take donations, and if the mood strikes you to support someone, on principle, who is himself taking on a fight not his own, on principle, you can donate to Public Citizen's efforts to protect online speech, to protect the First Amendment, here. ...
If you were thinking of hitting the donation button for me recently, hit it instead for Mr. Levy. He's already spent a lot of time on this case, and will undoubtedly spend a lot more. http://ace.mu.nu/archives/347274.php

Clearly, it appears that there was coordination between Mr. Levy and Defendant Ace to use his multitude of readers to promote the use of Mr. Levy's services and to compensate Mr. Levy by people "other than his client" even though Mr. Levy professed to take the case "pro bono."

**DR 4-101 -Preservation of Confidences and Secrets of a Client.**

(A) -"Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the

8

disclosure of which would be embarrassing or would be likely to be detrimental to the client.
(B) -Except when permitted under DR 4-101(C), a lawyer shall not knowingly:
(1) -Reveal a confidence or secret of his client.
(2) -Use a confidence or secret of his client to the disadvantage of the client.
(3) -Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

Again, Plaintiff did not waive any attorney client relationship but rather invoked it fully both in communications to Mr. Levy and to Defendant Ace. Mr. Levy, however, totally ignored Plaintiff's invocation by representing Defendant Ace, and then attacking Plaintiff in both his motion and in his blog post with outright falsehoods and ad hominem character assassination. These falsehoods and attacks carried much greater weight to the average reader because Mr. Levy previously represented Plaintiff. Therefore, they would believe that they were true and that Plaintiff shared confidences with Mr. Levy that he is now divulging in court filings and in his blog post. Clearly, this violation of the attorney client relationship is embarrassing to Plaintiff and likely to disadvantage and be detrimental to him.

### DR 7-106 (G) –Extrajudicial Publicity

A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication and that relates to:
(1) -Evidence regarding the occurrence or transaction involved.
(2) -The character, credibility, or criminal record of a party, witness, or prospective witness.
(3) -The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.
(4) -His opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.
(5) -Any other matter reasonably likely to interfere with a fair trial of the action.

As noted above, Mr. Levy, within minutes of filing his pleading in this case, violated the above disciplinary rule by making extrajudicial statements attacking

9

Plaintiff in his blog post, making outright false and unfair statements, coordinating with his client Defendant Ace to link to his blog post to give it massive readership and raise money for Mr. Levy, and adversely affect Plaintiff in the eyes of the public, the legal community, and to any potential jury pool.

Clearly, Mr. Levy's actions demonstrate that he has "differing interests," which is defined by the Rules as "every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest."

### Mr. Levy's Conduct Violates The Code Of Professional Responsibility And The Maryland Lawyer's Rules Of Professional Conduct On Conflicts Of Interest

The Code of Professional Responsibility as mirrored by the Maryland Lawyer's Rules of Professional Conduct specifically prohibits the kinds of conflicts of interest exhibited by Mr. Levy.

**RULE 1.7 CONFLICT OF INTEREST: GENERAL RULE**
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

As stated above, Mr. Levy is representing Defendant Ace in a way that is directly adverse to the interests of Plaintiff.

**RULE 1.8 CONFLICT OF INTEREST: CURRENT CLIENTS: SPECIFIC RULES**
(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent ....
(c) A lawyer shall not solicit any substantial gift from a client, including a testamentary gift....

Mr. Levy is using information relating to the representation of Plaintiff to disadvantage him without his informed consent. In fact, Mr. Levy is doing so in spite of Plaintiff's statement that he is laboring under a conflict of interest.

Moreover, as detailed above, Mr. Levy has coordinated with Defendant Ace for both a substantial financial and testamentary gift in the form of a laudatory blog post and a request for donations.

**RULE 1.9 DUTIES TO FORMER CLIENTS**
(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent....

Mr. Levy has represented Plaintiff's co-defendant BU, in a related case involving some of the same parties in the instant case in which that co-defendant's interests are materially adverse to the interests of Defendant Ace, and that former client has not given informed consent to allow that conflict or waived that conflict. Therefore, this Court should disqualify him from representing Defendant Ace in this matter.

