UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

BRETT KIMBERLIN,

Plaintiff

v.

Case No. PWG 13-3059

NATIONAL BLOGGERS CLUB, et al.,

Defendants

## DEFENDANT WALKER'S OPPOSITION TO THE PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT

COMES NOW Defendant Aaron J. Walker, Esq., and files this Opposition to the Plaintiff's "Motion to File Second Amended Complaint" ("MFL," ECF No. 100),[1] and states the following:

1.      On February 21, 2014, this court granted Plaintiff permission to "seek to amend his complaint up until March 7, 2014[.]" Letter Order of February 21, 2014 (ECF No. 88). Further the same Letter Order admonished that the "Plaintiff's motion to amend the complaint will not be accepted by the Clerk if it fails to comply with Local Rule 103.6."

### I.
### LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE PLAINTIFF HAS NOT COMPLIED WITH LOCAL RULE 103.6(C)

2.      Despite this court's very specific reminder to the Plaintiff that he was to comply with D.

---

[1] This opposition is timely because the Plaintiff did not place his MFL in the mail until March 12, 2014, five days after he claimed to have done so in his certificate of service.

Md. local rule 103.6, the Plaintiff did not comply with subsection (c) requiring that

> the party filing an amended pleading shall file and serve (1) a clean copy of the amended pleading and (2) a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type.

Although the Plaintiff's MFL appeared on the surface to comply with this requirement, including an attachment that included some marked changes, that markup was grossly inadequate. A partial catalogue of these failures follows, largely by order of appearance:

    a.    Although the original impetus for seeking leave to amend was to add Twitchy LLC as a party and thus to lawfully add Twitchy to the caption, the Plaintiff does not even bother to place Twitchy's name in bold when he added it to the caption.

    b.    In paragraph 1[2] the Plaintiff fails to note that he inserted the words "amended," and "online and offline;" or that he deleted the words "violated his civil rights and which includes," and "threat of."

    c.    In paragraph 56 he added the word, "first" and the phrase "a nearby medical clinic, which ordered him to immediately go to" without putting this change in bold.

    d.    In paragraph 59 he deleted the word "this" in relation to the supposed "declaration of war against Plaintiff" without noting he had deleted it.

    e.    In paragraph 60 he added the words "the spring of" without placing those words in bold.

    f.    In paragraph 61 he deleted the word "February" and inserted the word "January" without noting this change.

---

[2] Unless stated otherwise, all paragraph numbers in this section refer to the numbering in the marked up copy (ECF No. 100-2).

g.      In paragraph 79 he adds the sentence "Mr. Walker and other Defendants have continued to repeat these false narratives even to this day[,]" but strangely only adds boldface to the second half of the sentence ("these false narratives even to this day").

h.      In paragraph 93 he added the phrase "on his blog" without noting the change.

i.      In paragraph 161 he inserted the word "named" without noting the change.

j.      In paragraph 163 the Plaintiff changed one of the named time periods from "through the present day" to "February 27, 2014" without noting the change.

k.      In paragraph 171 the Plaintiff added the entire sentence "[i]n fact, the National Bloggers Club was a criminal organization that never had 501(c)(3) status and never filed any required business documents after it registered as a Texas corporation" but paradoxically only put part of the sentence in bold.

l.      In paragraph 180 he added the phrase "corruptly and by threats or force, and by communication, influenced, obstructed, impeded, and endeavored to influence, obstruct, or impede, the due administration of" but did not note its insertion.

m.      In the header (just before paragraph 186) "Retaliation of [sic] a Witness and Victim; 18 USC 1512 [sic] and 1513" he added a reference to 18 U.S.C. §1512 without indicating he had made that addition. In other words, while the phrase was in bold, the rest of the header was, too, giving the reader no indication that he had added that language. It should have been underlined to make it clear.

n.      In paragraph 186 the Plaintiff adds the word "battery" two times without putting that term in boldface. Further, he adds the phrase "by Defendants Walker, Backer and DB Capitol Strategies" while paradoxically only putting Mr. Backer's name in bold.

o.      The entirety of paragraph 189 is new, but the Plaintiff fails to indicate it is new.

