UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| BRETT KIMBERLIN,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL BLOGGERS CLUB, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 8:13-cv-03059-PWG |

**OPPOSITION TO MOTION TO AUTHORIZE SUBSTITUTED SERVICE**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Facts and Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. When Service Fails Because the Plaintiff Has Not Made Proper Attempts to Effect Service, the Plaintiff Should Be Told to Effect Service Properly; Substituted Service on the Lawyer Who Pointed Out the Flaws in the Service Is Not the First Resort.. . . . . . . 3

II. Ace Has Not Evaded Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. Substituted Service Is Unjustified Because Plaintiff Has Not Made Good Faith Efforts.. . 9

IV. Substituted Service Creates a Catch-22 for Anonymous Defendants.. . . . . . . . . . . . . . . . . 11

V. Mr. Levy is Not Ace's Agent for Service of Process.. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF AUTHORITIES**

**CASES**

*Barclay v. Crown Building & Development*,
617 N.W.2d 373 (Mich. App. 2000) . . . . . . . . . . 7

*Chihota v. Fulton, Friedman & Gullace*,
2012 WL 1319816 (D. Md. Apr. 16, 2012). . . . . . . . . . 6

*Contrada, Inc. v. Parsley*,
2010 WL 2943428 (D. Colo. July 21, 2010) . . . . . . . . . . 7, 10 11, 13

*Currie v. Wood*,
112 F.R.D. 408 (E.D.N.C. 1986). . . . . . . . . . 6

*Davenport v. Ralph N. Peters & Co.*,
386 F.2d 199 (4th Cir. 1967) . . . . . . . . . . 13

*Dendrite International v. Doe*,
775 A.2d 756 (N.J. Super. Ct. App. Div. 2001). . . . . . . . . . 1

*Doe v. Cahill*,
884 A.2d 451 (Del. 2005). . . . . . . . . . 1

*Dominic v. Hess Oil V.I. Corp.*,
841 F.2d 513 (3d Cir. 1988) . . . . . . . . . . 6

*Friedman v. Estate of Presser*,
929 F.2d 1151 (6th Cir. 1991). . . . . . . . . . 6

*GSS Group Ltd v. National Port Authority*,
680 F.3d 805 (D.C. Cir. 2012). . . . . . . . . . 13

*In re Godette*,
919 A.2d 1157 (D.C. 2007) . . . . . . . . . . 6

*Gunning v. Doe*,
No. CV-13-359 (Me. Sup. Ct. Mar. 21, 2014). . . . . . . . . . 5

*Independent Newspapers v. Brodie*,
966 A.2d 432 (Md. 2009). . . . . . . . . . *passim*

*La Cantera Dev. Co. v. Western Rim Prop. Servs.*,
2010 WL 417409 (W.D. Tex. Jan 29, 2010). . . . . . . . . . 6, 10

*Leach v. BB&T Corp.*,
232 F.R.D. 545 (N.D.W. Va. 2005). . . . . . 6

*Little v. Miller*,
153 A.2d 271 (1959). . . . . . 10

*Lohman v. Lohman*,
626 A.2d 384 (Md. 1993). . . . . . 5, 7, 9, 10

*Murphy Brothers v. Michetti Pipe Stringing*,
526 U.S. 344 (1999). . . . . . 3

*Sinclair v. TubeSockTedD*,
596 F. Supp. 2d 128 (D.D.C. 2009). . . . . . 5

*Slenzka v. Landstar Ranger*,
204 F.R.D. 322 (E.D. Mich. 2001). . . . . . 6

*Travelers Casualty & Surety Co. of America v. Brenneke*,
551 F.3d 1132 (9th Cir. 2009). . . . . . 6

*Trujillo v. Trujillo*,
162 P.2d 640 (Cal. Ct. App. 1945). . . . . . 8

*Williams v. General Motors*,
2014 WL 66458 (S.D. Ohio, Jan. 8, 2014). . . . . . 3

*World Entm't Inc. v. Brown*,
487 F. App'x 758, 761 (3d Cir. 2012). . . . . . 7

**CONSTITUTION, STATUTES AND RULES**

United States Constitution
First Amendment. . . . . . *passim*

Federal Rules of Civil Procedure

Rule 4(a). . . . . . 3, 4
Rule 4(b). . . . . . 3, 4
Rule 4(c). . . . . . 3, 4
Rule 4(c)(2). . . . . . 4
Rule 4(e)(1). . . . . . 2
Rule 4(m). . . . . . 4

