## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | | |
|---|---|---|
| BRETT KIMBERLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 13-3059 GJH** |
| | ) | |
| NATIONAL BLOGGERS CLUB, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS SECOND AMENDED COMPLAINT UNDER RULE 4(M), 12(B)(5), 12(B)(6), AND THE MARYLAND "ANTI-SLAPP" STATUTE <u>BY DEFENDANT BREITBART.COM</u>

BAKER & HOSTETLER LLP
Mark I. Bailen (13805)
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel:202-861-1500
Fax:202-861-1783
mbailen@bakerlaw.com
*Counsel for Defendant Breitbart.com*

TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................. 4

    I.    Plaintiff Brett Kimberlin ................................................................4

    II.    Breitbart.com Publications Referenced in the Second Amended Complaint .........7

        A.    October 11, 2010 – A Breitbart.com Article About Kimberlin's Criminal Past And Current Prominence Within the Liberal Political Movement Did Not Mention Swatting by Kimberlin or Anyone Else...........................................................................................7

        B.    June 8, 2012 – A Breitbart.com Article About Erick Erickson Being Swatted Did Not Mention Kimberlin. .................................................8

        C.    June 25, 2012 – A Breitbart.com Article About Aaron Walker Being Swatted Did Not State, Allege, Or Question Whether Kimberlin Was Involved With The Swatting. .............................................8

        D.    November 8, 2012 – A Breitbart.com Article About Patrick Frey Being Swatted Did Not Mention Kimberlin. .................................................9

    III.    Kimberlin's Ineffective and Belated Service ........................................9

ARGUMENT .................................................................................................10

    I.    THE SAC SHOULD BE DISMISSED UNDER RULE 12(b)(6). ........................10

        A.    Legal Standard .......................................................................10

        B.    The False Light Invasion of Privacy Claim (Count VI) Fails As A Matter of Law. ....................................................................11

            1.    The SAC Fails to State a Claim for False Light. ...........................11

                a)    Kimberlin Does Not Identify False Statements of Fact Made by Breitbart.com .......................................................12

                b)    Kimberlin Has Not Alleged Sufficient Facts Establishing That Commentary Posted on

Breitbart.com Was "Highly Offensive to a Reasonable Person." ............................................................................13

c)    Kimberlin Has Not Alleged Sufficient Facts Demonstrating That Breitbart.com Acted with Actual Malice. ............................................................................14

2.    Maryland's Statute of Limitations Bars Most of Kimberlin's False Light Claim. ...................................................16

a)    The One-Year Statute of Limitations Period Should Be Applied to Kimberlin's False Light Claim. ......................16

b)    The October 11, 2010 Publication is Barred Under Either the One-Year or the Three-Year Limitations Period. ............................................................................17

C.    The Intentional Infliction of Emotional Distress Claim (Count VIII) Fails As A Matter of Law ...............................................17

D.    The Claim for Interference with Prospective Economic Advantage (Count VII) Fails As A Matter of Law. ...................................19

E.    The Claim for "Conspiracy to Commit State Law Torts" (Count IX) Fails As A Matter of Law. ..................................................20

II.    KIMBERLIN'S CLAIMS SHOULD BE DISMISSED PURSUANT TO MARYLAND'S ANTI-SLAPP STATUTE. ..............................................20

III.    KIMBERLIN HAS FAILED TO TIMELY SERVE BREITBART.COM...........23

IV.    BREITBART.COM IS ENTITLED TO ITS COSTS AND ATTORNEYS' FEES. ...............................................................................25

CONCLUSION..............................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*,
    903 F.2d 1000 (4th Cir. 1990) .......................................................................................11

*Alford v. Genesis Healthcare*,
    Case No. RDB-05-3278, 2007 WL 1073725 (D. Md. 2007)...................................19

*Allen v. Bethlehem Steel Corp.*,
    547 A.2d 1105 (Md. Ct. Spec. App. 1988) ............................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................10, 15

*Bagwell v. Peninsula Reg. Med. Ctr.*,
    665 A.2d 297 (Md. Ct. Spec. App. 1995) .......................................................11, 13

*Baron Fin. Corp. v. Natanzon*,
    471 F. Supp. 2d 535 (D. Md. 2006) .......................................................................19

*Batson v. Shiflett*,
    602 A.2d 1191 (Md. 1992) ...............................................................................17, 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................10, 15

*Bolden v. City of Topeka, Kan.*,
    441 F.3d 1129 (10th Cir. 2006) ..............................................................................24

*Boley v. Atlantic Monthly Group*,
    950 F. Supp. 2d 249 (D.D.C. 2013) .......................................................................21

*Byrd v. Hopson*,
    108 Fed. App'x 749 (4th Cir. 2004) .......................................................................24

*Campbell v. Lyon*,
    26 Fed. App'x 183, 2001 WL 1658895 (4th Cir. 2001) ........................................11

*Cardillo v. Doubleday & Co, Inc.*,
    518 F.2d 638 (2d Cir. 1975).....................................................................................15

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)..................................................................................................24

*Colfield v. Safeway Inc.*,
   Case No. WDQ-12-3544, 2013 WL 5308278 (D. Md. Sept. 19, 2013) ................................18

*Farah v. Esquire Magazine, Inc.*,
   863 F. Supp. 2d 29 (D.D.C. 2012) *aff'd*, 736 F.3d 528 (D.C. Cir. 2013) .........................21, 22

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
   194 F.3d 505 (4th Cir. 1999) ..............................................................................................19

*Forras v. Rauf*,
   --- F. Supp. 2d ----, 2014 WL 1512814 (D.D.C. Apr. 18, 2014) ...........................................16

*Furman v. Sheppard*,
   744 A.2d 583 (Md. Ct. Spec. App. 2000) ..............................................................................13

*Gannett Co., Inc. v. Anderson*,
   947 So. 2d 1 (Fla. DCA 2006) .............................................................................................16

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ...........................................................................................21, 22

*Godin v. Schencks*,
   629 F.3d 79 (1st Cir. 2010) .................................................................................................21

*Harris v. City of Cleveland*,
   7 Fed. App'x 452 (6th Cir. 2001) .........................................................................................24

*Harte-Hanks Comm. v. Connaughton*,
   491 U.S. 657 (1989) ...........................................................................................................14

*Herbert v. Lando*,
   781 F.2d 298 (2d Cir. 1986) .................................................................................................15

*Holland v. Psych. Assessment Resources, Inc.*,
   482 F. Supp. 2d 667 (D. Md. 2007) ......................................................................................12

*Holt v. Camus*,
   128 F. Supp. 2d 812 (D. Md. 1999) .......................................................................................11

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988) ...........................................................................................................18, 19

*Inlet Assoc. v. Harrison Inn Inlet, Inc.*,
   596 A.2d 1049 (Md. 1991) ...................................................................................................21

*Lamb v. Rizzo*,
   391 F.3d 1133 (10th Cir. 2004) ............................................................................................15

*Lehner v. CVS Pharmacy*,
   Case No. RWT 08-cv-1170, 2010 WL 610755 (D. Md. Feb. 17, 2010) ................................23

*McFarlane v. Sheridan Square Press, Inc.*,
   91 F.3d 1501 (D.C. Cir. 1996) ...............................................................................................14

*Mackey v. Compass Mktg.*,
   892 A.2d 479 (Md. 2006) .......................................................................................................19

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   674 F.3d 369 (4th Cir. 2012) ...................................................................................10, 14, 15

*Mixter v. Farmer*,
   81 A.3d 631 (Md. Ct. Spec. App. 2013) .................................................................................19

