IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

*In re* SUBPOENA OF DANIEL
DRASIN

_____

ADVANCED CAREER
TECHNOLOGIES, INC.,

    *Plaintiff,*

    v.

JOHN DOES 1-10, all whose true
names are unknown,

    *Defendants.*

Civil Action No. ELH-13-1140

(Related Case: *Case No. 13-cv-00304 in
the United States District Court for the
District of Colorado*)

**MEMORANDUM**

Advanced Career Technologies, Inc. ("ACT"), plaintiff, sued ten John Doe defendants in

federal court in Colorado, based on allegedly defamatory comments posted anonymously on

"Random Convergence," an internet blog administered by Daniel Drasin, located at

http://randomconvergence.blogspot.com/. In particular, ACT lodged claims for "trade libel/

commercial disparagement," violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),

and violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105. *See*

Verified Complaint ("Complaint," ECF 1-1).

On March 11, 2013, Magistrate Judge Kristin Mix of the United States District Court for

the District of Colorado authorized expedited discovery, and granted ACT's motion for leave to

serve third party subpoenas on Drasin, a resident of Maryland.[1] Two subpoenas were issued to

Drasin by this Court, commanding him, in his individual capacity and as administrator of the

_____

[1] ACT was also granted leave to serve a subpoena on Google, Inc.

Random Convergence blog, to produce the "true name, address, telephone number, e-mail address, and Media Access Control address of each of the ten Doe Defendants," based on "the IP [Internet Protocol] addresses from which they posted and edited posts about [ACT] and its employees," as identified in "Motion [#11]." ECF 1-3 (brackets in original).[2] ECF 1-3 (brackets in original). "Motion [#11]" appears to refer to ACT's "Amended Motion for Expedited Discovery," which is attached to the Motion to Quash, at ECF 1-2, and includes a computer "screen shot" listing twelve IP addresses. *See id.* at 4.

On April 18, 2013, Drasin, who is self-represented, filed a third-party motion to quash the subpoenas, pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv) ("Motion," ECF 1), asserting that they infringe on the Doe defendants' First Amendment right to anonymous speech. Fed. R. Civ. P. 45(c)(3), titled "Quashing or Modifying a Subpoena," states, in pertinent part:

> (A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
>
> \*       \*       \*
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

ACT opposes the Motion ("Opposition," or "Opp.," ECF 6), arguing that the subpoenas provide the only feasible method for it to obtain the identities of the anonymous defendants. Drasin filed a reply ("Reply," ECF 7).

_____

[2] An IP address is not really an "address" or physical "place" in the usual sense of the word, and therefore the term can be quite misleading. In fact, it is only an electronic "route" to the internet assigned by an internet service provider to a customer on a given date and hour to provide access to the internet. The route can be assigned to different customers on given dates or given hours. If a customer accesses the internet briefly and signs off, the IP address is assigned to another customer. Additionally, "[d]ue to the prevalence of wireless routers, the actual device that performed the allegedly [unlawful] activity could have been owned by a relative or guest of the account owner, or even an interloper without the knowledge of the owner." *Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233, 237-39 (E.D.N.Y. 2012).

The issues have been fully briefed, and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I will deny the Motion.

**Factual Background**

ACT is a "career guidance service firm that assists job seekers throughout their job search." *See* Compl. ¶ 7. It "assist[s] clients in developing a marketing plan that acts as a road map for the clients' job search, identifying the client's strengths and skills while providing solutions for any weaknesses, and locating industry options and opportunities in an effort to maximize the client's chances of securing gainful employment." *Id.*

As noted, Drasin is the administrator of a blog known as Random Convergence. *See* Affidavit of Robert J. Gerberg, Jr., President & Chief Executive Officer of ACT, ¶ 9 ("Gerberg Aff.," ECF 6-4). According to ACT, Drasin exercises editorial control over the blog. *Id.*

Since approximately 2007, individuals have posted over 350 anonymous comments on Random Convergence, many of which disparage ACT's services. *See id.* ¶¶ 11, 17; Opp. Exh. C at 16 (ECF 6-3) (screen prints of posts and comments about ACT on Random Convergence). For example, one post stated: "Scam Scam Scam - I just wrote 60 minutes and put out a news release and wrote the major job search sites. These guys are toilet slime bags. STAY AWAY FROM THESE FRAUDS." *Id.* at 24. Commenters have also listed the names and phone numbers of ACT executives, which, according to ACT's Complaint, are not otherwise publicly available. Compl. ¶ 14. ACT "has been unable to verify or confirm *any* of the complaints discussed on the blog." Gerberg Aff. ¶ 36.

According to ACT, the anonymous postings are "a sophisticated and coordinated campaign" intended to "damage ACT's business and reputation." Opp. at 4. It believes that "[t]he entries on Random Convergence are designed to maximize the effect of the blog by

-3-

sending spam and driving up the blog's rankings and visibility in the search engine Google." Gerberg Aff. ¶ 15.  ACT reports that it has "received numerous emails from potential or current clients stating that because of the blog, they will no longer be using ACT services." *Id.* ¶ 27. Additionally, ACT claims that it has "asked to post comments on the Random Convergence Blog to rebut some of the false statements, but Mr. Drasin refused these requests." *Id.* ¶ 32.

