FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 JAN -7  PM 3: 27

CLERK'S OFFICE
AT GREENBELT

BY___*U*___DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

|  |  |  |
|---|---|---|
| **BRETT KIMBERLIN,** | * | |
| **Plaintiff** | * | |
| v. | * | **CASE NO.: GJH-13-3059** |
| **NATIONAL BLOGGERS CLUB, et al.,** | * | |
| **Defendants** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## (ECF NO. 231)

Defendant Walker's[1] (Second) Motion to Dismiss (ECF No. 152) should be granted and in the interest of judicial economy, it should be granted to all parties.  Through two motions to dismiss ("MTDs"),[2] and a reply to the Plaintiff's prior oppositions, Mr. Walker has exposed massive holes in the Plaintiff's claims that apply to all Defendants and the Plaintiff has failed to fill them.

The most telling thing about the Plaintiff's opposition is how much of it consists of text cut-and-pasted from prior filings, particularly his first Opposition (ECF No. 29) ("H&WOpp.") to Mr. Walker's first MTD (ECF No. 11), and his first Opposition (ECF No. 67) ("TOpp.") to Twitchy/Malkin's first MTD (ECF No. 101).  This isn't inherently wrong, but the problem here is that the text he has recycled is erroneous.  For instance, every word of this paragraph regarding how to evaluate a complaint from the

---

[1] Mr. Walker refers to himself in the third person for stylistic purposes and to de-personalize this case.
[2] A list of the acronyms used in this Reply is listed in Exhibit A, for this court's convenience.

introduction to Mr. Walker's First Reply remains true:

> The Plaintiff cites numerous cases to the effect that a complaint doesn't have to meet a high bar to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), such as *Conley v. Gibson*, 355 U.S. 41 (1957). The law related to the sufficiency of complaints has changed significantly since those days. This court is rightfully guided by more modern precedents such as *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). This reply will not recite the liturgy of the standard for evaluating a Rule 12(b)(6) motion to dismiss that this court is extremely familiar with, see, e.g. *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F.Supp.2d 577, 584-585 (D. Md. 2013), but the Plaintiff has failed to meet those pleading standards, and, therefore, the [Second] Amended Complaint should be dismissed.

(ECF No. 55) ("W. Reply") p. 1. This continues throughout the Plaintiff's most recent Opposition (ECF No. 231) ("Omnibus Opp."), as he repeats errors after they have been pointed out to him. After all this time, all the Plaintiff can come up with is a quick grafting, without bothering to update when he had been corrected. This stitching together of decomposing arguments into a Frankenstein's monster of an opposition is a sign that the Plaintiff has given up. He is lifelessly trudging forward, knowing this case is dead but seeking to inflict maximum vexation upon the Defendants before dismissal.

Thus, a great deal of this Reply is also cut and pasted in order to rebut, again, what has already been rebutted. To the extent that the Plaintiff actually composed any new text, he largely ignored the legal points made by all of the Defendants. He simply asserts he has met his burden and hopes that this Court won't notice that he hasn't. If this case is now dismissed, Mr. Walker would like the opportunity to demonstrate that sanctions are appropriate. In any event, the Plaintiff's decaying opposition is further evidence of his bad faith, making it appropriate to dismiss this case with prejudice.

## I.
## THE PLAINTIFF DOESN'T ADDRESS BASIC DEFICIENCIES IN HIS CLAIMS AND THEREFORE THIS CASE SHOULD BE DISMISSED WITH PREJUDICE

It is revealing that Mr. Walker can quote his prior reply, with few alterations, regarding points

that the Plaintiff is not even contesting:

> [First], the Plaintiff doesn't deny that he has failed to allege the proper kind of wrongful inducement needed to commit extortion under §1951. A peaceable attempt at a settlement doesn't count.
>
> [Second], the Plaintiff has not disputed that there are fatal flaws in his pleadings related to Mail and Wire Fraud under 18 U.S.C. §§1341 and 1343. While he claims he has properly pled fraud, he makes no effort to dispute that he was required to allege that the supposedly false statements were material, made with the intent to deceive another and inducing justifiable reliance in anyone, and he makes no effort to show that he has alleged those elements at all. While some deference is ordinarily due to a pro se litigant, this "does not mean that a court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court." *Solomon v. Dawson,* [Case No. PWG-13-1951] (D. Md. July 18, 2013).... These fundamental failures plague every single claim of mail and wire fraud made by the Plaintiff, and, therefore, none of these claims can serve as a predicate offense under §1961(1).
>
> [Third], the Plaintiff continues to allege that defendants committed money laundering under §1957, but continues to fail to address basic elements of the offense. Specifically, the Plaintiff didn't allege that the person making the transactions did so knowing they were derived from unlawful activity, or that they made such transactions in the United States, or that the person doing so is a United States person. He doesn't even specify who actually made the transactions. Likewise, the [Second] Amended Complaint only made conclusory allegations that the transactions involved property of a value greater than $10,000, and the Plaintiff admits he has no way of knowing anything about those transactions. The Plaintiff doesn't deny that he must properly allege these elements, or demonstrate he had alleged them, but instead hopes that this court will not notice these problems.
>
> [Fourth], the Plaintiff has not contested—except in the most cursory fashion—that he has failed to make out any of the elements under §1962(d) relating to a conspiracy to commit a violation of §1962(c). The Plaintiff apparently believes that he can make out a claim for conspiracy under §1962(d) by merely inserting the word "conspired" now and then. This court should disabuse him of that notion.

W. Reply, p. 2-3. Mr. Walker previously noted these points, and the Plaintiff still hasn't contested them.

Additionally, in the current Opposition, the Plaintiff didn't address the following points.

First, he didn't address the reality that the National Bloggers' Club is now a §501(c)(3) (referring

to 26 U.S.C. §501(c)(3)). He doesn't dispute that it was granted this status, doesn't dispute that this

status is retroactive under the law, or argue that this court shouldn't take judicial notice of these facts. He just pretends it didn't happen.

Second, he doesn't address the fact that any claim that Mr. Walker battered him or that Mr. Walker lied about not battering the Plaintiff are barred by collateral estoppel.  He already had the opportunity to prove Mr. Walker battered him, and he failed in a prior peace order hearing. He has offered no reason why this should be litigated again

Third, he doesn't dispute that he has failed to show retaliation under 18 U.S.C. §1513(b); he literally doesn't mention this subsection at all, a *sub silentio* withdrawal of that claim.

