IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

BRETT KIMBERLIN,                       *

           Plaintiff,            *

v.                             *      Civil Action
                                      GJH 13-3059

NATIONAL BLOGGERS CLUB, et al.,    *

           Defendants       *

      *    *    *    *    *    *    *    *    *    *

**REPLY MEMORANDUM IN SUPPORT OF (ECF No. 140) MOTION TO DISMISS
SECOND AMENDED COMPLAINT, AND FOR ATTORNEY FEES AND COSTS,
OF DEFENDANTS MICHELLE MALKIN AND TWITCHY**

Michael F. Smith
The Smith Appellate Law Firm
1717 Pennsylvania Avenue N.W., Suite 1025
Washington, D.C.  20006
(202) 454-2860
Bar No. 29941
**Counsel for Defendants
Michelle Malkin and Twitchy**

Date:  January 8, 2015

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................1

FACTS..............................................................................................................................2

ARGUMENT....................................................................................................................4

I.      Mr. Kimberlin fails to establish his complaint as sufficient under Rule 8....................4

II.     Rule 12(b)(6) also warrants dismissal of all counts against these defendants...............5

      A.     Mr. Kimberlin erroneously relies on pre-*Iqbal* cases.........................................5

      B.     Nothing in the Response salvages the RICO claim against these defendants...................6

            1.     The SAC does not allege harm to "business or property".......................................6

            2.     Recognizing his failure to plead a link between defendants and a RICO enterprise, Mr. Kimberlin conjures new "facts" that still don't establish that.................................................................................11

            3.     Causation is not properly pleaded against either Mrs. Malkin or Twitchy...........11

            4.     Mr. Kimberlin fails to plead fraud or any other predicate against Mrs. Malkin or Twitchy...............................................................................11

            5.     No pleading allegations assert a pattern of racketeering activity involving either defendant........................................................................13

            6.     No "enterprise" properly is pleaded.....................................................................13

             7.     Mr. Kimberlin misuses RICO to federalize State-law areas.................................14

      C.     Mr. Kimberlin concedes his § 1985 claim against Mrs. Malkin and Twitchy.................14

      D.     The false-light claim also fails.........................................................................15

      E.     Mr. Kimberlin offers no response on prospective economic advantage............................15

      F.     The SAC fails to plead a claim against these defendants for intentional infliction of emotional distress.......................................................16

i

**Page**

  G. Civil conspiracy.......................................................................................................16

III. First Amendment and Maryland's anti-SLAPP law.......................................................17

IV. The Communications Decency Act..............................................................................18

V. Neither defendant is within this Court's personal jurisdiction.......................................18

VI. Mr. Kimberlin does not address his apparently felonious conduct
  regarding the Twitchy summons...................................................................................20

VII. The non-service of Twitchy compels its dismissal.......................................................21

CONCLUSION/RELIEF REQUESTED................................................................................21

CERTIFICATE OF SERVICE..............................................................................................23

**INDEX OF AUTHORITIES**

**Page**

**Constitutional provision**

U.S. CONST., Am I...........................................................................................................17-18, 21

**Cases**

*Allstate N.J. Ins. Co. v. Summit Pharmacy, Inc.*,
    2014 U.S. Dist. LEXIS 61132 (D.N.J. May 2, 2014).........................................................13

*ALS Scan, Inc. v. Digital Service Consultants, Inc.*,
    293 F.3d 707 (4th Cir. 2002)............................................................................................19

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006)................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....................................5, 6, 10, 16

*Bailey v. Atlantic Automotive Corp.*,
    992 F. Supp. 2d 560 (D. Md. 2014)..................................................................................12

*Battlefield Builders, Inc. v. Swango*,
    743 F.2d 1060 (4th Cir. 1984)............................................................................................2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544; 127 S. Ct. 1955, 1974; 167 L. Ed. 2d 929 (2007).................................5, 10

*Bey v. Shapiro Brown & Alt, LLP*,
    997 F. Supp. 2d 310 (D. Md. 2014)..................................................................2, 11, 13, 15

*Bhari Info. Tech. Sys. Private, Ltd. v. Sriram*,
    984 F. Supp. 2d 498 (D. Md. 2013)....................................................................................6

*Bougopoulos v. Altria Group, Inc.*,
    954 F. Supp. 2d 54 (D.N.H. 2013)...................................................................................10

*Bourjaily v. United States*,
    483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987)....................................................3

*Boyle v. United States*,
    556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009)..............................................13

**Page**

*Brown v. Ajax Paving Indus.*,
   752 F.3d 656 (6th Cir. 2014).............................................................................14

*Caldor, Inc. v. Bowden*,
   625 A.2d 959 (Md. 1993)..................................................................................16

*Camarillo v. City of Maywood*,
   2008 U.S. Dist. LEXIS 85386 (C.D. Cal., Aug. 27, 2008)...................................8

*Campbell v. Lyon*,
   26 Fed. Appx. 183 (4th Cir. 2001)......................................................................3

*Cohen v. California*,
   403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971)......................................17

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005)........................................................................8-9, 10

*Doe v. Roe*,
   958 F.2d 763 (7th Cir. 1992)...............................................................................9

*Dring v. Sullivan*,
   423 F. Supp. 2d 540 (D. Md. 2006)...................................................................19

*Evans v. City of Chicago*,
   434 F.3d 916 (7th Cir. 2006).....................................................................7, 8, 9, 10

*Flip Mortg. Corp. v. McElhone*,
   841 F.2d 531 (4th Cir. 1988)...............................................................................6

*Giboney v. Empire Storage & Ice Co.*,
   336 U.S. 490, 69 S. Ct. 684, 93 L. Ed. 2d 834 (1949).......................................17

*Greenville Publ'g Co. v. Daily Reflector, Inc.*,
   496 F.2d 391 (4th Cir. 1974).............................................................................12

*Grogan v. Platt*,
   835 F.2d 844 (11th Cir. 1988)..........................................................................7-8

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999).............................................................................12

iv

**Page**

*Hill v. Tangherlini,*
    724 F.3d 965 (7th Cir. 2013)...................................................................................7

*Hollander v. Flash Dancers Topless Club,*
    173 Fed. Appx. 15 (2d Cir. 2006)..........................................................................10

*Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.,*
    2014 U.S. Dist. LEXIS 114745 (D. Minn. Aug. 19, 2014)...........................13-14

*Jackson v. NAACP,*
    2013 U.S. App. LEXIS 20493 (5th Cir. Oct. 8, 2013).........................................10

*Johnson v. Sullivan,*
    764 F. Supp. 1053 (D. Md. 1991)............................................................................4