**THE MOTION TO OPPOSE DISCOVERY SHOULD BE DENIED ON ITS MERITS**

1. If this Court determines that Mr. Levy had no conflict in representing both Ace and Plaintiff, the Motion in Opposition to Discovery should be denied on the merits for the following reasons. First, Plaintiff has a statutory right to serve Defendants in this case, and anonymity and offshore hosting does not give a person immunity from service. This would be unfair both to Plaintiff and to the other Defendants who use their own names and who have not evaded service.

2. Second, the law in Maryland clearly states that a Plaintiff suing an anonymous blogger has the right to identify that blogger in order to effectuate service. In this district, Judge Hollander addressed a subpoena to identify anonymous speakers in a case involving defamatory speech. Applying the requirements set forth in *Independent Newspapers v. Brodie*, 407 Md. 415 (2009), she said: "although they are not binding on this Court .... on balance, plaintiff's interests in pursuing the litigation outweighed the anonymity rights of the speakers in light of the commercial nature of the speech." *In re Drasin*, 2013 WL 3866777, at *5 (D.Md. July 24, 2013).

3. Counsel for Ace argues, in essence, that the First Amendment protects all speech, no matter how defamatory and inflammatory. Fortunately, this purist interpretation has been soundly rejected by the Supreme Court which has repeatedly held that the First Amendment does not protect defamation, *Gertz v. Robert Welch, Inc.*, 418 US 323 (1974). As the Court noted in *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966), there are "important social values which underlie the law of defamation," and "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation."

4. Counsel's position would nullify the well-established body of tort law in Maryland because it would allow anyone who is anonymous to commit any tort and then hide behind the First Amendment. In January, the Virginia Court of Appeals rejected this same argument in another case brought by counsel for Ace when it held that anonymous people who made defamatory comments on Yelp

12

could be identified. See *Yelp, Inc. v. Hadeed Carpet Cleaning*, 62 Va. App. 678, 752 S.E.2d 554 (Va. App. 2014),

5. Ace argues that the First Amendment gives reporters a type of blanket immunity from tort suits where defamation is not proven. This, however, has been rejected by the Supreme Court in *Cohen v. Cowles Media Co*, 501 US 663 (1991), which held that the press "has no special immunity from the application of general laws" and that the enforcement of general laws against the press "is not subject to stricter scrutiny than would be applied to enforcement against other persons or organizations." *Id.* at 670. Plaintiff has sued Ace under Rico, Civil Rights Conspiracy, False Light, and Infliction of Emotional Distress. In the Second Amended Complaint, Plaintiff adds even more counts and many more facts to support these claims.

6. Ace argues that although Plaintiff has met some of the *Brodie* standards, he has not proven a prima facie case of defamation because the defamation took place more than one year ago, which puts it beyond the state of limitations, and the statements of Ace are not defamatory. This misunderstands this case. First, as noted, defamation is but one count alleged, and another count is false light, which has a three-year statute of limitations. *Allen v. Bethlehem Steel Corp.*, 314 Md. 458 (1988): In the Second Amended Complaint, Plaintiff does not even charge Ace under the defamation count, except under conspiracy, and the statute of limitations runs from the last overt act of the conspiracy, which is less than one year.

7. Moreover, the statements are defamatory per se because they allege that Plaintiff committed the horrible crime of swatting which could be prosecuted under both state and federal law. Cf. *Milkovich v. Lorain Journal Co.*, 497 US 1 (1990)

13

(not opinion for publication to allege or impute that plaintiff committed crime, therefore, defamation suit could proceed).

8. And because the Defendants defamed Plaintiff with malice, every standard of defamation would apply even though another judge in Montgomery County Circuit Court already ruled that Plaintiff is not a public figure in a defamation case Plaintiff won, *Kimberlin v. Allen*,

| | |
|---|---|
| Docket Date: | **02/09/2012** Docket Number: **140** |
| Docket Description: | **ORDER, FOR APPROPRIATE RELIEF** |
| Docket Type: | **Ruling** Filed By: **Court** Status: **Denied** |
| Ruling Judge: | **QUIRK, JOSEPH M** |
| Reference Docket(s): | **Motion: 119** |
| Docket Text: | **ORDER OF COURT (QUIRK, J.) THAT DEFENDANT'S MOTION TO DECLARE BRETT KIMBERLIN AS A PUBLIC FIGURE RATHER THAT PRIVATE CITIZEN (D.E. #119) IS DENIED, ENTERED. (COPIES MAILED)** |