p.      In the header (before paragraph 190) relating to Extortion, the Plaintiff added claims of "Conspiracy and Attempted Extortion" without noting the change. That is, once again, while the words are in bold, the entire header is in bold and thus it fails to indicate a change had been made.

q.      In paragraph 231 he inserts the word "clients" without noting the change.

r.      In paragraph 243 the Plaintiff needlessly inserts the words, "month after month and year after year" without placing these words in bold.

s.      In paragraph 251 he inserted "book, webinar" without noting the change.

t.      The entire "Ninth Claim for Relief" for civil conspiracy (paragraphs 290-292), is new, but none of it is in bold except the header.

u.      Several times the Plaintiff added new allegations that various defendants "joined the RICO enterprise" (or used substantially similar wording) without noting that he had added these words. This can be seen in paragraphs 83, 93 and126.

v.      The Plaintiff also made grammatical corrections or made small stylistic changes without noting it. For instance, in paragraph 65 the Plaintiff capitalized the "The" in "The National Bloggers Club" without noting the change. In paragraph 83 he added the word "Defendant" before Redstate but didn't put it in bold. In paragraph 94 the Plaintiff changed the ungrammatical phrase "in Breitbart.com" to "*on* Breitbart.com" without indicating he had changed it. In paragraph 170 the Plaintiff changed "narrative" to narrative*s*." In paragraphs 171, 173, 176 and 178, the Plaintiff changed the improper description of non-profits as being under "501c3" to the less grammatically improper "501(c)(3)." In paragraph 193 he added a comma after the word "mouth" without noting the change.

w.      Oddly, the Plaintiff marked purported changes several times where no change was

4

made. For instance, in paragraph 38 the Plaintiff claims that the words "On," "October 11," "Defendant Nagy" and "wrote an wrote an article smearing Plaintiff that appeared on Breitbart.com" were new when they were not (and did not note the deletion of the words "or about"). In the same paragraph, he claimed that "Defendant Frey followed that article with a similar smear article on his Patterico's Pontification's blog" was new when the only new part was the addition of the word "smear." In paragraph 71 the Plaintiff marked the phrase "donations from citizens of Maryland" as newly inserted, when in fact it was not. In paragraph 91 of the markup he pretended that he added an entirely new paragraph when in fact much of the same text was unaltered as indicated in the crossed out paragraph 89.

x.      Finally, in his prayer for relief he added a claim that he should be compensated for "$2,000.000 [sic]" without noting the change. Likewise, his request for declaratory relief stating that he was innocent of SWATting added a request that he also be declared innocent of "other uncharged crimes" (presumably including the forgery of a summons he has recently admitted to) without noting the change, and in the same sentence he inserted the word "book" without noting that change either.

3.      The obvious purpose of Md. local rule 103.6(c) is to make it easier for this court and for the opposing parties to see what changes were made from one amendment to another and to focus on what deficiencies have been addressed and which ones have not. As this court can see, Mr. Walker has catalogued over forty failures by the Plaintiff to denote his changes, including entire claims and paragraphs. The Plaintiff even failed to note that he added Twitchy to the caption although it was the original *raison d'etre* for seeking an amendment. His failure to comply fully and properly with this rule has prejudiced Mr. Walker by forcing him to do what this rule was supposed to make unnecessary: Mr. Walker was forced to examine the entire SAC, line-by-line, to see what changes were actually made.

4.      Further, there seems to be little excuse for this failure. Many word processing programs

contain features that would mark up the document appropriately, automatically.  Specifically Microsoft Word's "Compare Documents" feature can do so, as can many other programs.  One suspects that this rule was written specifically contemplating the use of such a program.

5.      Additionally, there is evidence that the Plaintiff had used such a program.  In paragraph 162 of the unmarked SAC (ECF No. 100-1) one can see the following phrase: "The RICO Enterprise was an ongoing relationship, business and criminal, among a̶l̶l̶ the named Defendants, with the common purpose of..."  The key thing to note is that the word "all" is struck through in the unmarked SAC.  The word "all" did appear in the First Amended Complaint (FAC, ECF No. 2) in paragraph 115, but it was struck out in the marked up version in paragraph 163.  This suggests that he was running a program, such as Microsoft Word, that was tracking his changes automatically, and then by some method he eliminated the markings for changes when creating the unmarked version of the proposed SAC.