Rule 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Colorado Rule of Civil Procedure 4(f).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Maryland Rules of Civil Procedure

Rule 2-121(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
Rule 2-121(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 9, 10

Texas Rule of Civil Procedure 106. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**MISCELLANEOUS**

Niemeyer and Schuett, *Maryland Rules Commentary* (2d ed. 1992). . . . . . . . . . . . . . . . . . . . . . 5, 7

Wright & Miller, *Federal Practice and Procedure: Civil 3d* (2012). . . . . . . . . . . . . . . . . . . . . . . . 4

**Facts and Procedural History**

On October 15, 2013, plaintiff Brett Kimberlin brought this defamation action, although his complaint invoked several other theories as well; as recently amended, he is suing two dozen defendants over a variety of mean things they have said about him. Defendant Ace of Spades ("Ace") is one such defendant. Kimberlin sought discovery to identify Ace so that he could serve her with process. Ace retained counsel to represent her in opposition to the effort to deprive her of her First Amendment right to speak anonymously. Levy Affidavit, ¶ 2. As explained more thoroughly in opposition to that motion, DN 75, many courts, including the Maryland Court of Appeals, have followed the lead of the Appellate Division in New Jersey in holding that, when discovery is sought to identify an anonymous defendant whose speech is allegedly actionable, the plaintiff must follow a multi-part test that includes verbatim identification of actionable speech, a showing that the complaint properly states a claim based on that speech, and the presentation of evidence—in a defamation action—on the issues of falsity and damages. In such cases, the Court then balances the potential harm, if any, to the plaintiff from being unable to proceed against the harm to the defendant from losing her First Amendment protection. *E.g.*, *Independent Newspapers v. Brodie*, 966 A.2d 432 (Md. 2009); *Doe v. Cahill*, 884 A.2d 451 (Del. 2005); *Dendrite Int'l v. Doe*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001). This line of authority provides a readily ascertainable method for plaintiff to seek the information he needs to serve Ace.

Eschewing this well-settled path, Kimberlin made no attempt to meet the *Brodie* requirements that would permit discovery (assuming that he has evidence supporting tenable defamation claims) and, through that discovery, service. Instead of offering a reply brief even attempting to set forth the facts and evidence that would support his motion under the *Brodie* standard, Kimberlin offered a litany of complaints about Ace's lead counsel, Mr. Levy, demanding that counsel be disqualified. DN 93. Ironically, Kimberlin now embraces counsel's representation

and asks that Mr. Levy be kept in the case just long enough to serve as an agent for receipt of a summons and complaint.[1]

The Court's letter order dated July 18, 2014 (DN 162) suggested that the court could avoid addressing the discovery issue based on three assumptions (1) that Ace has evaded service; (2) that Ace has counsel who can be served as her agent, and (3) that substituted service is authorized under state law. Plaintiff now accepts the Court's suggestion and has filed an affidavit that recites efforts to obtain Ace's identifying information so that he can effect service. But he has made no effort to explain why he chose not to make the required showings to obtain discovery whereby, under Maryland law and the First Amendment, he could obtain identifying information. And, as we argue in this brief, none of the three assumptions in the Court's order is correct.

**Summary of Argument**

The Federal Rules of Civil Procedure require proper service of a summons and complaint to bring a defendant before the Court. Cases about the propriety of service are litigated frequently, and when the plaintiff is held not to have made good service because of some defect, the court typically gives the plaintiff the opportunity to effect service properly; courts do not simply rule that the plaintiff may, instead, serve the lawyer who raised the issue of improper service as a form of substituted service. To be sure, Federal Rule of Civil Procedure 4(e)(1) allows service of the summons and complaint pursuant to the state law where a court is located or where service is made. Kimberlin invokes Maryland Rule of Civil Procedure 2-121(c), under which a court may order "any other means of service that it deems appropriate in the circumstance," as authorizing service on Ace

[1]Several of the statements on which DN 93's disqualification argument was predicated were incorrect. Because the errors do not bear on the motion before the Court, we do not address those misstatements here.

through her counsel Mr. Levy. In doing so, Plaintiff ignores both the requirements of the state service rule and the scope of Mr. Levy's representation.