*Moreno v. PF Hurley, Inc.*,
   Civ. No. RWT-07-1515, 2009 WL 3208324 (D. Md. Sept. 29, 2009)...................................24

*Natural Design, Inc. v. Rouse Co.*,
   485 A.2d 663 (Md. 1984) .......................................................................................................18

*New York Times v. Sullivan*,
   376 U.S. 254 (1964)...............................................................................................................14

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) .................................................................................................21

*Omega U.S. Ins., Inc. v. Penn. Nat. Mut. Cas. Ins. Co.*,
   Case No. ELH-11-2297, 2012 WL 115422 (D. Md. Jan. 13, 2012)......................................23

*Paris v. Sinclair*,
   845 F. Supp. 2d 215 (D.D.C. 2012) .......................................................................................14

*Philips v. Pitt Cnty. Mem'l Hosp.*,
   572 F.3d 176 (4th Cir. 2009) ...................................................................................................4

*Phillips v. LCI Int'l, Inc.*,
   190 F.3d 609 (4th Cir. 1999)   ................................................................................................7

*Piscatelli v. Van Smith*,
   35 A.3d 1140 (Md. 2012) .............................................................................12, 15, 16, 22

*Russell v. Krowne*,
   Case No. DKC-08-2468, 2010 WL 2765268 (D. Md. July 12, 2010)....................................20

*Schatz v. Republican State Leadership Committee*,
   669 F.3d 50 (1st Cir. 2012).....................................................................................................14

*Sirpal v. Fengrong Wang*,
Case No. WDQ-12-0365, 2012 WL 2880565 (D. Md. July 12, 2012)............................17, 18

*Smith v. Esquire, Inc.*,
494 F. Supp. 967 (D. Md. 1980) ...........................................................................................16

*Swan v. Boardwalk Regency Corp.*,
969 A.2d 1145 (N.J. App. Div. 2009)...................................................................................16

*Taylor v. Anne Arundel Cnty., Md.*,
Case No. WDQ-12-2468, 2013 WL 4451221 (D. Md. Aug. 15, 2013) ..................................17

*United States v. Neff*,
2013 WL 30650 (N.D. Tex. Jan. 3, 2013) ...............................................................................1

*Veney v. Wyche*,
293 F.3d 726 (4th Cir. 2002) ...............................................................................................11

*Walters v. McMahen*,
684 F.3d 435 (4th Cir. 2012) .........................................................................................10, 11

**Kimberlin Cases**

*Kimberlin v. Allen, et al.*,
Case No. 339254V, Circuit Court for Montgomery County, Maryland...................................6

*Kimberlin v. Dewalt*,
12 F. Supp. 2d 487 (D. Md. 1998) .........................................................................................4

*Kimberlin v. Quinlan*,
199 F.3d 496 (D.C. Cir. 1999) ...............................................................................................4

*Kimberlin v. Walker, et al.*,
Case No. 380966V, Circuit Court for Montgomery County, Maryland...................................6

*Kimberlin v. White*,
7 F.3d 527 (6th Cir. 1993) .....................................................................................................4

*United States v. Kimberlin*,
483 F. Supp. 350 (S.D. Ind. 1979).........................................................................................4

*Walker v. Kimberlin*,
Case No. 8-12-cv-01852-JFM (D. Md.) .................................................................................5

**Statutes**

Md. Code Ann., Cts. & Jud. Proc. § 5-105 ................................................................................16

Md. Code Ann., Cts. & Jud. Proc. § 5-807 ................................................................................20

First Amendment of the U.S. Constitution ............................................................................ *passim*

**Other Authorities**

Restatement (Second) of Torts, § 652E .................................................................................11, 13

This motion seeks dismissal of Plaintiff Brett Kimberlin's ("Kimberlin") Second Amended Complaint ("SAC") pursuant to Rules 4(m), 12(b)(5), and 12(b)(6), Federal Rules of Civil Procedure, and the Maryland Anti-SLAPP Statute on behalf of Defendant Breitbart.com.

## INTRODUCTION

Breitbart.com is a news, analysis, and opinion website. It is, according to Alexa.com, the 41st largest news website in the world. Brietbart.com has been wrongfully sued by Kimberlin solely because it published newsworthy information and commentary about the public controversy involving "swatting"—that is, the act of making a call to 911 "in which a false report of a violent crime is made to elicit a police Special Weapons and Tactics squad ("SWAT") response to the physical address of a targeted individual, his or her family members, or place of employment."[1] With respect to Breitbart.com, Kimberlin has alleged only four causes of action: False Light Invasion of Privacy (#5), Intentional Interference With Prospective Economic Advantage (#7), Intentional Infliction of Emotional Distress (#8), and Conspiracy To Commit State Law Torts (#9).

Each of the claims against Breitbart.com should be dismissed as a matter of law. Regardless of the merit or lack thereof of Kimberlin's claims against the other defendants (and it is worth noting that Kimberlin's parallel defamation litigation in state court against some of these defendants was dismissed last week after Kimberlin presented his case at trial), the claims against Breitbart.com fail for three separate and independent reasons.

First, in addition to all of the procedural deficiencies set forth below, the claims against Breitbart.com should be dismissed on the merits because the SAC fails to state a claim upon which relief may be granted.  The SAC identifies four articles published by Breitbart.com that

---

[1] *United States v. Neff*, 2013 WL 30650, at *3 (N.D. Tex. Jan. 3, 2013).

allegedly placed Kimberlin in a false light by falsely accusing him of swatting. However, none of these articles stated in any way, shape, or form that Kimberlin swatted anyone, nor did they even allege, imply, or question whether Kimberlin may have swatted anyone. The first article did not even discuss swatting. Two other articles were news reports about certain individuals that were swatted, but they did not mention Kimberlin's name at all, much less accuse him of being the person responsible for the swatting. The only article concerning swatting that did mention Kimberlin's name separately referred to a legal matter involving Kimberlin and the swatting victim; the article did not state or allege that Kimberlin was responsible for the swatting.

Accordingly, on its face, the SAC does not contain any statements attributed to Breitbart.com that Kimberlin swatted anyone. Kimberlin therefore has not pled the most basic, predicate element of false light against Breitbart.com—a false statement of fact.[2] Kimberlin's other tort claims likewise fail where, as here, they are based on the same non-actionable publications.

In addition, even if the SAC otherwise did allege facts sufficient to constitute claims against Breitbart.com, which it does not, three of the four articles could not be actionable as a matter of law because they were published outside of the relevant limitations period and are therefore time-barred. The only Breitbart.com article alleged that falls within the statute of limitations is one of the articles that did not even mention Kimberlin at all, in any context, and thus clearly cannot support any claim that Breitbart.com placed Kimberlin in a false light or committed any other tort.

_____

[2] Kimberlin has also not pled any facts to establish the required element that Breitbart.com acted with actual malice.  Nor has Kimberlin, a felon convicted of heinous acts which are well-documented in judicially noticeable court opinions from other criminal and civil matters, pled any facts to demonstrate how he can legally establish actual reputational harm and is not libel-proof.

Second, this case should also be dismissed pursuant to Maryland's Anti-SLAPP Statute. The SAC is an overreaching and frivolous lawsuit brought in bad faith against Breitbart.com (and other media outlets) in an effort to silence them from exercising their First Amendment rights to report on matters of public concern. Kimberlin has not properly alleged the elements of any causes of action, much less any actionable publication by Breitbart.com. The only purported basis for his claims is that he does not like the content of the defendants' speech. Kimberlin may not like his past, but he cannot escape that past by suing anyone and everyone who writes about it. Accordingly, this is a classic SLAPP suit, and the Court can and should dismiss it on that basis.