## Discussion

Drasin's primary contention is that ACT's subpoenas infringe on the First Amendment rights of the John Doe defendants to engage in protected, anonymous speech.[3]  To be sure, "an author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elecs. Comm'n*, 514 U.S. 334, 342 (1995).  "The right to anonymous speech, however, is not unlimited," *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 249 (4th Cir. 2009), and the identity of an anonymous speaker may be disclosed during discovery to protect a litigant's legitimate interest in vindicating his or her legal rights in court. *See, e.g., id.* (upholding disclosure of third-party witness's identifying information because there was a "substantial governmental interest in providing [defendant] a fair opportunity to defend itself in court . . . by requiring the Doe [witness] to reveal its identity and provide the relevant information," which outweighed the witness's right to anonymous commercial speech); *In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011) (upholding disclosure with

---

[3] Drasin has standing to assert these rights on behalf of the John Doe defendants. *Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980) ("Given a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court."); *see, e.g., Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 786 (M.D. Pa. 2008) (finding that newspaper had standing to assert First Amendment rights of anonymous website commenters in challenging subpoena seeking disclosure of commenters' names because commenters "face[d] practical obstacles to asserting their own First Amendment rights" while retaining anonymity; disclosure would "compromise the vitality of the newspaper's online forums, sparking reduced reader interest and a corresponding decline in revenues"; and newspaper would "zealously argue and frame the issues").

respect to identity of three non-party anonymous speakers who allegedly made defamatory statements about plaintiff, which formed predicate of plaintiff's claims against a business competitor for tortious interference).

Where a discovery request impinges on First Amendment rights, courts will "'balance the burdens imposed . . . against the significance of the . . . interest in disclosure,' to determine whether the 'interest in disclosure . . . outweighs the harm.'" *Perry v. Schwarzenegger*, 591 F.3d 1141, 1161 (9th Cir. 2010) (citations omitted). With respect to a speaker's anonymity, the protection accorded "varies depending on the circumstances and the type of speech at issue." *In re Anonymous*, 661 F.3d at 1173. For example, courts "typically" protect anonymity in literary, religious or political speech, whereas "commercial speech . . . 'enjoys a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values.'" *Lefkoe*, 577 F.3d at 249 (quoting *Bd. of Trs. of SUNY v. Fox*, 492 U.S. 469, 477 (1989)). Further, "there can be no constitutional objection" to the regulation of commercial speech that is "misleading" or "related to unlawful activity." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563-64 (1980). Accordingly, courts have recognized that "the nature of the speech" is "a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes." *In re Anonymous*, 661 F.3d at 1177.

According to Drasin, ACT has not demonstrated that its interests in disclosure outweigh the John Doe defendants' rights to anonymous speech. He relies primarily on the decision of the Maryland Court of Appeals in *Independent Newspapers, Inc. v. Brodie*, 407 Md. 415, 966 A.2d 432 (Md. 2009). In *Brodie*, the plaintiff brought a defamation action against a newspaper and several anonymous defendants who posted comments on the newspaper's online discussion forum, and then subpoenaed the newspaper to obtain the identities of the Doe defendants. *See id.*

at 431-39, 996 A.2d at 442-47.  The court held that the newspaper was not obligated to comply

with the subpoena because the plaintiff had not made out a prima facie case of defamation.  *Id.* at

440, 966 A.2d at 447.

The *Brodie* Court articulated a five-part test to "balanc[e] an individual's First

Amendment right to speak anonymously on the Internet against a plaintiff's right to seek judicial

redress for defamation."  *Id.*  It said:

> [W]hen a trial court is confronted with a defamation action in which anonymous
> speakers or pseudonyms are involved, it should, (1) require the plaintiff to
> undertake efforts to notify the anonymous posters that they are the subject of a
> subpoena or application for an order of disclosure, including posting a message of
> notification of the identity discovery request on the message board; (2) withhold
> action to afford the anonymous posters a reasonable opportunity to file and serve
> opposition to the application; (3) require the plaintiff to identify and set forth the
> exact statements purportedly made by each anonymous poster, alleged to
> constitute actionable speech; (4) determine whether the complaint has set forth a
> prima facie defamation per se or per quod action against the anonymous posters;
> and (5), if all else is satisfied, balance the anonymous poster's First Amendment
> right of free speech against the strength of the prima facie case of defamation
> presented by the plaintiff and the necessity for disclosure of the anonymous
> defendant's identity, prior to ordering disclosure.

*Id.* at 456, 966 A.2d at 457 (citing *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760-61 (N.J.

Super. Ct. App. Div. 2001)).