Fourth, in relation to §1513(e), he doesn't dispute that he is required to allege that any of the Defendants knew he spoke to the FBI, when they found out, what they knew about what he said,  and the truthful information provided or any federal offense the possible commission of which the truthful information relates.  Such specificity is necessary to advance his claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Instead, he makes conclusory allegations of retaliation, and such conclusory allegations must be disregarded. *Iqbal*, 556 U.S. at 664 (conclusory allegations are "not entitled to be assumed true.")

Fifth and sixth, the Plaintiff doesn't dispute that when it comes to harassment §1512(d), or conspiracy (under Maryland state law) that he has alleged none of the elements, simply throwing around conclusory allegations of both and hoping that this court won't notice that failure.

Seventh, the Plaintiff doesn't even dispute that his allegations related to retaliation are self-contradictory and therefore not entitled to the presumption of truth. The Plaintiff claimed at one point that the Defendants wanted to deter the Plaintiff from speaking to the FBI or to punish him for having done so, and then claimed at another point that they made the FBI talk to him as a form of harassment.

4

Such conclusory and contradictory allegations are not entitled to the ordinary presumption of truth.

Eighth, the Plaintiff made no effort to demonstrate he has met the requirement that the alleged racketeering activity has sufficient continuity, an implicit admission he has failed to do so.

Ninth, the Plaintiff has made no effort to demonstrate that he has met the requirement that he properly allege that any RICO enterprise actually exists. He says he did, but makes no effort to demonstrate he did so.

Tenth, the Plaintiff makes no effort to rebut Mr. Walker's accusation that the Plaintiff misrepresented his own exhibit, claiming that he received a message of "LEAVE HIM ALONE. DON'T GO THERE" when in fact his exhibit states that the entirety of the message was "don't go there." He doesn't explain this discrepancy, or dispute that when there is a conflict between an exhibit and the Plaintiff's claims about it, this Court must rely on the exhibit.

Eleventh, the Plaintiff has made no effort to dispute (as he cannot) the fact that diversity of citizenship doesn't exist in this case. He also does not dispute that the Plaintiff "does not properly allege that his state law claims alone, singly or in the aggregate, amount to more than $75,000 in damages."[3]

---

[3] The only attempt by the Plaintiff to properly allege the amount of damages is in his prayer for relief, seeking "Compensatory damages and consequential damages in an amount exceeding $75,000, that is $2,000.000 [sic]." Second Amended Complaint (ECF No. 135) ("SAC")) p. 81. Presuming he meant $2 million for the last figure, the problem is that this is an aggregate amount, *see, e.g. Johnson v. Xerox Educ. Solutions LLC*, Case. No. GJH-14-CV-1542 (D. Md., October 20, 2014) (aggregation is permissible to meet diversity requirements), and the Plaintiff makes no attempt to explain how these damages are to be allocated among the causes of action. Thus, if even one cause of action is dismissed, then the complaint fails to clearly allege at least $75,000 in damages. For instance, the Plaintiff might have believed that the state causes of action have cost him only $74,999, with the federal claims allegedly causing $1,925,001 in damages. In that scenario, if this court was confronted with a situation where all federal claims were dismissed, the state causes of action would not be sufficient to meet the 28 U.S.C. §1332(a) threshold. The point of this hypothetical isn't to say that it is true—like this court, Mr. Walker can only speculate—but to point out that the Plaintiff has not made sufficient allegations to allow this court to determine whether his state law claims, in the aggregate, amount to more than $75,000 in damages without speculation.

5

Memorandum in Support of Defendant Walker's Second MTD, ECF No. 152-1, p. 34. Nor has the Plaintiff disputed the conclusion that because of these two facts, this court can only have jurisdiction over the state law claims under supplemental jurisdiction. 28 U.S.C. §1367.

Twelfth, the Plaintiff does not dispute that §1367(a) requires that this court have "original jurisdiction" over at least one claim, and §1367(c)(3) instructs this court to decline supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction."

Thirteenth, the Plaintiff doesn't dispute that he was required to plead defamation with a level of particularity comparable to that under Fed. R. Civ. P. 9(b). See, e.g. *Brown v. Ferguson Enters., Inc.* No. 12-CV-1817 at *5 (D. Md. Dec. 11, 2012). The Plaintiff does not dispute that he has failed to meet this burden. The Plaintiff also doesn't dispute that the appropriate statute of limitations for defamation under Maryland law is one year.

Fourteenth, the Plaintiff doesn't dispute that in relation to his mislabeled sixth count, Tortious Interference with an Existing Contract, he has only made a conclusory allegation that any employment contract existed or was breached, and made no allegation that any defendant knew he had such a contract. He doesn't deny that these flaws are fatal to this claim.

Fifteenth, the Plaintiff doesn't dispute that in relation to his mislabeled (first) seventh count, Tortious Interference with Business Relationships, he had not properly alleged that the Defendants had harmed his business or that such harm was caused by wrongful conduct on the part of any Defendant.

Sixteenth, he doesn't dispute that his claim for battery is barred under the statute of limitations.[4]

Seventeenth, he does not dispute that his claims for Intentional Infliction of Emotional Distress is

---

[4] *See Coby v. Mobley*, 1994 U.S. Dist. LEXIS 5125, *5 (D. Md. 1994) ("the intentional torts of assault and battery... would be barred by Maryland's one year statute of limitations") and *Madison v. Harford Cnty,* No. MJG-12-CV-1120, *45 n. 38 (D. Md. Aug. 2, 2013) ("[a]ssault and battery claims are subject to a one year limitation period under Maryland law. See MD. CODE CTS. & JUD. PROC. §5-105.").

barred by collateral estoppel because of the summary judgment in *Kimberlin v. Walker, et al.,* No. 380966V (Md. Mont. Co. Cir. Ct. 2013).

Finally, he does not dispute that if the case should be dismissed, it should be dismissed with prejudice, particularly because of his bad faith.

Together these twenty-two points lay waste to the Plaintiff's complaint, and he has failed to even dispute these points of law or to show how he met the appropriate legal standard. Furthermore, to the extent that the Plaintiff does dispute any of the legion of deficiencies pointed out by the Defendants, the Plaintiff fails to provide this court with any valid reason why his suit should not be dismissed.