*Mackey v. Compass Mktg., Inc.,*
    892 A.2d 479 (Md. 2006).......................................................................................19

*Metro Regional Info. Sys. v. American Home Realty Network, Inc.,*
    888 F. Supp. 2d 691 (D. Md. 2012).......................................................................19

*Mills v. Polar Molecular Corp.,*
    12 F.3d 1170 (2d Cir. 1993)...................................................................................12

*Mizrach v. United States,*
    2012 U.S. Dist. LEXIS 15212 (D. Md. Feb. 7, 2012)............................................2

*Morgan Distrib. Co., Inc. v. Unidynamic Corp.,*
    868 F.2d 992 (8th Cir. 1989)...................................................................................2

*Papasan v. Allain,*
    478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)......................................5

*Payman v. Lee County Cmty. Hosp.,*
    2005 U.S. Dist. LEXIS 10730 (W.D. Va. June 3, 2005)......................................20

*Piscatelli v. Van Smith,*
    35 A.3d 1140 (Md. 2012).......................................................................................15

*Raineri Constr., L.L.C. v. Taylor,*
    2014 U.S. Dist. LEXIS 12092 (E.D. Mo. Jan. 31, 2014)..............................13-14

**Page**

*Reiter v. Sonotone Corp.*,
  442 U.S. 330, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979)..........................................................9

*Revene v. Charles Co. Comm'rs*,
  882 F.2d 870 (4th Cir. 1989)............................................................................................5

*Sadighi v. Daghighfekr*,
  36 F. Supp. 2d 279 (D.S.C. 1999)..................................................................................12

*Sec'y of State for Defence v. Trimble Navigation, Ltd.*,
  484 F.3d 700 (4th Cir. 2007)............................................................................................3

*Solomon v. Capital One Bank USA*,
  2014 U.S. Dist. LEXIS 175271 (D. Md. Dec. 19, 2014)......................................5, 12, 15, 19

*Tawney v. AC&R Insulation Co., Inc.*,
  2013 U.S. Dist. LEXIS 155827 (D. Md. Oct. 30, 2013)..................................................19

*In re Trilegiant Corp.*,
  11 F. Supp. 3d 82 (D. Conn. 2014)................................................................................13

*United Black Firefighters v. Hirst*,
  604 F.2d 844 (4th Cir. 1979)........................................................................................5, 19

*United States ex rel. Willard v. Humana Health Plan of Texas Inc.*,
  336 F.3d 375 (5th Cir. 2003)..........................................................................................12

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
  525 F.3d 370 (4th Cir. 2008) ..........................................................................................12

*United States v. Osinger*,
  753 F.3d 939 (9th Cir. 2014)..........................................................................................17

*Valencia v. Drezhlo*,
  2012 U.S. Dist. LEXIS 176754 (D. Md. Dec. 13, 2012)................................................19

*Walters v McMahen*,
  684 F.3d 435 (4th Cir. 2012)............................................................................................5

*Whitney v. California*,
  274 U.S. 357, 47 S. Ct. 641, 71 L. Ed. 2d 1095 (1927)..................................................21

<u>Page</u>

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002)..........................................................................18

*Zeran v. AOL, Inc.*,
    129 F.3d 327 (4th Cir. 1997)..........................................................................18

**<u>Statutes & court rules</u>**

18 U.S.C. § 2261A(2)(A)....................................................................................17

42 U.S.C. § 1985................................................................................................14

Communications Decency Act, 47 U.S.C. § 230.......................................1, 2, 18

Fed. R. Civ. P. 8.............................................................................................1, 2, 5

Fed. R. Civ. P. 9(b)....................................................................................3, 11, 12

Fed. R. Civ. P. 11...................................................................................3, 12, 19, 20

Fed. R. Civ. P. 12(b)(2).....................................................................................20

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 5, 12

Fed. R. Civ. P. 56................................................................................................3

FRE 801(c).........................................................................................................3

FRE 801(d)(2)(E)...............................................................................................3

FRE 902(6).........................................................................................................4

Md. Code Ann., Courts & Judicial Proceedings Art.
    -- § 5-807(a)-(c)..........................................................................................1, 2

Racketeer Influenced and Corrupt Organizations Act ("RICO")....................*passim*
    --18 U.S.C. § 1962(d)

**<u>Other authorities</u>**

Advisory Committee Note to FRE 902....................................................................4

## INTRODUCTION

Mr. Kimberlin was given 50 pages to try to salvage his complaint.  But rather than address the legal arguments Mrs. Malkin and Twitchy raise in their motion, he ignored many in favor of simply piling on more and new factual hyperbole – which cannot be considered, because review of a Rule 12(b)(6) motion is limited to the SAC, and this Court has barred further amendment.

Mr. Kimberlin offers no response to these arguments raised in this motion:

- Issue I (The SAC violates Rule 8 and should be dismissed) (ECF No. 140-1, Memorandum (hereafter, "Motion"), pp. 6-7)

- II-B-3 (the SAC alleges no causation as to any predicate RICO act involving Mrs. Malkin or Twitchy) (*Id.*, p. 14)

- II-B-4 (failure to properly plead predicate acts) (*Id.*, pp. 14-16)

- II-B-5 (failure to plead a pattern of racketeering activity, i.e. either closed- or open-ended continuity) (*Id.*, pp. 16-18)

- II-B-7 (the RICO claim improperly seeks to federalize areas of historical state-law regulation) (*Id.*, pp. 21-22)

- II-D-2 (Mr. Kimberlin as a matter of law cannot establish either defendant placed him before the public in a false light) (*Id.*, pp. 26-27)

- II-D-3 (the SAC fails to allege actual malice by either defendant) (*Id.*, pp. 27-28)

- II-E (the interference with prospective economic advantage count fails to state a claim) (*Id.*, pp. 29-30)

- II-G (the civil conspiracy claim fails) (*Id.*, pp. 31-32)

- III-B (the SAC is barred by Maryland's anti-SLAPP statute) (*Id.*, p. 37)

- IV (The Communications Decency Act immunizes Twitchy from liability) (*Id.*, pp. 37-39)

- VI-A through C (Mr. Kimberlin's admitted falsification of court documents constitutes a fraud on the court that warrants dismissal with prejudice and an award of fees and costs) (*Id.*, pp. 43-47)

- ▪ VII (Twitchy never has been properly served) (*Id.*, pp. 47-48)

That constitutes three unopposed issues justifying dismissal of the entire SAC against both Mrs. Malkin and Twitchy (Rule 8, anti-SLAPP, and admitted forgery of Court documents/fraud on the Court); two more unopposed issues that justify dismissal of the entire SAC against Twitchy (Communications Decency Act; lack of proper service); five unanswered arguments, any one of which justifies dismissal of the RICO claim against both defendants; two unanswered arguments, either of which justifies dismissal of the false-light claim against both defendants; and one unanswered argument each that warrants dismissal of the interference with prospective economic advantage, and civil-conspiracy claims.