9. Ace argues that Plaintiff has not alleged defamation other than to state that Ace engaged in implication defamation by stating that Plaintiff was involved with swattings. In fact, Ace wrote a series of articles that generated hundreds of comments from his readers. He published "National Day of Blogger Silence" on his blog to focus attention on the false narrative that Plaintiff was responsible for swattings. In the article, Defendant Ace of Spades imputed that Plaintiff was involved with the "crime" of swatting: "They are literally going to *get someone killed.* That is their endgame here." "...Brett Kimberlin and his stalker crew...." This was viewed in Maryland. http://ace.mu.nu/archives/329849.php He published four other defamatory articles.

14

- In the first, article, http://minx.cc/?post=329569 he republished a post from Patterico which accuses Plaintiff of swatting and then he says: "It's as long as an Ace of Spades movie review, but it is a shocking exposition of just how nefarious Kimberlin and his henchmen are alleged to be."

- In the second article, http://ace.mu.nu/archives/329494.php he targeted Plaintiff's employer, saying that the non profit gets donations to subsidize Plaintiff's "harassment and abuse...." And then he falsely accuses Plaintiff of harassment, and then he calls him a "thug." And then: "You can be a thug if you like. *But you can do it on your own goddamned dime.* One last thing we can do: We can urge/request/demand our representatives *read Brett Kimberlin's criminal history into the United States Congressional Record.* Why? Not for punitive reasons. Rather, to answer the question I posed in the headline. Did the US Congress strip American citizens of their right to state demonstrably true facts without unending harassments? Did we lose that right simply because Brett Kimberlin has decided, as a Congress of One, that we should no longer have it?"

- In the third article, http://ace.mu.nu/archives/329977.php, he engages in widespread defamation.
- "Two people have already been silenced. One man has been *arrested* -- arrested, for blogging about the criminal history of Brett Kimberlin, and for describing his ongoing ordeal at Kimberlin's hands. Unless Congress acts -- and acts swiftly -- there will be still further innocent citizens subjected to Brett Kimberlin's lawless vigilantism."
- He then republishes an article accusing Plaintiff of running a new criminal "scam."
- Then he imputes that Plaintiff was involved with swattings, and in terrorism. "While I, and Kimberlin's other targets, are heartened by Congress' letter to Eric Holder to look into the SWATting matter, what a reading of Citizen K demonstrates is that Congress itself needs to act in order to finally put an end to Brett Kimberlin's ongoing digital (and real-life) terrorism."
- "Prison did not stop his crimes. Prison only taught him new skills."
- "And the avalanche of frivolous, vexatious, and outright malicious lawsuits begins anew, as well as more alarming harassments."
- "I am writing to you, Members of Congress, to alert you of the full menace that Brett Kimberlin still poses to society. He should never have been let out of prison; having lived nearly the entirety of his life since high school as one-man crime wave, it can hardly have been believed that he had truly reformed by 2000."
- "It is a burden to live with a criminal conviction for a terrifying domestic-terrorism bombing spree, as Brett Kimberlin well knows. However, Brett Kimberlin has decided that burden shall no longer fall upon his shoulders,

15

but upon the shoulders of anyone who mentions his extensive, remorseless, relentless criminal history. Brett Kimberlin has personally decided that it is society at large, rather than himself, who shall bear the burden of his crimes."

- "Will Congress consider enacting positive legislation to limit Brett Kimberlin's relentless determination to sue over any negative mention of his past?"
- "At some point, the ongoing case of Brett Kimberlin v. The World At Large must finally, *finally* end."
- "A crime is in progress. It is ongoing. Will Congress please act to stop it?"
- "If you are reading this, please contact Congress to ask them to not only take an interest in this matter, but to seriously consider enacting positive statutory law to limit Brett Kimberlin's ongoing abuse of the legal system and corruption of justice."
- "Congress also doesn't appreciate the urgency of the situation. If there's one theme of Brett Kimberlin's life, it's escalating risk-taking when already in a risky situation."
- "The Speedway Bombings, of which he was convicted, were conducted even as he was under investigation for the murder-by-hire of an innocent grandmother. The theory was that Brett Kimberlin set the bombs to cause chaos and prevent a proper investigation of the execution-style murder of Julia Scyphers."
- "*Escalation. .... Escalation.* And this leads to the last point that I don't know if Congress is aware of: Brett Kimberlin is a dangerous man. That is not my opinion; that is the finding of the United States federal courts. This is not some blogwar bullshit. This is not a case of he called me a dirty name on the internet and I'm angry. This is digital terrorism, straight up. With consequences that go far beyond what someone said about you on Twitter. Some people are heartened that this malicious ongoing to threat to society is finally getting some media coverage, and some United States government officials are now paying close attention. I'm not. Because I know what happened last time Brett Kimberlin began getting some serious scrutiny: Bombs began going off. *Escalation.*"