6.      In any case, the Plaintiff's failure to comply with this rule *even after being reminded by this court to follow it*, and even after claiming to have followed it, is sufficient reason to do exactly what this court threatened to do in its February 21, 2014, Letter order: direct the clerk that the motion for leave to amend was accepted in error and return it to the Plaintiff as having been struck from the docket, or, in the alternative, to deny leave to amend.

## II.
## LEAVE TO AMEND SHOULD BE DENIED BECAUSE IT WOULD FUTILE

7.      In *Laber v. Harvey,* the Fourth Circuit held that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile."  438 F. 3d 404, 426 (4th Cir. 2006).  The futility of this amendment is manifest on the face of the document.

8.      Despite the Plaintiff's having been told what was wrong with his FAC by over a half-

dozen attorneys, the SAC still retains a legion of flaws. Because of space limitations, Mr. Walker will

focus on only four fatal flaws in the proposed SAC. First, the Plaintiff has not made any nonconclusory

allegation that he has suffered any actual injury in his own property and business as necessary under 18

U.S.C. §1964(c). Second, he has not made any nonconclusory allegation of state action as required by

42 U.S.C. §1983. Third, he has not made any nonconclusory allegation of an invidiously discriminatory

motive as required by 42 U.S.C. §1985 or a nexus to any federal judicial proceeding. Finally, with

every claim based on federal question jurisdiction removed, this court would no longer have

supplemental jurisdiction over any state law claims, and without complete diversity, such state law

claims should be dismissed. Mr. Walker will not belabor these points because of space limitations but

will briefly illuminate them as follows.

   9.  First, the Plaintiff continues to fail to make any nonconclusory allegation that he was

injured in his property or business as a proximate result of the alleged violations of RICO, and, indeed,

much of his effort to claim damages appears to be an improper attempt to represent the interests of his

corporations before this court without going through the expense of hiring an attorney to represent them

as required by local rules. The Plaintiff claims to have various property interests in things such as

teaching Iranian activists and obtaining funding for his company, but in *Muigai v. IB Prop. Holdings,*

LLC Case No. 08:09-CV-01623-AW (D. Md., 2010), this court has held specifically that such interests

are insufficient to grant standing under §1964(c), writing that:

> [a]lthough RICO is to be read broadly, *Sedima*, 473 U.S. at 498, "[t]he phrase 'business
> or property' also retains restrictive significance." *Reiter v. Sonotone Corp.*, 442 U.S. 330,
> 339 (1979). Such restriction "helps to assure that RICO is not expanded to provide a
> federal cause of action and treble damages to every tort plaintiff." *Maio v. Aetna, Inc.*,
> 221 F.3d 472, 483 (3d Cir. 2000). Courts have ruled that an expectancy interest or an
> intangible property interest is not sufficient for RICO standing. See *McLaughlin v. Am.
> Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008); *Price v. Pinnacle Brands, Inc.*, 138 F.3d
> 602, 607 (5th Cir. 1998); *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994).

Instead, in *Muigai* this court required that the plaintiff demonstrate a "concrete loss," and because that plaintiff didn't, his RICO claims were dismissed.

10.     That is also the inevitable outcome if the SAC is accepted by this court, but with another round of extensive briefing with likely more than a dozen motions to dismiss. The vast majority of the Plaintiff's claims for injury relate to alleged injuries to his company or they represent alleged personal injury that can't be claimed under RICO. The sole exception is his claim in paragraph 204 that he has been injured by "having interference [sic] with his business as a musician, composer and manager[.]" This allegation is wholly conclusory. Assuming that these are *his* losses, he makes no attempt to explain how such losses accrued. The Plaintiff gives us no idea what songs, videos, albums, etc. he supposedly had difficulty in selling, let alone how any Defendant caused such difficulty, and, therefore, the Plaintiff's claim amounts to an "unadorned, the-defendant-unlawfully-harmed-me accusation" of the sort rejected in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

11.     Second, in regards to 42 U.S.C. §1983[3] none of the additional allegations, if accepted as true, are sufficient to transform Mr. Frey's off-duty conduct into state action. Indeed, all of these new allegations appeared in the Plaintiff's prior oppositions to various motions to dismiss and their insufficiency has already been demonstrated by Mr. Walker's Reply to Plaintiff's Opposition to Walker's Motion to Dismiss, ("Walker's Reply," ECF No. 55). There is literally nothing to say here that hadn't already been said there, and the fact that such is the case demonstrates the futility of the amendment in regards to his claims under §1983.