First, although the July 18 order expressed the Court's concern that Ace has evaded service, Ace's attempts to remain anonymous are not aimed at evading service but, instead, at protecting her First Amendment right to speak anonymously. Second, Kimberlin has not made the good faith efforts required by Maryland Rule 2-121(c) because he has not attempted to meet the *Brodie* test that would permit him to obtain discovery to reveal Ace's identity. Having renounced this well-established method for obtaining identification information and, thus, for effecting service, plaintiff cannot claim that he has satisfied his obligation to pursue, in good faith, service under Maryland's general service provision. Third, Kimberlin's motion for substituted service brushes past the limited scope of Mr. Levy's representation. Because Mr. Levy's representation of Ace is limited to opposing discovery, Mr. Levy is not an agent for service of the summons and complaint.

## I. When Service Fails Because the Plaintiff Has Not Made Proper Attempts to Effect Service, the Plaintiff Should Be Told to Effect Service Properly; Substituted Service on the Lawyer Who Pointed Out the Flaws in the Service Is Not the First Resort.

Although notice is one fundamental purpose of service of process—indeed it is needed to satisfy constitutional due process—notice alone does not bring a defendant's person before a federal court. Rather, Rule 4(a), (b) and (c) impose a number of detailed requirements about the service of summons and complaint, and "the summons continues to function as the sine qua non directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 351 (1999). Without it, "this Court does not have personal jurisdiction over this Defendant. . . . Plaintiff bears the burden of exercising due diligence in perfecting service of process and in showing that proper service has been made." *Williams v. General Motors*, 2014 WL 66458 (S.D. Ohio, Jan. 8, 2014) (citations omitted). For example, under

Rules 4(a) and (b) the summons has to be executed by the clerk and stamped with a seal and has to be worded correctly; under Rule 4(c), a party cannot effect service personally; and under Rule 4(m) a summons must be served within 120 days of issuance. There are literally hundreds of cases in which compliance with these requirements has been litigated. *See generally* Wright & Miller, *Fed. Prac. & Proc.: Civil 3d* §§ 1085 *et seq.*, and cases cited. When the plaintiff has not made good service because he has not properly followed the rules, he does not get to throw up his hands and serve the lawyer whose papers showed the improper service; instead, in such cases, the court orders the plaintiff to follow the rules, often giving an extension of time when the plaintiff has hitherto proceeded diligently and in good faith.

Kimberlin has not proceeded either diligently or in good faith. Indeed, under Rule 4(c)(2), Kimberlin cannot serve the papers himself. Although his affidavit recites his personal efforts to obtain information that would allow him to effect service personally, there is no indication that he employed a non-party to effect service. Moreover, although *Brodie* gave Kimberlin the opportunity to obtain Ace's identifying information, assuming he could meet the test, he responded to the invocation of *Brodie* by attacking counsel, not by presenting the evidence and argument that he would need to justify overcoming Ace's First Amendment right to speak anonymously. We believe that Kimberlin cannot meet the test—he does not have evidence supporting valid claims against Ace for words that state actionably false facts about Kimberlin (as opposed to hyperbole and opinions), not to speak of evidence that would meet the balancing stage of the *Brodie* test—but for present purposes the point is that he has not even tried to meet the test. The Court should not rescue Kimberlin from his tactical approach by allowing his refusal to try to meet the test to form a basis for seeking substituted service.

In the thirteen years since the articulation of the *Dendrite* standard, courts have regularly considered motions about discovery to identify defendants and *no* court of which we are aware has ordered the relief of substituted service. Plaintiffs have tried to argue for using Doe defendants' counsel to get service in two instances of which we are aware and, in both cases, the court hearing the motion rejected the attempt. First, a Maine state court recently rejected a request for alternate service explaining that "[t]he problem in this case is not that service cannot by due diligence be made by one of the methods prescribed" under the state service rule, but instead "that plaintiff does not know the identity of John Doe. . . . [S]ervice on counsel does not solve the problem." *Gunning v. Doe*, No. CV-13-359 (Me. Sup. Ct. Mar. 21, 2014) (copy attached to Levy Affidavit). A district court in D.C. reached the same conclusion in *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009). The plaintiff there—who was similarly seeking to litigate bizarre claims—sought to compel counsel to reveal the identity of the defendant, an argument which the court rejected as "frivolous." *Id.* at 134 n.3. The court, instead, addressed the *Dendrite* or *Cahill* requirements. *Id.* at 131-32, 134. This court should do the same.