Third, in addition to failing on the merits, the case should be dismissed at the outset because Kimberlin missed the deadline to effectuate service of process on Breitbart.com. He attempted service beyond the time period permitted under Rule 4(m) and the 60-day extension already granted by this Court.  Kimberlin never received a further extension; to the contrary, the Court struck Kimberlin's request for additional time. Kimberlin nonetheless failed to comply with the Court's deadline.  The SAC must be dismissed for this threshold reason as well.

There is no legitimate basis for including Breitbart.com in this case based upon the mere allegations that it published reports and commentary on matters of public concern. Breitbart.com did not state that Kimberlin swatted anyone, and the purported vast conspiracy amongst the other defendants against Kimberlin alleged in the SAC does not include Breitbart.com.[3] Accordingly, the case should be dismissed, and Breitbart.com should be awarded its fees and costs.

---

[3] This Court already has recognized that Kimberlin should dismiss those defendants who, as Kimberlin acknowledges, apparently "got caught up in something they were not fully aware of." ECF No. 153. While not the clearest of statements by Kimberlin, it is nevertheless an ***admission*** that certain defendants should be dismissed. Breitbart.com is clearly one of those defendants that should be dismissed.

## BACKGROUND

### I.    Plaintiff Brett Kimberlin

Kimberlin is a convicted felon. The United States Court of Appeals for the Sixth Circuit

detailed his most notorious criminal activity when affirming the denial of one of his *habeas*

*corpus* petitions:

> Kimberlin was convicted as the so-called "Speedway Bomber," who terrorized
> the city of Speedway, Indiana, by detonating a series of explosives in early
> September 1978. In the worst incident, Kimberlin placed one of his bombs in a
> gym bag, and left it in a parking lot outside Speedway High School. Carl Delong
> was leaving the high school football game with his wife when he attempted to
> pick up the bag and it exploded. The blast tore off his lower right leg and two
> fingers, and embedded bomb fragments in his wife's leg. He was hospitalized for
> six weeks, during which he was forced to undergo nine operations to complete the
> amputation of his leg, reattach two fingers, repair damage to his inner ear, and
> remove bomb fragments from his stomach, chest, and arm. In February 1983, he
> committed suicide.

*Kimberlin v. White*, 7 F.3d 527, 528-29 (6th Cir. 1993).[4]

Kimberlin also has been convicted of conspiracy to smuggle drugs, perjury, and

impersonating a federal officer.[5] He forced his way into the press coverage of the 1988

Presidential race by claiming that he sold drugs to then-Vice Presidential candidate Dan Quayle

and, later, by claiming that prison officials violated his civil rights after he made this allegation.[6]

---

[4]  In weighing a motion to dismiss, the Court may consider matters of public record in addition to
the pleadings themselves. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir.
2009).

[5] *Kimberlin v. Dewalt*, 12 F. Supp. 2d 487, 489-490 (D. Md. 1998); *United States v. Kimberlin*,
483 F. Supp. 350, 351 (S.D. Ind. 1979).

[6] *See White*, 7 F.3d at 530-31; *Kimberlin v. Quinlan*, 199 F.3d 496 (D.C. Cir. 1999); *Quayle
Accuser Loses Bid to Reinstate His Lawsuit*, ORLANDO SENTINEL, Apr. 2, 1994, at A14 (1994
WLNR 4389180); *Inmate Who Claimed to be Quayle's Drug Dealer Presses Rights Case*,
WASH. POST, Nov. 19, 1991, at A03 (1991 WLNR 4891711); *Official Had Quayle Accuser
Detained; Letter Reveals Prisoner Kept from Media on Eve of 1988 Election*, WASH. POST, July
4, 1990, at A09 (1990 WLNR 4591656); *Solitary for Quayle's Accuser*, N.Y. TIMES, Dec. 20,
1988, at B9 (1988 WLNR 1324702); Mark Singer, *The Prisoner And The Politician*, THE NEW

In 1996, *New Yorker* writer Mark Singer authored an entire book depicting Kimberlin as a master manipulator prone to making outlandish and "apparitional" claims with no basis in fact.[7]

After prison, Kimberlin became the director of a non-profit group known as Justice Through Music, SAC ¶9, and a high-profile activist against electronic voting machines such that he has been called "the blogosphere's secret weapon in the war against e-voting."[8] After the 2004 election of President George W. Bush, Kimberlin made headlines by publicly offering a $100,000 reward—later increased to $500,000—to anyone who could prove that Bush "stole" the election.[9]

His personal history and stunts like these make Kimberlin the subject of legitimate critique by conservative commentators. In February 2011—several months before any of the swatting incidents referenced in this case and more than a year before any publications allegedly linking Kimberlin with swatting—Kimberlin claimed that he was the target of "scores of anonymous posts on numerous national websites."[10] Kimberlin responded to this criticism using the weapons of judicial process: he filed subpoenas, restraining orders, and lawsuits against several of his critics, a tactic that has been dubbed "censorship and retaliation through

---

YORKER, Oct. 5, 1992, at 108; Mark Singer, *Unfinished Business*, THE NEW YORKER, Oct. 7, 1996, at 54; Mark Singer, *Citizen K: The Deeply Weird American Journey of Brett Kimberlin* (Knopf, 1996); Massimo Calabresi, *The Wizard of Odd*, Time, Jan. 5, 2007.

[7] Mark Singer, *Citizen K: The Deeply Weird American Journey of Brett Kimberlin* (Knopf 1996).

[8] Massimo Calabresi, *The Wizard of Odd*, TIME, Jan. 5, 2007.

[9] *Id.*

[10] *See* Amended Complaint, *Kimberlin v. Allen, et al.*, Case No. V339254, Circuit Court for Montgomery County, Maryland (filed Feb. 14, 2011), at ¶12.

lawfare."[11]  Judge Motz noted in a separate case that Kimberlin and certain other defendants—

not Breitbart.com—"apparently have been involved in intense political disputes over the

years."[12]   In this case, Kimberlin has conceded that some of the defendants "have agendas" and

"are emotionally involved," while other defendants simply "got caught up in something they

were not fully aware of." ECF No. 153.[13]

        In 2011 and 2012, conservative bloggers began to report another trend: critics of

Kimberlin were the targets of anonymous "swatting" attacks.[14] Some of them have been targets

of defamation lawsuits, including one recent case against some of the same defendants in this

action in Montgomery County Circuit Court.[15] Just last week, the trial court in that case entered a

directed verdict against Kimberlin, dismissing his claims.[16] The instant case is the latest

defamation action that Kimberlin has launched against those who have done nothing other than

---

[11] Ken White, *Brett Kimberlin and Aaron Worthing: Censorship and Retaliation Through Lawfare*, POPEHAT (May 29, 2012), http://www.popehat.com/2012/05/29/brett-kimberlin-and-aaron-worthing-censorship-and-retaliation-through-lawfare/; *see also* Eugene Volokh, *Aaron Walker, Brett Kimberlin, and the Fog of Litigation*, THE VOLOKH CONSPIRACY (May 29, 2012, 4:59 PM), http://www.volokh.com/2012/05/29/aaron-walker-brett-kimberlin-and-the-fog-of-litigation/.

[12] *See Walker v. Kimberlin*, Case No. 8-12-cv-01852-JFM, Dkt #33, p. 1 (D. Md. Nov. 28, 2012).