Drasin argues that ACT has failed to satisfy the *Brodie* test.  First, Drasin asserts that

ACT did not undertake to notify the anonymous posters that they are the subject of a subpoena

by posting a notification on the blog.  Motion at 6-7.  Second, he claims that ACT has not

identified the particular comments made by the John Doe defendants that it alleges are unlawful,

and therefore this Court cannot "weigh the posters[*] [F]irst [A]mendment right to remain

anonymous against Plaintiff's right to seek judicial redress."  *Id.* at 7.  Third, he contends that

ACT cannot make out a prima facie case on any of its claims, because ACT has failed to identify

the actionable comments on which its lawsuit is based.  *Id.* at 7-10.

In response, ACT claims that, under "under principles of comity," this Court should "defer" to Magistrate Judge Mix's authorization of the subpoenas in this case. Opp. at 7-8 (*citing Ulmet v. United States*, 888 F.2d 1028, 1031 (4th Cir. 1989)). Citing *Lefkoe* and *In re Anonymous Online Speakers*, *supra*, ACT also argues that the Doe defendants' comments are not protected under the First Amendment because they constitute false and misleading commercial statements. Opp. at 9-11. Additionally, ACT contends that, even under *Brodie*, the subpoenas are valid because ACT attempted to give notice to the anonymous posters through posts on Random Convergence; identified the anonymous posts at issue; alleged a prima facie case; and its interests in vindicating its rights outweigh the First Amendment rights of the John Doe defendants. *See id.* at 11-17. ACT adds that it "is willing to enter into a protective order which limits disclosure of the anonymous posters' identities to just the parties in this lawsuit or just to their attorneys." *Id.* at 17.

I agree that ACT has a strong interest in protecting itself from unlawful online speech. According to ACT, it has suffered harm to its reputation as a result of the blog's extensive commentary on its business practices that are, according to ACT, false and misleading. For example, potential and current clients have allegedly declined to use ACT's services because of the comments on Random Convergence. Gerberg Aff. ¶ 27; *see In re Anonymous*, 661 F.3d at 1176 (recognizing "the great potential for irresponsible, malicious, and harmful communication and that particularly in the age of the Internet, the speed and power of internet technology makes it difficult for the truth to 'catch up' to the lie") (internal quotation marks and citation omitted). Moreover, ACT is in need of the identities of these commenters to pursue its legal claims concerning the online speech. *See Lefkoe*, 577 F.3d at 249; *e.g., Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 577-78 (N.D. Cal. 1999) (recognizing need for parties injured

by anonymous online tortfeasors to discover the tortfeasors' identities in order to permit service and obtain relief); *see also* Gerberg Aff. ¶ 37 ("The only way to verify the identity of anonymous posts is by the Internet Protocol address that individual used to post on the Random Convergence blog.").

ACT's interest in disclosure clearly outweighs the Doe defendants' limited First Amendment right of anonymity. *See In re Anonymous*, 661 F.3d at 1176-77. Given that the speech in question is of a commercial nature, and allegedly false and misleading, it "enjoys less First Amendment protection." *Lefkoe*, 577 F.3d at 248; *see Central Hudson*, *supra*, 447 U.S. at 563-64 (discussing commercial speech); *see also Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245-46 (2002) (explaining that First Amendment protection "does not embrace certain categories of speech, including defamation").

ACT has also satisfied the procedural requirements set forth in *Brodie*, although they are not binding on this Court. In particular, ACT avers that Drasin posted a letter from ACT on the blog, "putting all posters on notice that ACT would seek a subpoena" if the defamatory comments were not removed. Opp. at 13; Gerberg Aff. ¶ 34. Additionally, ACT claims that it attempted to address the defamatory comments by posting directly to Random Convergence, but Drasin deleted its posts. Opp. at 13; Gerberg Aff. ¶¶ 32, 34.

Further, I reject Drasin's argument that ACT has not identified adequately the allegedly unlawful posts. To be sure, not all of the comments in the exhibits submitted by ACT are offensive, and thus the identities of those who made those remarks would be irrelevant to ACT's claims that commenters "published disparaging, false, defamatory and harmful statements." *See* Opp. at 15-16. Nevertheless, ACT has provided voluminous exhibits that detail the many offensive comments made on the Random Convergence blog which form the basis of its suit.

*See generally* Opp. Exh. 3 (ECF 6-3). Judge Mix determined that ACT is entitled to expedited discovery as to these comments, *see* Opp. at 1, and I will not second-guess that determination. *See Ulmet, supra*, 888 F.2d at 1031 (discussing principles of judicial comity); *e.g., Gregory-Portland Ind. Sch. Dist. v. Texas Educ. Agency*, 576 F.2d 81, 83 (5th Cir. 1978) (concluding that comity precluded one district court from issuing an order that conflicted with an injunction issued by another district court in the same matter).

Although I cannot be certain that each IP address corresponds to an offensive comment, absolute certainty is not required. Moreover, plaintiff has agreed to a protective order, and the Doe defendants' privacy concerns will be addressed adequately by a protective order limiting disclosure of the defendants' identifying information to the parties and their counsel.

### Conclusion

For the foregoing reasons, I will deny the Motion. An Order follows.

Date: July 24, 2013

/s/

Ellen L. Hollander
United States District Judge