## II.
## EVERY CAUSE OF ACTION AGAINST MR. WALKER IS BARRED BY RES JUDICATA

This court has probably noticed that between the filing of Mr. Walker's original motion to dismiss and today, Mr. Kimberlin was able to bring his "related"[5] state case, *Kimberlin v. Walker, et al.,* to trial against four of the same Defendants: Messrs. Walker, McCain, Akbar and Hoge. The suit had counts alleging harassment, stalking, malicious prosecution (involving the same suits he complains about, here), abuse of legal process, defamation, false light, and intentional infliction of emotional distress. All but the counts for defamation and false light were dismissed on a motion for summary judgment. Those remaining counts went to trial, and at the conclusion of the Plaintiff's case, the judge issued a directed verdict in the Defendants' favor. A certified copy of the complaint is attached as Exhibit C to "Defendant Hoge's Reply to ECF No. 231, Plaintiff' Omnibus Opposition to Motions to Dismiss" (ECF No. 236) ("H. Reply"). A certified copy of the entire trial transcript is attached as

---

[5] *See* Plaintiff's "Notification of Related Court Ruling," ECF No. 32.

Exhibits B-1 and 2 to H. Reply.[6]  There is a great deal of overlap between the two cases.

As stated in *J. Aron and Co., Inc. v. Service Transp. Co.*, 515 F.Supp. 428, 438 (D. Md., 1981), "the federal court for the District of Maryland must give to a prior Maryland state court judgment whatever res judicata effect Maryland law or usage provides[.]"  Meanwhile, *Cochran v. Griffith Energy*, 426 Md. 134, 43 A. 3d 999, 1002 (2012) provides the test for when res judicata applies under Maryland law, requiring that:

> (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.

In relation to the first factor, the same Mr. Walker and Mr. Kimberlin are present in both cases.  With respect to the final factor, the directed verdict represented a final judgment on the merits.

In the relation to the second factor, nothing prevented the Plaintiff from amending his complaint in the state case to include every single cause of action asserted in the instant suit.    As this court can see, the final amendment in *Kimberlin v. Walker, et al.,* was entered on April 1, 2014, nearly a month after the final amendment in the instant case.  Obviously, a Maryland state court can hear any claim based on Maryland common law, and Maryland state courts routinely hear cases involving 42 U.S.C. §1983 and §1985, and RICO (18 U.S.C. §1961 *et seq.*).[7]  Therefore, these claims "could have been raised and determined in the prior litigation" and the Plaintiff is barred from re-litigating them now.

---

[6] As of this writing, PACER is not showing the entirety of Exhibit B-2 to H. Reply, which is the transcript of the second day of the trial.  Mr. Hoge has stated in private conversation that B-2 is the entire transcript, and believes they just haven't scanned the entire file in because it is sizeable.

[7] See, *Chevy Chase Bank v. Chaires*, 350 Md. 716, 715 A. 2d 199 (Md: 1998), *Ritchie v. Donnelly*, 597 A.2d 432, 597 A. 2d 432 (Md. 1991), and *De Bleecker v. Montgomery County*, 292 Md. 498, 438 A. 2d 1348 (Md: 1982) as examples of Maryland courts hearing claims based on RICO, 42 U.S.C. §§1983 and 1985, respectively.

This is sufficient reason to dismiss the case for Mr. Walker, and, in the name of judicial economy, Messrs. Hoge, McCain, Akbar, and *every other defendant in this case*.  This is because courts have regularly held that when defendants are *alleged* to be in a conspiracy with each other by a Plaintiff, they are in privity for the purpose of defensive res judicata.[8]  In other words, while the Plaintiff has not made proper, non-conclusory allegations that some or all of the Defendants have conspired together for the purpose of stating a claim for which relief can be granted, the mere fact that he alleged one exists estops him from denying it for res judicata purposes.  Every remaining Defendant is alleged to be in a civil conspiracy together,[9] and therefore dismissal is appropriate for all defendants under res judicata.

### III.
### THE PLAINTIFF IS COLLATERALLY ESTOPPED FROM CLAIMING THAT MR. WALKER BATTERED HIM; AND THE PLAINTIFF IS ESTOPPED FROM DENYING THAT THE PLAINTIFF TRIED TO FRAME MR. WALKER FOR THAT NON-ASSAULT, THAT HE COST MR. WALKER HIS JOB, AND THAT HE IS A PEDOPHILE.

Even if res judicata didn't apply, the other effect of the conclusion of *Kimberlin v. Walker, et al.*, is that now collateral estoppel attaches to every question that was litigated in that case.  In *Wagner v. Allied Chemical Corp.*, this court laid out four elements required for defensive collateral estoppel:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

---

[8] See, e.g. *Discon Inc. v. Nynex Corp.*, 86 F. Supp. 2d 154, 166 (W.D.N.Y. 2000) ("alleged co-conspirators are `in privity' with one another for res judicata purposes"), *In re Teletronics*, 762 F,.2d 185, 192 (2d Cir. 1984) (alleged co-conspirator was in privity for res judicata purposes), *Goel v. Heller*, 667 F.Supp. 144, 152 (D.N.J., 1987) (relying on Plaintiff's pleadings to establish co-conspirator privity for res judicata purposes), *McLaughlin v. Bradlee*, 599 F.Supp. 839, 847 (D.D.C., 1984), *Busse v. Steele*, 2010 WL 3894558, at *2 (M.D. Fla. Aug. 18, 2010), *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972), *Ananiev v. Freitas*, 2014 WL 1400857, at *9 (D.D.C. Apr. 11, 2014), and *Airframe Sys. Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir., 2010).

[9] *See, e.g.,* SAC, p. 81.  The only defendant not named in the Plaintiff's claim for civil conspiracy was Simon and Shuster, which has been dismissed from the case.

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

623 F.Supp. 1412, 1416 (D. Md., 1985). In *Kimberlin v. Walker, et al.*, the Plaintiff was allowed to attempt to prove that he was defamed or put in a false light by any of the following categories of assertions: that the Plaintiff cost Mr. Walker his job; that Mr. Walker didn't assault or batter the Plaintiff; that the Plaintiff is a pedophile; that the Plaintiff seduced his future wife when she was fourteen years old (and he was in his forties) and continued that sexual relationship until she became of age; and that he attempted to seduce Mrs. Kimberlin's then-twelve-year-old cousin.[10]  The Plaintiff failed to prove he had been defamed or put in a false light for the most substantive reason possible. The defendants in *Kimberlin v. Walker, et al.,* didn't deny making these statements—they freely admitted to them.  Instead, the court found that "[t]here's not one scintilla of evidence in this case that the statements that were made by these individuals were false." H. Reply, Exhibit B-2, p. 266.

How such estoppel applies to the Plaintiff's myriad allegations of fraud is straightforward.  If the Plaintiff couldn't prove these statements false for defamation purposes—as he was required to by Maryland law[11]—then the Plaintiff cannot prove these statements false for fraud purposes, either.  The legal standard is the same.  Thus, any claim that any person committed fraud by claiming that the Plaintiff cost Mr. Walker his job or tried to frame Mr. Walker for assault or battery, is barred by collateral estoppel.