Those are just the arguments Mr. Kimberlin fails to counter.  As to those he does bother to answer, as is discussed below, nothing he offers is sufficient to stave off dismissal.

## FACTS

Mr. Kimberlin's Response adds many factual assertions beyond those of the SAC, and they all must be disregarded.  *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 318 n.7 (D. Md. 2014) (Grimm, J.) (disregarding factual allegations in opposition to motion to dismiss that differed from those in the Amended Complaint, since plaintiff "cannot introduce new allegations or new facts" in an opposition), *citing Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1063 (4th Cir. 1984).  "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (citation omitted). This applies with equal force to a pro-se plaintiff.  *See, Mizrach v. United States*, 2012 U.S. Dist. LEXIS 15212 (D. Md. Feb. 7, 2012).

2

This is no mere academic point, but rather goes to the heart of why the SAC should be dismissed. To give just one example, Mrs. Malkin's and Twitchy's Motion discusses in detail how the SAC fails to plead mail fraud, wire fraud, and obstruction of justice as RICO predicate offenses with the specificity required by Rule 9(b) – indeed, how it fails to allege *any* such activity by Mrs. Malkin or Twitchy.  ECF No. 140-1 Motion, pp. 15-16.  Mr. Kimberlin's Response purports to add extensive detail regarding the two, asserting "thousands" of predicate acts of mail fraud, wire fraud, and (now) money laundering, and painting Mrs. Malkin as "an integral part of the fraud."  ECF No. 231 Response, 24-25 & n.3.  Leaving aside the Rule 11 issue these false new allegations raise, and their attempted end-run on this Court's bar against further amendment, they go well beyond anything the SAC says about these two defendants. They, and other additions like them, must be disregarded.

Additionally, the Response attaches 15 exhibits.  While a court may consider documents attached to a plaintiff's opposition without converting the motion into one under Rule 56, *Sec'y of State for Defence v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007), each of Mr. Kimberlin's items (other than the Federal court opinion, Ex. 6) has one or more evidentiary flaws that bar its use:

- Except for Ex 10 as it pertains to Mrs. Malkin only, all are hearsay not within any exception as to both defendants and thus barred by FRE 801(c).

- Even those exhibits that conceivably might qualify as non-hearsay under FRE 801(d)(2)(E) – Ex. 2 ("Dear Friend" letter purportedly from Mr. Akbar); Ex. 3 (emails purportedly among various other defendants); Ex. 4 (article from www.theblaze.com); Ex. 5 (purported blog post by Mr. Backer); Ex. 8 (purported Backer letter), etc – may not be considered.  While Mr. Kimberlin offers them to prove the alleged RICO conspiracy, the existence of a conspiracy must be shown with independent evidence, which a statement proffered under FRE 801(d)(2)(E) merely may supplement.  *Campbell v. Lyon*, 26 Fed. Appx. 183, 189 (4th Cir. 2001), *citing Bourjaily v. United States*, 483 U.S. 171, 181, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987); *Ibid.* & fn. 6 (citing cases).  The statement itself may not be used to prove the "conspiracy."

3

▪ None of the non-opinion exhibits, even the ones purporting to be direct statements from Mrs. Malkin or other defendants, are authenticated. *Johnson v. Sullivan*, 764 F. Supp. 1053, 1055-56 (D. Md. 1991) (citations omitted). And while FRE 902(6) makes self-authenticating "[p]rinted material purporting to be a newspaper or periodical," that rule was promulgated because "[t]he likelihood of forgery of newspapers or periodicals is slight indeed. Hence no danger is apparent in receiving them." Advisory Committee Note to FRE 902. But Mr. Kimberlin has forged court documents *in this very action*. That misconduct, against the backdrop of his many *crimen falsi* convictions, makes the receipt of any document he provides fraught with risk, since nobody can have any confidence that anything Mr. Kimberlin offers is what it purports to be.

▪ None of the additional factual material is relevant to the issue before this Court: whether Mr. Kimberlin validly has stated a claim, or whether dismissal is appropriate. ECF No. 88 Letter Order, pg. 5. All of it is simply an attempt to portray himself as persecuted, and use this Court as a "trampoline" for his excess energies and need to have the last word. *Id.* (citation omitted).

Lastly, the Response frequently mischaracterizes the Motion via straw-man arguments, such as its assertion that Mrs. Malkin and Twitchy claim to "have only made a few defamatory references," ECF No. 231 Response, ¶ 58. But the Motion (at p. 4) simply notes that *Mr. Kimberlin's own pleading* only alleges two defamatory statements by Mrs. Malkin, and it in no way agrees that either was defamatory. The leniency this Court affords pro-se plaintiffs should not extend to countenancing provable lies.

## ARGUMENT

### I.  Mr. Kimberlin fails to establish his complaint as sufficient under Rule 8.

The Motion discusses at length how the SAC violates Rule 8's requirement of a short and plain statement of the claim, warranting its dismissal. ECF No. 140-1 Motion, pp. 6-8. Mr. Kimberlin's Response is completely silent, failing to discuss a single one of the cases on which the Motion relies. It does not claim that his SAC actually is sufficient under Rule 8, or even mention the rule. It does nothing to distill his prolix allegations into something the Court and defendants can understand; instead it makes them longer and even more confusing. It continues to paint broad strokes regarding "defamatory

statements" by all defendants, ECF No. 231 Response, ¶ 2, and adds to the mix lawsuits involving other

defendants, *Id.* ¶¶ 22-23, and even statements made in court filings in this action by various defense

counsel. *Id.*, ¶ 24, n.2.

Rule 8 requires a "short and plain statement of the claim," and Mr. Kimberlin has provided

anything but that.  The rule provides a basis for dismissing all counts against Mrs. Malkin and Twitchy.

**II.      Rule 12(b)(6) also warrants dismissal of all counts against these defendants.**

**A.      Mr. Kimberlin erroneously relies on pre-*Iqbal* cases.**

Mr. Kimberlin ignores *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570; 127 S. Ct. 1955,

1974; 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d

868 (2009).  ECF No. 231 Response, ¶ 1.  Review of Rule 12(b)(6) motions has changed dramatically

since 2007, and a complaint now "must advance the plaintiff's claim across the line from conceivable to

plausible." *Walters v McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).  This Court need not

> accept unsupported legal allegations, *Revene v. Charles Co. Comm'rs*, 882 F.2d 870, 873
> (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478
> U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986), or conclusory factual allegations
> devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d
> 844, 847 (4th Cir. 1979)." [*Solomon v. Capital One Bank USA*, 2014 U.S. Dist. LEXIS
> 175271 (D. Md. Dec. 19, 2014)].