- And in the fourth article, http://ace.mu.nu/archives/330355.php, he falsely states that Plaintiff has been engaged in "his endless campaign of harassment, intimidation, and lawfare." He then quotes verbatim from Defendant Dan Backer and DB Capitol Strategies' defamatory post accusing Plaintiff of swatting.

10. In *Barhoum v. NYP*, decided March 5, 2014 (Mass Sup Ct 13-2062), the Court found that a *single article* in the New York Post that imputed that two men were the Boston Marathon Bombers, when the were not, constituted defamation by

16

implication. The NY Post argued, as does Ace here, that the article was merely opinion or discussion of a matter of public concern, yet the Court rejected these arguments. Copy attached as Exhibit E.

11. As in *Barhoum*, Ace stated falsely that Plaintiff was committing crimes and one of the crimes was swatting. All of Ace's articles about Plaintiff must be considered as a continuing dialog with his readers rather than considering one article or one line in an article. He falsely accused Plaintiff of crimes and then called on Congress and the FBI to investigate and jail Plaintiff, and for Congress to pass a Bill of Attainder against Plaintiff because he is a "digital terrorist," "one man crime wave," "menace to society," "dangerous man," and a murderer who will "escalate" and bomb people if Congress does not act. He called on bloggers across the country to stop blogging in order to draw attention to Plaintiff's (non-existent) crimes. Of course, all these statements are false and malicious and placed Plaintiff in a false light. Plaintiff had noting to do with any swattings, and all the false statements and incitement by Ace were done to harm Plaintiff and his reputation.

12. Ace wants this Court to believe that Ace is an anonymous person. In fact, however, he is well known in the conservative community and has spoken to thousands of people and had his picture taken at the Conservative Political Action Committee Conference where he actually won an award. Ace has appeared as a commentator on Fox News regarding the war in the Middle East, and that video is still available on YouTube with more than 5,000 views. http://www.youtube.com/watch?v=pCU9Hs5sEy0 He is so well known that the Village Voice created a cartoon drawing of his face for an article.

17

http://www.villagevoice.com/slideshow/a-headshot-guide-to-the-right-wing-blogosphere-92000/# See these three pictures of Ace from Google searches at Exhibit F. If Ace wanted to be truly anonymous, he would not be making public and television appearances before millions of people. What counsel is saying in essence that Ace has a right to pick and choose to whom he remains anonymous. And it appears that Ace has chosen to let conservatives and conservative audiences know who he is while attempting to keep others such as Plaintiff in the dark. But clearly these public appearances constitute to a waiver of his anonymity.

13. Plaintiff is simply asking to serve Ace with a copy of the Complaint and now Second Amended Complaint. He has asked for the subpoena in order to learn Ace's name and address for service purposes only. Plaintiff will not contact Ace for any other purpose other than regarding this case. And if Ace has an attorney after service, Plaintiff will never contact Ace.

14. Clearly, as Judge Hollander found in *Drazin*, supra, "on balance, plaintiff's interests in pursuing the litigation outweighed the anonymity rights of the speakers...."

Wherefore, for all the above reasons, This Court should reject Ace's Motion in Opposition to Plaintiff's request for a subpoena to Intermarkets to provide Ace's name and address.

Respectfully submitted,

Brett Kimberlin
8100 Beech Tree Rd
Bethesda, MD 20817
(301) 320 5921
justicejtmp@comcast.net

Certificate of Service

I certify that I have served a copy of this Response on Lee Stranahan, Ron Coleman, Catilyn Contestable, Michael Smith, and Mark Bailen by email, and on Defendants Hoge, The Franklin Center, McCain and Walker by First Class mail this 11th day of March, 2014.

Brett Kimberlin