---

[3] Mr. Walker is not purporting to file this on Mr. Frey's behalf, but is merely raising this point to demonstrate that the amendment is completely futile. That necessarily requires Mr. Walker to convince this court that it is futile in relation to all claims and all parties.

12.     Third, the Plaintiff has made little attempt to meet the requirements of 42 U.S.C. §1985. As an initial matter, he has not alleged any invidiously discriminatory animus. Both the second part of §1985(2) and the first part of §1985(3) contain limiting language requiring that the persons act with "intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge*, 460 U.S. 719, 725 (1983). In *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) that language was interpreted as "requiring some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." The only attempt the Plaintiff has made to meet this requirement was his ludicrous attempt to claim that the Defendants were motivated by animus toward convicted felons (Plaintiff's Response to Defendants Malkin and Twitchy's Motion to Dismiss, ECF No. 67), which is insufficient under *Bray v. Alexandria Women Health Clinic*, 506 U.S. 263 (1993). In *Bray*, the Supreme Court rejected the claim that animus toward "women seeking abortion" qualified as invidious animus under §1985. If the Supreme Court will not recognize a protected class of individuals based on the desire to engage in *lawful* activity (such as abortion), it only follows that the Supreme Court will not recognize a protected class of people who have actually engaged in *unlawful* activity.

13.     The Plaintiff tries to get around this by also claiming that

> [t]he named Defendants conspired to deter Plaintiff, by force, intimidation, or threat, from attending court, or from testifying to any matter pending therein, freely, fully, and truthfully, and to injure Plaintiff in his person or property on account of his having so attended or testified.

SAC, ¶ 216. This closely tracks the language of the first part of §1985(2), but it leaves out the crucial requirement that such conduct must be related to a federal judicial proceeding. *Kush*, 460 U.S. at 724 (stating that "the first portion of § 1985(2)" concerned "federal judicial proceedings"). Once again, Mr. Walker has already pointed out that the Plaintiff has made no allegation of any relationship to a federal

judicial proceeding in the FAC,[4] and, despite Mr. Walker having pointed that out, the SAC added no such allegation.

14.     Therefore, the Plaintiff's attempt to salvage all of his federal causes of action are utterly futile.  Even after the benefit of the insight of more than half a dozen attorneys, the Plaintiff has not properly alleged a violation of any federal law.  Without federal question jurisdiction to support supplemental jurisdiction over his state law claims, the Plaintiff must rely exclusively on diversity of citizenship jurisdiction in order to grant this court jurisdiction of those claims.

15.     However, the Plaintiff has utterly failed to meet the requirements of 28 U.S.C. §1332(a). Besides the fact that there isn't actual diversity of citizenship, the Plaintiff has failed to delineate how much he was allegedly damaged by which causes of action.  He simply states, globally, that all causes of action have cumulatively caused him "damages in an amount exceeding $75,000, that is $2,000.000. [sic]"  Presuming he meant two million dollars, how much of that amount, in the Plaintiff's mind, was caused by the allegedly wrongful acts under RICO and the alleged violations of 42 U.S.C. §§1983 and 1985, and how much of it was caused by his state law claims?  The Plaintiff gives this court no idea.  To illustrate by example, for all this court knows, the Plaintiff suffered $1,925,001 in damages for the federal causes of action, and $74,999 for all the state causes of action.  In that scenario, dismissing all federal causes of action would reduce the Plaintiff's damages below the $75,000 threshold.  The point of this hypothetical isn't to say that it is true—like this court, Mr. Walker can only speculate—but to point out that the Plaintiff has not made sufficient allegations to allow this court to determine whether his state law claims, in the aggregate, amount to more than $75,000 in damages without speculation.  Thus,

---

[4] "Defendant Walker's Memorandum of Points and Authorities in Support of Defendant Walker's Motion to Dismiss," ECF No. 11, pp. 35-38.

without a federal question and without diversity of citizenship jurisdiction, the SAC is an exercise in futility because it will inevitably be dismissed.