## II. Ace Has Not Evaded Service.

Evasion of service connotes a bad faith flouting of a court's authority—an active attempt to conceal one's whereabouts or to otherwise block service, for the **purpose** of preventing service. Quoting from Judge Niemeyer's treatise on Maryland procedure, the Maryland Court of Appeals has explained that "[e]vasion of service of process is not always easy to show. It requires proof of affirmative acts to evade service of process, and the inability to serve, without more, is insufficient." *Lohman v. Lohman*, 626 A.2d 384, 394 n.9 (Md. 1993) (quoting Paul V. Niemeyer and Linda M. Schuett, *Maryland Rules Commentary* 96 (2d ed. 1992)). In speaking about evasion of process,

courts both in this state and across the country regularly speak of **intentional** attempts to avoid being served.[2]

The main case cited in the July 18 order, *Leach v. BB&T Corp.*, 232 F.R.D. 545 (N.D.W. Va. 2005), uses evasion of service in this same sense. The court there did not opine at length on the meaning of evasion, but the court did note that it could "extend the time for service where the defendant has evaded service or has knowingly concealed a defect in service." *Id.* at 550. In noting these two kinds of conduct in the same breath, *Leach* suggested that both involve a level of intentionality that is not present here, not unintentional actions that render service difficult. The *Leach* court's only other statement with respect to evasion—that "[s]ervice of process obviously is not something that should be abused by a defendant to evade a lawsuit," *id.* at 551—also calls to mind an intentional, bad faith act done to avoid the court's authority.

The other cases cited in the order similarly rested on types of evasion that are not present here. In *La Cantera Dev. Co. v. Western Rim Prop. Servs.*, 2010 WL 417409 (W.D. Tex. Jan 29, 2010), the plaintiff's process server came to the defendant's office several times, as well as to the office of its registered agent to serve process, but could not get service accepted; the defendant's

---

[2] *See, e.g.*, *Chihota v. Fulton, Friedman & Gullace,* 2012 WL 1319816, at *3 (D. Md. Apr. 16, 2012) ("Plaintiff does not present evidence, nor does her counsel argue that Defendant sought to evade service."); *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1136 (9th Cir. 2009) (discussing "defendant's knowing and intentional actions to evade service"); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) ("Legislative history provides only one example where an extension for good cause is appropriate—when the defendant intentionally evades service of process."); *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 516 (3d Cir. 1988) ("[G]ood cause might be shown if the defendant intentionally evades service of process."); *Slenzka v. Landstar Ranger,* 204 F.R.D. 322, 324 (E.D. Mich. 2001) ("Good cause may exist if the defendant intentionally evades service . . . ."); *Currie v. Wood*, 112 F.R.D. 408, 409-10 (E.D.N.C. 1986) (noting "the substantial inference that [defendant] knew that service was being attempted upon him, and that he intended to evade the same"); *In re Godette*, 919 A.2d 1157, 1166 (D.C. 2007) ("[T]here was substantial evidence to support a finding . . . that as a part of his extended and consistent refusal to cooperate in any way in the disciplinary process, Godette . . . deliberately avoided service of process.").

office had a sign saying "No Private Process Servers," because defendant apparently took the position that it would only accept service by sheriffs or constables. In *Contrada v. Parsley*, 2010 WL 2943428 (D. Colo. July 21, 2010), affidavits showed fifteen separate attempts to serve process at the defendant's residential and business addresses, and even at his "girlfriend's home." These cases are not precedent for substituted service on a defendant who has not hidden from service, but only invoked her First Amendment right not to be identified.