[13] The Court has, on multiple occasions, encouraged Kimberlin to voluntarily dismiss his action against those Defendants who "got caught up in something they were not fully aware of." ECF No. 163 at 3, n.2; ECF No. 168 at 2 n.1. Despite this encouragement, Kimberlin has chosen not to voluntarily dismiss Breitbart.com or any other defendant from this action.

[14] *E.g.*, *In Barack Obama's America, Yet Another Blogger Gets SWATTED*, PAT DOLLARD (June 25, 2012), http://patdollard.com/2012/06/another-blogger-aaron-worthing-gets-swatted/.

[15] *See Kimberlin v. Walker, et al.*, Case No. 380966V, Circuit Court for Montgomery County, Maryland (filed Aug. 30, 2013); *see also Kimberlin v. Allen*, *et al.*, Case No. 339254V, Circuit Court for Montgomery County, Maryland (filed Oct. 13, 2010).

[16] *See Kimberlin v. Walker, et al.*, Case No. 380966V, Circuit Court for Montgomery County, Maryland (Dkt. No. 237, Aug. 12, 2014).

simply publish information about him.

II.     **Breitbart.com Publications Referenced in the Second Amended Complaint**

    A.     **October 11, 2010 – A Breitbart.com Article About Kimberlin's Criminal Past And Current Prominence Within the Liberal Political Movement Did Not Mention Swatting by Kimberlin or Anyone Else.**

On October 11, 2010, a commentator writing under the pen-name "Liberty Chick" posted an article on "BigJournalism.com," a news and opinion site that is affiliated with Breitbart.com, about Kimberlin's criminal past and his prominence within the liberal political movement (the "October 11, 2010 Article"). SAC ¶38; Ex.A.[17] Citing news reports and court records, Liberty Chick recounted Kimberlin's history as the notorious "Speedway Bomber;" his lengthy prison sentence for the bombings and other federal crimes; and his post-prison activities, including his success in championing progressive causes and his connections with well-funded liberal political groups, including the Tides Foundation. Ex. A, pp. 5-6. It criticized liberal-leaning political groups and mainstream media for championing Kimberlin as a leader of the progressive movement, while overlooking his sordid past.  The article asked, "Will anyone come out and repudiate their association with a convicted terrorist? In the end, this isn't so much about Kimberlin, but about the hypocrisy of the left."  Ex. A, p. 9.  The article made no mention of swatting whatsoever—indeed, the swattings that are the subject of the SAC had not yet occurred.

---

[17] For purposes of this motion to dismiss, the articles cited in the Second Amended Complaint may be considered by the Court because they are "integral to and explicitly relied on in the complaint." *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (district court could properly consider a news article referenced in—though not attached to—complaint because it was "integral to and explicitly relied on in the complaint and because the plaintiffs [did] not challenge its authenticity"). A true and correct copy of the October 11, 2010 Article is attached to the Declaration of Mark I. Bailen ("Bailen Decl."), filed herewith, as Exhibit "A".  References to exhibits in this memorandum of law, cited as "Ex. __", refer to the corresponding exhibit attached to the Bailen Decl.

**B.      June 8, 2012 – A Breitbart.com Article About Erick Erickson Being Swatted Did Not Mention Kimberlin.**

In late May 2012, conservative blogger Erick Erickson was the victim of a swatting attack. SAC ¶83. On June 8, 2012, Erickson was interviewed on CNN about the incident. SAC ¶85. After Erickson's interview, Liberty Chick posted an article titled "CNN Plays 911 Call in Erickson Swatting Case" (the "June 8, 2012 Article").  SAC ¶83; Ex. B. The post referenced Erickson's CNN interview and also recounted a May 28, 2012 podcast, during which bloggers Lee Stranahan and Patrick Frey, along with Liberty Chick, discussed a similar 2011 swatting incident involving Frey.  Ex. B, p. 2. The June 8, 2012 Article makes no mention of Kimberlin at all.

**C.      June 25, 2012 – A Breitbart.com Article About Aaron Walker Being Swatted Did Not State, Allege, Or Question Whether Kimberlin Was Involved With The Swatting.**

On June 25, 2012, Breitbart.com published an article titled "Blogger Aaron Walker Latest Swatting Victim," which briefly recounted another swatting attack involving Walker (the "June 25, 2012 Article"). SAC ¶93; Ex. C.  This short post mentioned that earlier that morning Walker had won a "legal victory" against Kimberlin but made no other reference to Kimberlin and does not attribute the swatting incident to Kimberlin. Ex. C, p. 1. It merely recounted Walker's description of the event and included a short quote from Walker, which did not assign blame to any Kimberlin or any other individual: "This is obviously very upsetting but my wife and I are fine. *Whoever did this* had the intent to put our lives in danger." Ex. C, p. 2 (emphasis added).

**D.    November 8, 2012 – A Breitbart.com Article About Patrick Frey Being Swatted Did Not Mention Kimberlin.**

In or around early November 2012, the publication *LA Weekly* featured a story about the 2011 swatting incident involving Patrick Frey (who blogs under the pseudonym "Patterico"). On or about November 8, 2012, Breitbart.com posted an article by writer John Sexton titled "LA Weekly Interviews Patterico About His Swatting" (the "November 8, 2012 Article"). SAC ¶111; Ex. D.  Sexton noted that Frey's swatting incident occurred "shortly after he began reporting on the story of Rep. Anthony Weiner [and 'sexting']." Ex. D, p. 1. The article did not mention Kimberlin at all.

**III.    <u>Kimberlin's Ineffective and Belated Service</u>**

Kimberlin filed his original Complaint action on October 15, 2013, naming "Breitbart.com" as a defendant. ECF No. 1.  On October 17, 2013, Kimberlin filed the First Amended Complaint, which, again, named Breitbart.com as a defendant.

Kimberlin mailed a copy of the summons and the First Amended Complaint via certified mail, return receipt requested, to Breitbart.com at the address listed on the summons on January 2, 2014, and he claimed that these materials were delivered on January 4, 2014. ECF No. 121, pp. 2-3. As this Court concluded in its April 28, 2014 Letter Order, however, this attempt at service did not comply with either federal, Maryland, or California law regarding service of process.  ECF No. 122, at 3.  Although Judge Grimm held that Kimberlin had not perfected service on Breitbart.com, he extended the time for Kimberlin to serve Breitbart.com (and certain other defendants) "by the later of an additional sixty (60) days from this Letter Order or . . . the appropriate period for service of the amended complaint." *Id.*

On June 17, 2014, with the 60-day period from the Letter Order set to expire on June 27, 2014, Kimberlin filed a letter with the Court requesting an extension to serve the unserved

defendants until 60 days after the Court's ruling on his pending motion for leave to file a second amended complaint. ECF No. 128. On June 24, 2014, the Court struck Kimberlin's letter from the docket because it failed to comply with the Case Management Order. ECF No. 132. Kimberlin did not re-submit a request for an extension.

On June 24, 2014, the Court granted Kimberlin's request for leave to file the SAC.  A month later, Kimberlin attempted to serve Breitbart.com by mailing a copy of the summons and the Second Amended Complaint via certified mail to Breitbart Holdings, Inc.  Breitbart Holdings, Inc. received and signed for the papers on July 28, 2014.

## ARGUMENT

The SAC should be dismissed as to Breitbart.com because (1) Kimberlin failed to allege sufficient facts to state any cause of action upon which relief may be granted; (2) this case represents a blatant and improper attempt to punish Breitbart.com for its commentary on matters of public concern and thus is subject to dismissal under Maryland's Anti-SLAPP Statute; and (3) Kimberlin failed to perfect timely service.