Collateral estoppel also applies equally to the question of *whether* Mr. Walker battered the

---

[10] The relevance of the Plaintiff's pedophilia-related estoppel comes in when discussing the argument that the Plaintiff is defamation proof. *See infra* p. 23.

[11] *Jacron Sales Co., Inc. v. Sindorf,* 276 Md. 580, 597 (1976) ("truth is no longer an affirmative defense to be established by the defendant, but instead the burden of proving falsity rests upon the plaintiff")

Plaintiff on January 9, 2012, both because of the prior peace order hearing and the outcome of the related state case. In *Kimberlin v. Walker, et al.*, Mr. Walker freely admitted in court that he stated that he did not batter the Plaintiff (because his only contact was in removing the Plaintiff's iPad from his hands without injury, and that was done in self-defense) and, therefore, any evidence the Plaintiff produced purporting to show an assault or injury was necessarily forged or altered in an attempt to frame him for a crime. To show Mr. Walker defamed him or put him in a false light, the Plaintiff would have had to prove Mr. Walker's assertions false. The only way that the Plaintiff could have proven this statement false was to prove that Mr. Walker had battered him and indeed hospitalized him. Having failed to prove such battery and, therefore, any falsehoods about such alleged battery, the Plaintiff cannot re-litigate the issue here.

## IV.
## THE PLAINTIFF'S OPPOSITION DOES NOT REHABILITATE HIS RICO CLAIM

The Plaintiff expends some effort trying to resurrect his RICO claims, attempting to address some of the many flaws in his Amended Complaint, but he fails in this attempt.

### A.   The Plaintiff Does Not Property Allege that He was Injured in his Business or Property by the Alleged Racketeering Activities.

First, the Plaintiff admits that in order to have standing to press a RICO claim "he must allege an 'injury in his business or property' by reason of a violation of RICO.  18 U.S.C. §1964(c)[,]" Omnibus Opp. ¶ 34, and, yet, he never manages to properly allege that he suffered either. He complains, for instance, that the Defendants "caused his employer to lose institutional funding." Omnibus Opp. ¶ 20. But his employers are not parties to the case. He makes conclusory allegations that his family has been harmed, but they are not parties to this case, either. He makes conclusory allegations that he suffered

"emotional harm," id., but that is neither business nor property under §1964(c).[12]  Further, while he frequently complains that the Defendants sought to have him fired, he never claims he was actually fired from either company or suffered any adverse employment effects at all.

He also claims that the Defendants have harmed his business as a musician allegedly "by attacking his reputation so that he cannot work in this arena any longer."  The Plaintiff's declaration (Omnibus Opp., Ex. 7) only (improperly) adds to these allegations by officially claiming that this was due to unspecified defamation.  He doesn't explain what defamatory statements caused him to lose this alleged work,[13] or how he knows that they caused him to supposedly lose business.  He doesn't even allege that he was paid previously for his music, or that he has lost money.  Thus, this is a conclusory allegation, not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 664.

To support his claim that he has demonstrated an appropriate injury under RICO, the Plaintiff further cut and pasted from his first reply relying on *Wang Laboratories*, 612 F.Supp. 441 (D. Md. 1984), for support (compare Omnibus Opp. ¶ 34 with H&WOpp. ¶ 35), without making an attempt to rebut the points Mr. Walker had made in response in his first reply.  To quote from W. Reply:

> [T]he Plaintiff cites a lone district court case, *Wang Laboratories, Inc. v. Burts*, ... as stating that "Wang's allegations of injury to its business reputation and customer goodwill in addition to its loss of revenues satisfied the injury requirement of 18 U.S.C. § 1964(c)."  *Wang* does not stand for the proposition that injury to business reputation alone, without showing that it actually caused damages, is sufficient to convey standing.  While injury to one's business reputation might lead to injury to one's business, it is not

---

[12] See *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) (plaintiff does not have standing under RICO because he only pleaded "extreme mental anguish").

[13] It is important here to demand specificity, to ensure that any such publication is 1) actually defamatory, and 2) contains the alleged defamations at issue in this case.  The Plaintiff in the same document alleged that Omnibus Opp., Exhibit 4 was defamatory, but in fact the article quoted is based on facts shown to be true in court documents—namely, that he is a domestic terrorist—and is not part of this suit in any case.  Without specificity one cannot be sure that the alleged defamatory statements he alleges caused this damage is 1) actually potentially defamatory and 2) are properly considered as part of this case.

in and of itself an injury (and it might not be the proximate cause of such injury). Even in the law of defamation it is not sufficient to prove that one's reputation had been damaged alone. Instead, it is necessary to show that one had been harmed by damage to one's reputation. Under RICO, damages for emotional suffering or mere harm to reputation alone are not recoverable; the plaintiff must allege actual damage to his business or property.

P. 5. Likewise the Plaintiff's reliance on *Potomac Elect. Power*, 262 F.3d 260 (4th Cir. 2001) (compare Omnibus Opp. ¶ 52 with Plaintiff's Opposition to DB Capital Strategies MTD, ECF No. 30, ¶ 27) was also rebutted by that same reply as follows:

> [T]he Plaintiff cites *Potomac Elec. Power v. Electric Motor & Supply*, ... for the proposition that nominal damages are sufficient [to confer standing]. This argument fails for two reasons. First, the *Potomac Electric* court still imposed upon a RICO Plaintiff the "requirement ... of proving *some* damages, not a specific amount." Id. at 266. The Plaintiff has alleged absolutely no damages. Second, the *Potomac Electric* court said specifically that the possibility of recovering attorney's fees justified upholding an award of nominal damages. This Plaintiff is *pro se*.

W. Reply, p. 5. The point of quoting prior filings isn't merely to say that the Plaintiff is wrong, but that he knew he was wrong and his continued reliance on these arguments is in bad faith.[14]

The only time the Plaintiff comes anywhere near the specificity required under the rules was when he claimed that he was damaged by the alleged battery, but this allegation fails for three reasons. First, he is estopped from claiming any battery took place. Second, he utterly fails to establish that the alleged battery was in relation to any federal proceeding, see *infra* pp. 14-15. Third, such injuries would be to his person, not his business and property. Thus, having failed to properly allege the appropriate injury, this Court should dismiss all claims under RICO.