Mr. Kimberlin's complaint as it relates to Mrs. Malkin and Twitchy is completely *im*plausible,

one long screed of "legal conclusions couched as factual allegations." *Papasan*, 478 U.S. at 286.  It

requires one to believe not only that a far-ranging conspiracy would be spawned with the sole aim of

defaming Mr. Kimberlin, but that it would be ongoing, meet the many technical requirements of a RICO

conspiracy (appropriate predicate acts, open- and closed-ended continuity, injury to "business or

property," etc), have as its goal to defraud donors in violation of the tax code, and feature Mrs. Malkin –

by Kimberlin's own description, a broadly successful pundit with a vast nationwide audience – not only

as a participant, but a "key figure." Response, ¶¶ 53-55.  Mr. Kimberlin's allegations do not "cross the line from conceivable to plausible," but detour well short of that, into the land of make-believe.

**B.     Nothing in the Response salvages the RICO claim against these defendants.**

Mr. Kimberlin sums up his approach to RICO when he dismisses the mandatory pleading requirements he has failed to meet as mere "technicalities."  ECF No. 231 Response, ¶ 57.  He also tries shifting the burden of proof when he charges that defendants "have not produced any evidence that they did not" commit the various alleged wrongful acts.  *Id*.

The Court's various orders to date make clear that it grasps the gist of this dispute.  Mr. Kimberlin and the 20+ defendants he sued have diametric political views and philosophies, and when three conservative bloggers/commentators found themselves "swatted," various defendants commented publicly about the unusual coincidence of their criticism of Mr. Kimberlin.  Reading the SAC's allegations most favorably to him – and disregarding those parts that are mere "formulaic recitation of the elements" and "conclusory and [thus] not entitled to be assumed true," *Iqbal*, 556 U.S. at 680-681– what Mr. Kimberlin brings this Court is a garden-variety defamation complaint that he seeks to whip into a massive conspiracy and treble-damage claim under RICO.  But the Fourth Circuit frowns on such an expansive use of that statute.  *Bhari Info. Tech. Sys. Private, Ltd. v. Sriram*, 984 F. Supp. 2d 498, 502-503 (D. Md. 2013), *citing Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988).

**1.     The SAC does not allege harm to "business or property"**

Nothing Mr. Kimberlin offers amounts to an allegation that Mrs. Malkin or Twitchy deprived him of any "business or property" sufficient to confer RICO standing.  He describes "emotional and (unspecified) economic harm," ECF No. 231 Response, ¶ 20, and charges that defendants sought "to drive Plaintiff [*sic*] out of business and intimidate him from exercising his First Amendment right to

redress." *Id.*, ¶ 35.  But those claims neither constitute damage to "business or property" under RICO, nor illuminate anything in the SAC that makes such allegations.  And while he reiterates his claimed "property interest" in continued employment and fundraising for his employer, *Id.*, ¶ 36, he fails to rebut defendants' discussion (with citation to authority) showing those to be insufficient.  ECF No. 140-1 Motion, pp. 11-12.

A RICO injury cannot be speculative or amorphous, but must be a "concrete financial loss." *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006), *overruled on other grounds, Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).  Mr. Kimberlin identifies no such loss.  In *Evans*, cited in the Motion, pp. 10-11, the Seventh Circuit discussed at length why injuries such as those Mr. Kimberlin claims do not constitute "injury to business or property" under RICO.  The plaintiff in *Evans* sought to meet RICO's standing requirement by alleging that the conspirators' misconduct  – his false imprisonment and malicious prosecution – rendered him unable to look for work, thus imposing pecuniary losses on him.  But the Seventh Circuit noted that what was determinative was not plaintiff's depiction of the losses, but the type of injury that gave rise to them.  Evans's claims, though framed in terms of pecuniary losses, were "incurred as a result of what can only properly be classified as personal injury" – his inability to seek or obtain work arising out of his false imprisonment and malicious prosecution.  434 F.3d at 928-929, *citing Grogan v. Platt,* 835 F.2d 844, 847 (11th Cir. 1988).  As such, they were not injury to "business or property":

> Like the plaintiffs in *Grogan*, Evans has failed to allege anything more than pecuniary losses antecedent to a personal injury. The fact that *Grogan* was premised on a tort claim of wrongful death and Evans' case is premised on false imprisonment and malicious prosecution is of no import. The real question is whether Congress intended RICO laws to compensate plaintiffs for pecuniary losses, such as loss of income, stemming from

> what is essentially a personal injury like the inability to work or seek employment. We are of the opinion that Congress did not intend to do so.  [434 F.3d at 927].[1]

So too, here: Mr. Kimberlin's  Response makes clear that any pecuniary losses he claims to have suffered, whether through his employment by the JTMP or with his efforts to sell his artistic works in the "music business," flow directly from the defendants' supposedly defamatory statements and other tortious acts aimed at him.  Even if such acts occurred, and caused losses, they would be nothing more than "pecuniary losses antecedent to a personal injury."  *Evans*, 434 F.3d at 927.   RICO's standing requirement is unmet.

To be sure, a plaintiff who can show he was unlawfully deprived of a property right in promised or contracted-for wages may establish injury to "business or property."  *Evans*, 434 F.3d at 928-929 (citing cases).  But Mr. Kimberlin does not allege he was terminated or had his pay cut by the JTMP, nor does he point to any songs or videos he has been unable to sell as a result of defendants' actions. Leaving aside that that also presents an insurmountable barrier in terms of proximate causation, discussed *infra*, his alleged losses are purely speculative, mere "legal conclusions, dressed up as factual guesses."  *Camarillo v. City of Maywood*, 2008 U.S. Dist. LEXIS 85386, 2008 WL 4056994, *6 (C.D. Cal., Aug. 27, 2008).