16.     In the end, the reasons why the SAC should be dismissed can already be found in Mr. Walker's prior filings seeking dismissal of the FAC as well as those of the other Defendants. Simply put, the Plaintiff has failed to address the deficiencies in the FAC (or voluntarily dismiss the case as he should), rendering any acceptance of the SAC an exercise in futility and a waste of everyone's time.

### III.
### LEAVE TO AMEND SHOULD BE DENIED BECAUSE OF THE PLAINTIFF'S ADMITTED BAD FAITH

17.     *Laber v. Harvey* also held that "leave to amend a pleading should be denied... when... there has been bad faith on the part of the moving party[.]"  438 F. 3d at 426.  In his "Verified Response to February 21, 2014 Order to Show Cause Re Twitchy Summons" (hereinafter "Show Cause," ECF no. 102), the Plaintiff finally answered in the affirmative that he had forged a summons for Twitchy.  It is hard to imagine a more extreme example of bad faith—indeed so much so that counsel for Twitchy accurately stated that we are in "uncharted waters."[5]

18.     It is also worth noting that none of the Plaintiff's excuses or attempts to mitigate his conduct hold water.  First, the Plaintiff pleads in essence that he is an ignorant pro se litigant who didn't know better.  However, that argument was rejected last month by this court in the case of *Kimberlin v. KimberlinUnmasked*, Judge Titus writing that:

> The Plaintiff is no stranger to the processes of this Court. Following his conviction in the United States District Court for the Southern District of Indiana for possession of a firearm not registered to him, manufacture of a firearm, maliciously damaging by explosion the property of an entity receiving federal financial assistance, and damaging

---

[5] "Reply Memorandum in Support of Defendants Michelle Malkin and Twitchy's Motion to Dismiss" (ECF No. 101), p. 2.

property of a business used in and effecting interstate commerce, which was affirmed in *United States v. Kimberlin*, 805 F.2d 210 (1986), he commenced numerous cases in this Court against the United States Parole Commission, in *Brett C. Kimberlin v. Department of Justice and U.S. Parole Commission*, Case No. 8:98-cv-00730-AW; *Brett Kimberlin v. United States Parole Commission, et al.*, Case No. 8:97-cv-03829-AW; *Brett C. Kimberlin v. United States Parole Commission*, Case No. 8:97-cv-02066-AW; *Brett C. Kimberlin v. U.S. Parole Commission, et al.*, Case No. 8:97-cv-01687-AW, and *Brett C. Kimberlin v. United States Parole Commission*, Case No. 8:97-cv-00431-AW, apparently in relation to his efforts to be paroled from his conviction affirmed by the 7th Circuit in 1986. Following his release on parole, he also brought an action in this Court which was treated as an effort to overturn his Indiana conviction under 28 U.S.C. § 2255. His petition was denied, and the denial was affirmed by the 4th Circuit, *Brett C. Kimberlin v. Warden*, Case No. 8:04-cv-02881-AW. Finally, he has been involved in litigation concerning his personal bankruptcy in this Court, *Brett Coleman Kimberlin v. USA v. In Re: Brett Coleman Kimberlin v. James Turner*, Case No. 8:98-cv-03586-AW and *Brett Kimberlin v. US Trustee*, Case No. 8:98-cv-00490-AW.

Memorandum Opinion, ECF No. 12, *Kimberlin v. KimberlinUnmasked*, Case No. 8:13-cv-02580-RWT pp. 3-4. The idea that the Plaintiff is some "babe in the woods" when it comes to litigation is ludicrous. And even if he were a newcomer, how much experience does one need to know not to take a official document, remove information from it and add in new information, passing it off as an original?