Further supporting the notion that evasion of service demands some bad faith attempt by a defendant is the fact that evasion of service tends to be found when a defendant physically blocks a process server or refuses to accept papers when the process server arrives—cases presenting facts extremely different from those here. Judge Niemeyer's treatise explained that if "a defendant is confronted by a process server and refuses to accept the summons, or slams the door in the face of the process server, or sees the process server and refuses to answer the door when he has good reason to know he is about to be served," alternative service under 2-121(b) may be appropriate. *Lohman v. Lohman*, 626 A.2d 384, 394 n.9 (Md. 1993) (quoting Paul V. Niemeyer and Linda M. Schuett, *Maryland Rules Commentary* 96 (2d ed. 1992)). The Third Circuit suggested a similar understanding of the term when it explained that "[s]hutting and locking the door after recognizing the process server, and then shutting the garage, and failing to answer the door after the server knocked again amounts to active evasion of service." *World Entm't Inc. v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012). And a Michigan appeals court concluded that "the record amply establishe[d] that [a defendant] sought to evade lawful service" when he refused to accept documents in two instances and, on the second occasion, "accelerated his pace, went into his office, and locked the door." *Barclay v. Crown Bldg. & Dev.,* 617 N.W.2d 373, 379-80 (Mich. App. 2000). Similarly, a California court that found that a defendant had acted to avoid service examined a record showing

that the defendant got into his vehicle; rolled up the window; and, after the process server placed papers under his windshield wipers, "first tried to dislodge the papers by starting the windshield wiper" and then drove away to successfully remove the papers from his vehicle. *See Trujillo v. Trujillo*, 162 P.2d 640, 641 (Cal. Ct. App. 1945).

This case is readily distinguishable from those in which evasions of service have been found. Ace is not acting to escape this court's authority—indeed, in hiring counsel to respond to Plaintiff's request for discovery, Ace demonstrated her willingness to do all she could to comply with this Court's authority while, at the same time, protecting her anonymity. Ace's purpose in remaining anonymous is not to avoid this court's power but, instead, to exercise her First Amendment rights. She has taken no affirmative steps with the purpose of preventing service and thus cannot be seen to have "acted to evade service" within the meaning of 2-121(b). Indeed, making exercise of this First Amendment right into the basis for the imposition of substituted service impermissibly imposes a burden on Ace's exercise of that constitutional right.

Moreover, the existence of a method to obtain discovery relating to the identity of an anonymous defendant reveals that Ace cannot be deemed to be evading service. In *Brodie*, the Maryland Court of Appeals set forth a mechanism for plaintiffs to obtain information relating to an anonymous speaker's identity. That mechanism serves not only as a way for a plaintiff to use the court system, but also as a protection for a defendant in that system. It cannot be that Ace, arguing for her rights under *Brodie*, is "evading service" within the meaning of state law. State law provides a way for Plaintiff to effectuate service; that Plaintiff has deliberately avoided that method does not transform Ace's insistence on her anonymity into an evasion of service.

**III. Substituted Service Is Unjustified Because Plaintiff Has Not Made Good Faith Efforts.**

As an alternative to the "evasion of service" provision of Rule 2-121(b) of the Maryland Rules, Rule 2-121(c) permits court-ordered alternative service *only* after a showing that "good faith efforts" have not succeeded. *See* Maryland Rule 2-121(c) ("When proof is made by affidavit that good faith efforts to serve the defendant pursuant to section (a) of this Rule have not succeeded . . . the court may order any other means of service that it deems appropriate . . . ."). Plaintiff has failed to meet—or even attempt to meet—the requirements of *Brodie*. Where state law provides a ready method for effectuating service and Plaintiff does not even attempt to use that method, the Plaintiff cannot show that she has made good faith efforts.

The facts of this case closely parallel those in *Lohman v. Lohman*, 626 A.2d 384 (Md. 1993). That case involved a marital property dispute where, after being served with an ex parte injunction to halt harassment of his spouse and removal of household items, a husband left his home without notifying his spouse or family of his whereabouts. *Id.* at 385-86. His wife provided an affidavit attesting that she was unable to locate the whereabouts of the husband and noting the fact that her husband had "refused to disclose his whereabouts" when speaking to his adult children. *Id.* at 386. This state's highest court concluded that the spouse's "efforts failed to reach the level of 'good faith' that is required by Rule 2-121(c)." *Id.* at 394. The husband had at least two living siblings and "[a]lthough [the wife's] affidavit state[d] that [the spouse] failed to disclose his whereabouts to his adult children, the record fail[ed] to demonstrate that any inquiries were made to [those] siblings to determine his whereabouts." *Id.* Pursuing *some* reasonable methods to effectuate service was insufficient—the presence of alternative and unpursued means for effectuating service meant that the plaintiff had not yet made *good faith* efforts. Plaintiff's affidavit sets forth some ways he has attempted service, but he nowhere explains his failure to use a *Brodie* showing to obtain discovery.