## I.      THE SAC SHOULD BE DISMISSED UNDER RULE 12(b)(6).

Kimberlin fails to allege sufficient facts to plausibly state a claim for relief for any of his claims against Breitbart.com, namely (1) false light invasion of privacy; (2) intentional infliction of emotional distress; (3) interference with prospective economic advantage, and (4) so-called "conspiracy to commit state law torts." He already voluntarily dropped the federal claims for RICO and civil rights violations, as well as the defamation claim.

### A.      Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts "to raise a right to relief above the speculative level." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that it must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). While the court must generally accept the allegations of the complaint as true when considering a motion to dismiss, it is not required to give deference to mere legal conclusions. *See Walters*, 684 F.3d at 439. Nor is a trial court required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

### B. The False Light Invasion of Privacy Claim (Count VI) Fails As A Matter of Law.

#### 1. The SAC Fails to State a Claim for False Light.

To sustain a claim for false light under Maryland law, Kimberlin must plead and prove "(1) that the defendant gave 'publicity to a matter concerning another that places the other before the public in a false light'; (2) that 'the false light in which the other person was placed would be highly offensive to a reasonable person'; and (3) that 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Campbell v. Lyon*, 26 Fed. App'x 183, 188, 2001 WL 1658895, at *3 (4th Cir. 2001) (unpublished) (per curiam) (quoting *Bagwell v. Peninsula Reg. Med. Ctr.*, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995)). Critical to this claim is a showing that the defendant made a false statement. *Id.*; Restatement (Second) of Torts, § 652E, cmt. a ("[I]t is essential . . . that the matter published concerning the plaintiff is not true."). "The Fourth Circuit, interpreting

Maryland law, has refused to allow a claim for false light/invasion of privacy to go forward where the claim fails to meet the standards for defamation." *Holt v. Camus*, 128 F. Supp. 2d 812, 816 (D. Md. 1999) (citing *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.,* 903 F.2d 1000, 1004 n.1 (4th Cir. 1990)).

<blockquote>

a)      *Kimberlin Does Not Identify False Statements of Fact Made by Breitbart.com.*

</blockquote>

First, Kimberlin has failed to identify any statement in anything published by Breitbart.com constituting a false statement of fact. None of the publications contains any statement accusing Kimberlin of being responsible for any swatting attack.  In fact, the June 8, 2012 Article and the November 8, 2012 Article, SAC ¶¶83, 111, make absolutely ***no mention of Kimberlin whatsoever***, nor is there anything in those articles that could reasonably be read as referring to him. *See* Ex. B; Ex. D. The June 25, 2012 Article contains only one passing reference to Aaron Walker's "legal victory" against Kimberlin the morning before he was the victim of a swatting attack, but it does not accuse Kimberlin as being responsible for the incident. Ex. C, p. 1. Read in context, this single mention does not "imply[ ]" that he was "responsible" for Walker's swatting, as Kimberlin alleges. SAC ¶93. Indeed, even Walker, who was quoted in the article, did not identify Kimberlin as the perpetrator: "This is obviously very upsetting but my wife and I are fine. *Whoever* did this had the intent to put our lives in danger." Ex. C, p. 2 (emphasis added).

Moreover, even if this could somehow be construed to be an implication that Kimberlin was responsible for the swatting incident—which is not supported by any plain reading of the article—that still would not be sufficient to state a claim for false light because the ***suggestion*** of a falsehood is insufficient to state a claim.  *See Holland v. Psych. Assessment Resources, Inc.*, 482 F. Supp. 2d 667, 681 (D. Md. 2007) (Blake, J.) (allegations that "*suggest* a falsehood"

12

insufficient to state a claim for false light).[18]  Further, even if the article had questioned or

suggested any involvement by Kimberlin, which it did not, that *still* would not have been

actionable.  Any such publication would have constituted "fair comment" on matters of public

interest and therefore are privileged under Maryland law.  *See Piscatelli v. Van Smith,* 35 A.3d

1140, 1151-52 (Md. 2012) ("[A]ny member of the community may, without liability, honestly

express a fair and reasonable opinion or comment on matters of legitimate public interest.").

Because there are no false statements of fact, the false light allegations against Breitbart.com

fail.[19]

> b)  *Kimberlin Has Not Alleged Sufficient Facts Establishing That Commentary Posted on Breitbart.com Was "Highly Offensive to a Reasonable Person."*

"It is only when there is such a major misrepresentation of his character, history,

activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable

man in his position, that there is a cause of action for invasion of privacy."  Restatement

(Second) of Torts, § 652E, cmt. c.  Kimberlin itemizes purported "outrageous and extreme

conduct" and alleged harm that he suffered, SAC ¶¶247-50, but none of these allegations support

a finding that the Breitbart.com publications would be "highly offensive to a reasonable person."

Indeed, none of the Breitbart.com publications accused Kimberlin of any swatting incident.

---

[18] The October 11, 2010 Article—published more than three years before the filing of the complaint—is clearly barred by the statute of limitations and is also not actionable as a matter of law because the post makes no reference whatsoever to any "swatting" incidents. The piece recounts Kimberlin's extensive, well-documented criminal history and other highly-visible controversies in which Kimberlin thrust himself onto the national stage, relying on public records and press accounts. Because Kimberlin's claims are based on accusations of "swatting," *see* SAC ¶¶242-43, and he identifies nothing that is false in the posting, he has failed to state a claim for relief based on this post, even if it were not time barred.

[19]  Some courts in Maryland have required a showing that the defendant gave publicity to ***private facts*** that placed the plaintiff a false light.  *See Furman v. Sheppard*, 744 A.2d 583, 587 (Md. Ct. Spec. App. 2000).  The discussions of Kimberlin and of swatting are clearly not private facts, and thus his claim fails for this reason as well.

Merely pointing out Kimberlin's well-publicized criminal history or truthfully mentioning that he lost a court proceeding could hardly be described as a "major misrepresentation of his character," let alone anything that could be construed as highly offensive, even when viewing the facts in a light most favorable to him.  *See* Restatement (Second) of Torts, § 652E, cmt. c.

        c)      *Kimberlin Has Not Alleged Sufficient Facts Demonstrating That Breitbart.com Acted with Actual Malice.*

      To state a false light claim, Kimberlin must allege sufficient facts to establish that Breitbart.com had "knowledge of or acted in reckless disregard as to the falsity of the publicized matter," *Bagwell*, 665 A.2d at 318—the standard known as "actual malice," articulated by the Supreme Court in *New York Times v. Sullivan*, 376 U.S. 254 (1964).  Kimberlin's allegations regarding actual malice are entirely conclusory.  The failure to plead *specific* facts establishing that Breitbart.com acted with actual malice is fatal to Kimberlin's claims. *See Mayfield*, 674 F.3d at 377-78 (dismissing a defamation claim where plaintiff offered only conclusory allegations of malice); *Schatz v. Republican State Leadership Committee,* 669 F.3d 50, 56 (1st Cir. 2012) (affirming dismissal where the complaint used only "actual-malice buzzwords," such as the defendant "had 'knowledge' that its statements were 'false' or had 'serious doubts' about their truth and a 'reckless disregard' for whether they were false."); *Paris v. Sinclair*, 845 F. Supp. 2d 215, 218-19 (D.D.C. 2012) (dismissing defamation claim where no factual allegations, other than plaintiff's own conclusory assertions, supported a finding of actual malice).