---

[14] A more egregious example of this is his reliance on *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342 (3rd Cir. 1989) for the principle that the "Plaintiff had a 'property interest' in continuing his employment" under 18 U.S.C. §1951 compare Omnibus Opp. ¶ 35-36 with H&WOpp. ¶ 36-37. Beside the obvious fact that the Plaintiff still has not alleged that he has lost his job, Mr. Walker had already pointed out that "*McMonagle* was overturned by *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003)." W. Reply, p. 4. The Plaintiff makes no effort to explain why this Court should follow a precedent overturned by the Supreme Court.

**B.** **The Plaintiff Doesn't Properly Allege that the Defendants Committed Any Predicate Act.**

While the Plaintiff largely leaves undisputed Mr. Walker's points related to predicate acts, he

still alleges that the Defendants violated portions of 18 U.S.C. §§1503, 1512 and 1513.  However, the

Plaintiff fails to properly allege any of them.

1.      The Plaintiff Doesn't Allege that the Defendants Attempted to Obstruct the Operation of Any
        Federal Court in violation of 18 U.S.C. §1503.

The Plaintiff continues to pretend that the Defendants violated §1503, but the entirety of his

response on this point is simply a cut-and-paste of his prior reply.[15]  Therefore, it can be rebutted in its

entirety by citing to Mr. Walker's last reply:

> Defendant Walker's memorandum pointed out that in relation to the Plaintiff's §1503,
> that "[t]he Plaintiff has failed to even allege... the Defendants' alleged conduct had any
> relation to any federal case at all" as required by the statute....  *U.S. v. Ardito*, 782 F.2d
> 358 (2nd Cir. 1986)—which was cited favorably in this circuit in *U.S. v. Aragon*, 983
> F.2d 1306 (4th Cir. 1993)—is illustrative of that point.  In *Ardito,* several defendants
> were convicted under the "omnibus clause" of §1503 for engaging in a scheme to disrupt a
> federal criminal case by faking illness.  The court was faced with the question of whether
> the prosecutor must prove that the defendants knew that they were obstructing a federal,
> not state, proceeding.  Logically this would not have been a relevant question if the
> statute applied to obstruction of state proceedings, too.  The *Ardito* court held that while
> the conduct must be intended to disrupt a federal proceeding, it is not necessary to prove
> that the defendants *knew* they were disrupting a federal, not state, proceeding.
>
> The Plaintiff doesn't make any non-conclusory allegations of any threats, violence or
> corrupt action by the Defendants related to any federal proceeding.  He claims that he
> was assaulted in a Maryland *state* courthouse... but doesn't allege that it was related to
> any federal proceeding.  Given that it allegedly occurred in a state courthouse, just after a
> hearing in that courthouse, and the Plaintiff doesn't allege that there was any federal case
> pending at the time, the natural inference is that if there was any assault it was related to a
> state, not federal, case.  The Plaintiff also claims that third parties threatened him,
> asserting, for instance, in "Plaintiff's Response to Defendants Hoge and Walker's Motion
> to Dismiss," ("Opp. to H&W") ¶ 27 that the Defendants "intimidated Plaintiff by
> engaging in conduct *that resulted* in him being repeatedly threatened" (emphasis added)

---

[15] Compare Omnibus Opp. ¶ 44-45 with H&WOpp. ¶ 26-27.  The only alteration the Plaintiff made to
this passage was that he added an inappropriate new allegation that the Defendants violated §1512(b),
which is addressed *infra* pp. 15-17.

by third parties who, oddly, are not named in this suit, but the Plaintiff doesn't make any non-conclusory allegations that any Defendant physically threatened him. "Threatening" to send him back to prison again, meanwhile, is not the kind of threats covered by the statute, nor is saying negative, but non-threatening, things about him on the internet, even if those statements are untrue. He also does not claim that any federal proceeding was pending when the Defendants allegedly lied to the FBI and members of Congress. See *U.S. v. Aguilar*, 515 U.S. 593, 600 (1995) (holding that false statements to an investigator who might or might not testify before a grand jury is not sufficient under §1503). Simply put, §1503 does not relate to what the Plaintiff is claiming the Defendants actually did and, therefore, cannot be considered a predicate act.

W. Reply, p. 7. Again, the Plaintiff isn't merely wrong, but was given constructive knowledge that he was wrong. This is bad faith, and it means that the Plaintiff evidently knows that he cannot claim a violation of §1503 as a predicate offense.

## 2.    The Plaintiff Doesn't Allege that He Was Harmed in his Employment in Violation of 18 U.S.C. §1513.

Although the Plaintiff is not claiming that Mr. Walker violated §1513(b), he continues to cut and paste from his original opposition in relation to §1513(e), with only cosmetic changes. Compare Omnibus Opp. ¶ 39 with H&WOpp. ¶ 25. In doing so, the Plaintiff continues to ignore that he suffered no adverse employment consequences and that the statute doesn't punish the mere attempt to do so. He also fails to provide required specificity as noted above, *supra* p. 4. Further, he makes no effort to explain how peaceable words can somehow be an "action" under §1513(e), or how such an interpretation would not violate the First Amendment. All of these flaws had been pointed out before, W. Reply, p. 7-10, and for all of these reasons as well as those stated in Mr. Walker's Motion to Dismiss and accompanying memorandum, the Plaintiff continues to fail to allege a violation of §1513.

## 3.    The Plaintiff Doesn't Allege a Violation of 18 U.S.C. §1512 (b).

The Plaintiff improperly alleges that the Defendants have violated §1512(b). The Plaintiff initially raised this improper allegation in H&WOpp, which Mr. Walker rebutted. The allegation was

15

improper because it hadn't been raised in the First Amended Complaint, ECF No. 2. The Plaintiff didn't

include this allegation in his SAC, but he improperly exhumed it in his latest opposition:

> And fourth, Congress Members raised the issue of swatting on the floor of the House on
> at least one occasion and questioned Attorney General Holder at a congressional hearing.
> Therefore, the Defendants' actions are also prohibited by 18 USC 1512(b), which
> includes engaging "in misleading conduct toward another person, with intent to
> influence, delay, or prevent the testimony of any person in an official proceeding, which
> includes its proceeding before Congress."

Omnibus Opp. ¶ 44. This entire "fourth" point is a new allegation as well. He is alleging a claim he

didn't make in the SAC, and his improper allegation of new facts is sufficient reason for this Court to

disregard them. Further, he does nothing to answer Mr. Walker's arguments in his original Reply:

> the Plaintiff claims in Opp. to H&W ¶ 26 that by allegedly lying to congresspersons the
> Defendants also violated §1512(b) "which includes engaging 'in misleading conduct
> toward another person, with intent to influence, delay, or prevent the testimony of any
> person in an official proceeding, which [sic] includes 'a proceeding before Congress."
> The plaintiff does not make any non-conclusory allegation that any Defendant has done
> that. The only acts he alleges in relation to Congress related to mere communications
> with Congresspersons.     Further the Plaintiff must allege that the conduct [was] in
> relationship to a "particular official proceeding" where the information "might be
> material." *Arthur Andersen LLP v. U.S.*, 544 U.S. 696, 708 (2005). Finally, the Plaintiff
> must allege who that other person was that the Defendants were attempting to tamper
> with.  The Plaintiff does not allege any of the elements of this offense, even when
> improperly amending his complaint in his Oppositions.