Lastly, Mr. Kimberlin's Response, ¶ 42, relies on *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (also cited in the Motion, p. 11), which held that allegations of harm to employment opportunity may meet RICO's standing requirement.   But leaving aside that the SAC does not actually plead loss of employment, as even Mr. Kimberlin acknowledges, ECF No. 231 Response, ¶¶ 42-43, the *Diaz* analysis

---

[1]    In *Grogan*, plaintiffs sought to recover economic losses and loss of income arising from a loved one's death; the Eleventh Circuit held that "pecuniary losses are so fundamentally a part of personal injuries that they should be considered something other than injury to 'business or property.'"  835 F.2d at 847.

does not withstand scrutiny.  Like Evans, the plaintiff in *Diaz* sought recovery for lost employment and employment opportunities incurred while he was wrongly imprisoned by an alleged conspiracy of 200 defendants, mostly Los Angeles police officers, to fabricate evidence against him.  The divided Ninth Circuit, sitting *en banc*, partitioned Diaz's alleged harms among two categories, "(1) the personal injury of false imprisonment and (2) the property injury of interference with current or prospective contractual relations," and found that the latter constitute injury to "business or property" sufficient to confer RICO standing.   420 F.3d at 902.   But as *Evans* pointed out, *Diaz*'s dichotomy is "equal parts mischaracterization of the RICO statute and red herring," because it wrongly conflates the issues of whether the alleged injury constitutes "injury to business or property," and whether such injury was proximately caused by a predicate RICO act.  *Evans*, 434 F.3d at 931 & n.26.  Diaz's false imprisonment was not a "personal injury," it was a cause of action arising in tort that *gave rise to* personal injury, i.e. loss of employment, loss of consortium, etc.  *Id* (emphasis added).  Thus, his employment loss and ensuing monetary losses "merely represent pecuniary losses derivative of an underlying, non-compensable personal injury," and did not confer RICO standing.  *Id*., *citing Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979) and *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992).

The same can be said about Mr. Kimberlin's claims.  As noted, his SAC does not make any concrete allegations of reduced pay, loss of employment, or loss of video or music sales as a result of defendants' allegedly comments.  But even if he had, all of that *still* would be merely pecuniary losses

derivative of an underlying personal injury: defendants' interference with his contracts or expectancies, defamation of him, etc.[2]

The Response also vaguely alleges a "property interest" in fundraising for the JTMP, but gives no specifics.  Response, ¶ 36.  This bare allegation is insufficient under *Iqbal* and *Twombly*.  Even more significant, even had he provided details, it still cannot constitute injury to *his* "business or property."  *Jackson v. NAACP*, 2013 U.S. App. LEXIS 20493, **12-15 (5th Cir. Oct. 8, 2013)  (where plaintiff lost employment when donor cut off funding to her employer as a result of defendants' mail and wire fraud, injury was caused not by fraud but by donor's actions as a result of fraud; "the relationship between the harm to [plaintiff] and the alleged RICO activity is too attenuated here to support a finding of proximate causation sufficient to confer standing"); *accord Hollander v. Flash Dancers Topless Club*, 173 Fed. Appx. 15, 17 (2d Cir. 2006) (summary order) (RICO complaint should be dismissed "where the alleged injuries were proximately caused not by the alleged racketeering violations, but by the public exposure of those activities or their discovery by the victim and consequences of that exposure or discovery") (citations omitted).  Assuming Mr. Kimberlin adequately spelled out details of the JTMP's loss of funding (and not merely "loss of funding opportunities"), there is an insufficient link to any harm to *his* "business or property."

Mr. Kimberlin lacks standing under RICO.

---

[2]   *Diaz* appears to be an outlier in RICO jurisprudence – the Fourth Circuit never has adopted its analysis, and several other courts (in addition to *Evans*) have expressly rejected it.  *Bougopoulos v. Altria Group, Inc.*, 954 F. Supp. 2d 54 (D.N.H. 2013) (lost income from inability to work due to lung disease did not constitute injury to "business or property" sufficient to support RICO claim against tobacco company); *see also Jackson v. NAACP*, 2013 U.S. App. LEXIS 20493, **14-15 (5th Cir. Oct. 8, 2013) (*Diaz* predates *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) and thus does not apply correct proximate-cause standard).

**2.      Recognizing his failure to plead a link between defendants and a RICO enterprise, Mr. Kimberlin conjures new "facts" that still don't establish that.**

The Motion at pp. 12-13 notes the SAC's failure to properly plead any agreement connecting Mrs. Malkin or Twitchy with the supposed RICO enterprise.  Mr. Kimberlin now conjures new facts, elevating Mrs. Malkin to a "key figure" and "integral part" of his supposed conspiracy, and falsely accusing her of having "signed off on the fraud" as an NBC board member, an allegation found nowhere in the SAC.  ECF No. 231 Response, ¶¶ 40, 54 & n.3.  Mr. Kimberlin's deluded claims are abjectly false and will provide a basis for Rule 11 sanctions; for these purposes, they are new and cannot be considered, *Bey*, 997 F. Supp. 2d at 318 & n.7.  They cannot salvage his RICO claim.

**3.      Causation is not properly pleaded against either Mrs. Malkin or Twitchy**

Again, Mr. Kimberlin does not respond to the Motion's assertion that he failed to plead causation (p. 14) by citing anything to the contrary in the SAC.  Instead he conjures new allegations, not only implausible but far beyond what the SAC pleads.  Response, ¶¶ 54 & nn 3 & 4.  They cannot be considered.  *Bey*, 997 F. Supp. 2d at 318 & n.7.

**4.      Mr. Kimberlin fails to plead fraud or any other predicate against Mrs. Malkin or Twitchy**

The RICO claim's shortcomings extend to the predicate-act issue briefed in the Motion at pp. 14-16.  Mr. Kimberlin's Response simply repeats his vague, general assertions that "Defendants" committed mail fraud, wire fraud, and "obstruction of justice," without curing the SAC's failure to meet Rule 9(b)'s requirements.  ECF No. 231 Response, ¶¶ 33, 39, 44-49.  And he points to nothing in the SAC tying any predicate act directly to Mrs. Malkin or Twitchy.  *Id.*

As noted, Mr. Kimberlin tries to broaden the SAC's allegations against Mrs. Malkin, which arose only from two blog posts, and impute to her the allegedly deceptive fundraising activities of defendant

11

National Bloggers Club.  ECF No. 231 Response, ¶ 54 & nn. 3-4.  But he fails to grasp that, without the SAC alleging any predicate act of fraud by the National Bloggers Club with the specificity required under Rule 9(b), he certainly cannot impute liability to Mrs. Malkin.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176-77 (2d Cir. 1993) (citations omitted) ("[h]aving failed to plead any predicate act of mail and wire fraud, the plaintiffs have not stated a RICO action against the Directors").[3]

In *Solomon*, *supra*, this Court recently emphasized the heavy burden fraud claims bear in surviving dismissal:

> Furthermore, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b).  To satisfy this standard, plaintiffs "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks omitted) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (internal quotation marks omitted) (quoting *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003). [*Solomon*, 2014 U.S. Dist. LEXIS 175271, * 4].