19.     Further, any claim that this was simply an "honest mistake" is eviscerated by the fact that, even when pretending to come clean, the Plaintiff continued to mislead this court.  First, in paragraph 3 of the Show Cause, the Plaintiff writes that

[w]hen the Clerk intitially sent Plaintiff 21 summons, Plaintiff spent hours compiling them with the Complaints, the envelopes and certified cards only to discover that the summons for Twitchy was missing.  At the time, Plaintiff assumed that the Clerk had inadvertently forgotten to include that summons since Twitchy was named as a Defendant in the Complaint and Twitchy's addressed was listed in paragraph 25 of the Complaint.  Therefore, Plaintiff typed the address on a summons and included it with the Complaint to Defendant Twitchy and sent it certified to that address.

Not only does this gloss over the extent of his misconduct—skipping the part where he removed the address that was actually written, and served a false copy of the complaint with Twitchy added to the caption—it doesn't factually hold water. He is claiming that he altered the summons *immediately* after

12

receiving the other summonses, but several facts demonstrate that he had done so much later. As noted in the "Memorandum in Support of Defendant Michelle Malkin and Non-Party Twitchy's Motion to Dismiss" (ECF No. 41) p. 3, the forged summons was mailed to Salem Communications on or about January 3, 2014. While Salem Communications had purchased Twitchy, that purchase had not occurred until December, 2013, more than a month after Mr. Kimberlin received those summons. Indeed, upon information and belief, that purchase was not publicly known until December 10. Therefore, logically speaking, the forgery must have been committed at some point after that.

20.     The Plaintiff mistates the truth a second time in the Show Cause when he claims in paragraph 6 that "he has apologized to all parties." The Plaintiff has never apologized to Mr. Walker.

21.     The Plaintiff would owe Mr. Walker an apology for two reasons. First, it was evidently Mr. Walker's summons he altered. Second, the Plaintiff previously called Mr. Walker a liar before this court for accusing him of forging that same summons. Specifically the Plaintiff wrote:

> Defendant Walker... filed these pleadings so he could publish yet more articles on his blog accusing Plaintiff of more imagined crimes. See Exhibit A,entitled, "Convicted Document-Forger Brett Kimberlin's Fraud On The Court," dated February 6, 2014.

Plaintiff's Response in Opposition to Defendant Walker's Motion to Exceed Page Limit and to Strike (ECF No. 61), ¶ 14. That exhibit was an partial and inaccurate portion of an article where Mr. Walker discussed the evidence that the Plaintiff had forged the same summons and the potential criminal consequences of that act. Thus, on February 11, 2014, the Plaintiff claimed that the forgery was an "imagined crime." Exactly a month later, he confessed to it. The Plaintiff owed Mr. Walker an apology for calling him a liar before this court, but instead misled this court about making such an apology.

22.     Dr. Martin Luther King, Jr. once mocked those who believe that "[i]t's all right to

disobey the Ten Commandments, but just don't disobey the Eleventh: 'Thou shall not get caught.'"[6]

The fact that the Plaintiff chose to mislead this court even in his Show Cause where he pretends to come

clean, proves that he isn't sorry that he forged a summons. He's just sorry he got caught.[7]

## CONCLUSION

23.    This court should deny leave to amend for the following three reasons.  First, despite

claiming to have done so, the Plaintiff did not comply with Md. local rule 103.6(c) by providing an

accurate copy of his proposed SAC with the changes indicated.  Second, it would be an exercise in

futility as he has not addressed the most basic shortcomings of his FAC.  Third, the Plaintiff's own bad

faith, misstating the truth even when pretending to come clean about his forging of a summons, gives

this court just cause to deny leave to amend.  Indeed, the Plaintiff's proposed SAC doesn't even include

---

[6] Dr. Martin Luther King, Jr., *Rediscovering Lost Values*, AUDIO RECORDING (available at http://vimeo.com/24387817) visited March 23, 2014.

[7] That act of bad faith alone justifies sanctions including refusing to allow an amendment to the complaint, but there is additional evidence of bad faith in the SAC.  In the interest of brevity, only three will be mentioned.

First, the Plaintiff absurdly claims that Defendant Erickson joined the Enterprise twice, SAC ¶¶ 83 and 95.

Second, in paragraph 90, the Plaintiff writes that on May 25, 2012, various parties including Mr. Walker and Mr. Frey "falsely and maliciously impute[d] that Plaintiff swatted Defendant Frey and Defendant Walker." This was a month before Mr. Walker was SWATted. SAC, ¶ 86.