Just as in *Lohman*, the Plaintiff has made some attempt to effectuate service but has not pursued an alternative, readily available method for serving process. Indeed, the Plaintiff has failed to use *the* method specifically designated by the Maryland Court of Appeals in *Brodie* to serve process on an anonymous defendant. Such partial efforts cannot be considered good faith.

*Lohman* is also significant in affirming that a defendant's knowledge of attempted service does not cure a defect in service nor lower the bar on what constitutes good faith efforts. The *Lohman* court noted that "[k]nowledge on the part of the defendant of the pendency of the suit and his consequent opportunity to come in and defend against the claim asserted, do not, of themselves, cure the defect of lack of personal service." *Id.* at 395 (quoting *Little v. Miller*, 153 A.2d 271, 274 (1959)). Even if the husband in *Lohman* knew that his wife was attempting service, that knowledge did not create an obligation on his part to make his whereabouts known to his adult children, nor did it reduce the required efforts that would constitute good faith on the plaintiff's part. Though this Court's July 18 letter order noted that Ace is "keenly aware" of this suit, that knowledge is of no consequence to the service analysis or to the determination of what efforts plaintiff ought to be required to make. The law provides a mechanism for effectuating service, but plaintiff has not attempted that method. Although Ace, like the husband in *Lohman,* knows that Plaintiff wishes to serve her, Ace is under no obligation to to facilitate that service by consenting to compulsory process denying her right to speak anonymously.

The July 18 order references *La Cantera Dev. Co., supra*, and *Contrada, supra*, but those cases do not support plaintiff here. First, as noted above, both cases involved defendants who were evading service (and the Court cited them only on that point). Even apart from that difference, neither case supports the argument that the plaintiff has satisfied Rule 2-121(c)'s good faith requirement. First, neither case indicates that there were other available means to effectuate service

on the defendants. The *Contrada* court was interpreting a state statute that permitted alternative service only if the court was satisfied that "further attempts to obtain service . . . would be to no avail." *Contrada*, 2010 WL 2943428, at *2 (quoting Colorado Rule of Civil Procedure 4(f)). Thus, the court must have relied on the fact that future attempts at service would not be successful—a showing that Kimberlin, having failed to make any argument under *Brodie*, cannot make here. Second, both cases involved an application of Texas Rule of Civil Procedure 106,[3] which permits substituted service "[u]pon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful." *See La Cantera Dev. Co., supra*, at *4-5; *Contrada, supra,* at *2-3 (court also indicated that it was making no judgment about whether the lawyer in question was, in fact, a proper agent for service of process on the defendant, at *4). The Texas rule under consideration in these cases, requiring only that "service has been attempted," is markedly different than Maryland's rule requiring "good faith efforts." Maryland requires more than that service be **attempted**—it requires that it be attempted in good faith. *Lohman*, not these out-of-state cases offering interpretations of dissimilar statutes, provides the relevant standard for substituted service and, as discussed, that standard has not been met.

**IV. Substituted Service Creates a Catch-22 for Anonymous Defendants.**

This Court's suggestion that substituted service allows it to avoid grappling with the appropriateness of identity-seeking discovery creates a Catch-22 that creates a dangerous end-run around the First Amendment. Anonymous defendants who do not oppose discovery will find that discovery to uncover their identities will be granted. But anonymous defendants who successfully

[3] The *Contrada* court addressed service under both Colorado's and Texas's rules. *See* 2010 WL 2943428, at *4.

invoke the First Amendment to oppose discovery would be served via substituted service. After substituted service, the defendant can protect his or her First Amendment right to speak anonymously only if permitted to litigate the merits of the dispute while anonymous—but that is not possible for defendant Ace, and will often not be possible for anonymous defendants. Ace does not have a lawyer who is ready to defend this case on the merits: she has a pro bono lawyer whose retainer is limited to the anonymity issue. Levy Affidavit ¶ 2. And Ace is an individual, not a media company, and is in not position to afford a lawyer at ordinary commercial rates for the length that a case like this is likely to take to reach a conclusion. Pro se plaintiffs may pursue litigation without incurring any attorney's fees, but, as a practical matter, anonymous defendants must defend through a representative, and that representative must be a lawyer because only lawyers may appear on behalf of another. Anonymous defendants are left to choose between retaining their anonymity but risking a default judgment (after which the plaintiff will justify identification by asserting the right to collect on the default judgment), and expending significant amounts litigating the case through an attorney.