      Here, the SAC attempts to supplement the mere recitation of actual malice "buzzwords," but these new, general allegations are also conclusory, and even if accepted as true, do not establish actual malice.  The general allegation that defendants published without conducting "due diligence," SAC ¶229, does not support a finding of actual malice.  "Failure to investigate, even when a reasonably prudent person would have done so, is not sufficient to establish" actual

malice. *Harte-Hanks Comm. v. Connaughton*, 491 U.S. 657, 688 (1989). Even proof of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" will not suffice to prove actual malice. *Id*. at 663-64. Similarly, the failure to engage in dialogue with the allegedly defamed party does not support a finding of actual malice. *See McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1510 (D.C. Cir. 1996) (author's failure to contact plaintiff "provides even less support for a finding of actual malice").

Other conclusory allegations—such as that many Defendants published defamatory statements "day after day" in "coordinated, aggressive" attacks, SAC ¶234—may show spite or ill, if based on actual facts, but such allegations have no bearing on the issue of actual malice. *Herbert v. Lando*, 781 F.2d 298, 309 (2d Cir. 1986) (no actual malice, even where reporter allegedly told plaintiff, "I'll get you" and "I'll destroy you"). With only general, conclusory allegations of actual malice that are "precisely the sort of allegations that *Twombly* and *Iqbal* rejected," *Mayfield*, 674 F.3d at 377-78, Kimberlin has failed to plead sufficient facts establishing that Breitbart.com acted with actual malice.[20]

---

[20] Even if Kimberlin sufficiently had pled a claim for false light, his ability to recover for the allegedly defamatory statements would be barred under the well-established "libel-proof" doctrine. Because "an allegation of false light must meet the same legal standards as an allegation of defamation," *Piscatelli*, 35 A.3d at 1146-47, Kimberlin cannot recover under false light where his defamation claim would be barred because he is libel proof. "The 'libel proof' doctrine is based on the recognition that in order for a defamation plaintiff to recover damages, he must have a reputation that is capable of sustaining injury due to the publication at issue. When the plaintiff has already engaged in conduct more damaging to his reputation than that described in the questioned publication, the plaintiff may well be 'libel proof,' as a matter of law." Bruce W. Sanford, Libel and Privacy, at 7—118-119 (2d ed., 2002 Supp.); *see also Lamb v. Rizzo*, 391 F.3d 1133, 1137, n.4 (10th Cir. 2004) (libel-proof plaintiff doctrine "has been applied in a number of jurisdictions for more than two decades") (collecting federal and state cases). Where, like here, a plaintiff's prior criminal history has been widely-publicized, the doctrine applies. *See Cardillo v. Doubleday & Co, Inc.*, 518 F.2d 638, 639 (2d Cir. 1975) (libel plaintiff who had been convicted of "assorted federal felonies" was "so unlikely by virtue of his

2. **Maryland's Statute of Limitations Bars Most of Kimberlin's False Light Claim.**

   a) *The One-Year Statute of Limitations Period Should Be Applied to Kimberlin's False Light Claim.*

Even if the articles attributed to Breitbart.com established the elements of false light—which they do not—they cannot be actionable because they were published outside of the relevant limitations period. Similar to the allegations against other defendants in this case, Kimberlin attempts to re-cast his defamation allegations against Breitbart.com as allegations of false light invasion of privacy in an apparent end-run around Maryland's one-year statute of limitations period applicable to defamation claims.[21] Md. Code Ann., Cts. & Jud. Proc. § 5-105 (West 2013). The circumstances of this case call for application of the one-year limitations period to Kimberlin's false light claims.[22]

The Maryland Court of Appeals has recently held that false light claims must meet the same legal standards as defamation claims. *See Piscatelli*, 35 A.3d at 1146-47. Moreover, several courts, including this one, have applied the one-year limitations period to false light claims. *See Smith v. Esquire, Inc.*, 494 F. Supp. 967, 970 (D. Md. 1980) (stating that Maryland Court of Appeals would find one-year statute to be applicable and that "[t]o hold otherwise

---

life as a habitual criminal to be able to recover anything other than nominal damages as to warrant dismissal of the case, involving as it does First Amendment considerations").

[21] The SAC alleges that Plaintiff is a resident of Maryland and that Breitbart.com is located in California. SAC ¶¶9, 16. For purposes of this Motion, Breitbart.com will presume—without conceding—that Maryland law applies as it is not substantially different from the law of any other state whose laws might apply.

[22] One *lower* court in Maryland has applied the general, three-year statute of limitations for civil actions to false light claims—despite recognizing that it could, potentially, provide a "loophole" for plaintiffs to re-cast defamation claims after expiration of the one-year window for defamation actions, *see Allen v. Bethlehem Steel Corp.*, 547 A.2d 1105, 1108 (Md. Ct. Spec. App. 1988). The Maryland Court of Appeals has not directly addressed this issue, but stated in a recent ruling that "an allegation of false light must meet the same legal standards as an allegation of defamation." *Piscatelli*, 35 A.3d at 1146-47.

16

would severely undercut the policy considerations which led to the enactment of the one-year

statute governing defamation cases"); *Forras v. Rauf*, --- F. Supp. 2d ----, 2014 WL 1512814, at

*7-8 (D.D.C. Apr. 18, 2014) (noting that under District of Columbia law, when false light and

intentional infliction of emotional distress claims are "'intertwined' with defamation claims, they

share the one year statute of limitations"); *Swan v. Boardwalk Regency Corp.*, 969 A.2d 1145,

1154-55 (N.J. App. Div. 2009); *Gannett Co., Inc. v. Anderson*, 947 So. 2d 1, 7-9 (Fla. DCA

2006).

Here, three of the four publications were published more than one year before the filing

of this case on October 15, 2013.  Two were published in June 2012 and one in October 2010.

Only one publication—the November 8, 2012 Article—was published within one year of the

filing of this case.  Accordingly, at a minimum, the false light claim should be barred as to the

three publications that were posted more than one year before October 2013.

> b)      *The October 11, 2010 Publication is Barred Under Either the One-*
> *Year or the Three-Year Limitations Period.*

Regardless of which limitations period is applied, the October 11, 2010 Article is more

than three years old and is thus barred under Maryland's general three-year limitations period.

Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2013). There can be no actionable claim for

relief based on statements in the October 11, 2010 publication.

## C.      The Intentional Infliction of Emotional Distress Claim (Count VIII) Fails As A Matter of Law

To establish intentional infliction of emotional distress ("IIED"), a plaintiff must plead

and prove four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must

be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct

and the emotional distress; (4) The emotional distress must be severe." *Batson v. Shiflett*, 602

A.2d 1191, 1216 (Md. 1992).

Claims for IIED are reserved for those rare instances where the defendant's conduct is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sirpal v. Fengrong Wang*, Case No. WDQ-12-0365, 2012 WL 2880565, at *4 (D. Md. July 12, 2012) (citing *Batson*, 602 A.2d at 1216). Because of this high standard, "[i]n the 30 years since the Maryland Court of Appeals first recognized IIED as a cognizable tort, it has upheld such claims only four times." *Taylor v. Anne Arundel Cnty., Md.*, Case No. WDQ-12-2468, 2013 WL 4451221, at *5 (D. Md. Aug. 15, 2013).

Kimberlin alleges that Breitbart.com published false and defamatory statements about him, a claim disproven on the face of the SAC, but "[d]efamatory conduct 'in no way satisfies [the] exacting standard for extreme and outrageous conduct.'" *Colfield v. Safeway Inc.*, Case No. WDQ-12-3544, 2013 WL 5308278, at *8 (D. Md. Sept. 19, 2013); *see also Sirpal*, 2012 WL 2880565, at *4 (even speech "intended and calculated to harass the plaintiff by accusing him of crimes is not extreme and outrageous"). Indeed, Kimberlin does not come close to alleging conduct by Breitbart.com that is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Batson*, 602 A.2d at 1216.