W. Reply. pp. 10-11 (footnotes omitted). The additional allegation (which should be ignored) that there

was eventually a hearing in Congress doesn't fill those gaps. First, the Plaintiff is absurdly trying to

say that it is somehow criminal for the victims of a crime, and people who care about those victims, to

ask Congress to find out what they can about the investigation of that crime. Second, he has made

absolutely no allegation that any person has attempted to influence the testimony of the alleged witness

in that hearing, the Attorney General. At worst, he is claiming that they influenced the *questions* asked

of the witness, not the *testimony* given in response. Finally, the Plaintiff doesn't allege that any

relationship between alleged influence and any proceeding as required in *Arthur Andersen*, id. at 707. As the *Andersen* court noted, "It is... one thing to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,' and quite another to say a proceeding need not even be foreseen." Id. at 707-708. Accordingly, the *Andersen* court required a nexus between the attempt to tamper and a future proceeding—that is, in order to claim a violation of §1512(b) the Plaintiff must allege that a proceeding was contemplated when the alleged tampering took place. For this reason, the impropriety of the claim, and the chronically conclusory nature of the Plaintiff's allegations, the Plaintiff has failed to make out a claim under §1512(b) and, therefore, cannot cite that as a racketeering activity.

Combined with all of the unchallenged failures to properly allege any other racketeering activity, with the fact that the Plaintiff has made no attempt to show he had properly alleged the existence of a RICO enterprise or that such an enterprise had appropriate continuity, the Plaintiff has utterly failed to properly allege a claim under RICO. Therefore, this claim should be dismissed.

## V.
## THE PLAINTIFF DOESN'T ALLEGE AN INVIDIOUSLY DISCRIMINATORY MOTIVE OR A FEDERAL NEXUS, AND, THEREFORE, HE HAS NOT ALLEGED A VIOLATION OF 42 U.S.C. §1985(2) OR (3)

The last time the Plaintiff filed an opposition, he demonstrated that he doesn't understand §1985. That ignorance persists even after Mr. Walker corrected him, the Plaintiff writing that "[t]o state a claim under 42 U.S.C. §1985, a plaintiff must show that the Defendants [sic] conspired with a state actor who acted under color of law under 42 USC 1983 [sic] by violating a victim's Constitutional right." Compare Omnibus. Opp. pp. 28-29 to H&W Opp. ¶ 36. From Mr. Walker's original reply: "Simply put that is not what §1985 says and the case the Plaintiff cites for this proposition, *West v. Adkins*, 487 U.S. 42 (1988), is not a §1985 case." W. Reply, p. 17-18. What the Plaintiff must prove is 1) a

discriminatory animus;[16] 2) an effort to obstruct a federal court;[17] or 3) an effort to intimidate related to federal elections.  The Plaintiff is no longer pretending to allege any of elements are present, and, therefore, he has no claim under §1985 against Mr. Walker or any other Defendant.

## VI.
## THE PLAINTIFF HAS NOT PROPERLY ALLEGED THAT DEFENDANT FREY ACTED UNDER COLOR OF STATE LAW TO DEPRIVE THE PLAINTIFF OF A FEDERAL RIGHT AS REQUIRED UNDER 42 U.S.C. §1983

While space does not permit a detailed refutation of the Plaintiff's claims related 42 U.S.C. §1983, some points can be covered in brief.  The Plaintiff makes no effort to rebut Mr. Walker's point that under *Lord v. Riley*, 921 F. 2d 272, 1990 U.S. App. LEXIS 22468 (4th Cir. 1991) even on-duty state employees are not state actors when they report that a crime had been committed against them, unless that person is exercising power greater than an ordinary citizen when reporting that crime.  Instead, the Plaintiff simply repeats his conclusory allegation that Mr. Frey personally investigated him, claiming that this allegation was supported by exhibits that contradict his claim.  The Plaintiff claims that a letter written in support of Mr. Walker was written in Mr. Frey's official capacity, right before he quotes it as saying: "I am writing this letter, not as a member of the District Attorney's Office, but as a private citizen..."  Omnibus Opp., ¶ 68.  The Plaintiff doesn't explain how a letter explicitly written in one's private capacity is somehow written in one's official capacity, rendering this accusation absurd.

He claims that Mr. Frey gave Mr. Walker legal advice, but any lawyer could have done that.  He cites some testimony in *Kimberlin v. Walker, et al.*, but that testimony doesn't show that Mr. Frey acted in his official capacity, only that he is literally a state official as per Mr. Kimberlin's question.  Meanwhile, Mr. Frey's suggestion that Mr. Walker work with the FBI to "sting" a third party (Neal

---

[16] *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

[17] *Kush v. Rutledge*, 460 U.S. 719, 724 (1983) ("the first portion of §1985(2)" concerns "federal judicial proceedings").

Rauhauser) actually rebuts the Plaintiff's claim that Mr. Frey was running the investigation. If he was running an investigation, he would have set up the sting himself, not asked the FBI to do it.

More fundamentally, the Plaintiff's largely cut-and-pasted[18] claims that Mr. Frey violated his right to Freedom of Speech by investigating him, ignores Mr. Walker's previously stated point that even if Frey had investigated him personally, that is not a violation of the Plaintiff's Free Speech rights:

> As the Fourth Circuit said in *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000), another §1983 case:
>
>> The nature of the alleged retaliatory acts has particular significance where the public official's acts are in the form of speech. Not only is there an interest in having public officials fulfill their duties, a public official's own First Amendment speech rights are implicated. Thus, where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.
>
> Further, the same court relied significantly on *Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999), the Fourth Circuit describing the holding in *Colson* as follows:
>
>> [A] citizen's First Amendment rights were not adversely affected because she had "alleged only that she was the victim of criticism, an investigation (or an attempt to start one), and false accusations: all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence"
>
> *Colson* involved allegations that a chief of police falsely accused that plaintiff of crimes, started an official investigation into said non-crimes, and even publicized those false accusations against her in retaliation for protected speech, all in his official capacity. But that was insufficient to make out a violation of §1983 in *Colson* and was cited with approval by the Fourth Circuit in *McGraw*.
>
> Nor can the Plaintiff claim that an alleged "threat" of investigation alone satisfy the exception set in *McGraw* for threats because the Plaintiff doesn't allege that Mr. Frey "intimat[ed] that punishment, sanction, or adverse regulatory action will imminently follow." None of the Plaintiff's... particular allegations amount to a coercive threat at all.