The SAC alleges none of those things as to Mrs. Malkin or Twitchy.

---

[3]  Moreover, while the Response tries to paint a far more aggressive picture of Mrs. Malkin's role in the "conspiracy" than does the SAC, by virtue of her having briefly been on the National Bloggers Club board of directors, ECF No. 231 Response, ¶ 54 & n. 4, the intracorporate conspiracy doctrine bars liability on that basis.  An agent cannot conspire in violation of § 1962(d) with its own entity. *Bailey v. Atlantic Automotive Corp.*, 992 F. Supp. 2d 560, 578 (D. Md. 2014), *citing Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 297 (D.S.C. 1999).  And the narrow "independent personal stake" exception does not apply, because it requires that the individual agent stand to benefit financially from the conspiracy based upon the agent's economic interest in an entity separate from the principal one. *Bailey*, 992 F. Supp. 2d at 568-569, *citing Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399-400 (4th Cir. 1974). Mr. Kimberlin's claim is precisely contrary: that Mrs. Malkin brought her "credibility and gravitas" *to* the National Bloggers Club, specifically to make *it* a more effective weapon for attacking his reputation. SAC, ¶ 152.

     **5.**    **No pleading allegations assert a pattern of racketeering activity involving either defendant.**

When confronted with a properly supported argument pointing out the SAC's failure to properly plead something, Mr. Kimberlin's *modus operandi* is to slap the word "clearly" in front of the same defective allegations and repeat them. ECF No. 231 Response, ¶ 33 ("The SAC clearly alleges more than two acts in furtherance of the conspiracy...."); *Id.*, ¶ 51 ("Clearly, from the above, the Enterprise and acts of the named Defendants...are not isolated events") (citation and internal quotation marks omitted). His other approach, of course, is to add new "facts." *Id.*, ¶54 & n. 3.

Nothing in the Response undermines, or even addresses, the Motion's discussion at pp. 16-18 that the SAC fails to plead open- or closed-ended continuity, and thus pleads no "pattern" of racketeering activity.

     **6.**    **No "enterprise" properly is pleaded**

Mr. Kimberlin offers no rebuttal to the Motion's discussion (pp. 18-21) that, by his own account, the alleged RICO "enterprise" is a rimless hub-and-spoke operation engaging in mere parallel conduct, which fails to meet the "relationship" requirement under *Boyle v. United States*, 556 U.S. 938, 945, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009). District Courts around the country continue to dismiss RICO claims on that basis. *In re Trilegiant Corp.*, 11 F. Supp. 3d 82 (D. Conn. 2014); *Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*, 2014 U.S. Dist. LEXIS 114745 (D. Minn. Aug. 19, 2014); *Allstate N.J. Ins. Co. v. Summit Pharmacy, Inc.*, 2014 U.S. Dist. LEXIS 61132 (D.N.J. May 2, 2014). Leaving aside Mr. Kimberlin's late-conjured, false allegations imputing a far more active role to Mrs. Malkin, which must be disregard, *Bey*, 997 F. Supp. 2d at 318 & n.7, the SAC fails to allege a role for either Mrs. Malkin or Twitchy linking them sufficiently to direction of any RICO "enterprise." *See*, *Raineri Constr., L.L.C. v. Taylor*, 2014 U.S. Dist. LEXIS 12092 (E.D. Mo. Jan. 31, 2014) (complaint

fails as to defendants Higgins, Bond, and Nelson, since it merely identifies them as agents and states in boilerplate fashion that they "participated in, authorized or ratified" the alleged enterprise's racketeering acts) (citations omitted); *see also* Response, ¶ 40 ("criminal enterprise" of National Bloggers Club was "joined by the other Defendants, and given credibility and gravitas by Defendant Malkin who joined its Board and signed off on the fraud").[4]

### 7.   Mr. Kimberlin misuses RICO to federalize State-law areas.

Mr. Kimberlin fails to respond to the discussion in the Motion, pp. 21-22.  Like the unsuccessful plaintiffs who sought to federalize workers-compensation disputes, he would have this Court misuse RICO to "plant[] the national banner on land traditionally patrolled by the States."  *Brown v. Ajax Paving Indus.*, 752 F.3d 656 (6th Cir. 2014) (citation omitted).  But he offers no reason why this Court should be the one to federalize State tort law, where no other court has.

### C.   Mr. Kimberlin concedes his § 1985 claim against Mrs. Malkin and Twitchy.

The attempted defense of the § 1985 claim runs for 12 pages.  Response, unnumbered ¶ following 58 through ¶ 80.  But while it speaks volumes about Mr. Kimberlin's worldview, *Id.*, ¶ 80, it is effectively silent as to Mrs. Malkin and Twitchy.  (It claims that the SAC includes Mrs. Malkin among its boilerplate § 1985 allegations, but does not say where.  Response, ¶ 79).  The Motion at pp. 22-24 lists six separate and independent legal reasons why the § 1985 claim fails against these two defendants; all stand unrebutted, and each warrants dismissal of Count III.

---

[4]  Indeed, *Illinois Farmers Ins. Co.* points to yet another fatal flaw in the SAC: By Mr. Kimberlin's own account, every single thing written about him by any defendant was part of the supposedly fraudulent/criminal "enterprise."  But the "failure to allege that any of the defendants conducted an enterprise that was distinct from the alleged pattern of racketeering activity provides a second basis for dismissing plaintiffs' RICO claim."  2014 U.S. Dist. LEXIS 114745 at *42 (citation omitted).

### D.      The false-light claim also fails.

Mr. Kimberlin paints with broad strokes in describing the supposed transgressions of defendants, Response, ¶¶ 81-90, but he again ranges beyond his own SAC, which drops the defamation claim against Mrs. Malkin, limits its false-light allegation against her to two specific articles, and asserts neither claim vs. Twitchy.  SAC, ¶¶ 109-110.   Anything beyond those discrete allegations must be disregarded.  *Bey*, 997 F. Supp. 2d at 318 & n.7.

He fails even to discuss the first four arguments Mrs. Malkin and Twitchy raise against this claim, Motion, pp. 24-28 (false light not recognized in Colorado; insufficient pleading under *Iqbal*; failure to allege any falsity; and failure to allege actual malice). As to the fifth, fair comment, he offers a single paragraph of overwrought hyperbole, painting himself as the victim of "a vigilante mob against him." ECF No. 231 Response, ¶ 90.  And the outrageous parallel he tries to draw between himself and victims of the Ku Klux Klan, *Id.*, ¶ 80, is preposterous and merits no response.