Third, in paragraph 116, the Plaintiff falsifies the quote of a message that allegedly originated from a computer in the Los Angeles County Sheriff's office.  The Plaintiff claimed it said "LEAVE HIM ALONE. DON'T GO THERE" but his own exhibit ("Plaintiff's Response to Defendants Hoge and Walker's Motion to Dismiss," Exhibit Y, ECF No. 29) stated that the message only said "Don't go there."  This court can consider that exhibit when evaluating this motion because it constitutes a judicial admission by the Plaintiff—at least to his prejudice—that it is a true and correct copy of the message he had received.  *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.,1988) ("[f]actual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.")  Mr. Walker pointed out in his Reply (pp. 19-20) that the Plaintiff had mistated the truth about his own exhibit, and, yet, rather than correct his error, the Plaintiff repeated it in the SAC.  Is there any stronger evidence of bad faith than repeating a falsehood even after it is proven to be false?

a proper signature block under Fed. R. Civ. P. 11(a), and he didn't even place the motion for leave in the

mail for service on Mr. Walker until March 12, 2014, in violation of court rules and other orders by this

court.[8]  This court has been very tolerant of the Plaintiff's constant refusal to play by the rules, but at

some point this tolerance must end.  This court should deny the Plaintiff's motion for leave to amend,

hear the motions to dismiss the FAC and dismiss this case.


Monday, March 24, 2014                              Respectfully submitted,


                                                   _____

                                                   Aaron J. Walker, Esq.
                                                   Va Bar# 48882
                                                   7537 Remington Road
                                                   Manassas, Virginia  20109
                                                   (703) 216-0455
                                                   AaronJW72@gmail.com

---

[8] The Plaintiff also includes immaterial (and baffling) allegations in his SAC in paragraphs 33-36, where he outlines an alleged conspiracy against him involving the Chamber of Commerce, the FBI, and the NSA. In paragraph 36, the SAC cites from a piece that claims that the NSA is trying to control the internet by sorcery and includes the following passage: "Magic. Belief. Religion. Deception. Social networks. Get the picture?" Joseph Cannon, *Mind Blowing!*, CANNONFIRE, Feb. 25, 2014 (available at http://cannonfire.blogspot.com/2014/02/mind-blowing.html), visited March 22, 2014. Besides being unbelievable, this conspiracy theory—even if true—is immaterial. The Plaintiff does not allege that any of the instant Defendants are part of this alleged conspiracy. He only claims that the Defendants are part of a "parallel campaign." SAC, ¶ 37. That is, he claims that what the instant Defendants did is *similar to* this supposed HB Gary/FBI/NSA conspiracy against him. Even if true, the fact someone might have done something similar is immaterial to determining what these Defendants did and its legality.

## CERTIFICATE OF SERVICE

I certify that on the 24th day of March, 2014, I served copies of this document on the following parties via U. S. Mail or email as noted:

Brett Kimberlin at 8100 Beech Tree Road, Bethesda, Maryland 20817
Michael Smith, Esq., for Michelle Malkin and non-party Twitchy at smith@smithpllc.com
Mark Bailen, Esq., for Erick Erickson, Redstate, Simon & Schuster, Glen Beck, Mercury Radio
      Arts, The Blaze, and James O'Keefe at mbailen@bakerlaw.com
Lee Stranahan at stranahan@gmail.com
Mandy Nagy at libertychickblog@gmail.com
Breitbart.com at Loconnor@breitbart.com and Larry@breitbart.com
National Bloggers Club and Ali Akbar at ali@blogbash.com
Ace of Spades at aceofspadeshq@gmail.com
Ron Coleman, Esq. for Patrick Frey at rcoleman@goetzfitz.com.
DB Capitol Strategies at DBacker@DBCapitolStrategies.com
Linda Mericle and Justin Cameron, attorneys for The Franklin Center at
      linda.mericle@verizon.net and jcameron@lsmpa.com
Robert Stacy McCain at r.s.mccain@att.net
Kimberlin Unmasked at kimberlinunmask@hush.com
William Hoge III at himself@hogewash.com