Moreover, the specter of this process will make it difficult for anonymous defendants to find counsel. Doe defendants can often find counsel for limited representation on the issue of protecting their right to speak anonymously, sometimes on a pro bono basis, but they may have difficulty obtaining counsel to represent them for general defense of a libel case. Levy Affidavit ¶ 5. When attorneys serving in a limited capacity are made the vehicle for service of documents relating to the full scope of trial, they may feel compelled to expand the scope of their representation accordingly. Seeking to avoid entering a situation that presents that risk, many counsel may simply choose to avoid representing Doe defendants on discovery matters altogether. Without counsel, Doe defendants cannot oppose discovery to seek their identity. Without that opposition, their identities

will be revealed. Substituted service thus poses a significant threat to the First Amendment right to speak anonymously.

**V. Mr. Levy is Not Ace's Agent for Service of Process.**

Mr. Levy, like his local counsel, Mr. Rocah, has entered a limited retainer, having agreed to represent Ace **only** in opposition to discovery seeking to determine Ace's identity. Levy Affidavit ¶ 3. Mr. Levy does not represent and has never purported to represent Ace with respect to the merits of her defense. *Id.* Indeed, Mr. Levy is unable to provide such representation, because his office does not, as a matter of policy, undertake the representation of outside parties at the trial court level in cases where defamation is the main issue to be decided. Levy Affidavit, ¶ 4.

Rule 12 of the Federal Rules of Civil Procedure abolished the distinction between special and general appearances, allowing lawyers to appear solely for the purpose of raising issues related to service and personal jurisdiction without using some special words. *GSS Group Ltd v. National Port Authority*, 680 F.3d 805, 816 (D.C. Cir. 2012); *Davenport v. Ralph N. Peters & Co.*, 386 F.2d 199 (4th Cir. 1967). Counsel's very first filing raised the issue of Ace's anonymity and whether he should be identified to enable Kimberlin to effect service, and each of the very short filings made after that related to those issues as well.[4] Accordingly, Mr. Levy is not Ace's agent for service of process on the merits of this dispute.

After the Court issued its July 18 Letter Order, Kimberlin wrote to Mr. Levy, acknowledging his knowledge from the outset that Mr. Levy's representation was limited. DN 166, page 5 of 5. Only once Mr. Levy confirmed that he is not representing Ace on the merits, and said that no other lawyer was providing such representation, did Kimberlin reverse position and ask the Court to ignore

[4]DN 162 referred to four documents filed by Ace as having "contributed to the deluge of filings on the Court's docket." However, each document was devoted to protecting Ace's First Amendment right to speak anonymously, and hence is consistent with the limited nature of counsel's appearance for Ace.

the fact Mr. Levy has never agreed to represent Ace on the merits and is not, in fact, an agent for service of process.

## CONCLUSION

The motion for leave to serve defendant Ace of Spades through Mr. Levy should be denied, but the Court should grant Kimberlin leave to renew his motion for leave to take discovery to identify Ace. Counsel request the opportunity for oral argument on this motion.

Respectfully submitted,

/s/ Paul Alan Levy
Paul Alan Levy (pro hac vice)[5]
Scott Michelman

Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-1000
plevy@citizen.org

/s/ David Rocah
David Rocah

ACLU of Maryland
3600 Clipper Mill Rd., #350
Baltimore, Maryland 21211
(410)889-8550, ext. 111
rocah@aclu-md.org

August 1, 2014

Attorneys for Defendant Ace of Spades

[5]Counsel acknowledge the extensive assistance of Rachel Miller-Ziegler, a student at Harvard Law School, in researching and drafting this memorandum.

**CERTIFICATE OF SERVICE**

On this date, I am filing this response using the Court's ECF system, which will effect service on all counsel. Pursuant to their express grants of permission, I am serving the document by email on plaintiff and on defendants Hoge, McCain and Walker.

/s/ Paul Alan Levy