Moreover, in cases involving speech, such as this one, a public figure plaintiff cannot prevail on an IIED claim without establishing that the defendants acted with actual malice. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988). As discussed above, Kimberlin has not adequately pled that Breitbart.com acted with actual malice, much less published anything actionable at all. The claim for IIED fails as a matter of law.

18

**D.** **The Claim for Interference with Prospective Economic Advantage (Count VII)[23] Fails As A Matter of Law.**

To state a claim for tortious interference with prospective economic advantage, a plaintiff must plead "'(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.'" *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 675 (Md. 1984). Further, "plaintiffs must identify a possible future relationship which is likely to occur, absent the interference, with specificity." *Baron Fin. Corp. v. Natanzon,* 471 F. Supp. 2d 535, 546 (D. Md. 2006) (dismissing claim where allegations of interference were "vague and unformed").

Kimberlin has failed to plead facts supporting any of these elements as to Breitbart.com. First, as discussed above, Breitbart.com's publications are not actionable as false light. Thus, Kimberlin has failed to allege "intentional and willful acts" that were done with an "unlawful purpose." Nor has he alleged any specific damage or loss, such as a possible future relationship, with specificity. He merely claims that defendants "cause[d] damage to Plaintiff in his lawful businesses, both as an employee of Justice Through Music and as a musician." SAC ¶265. His vague and unformed allegations clearly lack the requisite specificity. *See Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013) (denying claim where no "specific future relationship" was identified).[24]

---

[23] The SAC contains two counts labelled "Seventh Claim for Relief." ECF No. 100-3, at pp. 78, 79. The second "Seventh Claim for Relief"—for Battery—is alleged only against Defendant Walker.

[24] This claim also is an attempted end-run around the First Amendment protections provided to defamation and false light claims, which is not permitted. *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 523-24 (4th Cir. 1999) (citing *Hustler*, 485 U.S. at 56, and disallowing "publication damages" for "non-reputational tort claims" where First Amendment protections were not overcome).

19

E.     **The Claim for "Conspiracy to Commit State Law Torts" (Count IX) Fails As A Matter of Law.**

Kimberlin's new claim for conspiracy fails because "[i]t is well established in Maryland that civil conspiracy is not capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Mackey v. Compass Mktg.,* 892 A.2d 479, 485 (Md. 2006) (internal quotation marks omitted). As Judge Bennett has noted, "[i]t is even considered improper to plead civil conspiracy in a separate count of a complaint as if it were a cause[ ] of action independent of an underlying tort." *Alford v. Genesis Healthcare*, Case No. RDB-05-3278, 2007 WL 1073725, at *7 (D. Md. 2007) (internal quotation marks omitted). Because Kimberlin has failed to state a cause of action for any state law tort—a requirement for the civil conspiracy claim—he cannot prevail on this claim either.

II.    **KIMBERLIN'S CLAIMS SHOULD BE DISMISSED PURSUANT TO MARYLAND'S ANTI-SLAPP STATUTE.**

Maryland, like nearly 30 other states, has a statutory prohibition against strategic lawsuits against public participation, commonly known as "SLAPP" suits. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-807 ("Anti-SLAPP Statute"). The statute applies in diversity actions and bars meritless lawsuits that seek to stifle commentators for constitutionally-protected speech on matters of public concern—precisely the type of action that Kimberlin has brought here.

Maryland's statute defines a SLAPP suit as a lawsuit that is:

1. "Brought in bad faith against a party who has communicated with . . . the public at large . . . to report on, comment on . . . or in any other way exercise rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights regarding . . . any issue of public concern";

2. "Materially related to the defendant's communication"; and

3. "Intended to inhibit or inhibits the exercise of rights under the First Amendment . . . ."

*Id.* at § 5-807(b). A defendant in such a suit cannot be civilly liable for exercising its First Amendment rights by communicating with "the public at large" about "any issue of public concern," so long as the communication was made "without constitutional malice." *Id.* at § 5-807(c). When faced with a suit that is based on speech protected by the anti-SLAPP statute, a court must entertain a motion to dismiss the case "as soon as practicable." *Id.* at § 5-807(d)(1).[25]

This lawsuit was clearly brought in bad faith as to Breitbart.com and other media defendants, and it is "[i]ntended to inhibit or inhibits the exercise of rights under the First Amendment." Maryland law defines a "bad faith" suit as one brought "vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons." *Inlet Assoc. v. Harrison Inn Inlet, Inc.*, 596 A.2d 1049, 1056 (Md. 1991). Kimberlin's bad faith vis-à-vis Breitbart.com is manifest from the face of the SAC (as well as earlier versions) because there are no actionable publications. The SAC is, rather, a shotgun-style pleading that indiscriminately hurls various, unrelated claims against a slew of defendants without stating supporting facts. The "vexatious" and "improper" conduct includes initially asserting defamation claims that were plainly barred by the statute of limitations, meritless fraud claims, a RICO claim against journalists, news websites, and others for whom the alleged racketeering acts involve exercise of

---

[25] The Court is empowered to dismiss the SAC pursuant to Maryland's Anti-SLAPP Statute in this federal action. This Court has recognized that the act "describes a type of defense, such as privilege or immunity," and therefore it can apply in federal proceedings. *See Russell v. Krowne*, Case No. DKC-08-2468, 2010 WL 2765268, at *3 (D. Md. July 12, 2010). This position is consistent with other federal courts that have found other anti-SLAPP laws to be substantive—not merely procedural—and have applied them to state law claims in diversity actions. *See, e.g.*, *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999). Indeed, federal courts have applied anti-SLAPP statutes to dismiss the exact same common law claims brought by Kimberlin here. *See Gardner v. Martino*, 563 F.3d 981, 983 (9th Cir. 2009) (affirming dismissal of plaintiffs' claims for, *inter alia*, defamation, false light invasion of privacy, and intentional interference with prospective economic advantage under Oregon's anti-SLAPP statute); *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 38-39 (D.D.C. 2012) *aff'd*, 736 F.3d 528 (D.C. Cir. 2013) (dismissing, pursuant to D.C. Anti-SLAPP statute, plaintiff's claims for defamation, false light invasion of privacy and tortious interference with business relations, which were based on blog posts).

their First Amendment rights, and a claim under the Civil Rights Act of 1871, despite no allegation whatsoever of any invidious racial or class-based animus. Although Kimberlin has withdrawn some of these claims as to some defendants, this lawsuit is still an obvious attempt to bully commentators and "inhibit the exercise" of First Amendment rights. Kimberlin, himself, has admitted that he cast an overly-broad net in bringing this suit, acknowledging that a number of the defendants "got caught up in something they were not fully aware of." ECF No. 153.

There is also no question that all of Kimberlin's claims are "materially related" to Breitbart.com's communications with the public.  The alleged wrongful conduct (of which there is none) arises solely from publication of commentary and information on its website. *Cf. Boley v. Atlantic Monthly Group*, 950 F. Supp. 2d 249, 256 (D.D.C. 2013) (recognizing that publication on news website was a public communication as defined in D.C.'s anti-SLAPP statute because "anyone with internet access can view it"). These articles clearly constitute communications to the public on "issue[s] of public concern." To the extent articles posted on Breitbart.com even mentioned Kimberlin, such comments were made in connection with his political connections to progressive organizations and his confrontations with conservative commentators. And to the extent any of the articles on Breitbart.com discussed the issue of swatting, they were commenting on a public controversy—one of such grave importance that even the FBI has tried to raise public awareness of it.[26] *See Piscatelli,* 35 A.3d at 1152 (noting that the "occurrence or prosecution of crimes" constitutes an "obvious" example of a matter of public interest).