---

[18] Compare Omnibus Opp. ¶¶ 59-67, 69, 71-78, with H&WOpp. ¶¶ 37-53, and Omnibus Opp. ¶ 79-80 with TOpp. ¶ 30, 32-33.

They are private discussions with Mr. Walker and others about the *fact* that there is an ongoing investigation and his *hope* they will result in the Plaintiff being returned to prison. The Plaintiff cannot credibly claim that these statements were made in order to coerce him into silence. Even assuming *arguendo* that any of these statements amounted to a threat—and they do not—it is not enough to simply threaten to do some wrong at some time in the future. Such a threat is not coercive. In order for a threat to be coercive it must be 1) conditional by words or implication and 2) it must be made under circumstances where the target of that coercion is likely to learn of that threat.[19] The Plaintiff has not alleged that Mr. Frey "intimat[ed] that punishment, sanction, or adverse regulatory action will imminently follow," and he doesn't allege that Mr. Frey made this so-called threat with the knowledge that it would ever get back to the Plaintiff. Without such allegations, it is not plausible that Mr. Frey made those statements with the intent of chilling the Plaintiff's speech.

W. Reply, p. 22-24. The Plaintiff never attempts to explain why *McGraw* and *Colson* are not good law, or why they don't apply to this case. He simply ignores these precedents. Having failed to show that any constitutional right was violated by Mr. Frey's alleged conduct, the Plaintiff has failed to allege a violation of §1983, and, consequently, any conspiracy to violate §1983, either.

## VII.
## THE PLAINTIFF HAS NOT PROPERLY ALLEGED A CLAIM FOR FALSE LIGHT OR DEFAMATION WITHIN THE STATUTE OF LIMITATIONS

The last time the Plaintiff filed an opposition, he tried to mislead the court about Maryland law. Mr. Walker corrected the record as follows:

First, in paragraph 2 of the Opp. to H&W, the Plaintiff writes the following:

> In 1988, Maryland's highest Court rejected the reasoning of *Smith* in *Allen v. Bethlehem Steel Corp.*, 314 Md. 458 (1988):
>
> > We disagree with *Smith*. What the district court judge said in *Smith* may be true, but the Maryland statute of limitations is vividly clear....

But, in fact, the Plaintiff's citation doesn't lead to a Maryland Court of Appeals opinion

---

[19] *C.f. U.S. v. Brooks*, 957 F.2d 1138, 1149-50 (4th Cir. 1992) (holding that in order to prove that a threat was designed to influence a person's behavior, there must be some expectation that this person would actually learn of the threat).

> at all.  It leads simply to a record indicating that certiorari had been denied by that court.
> The actual quotation given above comes from a Maryland Court of *Special* Appeals
> decision, with a different citation: *Allen v. Bethlehem Steel Corp.*, 76 Md. App. 642, 649
> (1988).   Nor is this a technical difference.   It is the difference between a final
> determination of what a statute says, versus one that this court might only take as
> persuasive authority and in contradiction of the precedent of this jurisdiction.

Walker Motion to Strike, ECF No. 54, p. 12.  With his most recent Opposition, the Plaintiff repeated that

falsehood, word-for-word (compare Omnibus Opp. ¶ 26 with H&WOpp. ¶ 2), even though Mr. Walker

demonstrated definitively that this citation was false—another example of the Plaintiff's bad faith.

On the substance of the issue, the precedent of this district is *Smith v. Esquire, Inc.*, 494 F.Supp.

967, 969 (D. MD, 1980), which holds that when "a false light claim is essentially analogous to a libel

claim... [it] should be governed by the same statute of limitations."  That it is the controlling precedent

in this district is sufficient justification to follow it, and it has been followed in virtually every other

jurisdiction that faced a similar dilemma.[20]

Meanwhile, the Plaintiff's only attempt to rebut the Defendants' assertion that he is a public

figure is to falsely claim that Mr. Walker (illegally) filed a motion on behalf of Seth Allen in an attempt

to pretend the issue is collaterally estopped for Mr. Walker and every other defendant.  The Plaintiff

seems to think that the only evidence he needs that Mr. Walker filed a motion for Mr. Allen is his

assertion that he had done so, even in the face of Mr. Walker's denials (see Exhibit B) and the Plaintiff's

history of falsehoods.  However, it is the burden of the person asserting collateral estoppel to prove that

the doctrine applies, *Butler v. State*, 335 Md. 238, 254 (1992), and the Plaintiff has utterly failed to do

---

[20] *See Swan v. Boardwalk Regency Corp.*, 969 A.2d 1145, 407 N.J. Super. 108 (N.J. Super., 2009);
*Eastwood v. Cascade Broadcasting Co.*, 106 Wash.2d 466, 722 P.2d 1295, 1299 (1986); *Fellows v.
National Enquirer, Inc.*, 42 Cal.3d 234, 228 Cal.Rptr. 215, 225 n. 12, 721 P.2d 97, 106 n. 12 (1986);
*Covington v. The Houston Post*, 743 S.W.2d 345, 348 (Tex.Ct.App.1987); *Gannett Co., Inc. v.
Anderson*, 947 So.2d 1 (Fla. App., 2006); *Magenis v. Fisher Broadcasting, Inc.*, 103 Or.App. 555, 798
P.2d 1106 (1990); *Gashgai v. Leibowitz*, 703 F.2d 10 (1st Cir.1983); *Uhl v. Columbia Broadcasting
Systems*, 476 F.Supp. 1134, 1137 (W.D.Pa.1979).

so. Further, he has not proven that Mr. Allen's motion was denied on the merits, and the denial seems more likely to have been based on the fact it was untimely. Similarly, the Plaintiff claims that in a Virginia case where Mr. Walker accused the instant Plaintiff of defamation, that the court "implicitly" ruled he was not a public figure, even though such a question would not be relevant. The judge made no such finding, implicit or otherwise, and the Plaintiff has offered no evidence that he did. Aside from that, he makes no attempt to rebut the obvious fact that a man who 1) terrorized an entire town for nearly a week, 2) accused a sitting vice president of buying drugs from him in his youth, and 3) even has an authorized biography is a public figure.