Moreover, *Piscatelli v. Van Smith*, 35 A.3d 1140 (Md. 2012) remains the law in Maryland, and nothing he pleads in the SAC ¶¶ 109-110 falls outside the fair-comment privilege as that case defines it. (The SAC's charge that Mrs. Malkin and Twitchy "repeatedly stated that [he] committed the swattings," *Id.*, ¶ 109, should be disregarded since they are "conclusory factual allegations devoid of any reference to actual events," *Solomon*, 2014 U.S. Dist. LEXIS 175271 at * 4 (citation omitted) – Mr. Kimberlin cites the URL for an (unattached) article that makes no such statement).

### E.      Mr. Kimberlin offers no response on prospective economic advantage

As noted, the Response does not even acknowledge the four separate arguments defendants raise against Count VII.  Motion, pp. 29-30.  Any and all of those arguments support dismissal.

**F.     The SAC fails to plead a claim against these defendants for intentional infliction of emotional distress.**

In addition to the SAC's failure to plead facts rising to the level of outrageousness required by Maryland law, Mr. Kimberlin's Response makes clear that he also cannot plead the severe emotional distress required to establish the tort.  In *Caldor, Inc. v. Bowden*, 625 A.2d 959 (Md. 1993), the Court of Appeals rejected the claim of a teenage employee who sought recovery for his employer's act of wrongfully having him detained, arrested, and charged with theft.  Noting that a "*severely* disabling emotional response" is not only relevant to the amount of recover but a "necessary element" of recovery under Maryland law, 625 A.2d at 964 (citation omitted) (emphasis in original), the court noted that plaintiff failed to establish such a response:

> Bowden may have been "upset," "embarrassed," and "confused," and may have "felt bad about himself"; and this type of emotional distress may have been uncomfortable. None of these effects, however, indicate that Bowden had the severely disabling emotional response that hindered his ability to carry out his daily activities or the severe emotional distress this cause of action requires.  [*Id.*].

Here, the SAC completely fails to plead such emotional trauma to Mr. Kimberlin; rather it simply alleges in boilerplate fashion that Mr. Kimberlin "has suffered severe emotional distress and mental anguish."  SAC, ¶¶ 284-289.  And Mr. Kimberlin's Response similarly fails to do so.  To the contrary, it paints a picture of him heroically enduring against this onslaught, with the sole tangible effect being his installation of security cameras.  ¶¶ 97-102.  Mr. Kimberlin fails to plead a claim against these two defendants under Maryland law for intentional infliction of emotional distress.

**G.     Civil conspiracy**

Mr. Kimberlin makes no response to the Motion's discussion, pp. 31-32, of Count IX's fatal flaws.

### III.    First Amendment and Maryland's anti-SLAPP law

Mr. Kimberlin does not acknowledge defendants' discussion, Motion, pp. 32-37, of Maryland's anti-SLAPP statute.  His vexatious lawsuit is precisely the kind of abusive litigation at which the General Assembly was aiming with that Act; the SAC should be dismissed.

More broadly, Mr. Kimberlin's own First Amendment authority supports dismissal of the entire action against Mrs. Malkin and Twitchy.  He quotes from a concurring opinion in a recent Ninth Circuit case upholding the constitutionality of a conviction under 18 U.S.C. § 2261A(2)(A) for posting sexually suggestive pictures of an ex-girlfriend on Facebook and otherwise carrying out an extensive stalking campaign.  Response, ¶ 4, *citing United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) (Watford, J., concurring).  But that very opinion makes plain why the exception from First Amendment protection for "speech integral to criminal conduct," does *not* apply to anything of which Mr. Kimberlin complains:

> Cases in which the defendant's harassing "course of conduct" consists entirely of speech that would otherwise be entitled to First Amendment protection are less straightforward. The Court in *Giboney* [*v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S. Ct. 684, 93 L. Ed. 2d 834 (1949)] made clear that the union's picketing lost its First Amendment protection only because the union was "doing more than exercising a right of free speech or press."  336 U.S. at 503.  *If a defendant is doing nothing but exercising a right of free speech, without engaging in any non-speech conduct, the exception for speech integral to criminal conduct shouldn't apply. Instead, when pure speech is involved, the Court has suggested that the government's ability "to shut off discourse solely to protect others from hearing it" depends on "a showing that substantial privacy interests are being invaded in an essentially intolerable manner."* 753 F.3d at 954 (Watford, J., concurring), *quoting Cohen v. California*, 403 U.S. 15, 21, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971)].

Mr. Kimberlin wants to shut off discourse to "protect" others from hearing about his criminal record; indeed, the fact that this lawsuit has gone on for more than a year allows him to claim partial success.  (He now includes the undersigned and certain other defense counsel among those he wishes to shut up, Response, ¶ 24 & n.2).  But Mr. Kimberlin publicly blew off a

man's limb in a stadium parking lot.  He was publicly busted with a planeload of drugs, and otherwise acquired his lengthy rap sheet of unlawful conduct in a quintessentially un-private manner; it is available to anyone with access to the Federal reporters or PACER.  In this very case, he publicly admitted to what appear to be at least two Federal felonies.  The First Amendment makes all that fair game for public comment, by Mrs. Malkin and everyone else, and if Mr. Kimberlin doesn't like it, he should move to a country that doesn't have one.  The SAC's claims against Mrs. Malkin and Twitchy are absolutely barred by the First Amendment.

## IV.     The Communications Decency Act

Mr. Kimberlin offers no argument in response to the Motion's discussion at pp. 37-39. The Communications Decency Act immunizes Twitchy from liability, and *Zeran v. AOL, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) requires dismissal.

## V.     Neither defendant is within this Court's personal jurisdiction

Mr. Kimberlin devotes an entire section to personal jurisdiction over Mrs. Malkin, but makes no argument as to Twitchy.     ECF No. 231 Response, ¶¶ 91-94.   That alone warrants Twitchy's dismissal.

As to Mrs. Malkin, his argument likewise fails.  The "audience targeting" test of *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002), presents a "strict limit over foreign defendants" in speech-related cases in the Fourth Circuit.  Motion, pp. 40-41 (citation omitted). Mr. Kimberlin must show that Mrs. Malkin, through any posting, "manifest[ed] an intent to focus on [Maryland] readers." *Young*, 315 F.3d at 263.  He now conjures up allegations that Mrs. Malkin did specifically target Marylanders.  Response, ¶ 94.  But that cannot stave off dismissal, because the allegations (1) go beyond those of the SAC and must be disregarded, *Bey*,

and in any event (2) are implausible and (3) "conclusory factual allegations devoid of any reference to actual events." *Solomon*, 2014 U.S. Dist. LEXIS 175271 at *4*, citing United Black Firefighters*, 604 F.2d at 847 (4th Cir. 1979).  (They also are (4) false, a point more relevant under Rule 11 than 12).