Because this case involves protected speech, Breitbart.com is immune from suit unless Kimberlin can demonstrate that it acted with "constitutional malice." As discussed above, *see*

---

[26] *See, e.g.*, Federal Bureau of Investigation, *The Crime of 'Swatting'; Fake 9-1-1 Calls Have Real Consequences* (Sept. 3, 2013), *available at* http://www.fbi.gov/news/stories/2013/september/the-crime-of-swatting-fake-9-1-1-calls-have-real-consequences/the-crime-of-swatting-fake-9-1-1-calls-have-real-consequences [last accessed on February 3, 2014].

Section I.B.1.c., *supra*, the SAC does not contain a single, well-pled factual allegation supporting a finding that Breitbart.com made any of communication with "constitutional" or "actual" malice and, therefore, Breitbart.com is shielded from liability.

Indeed, Kimberlin's real motive is as transparent as it is an attempt to chill speech. He wants this Court (and others) to prevent anyone from writing about his past. There may be good reason Kimberlin wants to erase his past, but the courts are not a tool to get media outlets to "shut up" about it.

Because *all* of Kimberlin's claims against Breitbart.com stem from allegations of non-actionable publications that would nevertheless be protected speech, *all* of his claims against Breitbart.com must be dismissed pursuant to Maryland's Anti-SLAPP Statute. *Cf. Gardner*, 563 F.3d at 983; *Farah*, 863 F. Supp. 2d at 38-39. Kimberlin's lawsuit is nothing more than another attempt to stifle the constitutionally-protected speech rights of those with different political views, and it should be dismissed pursuant to Maryland's Anti-SLAPP Statute.

## III.     KIMBERLIN HAS FAILED TO TIMELY SERVE BREITBART.COM.

Rule 12(b)(5) allows for dismissal based on "insufficient service of process." Under Rule 4(c)(1), "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) . . . ." Rule 4(m), in turn, provides that: "If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

Because Kimberlin filed the original Complaint on October 15, 2013, his deadline for serving Breitbart.com was February 12, 2014. As Judge Grimm determined, Kimberlin's attempt to serve Breitbart.com before this deadline was ineffective. ECF No. 122. Nonetheless, the Court extended the time to serve Breitbart.com by 60 days. This additional 60-day period expired on

June 27, 2014—a month before Breitbart.com received the summons and complaint via certified mail. The SAC, therefore, should be dismissed due to Kimberlin's failure to timely serve Breitbart.com. *See, e.g.*, *Lehner v. CVS Pharmacy*, Case No. RWT 08-cv-1170, 2010 WL 610755, at *2-3 (D. Md. Feb. 17, 2010) (finding dismissal pursuant to Rule 12(b)(5) proper where plaintiff failed to serve defendant until after expiration of original 120-day window or within additional extension of time granted by the court).

The Letter Order referenced that it would be "later" of 60 days or "the appropriate period for service of the amended complaint," but this does not provide Kimberlin additional time for service.   The deadline to serve a defendant runs from the filing of the ***first complaint naming that defendant***, and the filing of an amended complaint does not toll or extend the time for service on a defendant named in the previous complaint. *See, e.g.*, *Omega U.S. Ins., Inc. v. Penn. Nat. Mut. Cas. Ins. Co.*, Case No. ELH-11-2297, 2012 WL 115422, at *4-5 (D. Md. Jan. 13, 2012) (recognizing that plaintiff had to obtain an extension in order to serve a previously-named defendant more than 120 days after the filing of the original complaint, despite filing an amended complaint).[27]

Kimberlin already received an extension from the Rule 4(m) deadline, and there are no grounds for further extensions.  Because Kimberlin failed to serve Breitbart.com on or before

---

[27] *See also Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1148 (10th Cir. 2006) ("[T]he 120–day period provided by Rule 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint."); *Harris v. City of Cleveland*, 7 Fed. App'x 452, 456 (6th Cir. 2001) (unpublished) ("Rule 4 further requires a plaintiff to perfect service on a defendant within 120 days of filing a complaint naming that defendant. A plaintiff cannot extend the service period with respect to an already-named defendant by filing an amended complaint naming additional defendants."); Wright & Miller, Federal Practice and Procedure: Civil 3d § 1137, at 377 (3d ed. 2002) ("[F]iling an amended complaint in itself does not toll the service period, thereby providing an additional 120 days for service.").

June 27, 2014, as permitted under the April 28, 2014 Letter Order, the action against

Breitbart.com must be dismissed pursuant to Rule 12(b)(5) and Rule 4(m).[28]

## IV.    BREITBART.COM IS ENTITLED TO ITS COSTS AND ATTORNEYS' FEES.

Attorneys' fees are proper in this case under the Court's inherent power to sanction those

who litigate "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Moreno v. PF*

*Hurley, Inc.*, Civ. No. RWT-07-1515, 2009 WL 3208324, at *2 (D. Md. Sept. 29, 2009) (quoting

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Kimberlin's claims against Breitbart.com

and the other Defendants are sufficiently meritless to suggest bad-faith and/or vexatious conduct,

justifying an award of attorneys' fees as a sanction. *Cf. Byrd v. Hopson*, 108 Fed. App'x 749 (4th

Cir. 2004) (per curiam) (affirming award of attorneys' fees against plaintiff pursuant to, *inter*

*alia*, trial court's inherent power in conjunction with dismissal of plaintiff's "baseless" claims,

which alleged a "wide-ranging conspiracy against her" and asserted civil rights violations, RICO

violations, and state law claims, some of which were barred by the statute of limitations).

Whatever the merits of disputes he may have against other defendants, it is clear that

Kimberlin has no legitimate claims against Breitbart.com. Kimberlin, himself, has recognized

that a number of the defendants—including, evidently, Breitbart.com—simply "got caught up in

something they were not fully aware of." ECF No. 153. Yet, Kimberlin has refused the Court's

admonition to voluntarily dismiss such defendants from this action and continues to waste the

time and resources of both Breitbart.com and the Court by pressing his meritless claims. ECF

No. 163 at 3 n.2; ECF No. 168 at 2 n.1. An award of attorneys' fees and costs is proper.

---

[28]  Service is also ineffective because under Rule 4(c)(2), only a person who is "not a party may serve a summons and complaint." Kimberlin apparently served the summons and complaint on Breitbart.com himself and therefore service is defective for that reason as well.

## <u>CONCLUSION</u>

For the foregoing reasons, Breitbart.com respectfully requests that this Court dismiss all counts of the SAC against it, award Breitbart.com its reasonable attorneys' fees and costs incurred in defending against Kimberlin's meritless claims, and grant any other such relief as the Court deems proper.

Dated: August 18, 2014                  Respectfully submitted,

                                         BAKER & HOSTETLER LLP


                                         By:____*/s/ Mark I. Bailen*_____
                                             Mark I. Bailen (13805)
                                             Washington Square, Suite 1100
                                             1050 Connecticut Avenue, N.W.
                                             Washington, DC 20036
                                             Tel:202-861-1500
                                             Fax:202-861-1783
                                             mbailen@bakerlaw.com

                                         *Counsel for Defendant Breitbart.com*

26