Equally, the Plaintiff doesn't properly allege malice, although he claims to have done so: "the malice of Ace of Spades and the others Defendants [sic] is clear with their calls for imprisonment and loss of his job for a false crime." Omnibus Opp. ¶ 95. Contrary to what the Plaintiff thinks, "[t]he 'actual malice' standard has nothing to do with 'bad motive' or 'ill will' or 'malice' in the ordinary sense of the term." *Foretich v. Capital Cities/ABC, Inc.*, 37 F. 3d 1541, 1551 n. 8 (4th Cir. 1994). Rather, the Plaintiff must make non-conclusory allegations that the statements were made "with knowledge that it was false or with reckless disregard of whether it was false or not." Id. at 1551. He failed to do this.

This becomes particularly important on the topic of damages. Implicitly admitting he has not alleged damages, he relies on *Shapiro v. Massengill*, 105 Md. App. 743 (Md 1995) to claim that "[h]arm does not have to be proved in cases of per se defamation." Omnibus Opp. ¶ 81. To the extent that any of the alleged defamation is per se, *Shapiro* states that the presumption of damages is only available if the Plaintiff can show malice: "where the statement is actionable per se, damages are presumed if a plaintiff can demonstrate constitutional malice[.]" *Shapiro*, 105 Md. App. at 774. Therefore, even if he

was not a public figure (and he obviously is), his failure to properly allege either actual damages or actual malice is fatal to his claim for defamation.

Finally, the entirety of the Plaintiff's response to the assertion that he is defamation-proof is a straw man argument: "[a]ccording to Defendants, the felon class... has no right under the law to sue for defamation or false light." Omnibus Opp. ¶ 87. The Defendants haven't argued that *no felon* can have his reputation harmed. They have argued that *this particular felon's* conduct was so extreme and he has damaged his reputation so badly that the alleged defamation in this case could not harm it more. Indeed, following the Plaintiff's defeat in *Kimberlin v. Walker, et al.*, he is collaterally estopped from denying (for defamation purposes) that 1) he is a pedophile; 2) that he seduced his wife when she was fourteen and he was in his forties; and 3) that he also attempted to seduce a twelve year old girl. That is, any person can report these claims as fact, and the Plaintiff is estopped from claiming in a defamation suit that they are false. The Plaintiff seems to want this court to believe that ordinary people would say "sure he is a terrorist, caused a man's death, cheated a widow out of money she was owed, forged a summons in a federal case, and has been found to be a pedophile into girls as young as twelve, but I thought he was a swell guy until someone *implied* he SWATted somebody!" The Plaintiff's claim that his reputation can be further harmed is farcical. His reputation cannot be wounded or murdered: it died of suicide years ago. For all of those reasons, the Plaintiff has failed to state a claim for defamation.

## VIII.
## THE PLAINTIFF DOES NOT PROPERLY ALLEGE ANY INJURY CAUSED BY EMOTIONAL DISTRESS OR EVEN THAT HE HAS FELT ANY EMOTIONAL DISTRESS

In his MTD, Mr. Walker cited case law demonstrating that under Maryland law the Plaintiff must demonstrate a physical manifestation of his alleged emotional distress, citing *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 71 A.3d 30, 63 (2013). To rebut this, the Plaintiff only cites *Womack v.*

23

*Eldridge*, 215 Va. 338 (1974), a *Virginia* case, and pretends it is controlling in Maryland.  It is not.

Further, even if there was no requirement of physical manifestation, his allegations that he has felt

emotional distress are wholly conclusory and, therefore, must be disregarded.  He says once or twice

that he felt it and nothing more.  This is insufficient as a matter of law.

The Plaintiff finished by cutting and pasting from a prior opposition (compare Omnibus Opp.

101-102¶ with H&WOpp. ¶ 41-42), which can be rebutted by quoting Mr. Walker's prior reply:

> the Plaintiff also alleges ... that he has had to install a security system in his house,
> allegedly "because the Defendants have created a lynch mob based on false narratives to
> terrorize Plaintiff and his family on a continuous multi-year basis." ... But ... he fails to
> allege that any Defendant—let alone Mr. Walker—proximately caused that alleged
> "lynch mob" to manifest under *Brandenburg v. Ohio*, 395 U.S. at 447 (the government
> cannot "forbid or proscribe advocacy of the use of force or of law violation except where
> such advocacy is directed to inciting or producing imminent lawless action and is likely
> to incite or produce such action").  He doesn't even allege a single instance of Mr.
> Walker or any other Defendant advocating "the use of force or of law violation" and, on
> information and belief, no Defendant has done so.  In short, he has not alleged that Mr.
> Walker has actually caused him any distress, causing him damage that is cognizable
> under the law.

W. Reply, p. 30.  The fact that the Plaintiff has not now met his burden to allege harm proximately

caused by the Defendants, even after being told what he must do, is fatal to his claim for emotional

distress.  For this reason, as well as the previously noted issue of collateral estoppel, the Plaintiff's claim

for Intentional Infliction of Emotional Distress should be dismissed, the last of his claims.

## CONCLUSION

The Plaintiff's Second Amended Complaint is barred by the principle of res judicata.  Even if it

weren't, it doesn't state a claim for which relief can be granted.  The Plaintiff has made no non-

conclusory allegation of injury cognizable under RICO, of any predicate acts, continuity, or even

enterprise, or a conspiracy to create one.  Likewise, the Plaintiff has failed to allege any state action or

deprivation of federal rights as required under 42 U.S.C. §1983 and has failed to allege a federal nexus

24

or that any of the Defendants were motivated by invidious prejudice under §1985(2) or (3). Without any valid federal claims, the state law claims can be dismissed for want of diversity jurisdiction, or they can be dismissed on their merits, the lifelessness of these claims often going unchallenged. For all the blood and thunder of the Plaintiff's Second Amended Complaint, it does not state any claim for relief, and therefore it is time for it to be laid to rest once more.

Further, given the Plaintiff's deep and brazen bad faith—where neither honesty nor certitude of being caught is any limit on his conduct—such dismissal should be granted with prejudice. Finally, since these flaws pointed out by Mr. Walker largely apply to all of the allegations against all of the Defendants, in the name of judicial economy this court should dismiss the entire case and be done with this Plaintiff, as well as granting any other relief that this court considers just and equitable. If such dismissal is granted, Mr. Walker requests an opportunity to demonstrate that sanctions are justified, including a declaration that the Plaintiff is a vexatious litigant.

Tuesday, January 06, 2015                    Respectfully submitted,

Aaron J. Walker, Esq.
Va Bar# 48882
7537 Remington Road
Manassas, Virginia  20109
(703) 216-0455
AaronJW72@gmail.com