Mr. Kimberlin also suggests that *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479 (Md. 2006) somehow trumps *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) and the analysis of Maryland long-arm jurisdiction over out-of-state internet activity the Motion discusses at pp. 39-43.  ECF No. 231 Response, ¶ 94.  But *Mackey* did not involve a website or facts even remotely like these.  And a long line of authority applying both cases has held that, under *ALS Scan*, an out-of-state defendant is not subject to Maryland jurisdiction for website content unless she has engaged in purposeful conduct directed toward Maryland, i.e. with "the manifest intent of targeting Marylanders."  *See Valencia v. Drezhlo*, 2012 U.S. Dist. LEXIS 176754 (D. Md. Dec. 13, 2012) (Bennett, J.) (allegations that out-of-state commenters used website to repeatedly and falsely accuse plaintiff-priest of financial and liturgical misconduct failed to make requisite prima-facie showing of personal jurisdiction); *see also Tawney v. AC&R Insulation Co., Inc.*, 2013 U.S. Dist. LEXIS 155827 (D. Md. Oct. 30, 2013) (Quarles, J.); *Metro Regional Info. Sys. v. American Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699-701 (D. Md. 2012) (defendant Cardella) (Williams, J.); *Dring v. Sullivan*, 423 F. Supp. 2d 540, 547-548 (D. Md. 2006) (Chasanow, J.) (email posted to listserv by out-of-state defendant, alleging unethical and illegal activities by plaintiff Tae Kwan Do referee, did not meet *ALS Scan* test).

Exercising Maryland jurisdiction over Mrs. Malkin for the two comments cited in the SAC effectively would end all internet commentary about Maryland residents, by exposing speakers

19

nationwide to the significant cost of having to defend actions such as this – which perhaps is Mr. Kimberlin's point. Dismissal is appropriate under Fed. R. Civ. P. 12(b)(2).[5]

### VI. Mr. Kimberlin does not address his apparently felonious conduct regarding the Twitchy summons.

As with his Response to the motion to dismiss the First Amended Complaint, this Response also is completely silent as to the forged Twitchy summons. It offers this Court no explanation, no evidence to counter the Julie Israelson Declaration and attachments, and no discussion of why some lesser sanction than dismissal would be appropriate. *See* Motion, pp 4-5 & materials there incorporated, including R.41 Memorandum & Ex. B, Israelson Declaration. His pro-se status is no excuse. By his own account Mr. Kimberlin is not the typical pro-se plaintiff, R-19-1, p. 1, and having spent much of the 1980s and '90s in federal prison for, among other things, illegal use of the Presidential seal and Pentagon insignia, he more than anyone knows it is wrong to manipulate an official document issued by a Federal Court Clerk and pass it off as something else.

This Court's show cause remains open and unresolved. ECF No. 41 Motion; ECF No. 124 Supp Memorandum. Nearly a full year after first noting that Mr. Kimberlin's misconduct has taken the Court into uncharted waters, Twitchy still has not found a single case, Federal or State, involving a party's forgery of a court summons – much less, the subsequent sending of that document through the U.S. Mail

---

[5] In a litigation in which he has made prolific use of falsehood, Mr. Kimberlin outdoes himself with his charge that Mrs. Malkin "incited her followers to engage in vigilante action against [hi]m" and "used the other Defendants as her agents by having them....physically harass and stalk [him]." Response, ¶ 94 & n.7. Such a charge is patently false, and in the District Courts of the Fourth Circuit, pro-se status is no defense to Rule 11 sanctions where the offender, like Mr. Kimberlin, is "an educated person who ha[s] researched issues sufficiently to know and cite case law and statutes, and has filed other cases pro se in this and other courts." *Payman v. Lee County Cmty. Hosp.*, 2005 U.S. Dist. LEXIS 10730, *6 (W.D. Va. June 3, 2005). In trying to salvage jurisdiction over Mrs. Malkin, Mr. Kimberlin has serially violated Rule 11, and defendants reserve their right to address that and his other transgressions through the appropriate means.

with the intent to deceive.  The Motion provides ample legal authority not only for this Court to dismiss the FAC, but also to sanction this admitted misconduct with an award of fees and costs.  *Id.*, pp. 43-47. Separate and apart from whether a criminal referral is warranted, and from all the other bases for dismissal discussed above and in defendants' Motion, this Court should address the still-open show-cause, if only to safeguard the integrity of its own proceedings.

**VII.    The non-service of Twitchy compels its dismissal**

Mr. Kimberlin's Response offers nothing to justify his failure to this date to properly serve Twitchy.  Motion, pp. 47-48.  Dismissal also is warranted on this ground.

## CONCLUSION/RELIEF REQUESTED

This country long has recognized that the remedy for speech with which one disagrees "is more speech, not enforced silence."  *Whitney v. California*, 274 U.S. 357, 377, 47 S. Ct. 641, 71 L. Ed. 2d 1095 (1927) (Brandeis, J., concurring).  Mr. Kimberlin is trying to impose silence on speakers with whom he disagrees, and while his chosen tactic obviously differs from that of the terrorist who shoots up a satirical newspaper, the chilling effect on speech if he is allowed to continue would be largely the same.

For the foregoing reasons, and those set forth in their 7/9/14 Motion and Memorandum, defendants Michelle Malkin and Twitchy ask this Court to enter an order dismissing the Second Amended Complaint with prejudice, and awarding them costs, including attorney fees, and such additional relief as the Court deems just.

Respectfully submitted,

/s/ Michael F. Smith
Michael F. Smith
The Smith Appellate Law Firm
1717 Pennsylvania Avenue N.W., Suite 1025
Washington, D.C.  20006
(202) 454-2860
smith@smithpllc.com
Bar No. 29941

Date:  January 8, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Memorandum was electronically filed in this case on January 8, 2015 and thus served on counsel of record via the Court's ECF system. Additionally, I am serving the document via email this date on defendants Hoge, McCain, and Walker by the express permission of each, and via first-class mail to Plaintiff Brett Kimberlin, 8100 Beech Tree Road, Bethesda, MD 20817, by enclosing it in an envelope bearing that address and containing sufficient postage for delivery.

By: /s/ Michael F. Smith

Dated: January 8, 2015