IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|                                  |     |                         |
| -------------------------------- | --- | ----------------------- |
|                                  | *   |                         |
| **BRETT KIMBERLIN,**             |     |                         |
|                                  | *   |                         |
| **Plaintiff,**                   |     |                         |
| **v.**                           | *   | **Case No.: GJH-13-3059** |
|                                  |     |                         |
| **NATIONAL BLOGGERS CLUB, ET AL.,** | *   |                         |
|                                  |     |                         |
| **Defendants.**                  | *   |                         |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Brett Kimberlin ("Kimberlin") brought this action against numerous defendants (collectively, "Defendants") for their alleged involvement in a criminal enterprise, the purpose of which was to spread false and defamatory stories about Kimberlin through the media and internet in order to raise money from people who believed and supported the false narrative. More broadly, however, "this case is the latest in a protracted series of disputes between and among the parties here." ECF No. 97 at 1. Indeed, many of the parties to this case "'have been involved in intense political disputes over the years.'" *Id.* (quoting *Walker v. Kimberlin*, No. 12-1852, ECF No. 33 at 1 (D. Md. Nov. 28, 2012)). As a result, "this litigation has turned into a wide-ranging war of attrition in which this Court has become caught in the crossfire." ECF No. 97 at 1. In fact, at last count, there have been over 260 filings on the docket for this case (which has not moved past the pleading stage), including Kimberlin's 82-page Second Amended Complaint ("SAC"), as well as 14 motions to dismiss that are presently pending before the Court. *See* ECF Nos. 136, 140, 147, 148, 149, 152, 156, 180, 184, 190, 213, 216, 238, 255. This Memorandum Opinion and accompanying Order address these motions to dismiss, as well as a variety of other pending

motions and requests. *See* ECF Nos. 232, 234, 237, 246, 247, 248, 250, 252, 260. A hearing is not necessary. *See* Loc. R. 105.6 (Md.). For the reasons stated below, Defendants' motions to dismiss are GRANTED, in full, except as to Defendant Patrick Frey, whose motion to dismiss is GRANTED, in part, and DENIED, in part.

## I.    BACKGROUND

Kimberlin filed his SAC to recover damages inflicted by Defendants for allegedly engaging in a multitude of tortious acts, including a criminal racketeering enterprise that engaged in mail fraud, wire fraud, money laundering, witness intimidation and retaliation, extortion, and obstruction of justice for the purpose of harming Kimberlin's business and property interests and depriving him of his civil rights. *See* ECF No. 135 at ¶ 1.

Specifically, Kimberlin alleges that Defendants (1) created false and defamatory narratives about him that he engaged in, ordered, directed and/or facilitated the swatting of various individuals[1]; (2) created other false narratives about him in order to bolster the false swatting narrative; (3) provided false information to media outlets, politicians, and law enforcement officials accusing him of involvement in the swattings; (3) repeatedly published defamatory statements that he committed swattings; (4) constantly bullied him; and (5) enriched themselves by fraudulently raising hundreds of thousands of dollars and increasing traffic on their websites based on those false narratives. *See id.*

As such, Kimberlin filed this lawsuit against Defendants in which he raises the following claims: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.  §§ 1962(c) and 1962(d); (2) violation of the Civil Rights Act, 42 U.S.C. § 1983; (3)

---

[1] "Swatting" is the act of placing a 911 call "in which a false report of a violent crime is made to elicit a police Special Weapons and Tactics squad ('SWAT') response to the physical address of a targeted individual, his or her family members, or place of employment." *United States v. Neff*, No. 11-0152, 2013 WL 30650, at *3 (N.D. Tex. Jan. 3, 2013) *aff'd*, 544 F. App'x 274 (5th Cir. 2013).

conspiracy under the Ku Klux Klan Act, 42 U.S.C. §1985; (4) defamation; (5) false light –

invasion of privacy; (6) interference with business relationships; (7) interference with

prospective advantage; (8) conspiracy; (9) battery; and (10) intentional infliction of emotional

distress. Defendants have moved to dismiss. For the reasons stated below, Defendants' motions

to dismiss are GRANTED, in full, except as to Defendant Patrick Frey, whose motion to dismiss

is GRANTED, in part, and DENIED, in part.

## II.     STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's

complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme

Court has clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal,* 556

U.S. 662 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). These cases make

clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."

*Twombly,* 550 U.S. at 556 n. 3 (quoting Fed.R.Civ.P. 8(a)(2)). This showing must consist of at

least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the Court should first review the complaint to determine

which pleadings are entitled to the assumption of truth. *See Iqbal,* 556 U.S. at 678-79. "When

there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In so doing, the

Court must construe all factual allegations in the light most favorable to the plaintiff. *See*

*Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999). The Court

need not, however, accept unsupported legal allegations, *Revene v. Charles County*

*Commissioners,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual

allegations, *Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

## III.   DISCUSSION

### A.   Racketeer Influenced and Corrupt Organizations Act (Count I)

Kimberlin alleges that Defendants Akbar, Walker, Hoge, Malkin, McCain, Backer, DB Capitol Strategies, Frey, Nagy, Franklin Center, Ace of Spades, Stranahan, Thomas, Erickson, and Twitchy (collectively, "the RICO Defendants") violated 18 U.S.C. §§ 1962(c) and 1962(d) of RICO by establishing a criminal enterprise to create and publish false and defamatory narratives about Kimberlin in order to raise money from individuals who supported the enterprise's efforts. *See* ECF No. 135 at ¶¶ 157-205.

RICO is "'a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (citation omitted). Because the penalties authorized by RICO are "drastic," in order "to provide society with a powerful response to the dangers of organized crime," courts "must . . . exercise caution 'to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions . . . .'" *Id.* In other words, RICO "is not a cause of action to be pled lightly," and "'RICO treatment is reserved for conduct whose scope and persistence pose a special threat to social well-being.'" *Biggs v. Eaglewood Mortgage, LLC*, 582 F.Supp.2d 707, 714 (D. Md. 2008) (citation omitted), *aff'd*, 353 Fed. Appx. 864 (4th Cir. 2009). This is not such a case.

Section 1962(c), upon which Kimberlin relies, provides, in relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 U.S.C. § 1962(c).

The elements of a § 1962(c) violation are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted). The RICO Defendants argue that the SAC should be dismissed because Kimberlin failed to plead the existence of both a RICO enterprise and a pattern of racketeering activity. Additionally, the RICO Defendants argue that Kimberlin has not adequately pled a RICO injury under § 1964(c). For the reasons discussed more fully below, the Court agrees with the RICO Defendants and will therefore grant their respective motions to dismiss as to Kimberlin's RICO claim under § 1962(c).[2]

## 1.    Enterprise

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Here, Kimberlin alleges that the RICO Defendants, collectively, constitute an "association-in-fact" enterprise. *See* ECF No. 135 at ¶ 161. "To adequately plead an enterprise, [Kimberlin] must allege (1) an ongoing organization . . . , (2) that various associates function as a continuing unit, and (3) that the enterprise exists separate and apart from the pattern of racketeering activity." *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 677 (D. Md. 2009). Kimberlin has failed to adequately plead elements one and two.

---

[2] Because Kimberlin has failed to state a claim under § 1962(c), his "charge of conspiracy to violate RICO pursuant to § 1962(d) is also without merit." *Foster v. Wintergreen Real Estate Co.,* 363 Fed. Appx. 269, 275 (4th Cir. 2010); *see also GE Inv. Private Placement Partners II,* 247 F.3d 543, 551 (4th Cir. 2001) ("Because the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim [under § 1962(d)] fails as well."). The Court will therefore dismiss Kimberlin's § 1962(d) claim.

First, to be considered an "ongoing organization," an association-in-fact enterprise "need not have a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods." *Boyle v. United States*, 556 U.S. 938, 948 (2009). "But, '[v]ague allegations of a RICO enterprise . . . lacking any distinct existence and structure' will not survive dismissal." *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 843 (D. Md. 2013) (quoting *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 700 (6th Cir. 2000)), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 (2008). Put simply, Kimberlin has failed to allege any material facts about the enterprise's structure. Nor has he alleged how the RICO Defendants are associated within the enterprise. Kimberlin has therefore failed to plead the existence of a RICO enterprise. *See Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 909 (N.D. Ind. 2013) (confirming, post-*Boyle*, "that a structure is indeed a necessary element of a RICO enterprise").

Second, aside from Kimberlin's conclusory allegation that the "RICO Enterprise functioned as continuing unit" (ECF No. 135 at ¶ 164), the SAC contains no factual allegations regarding the relationships between or among the RICO Defendants, much less how they "functioned as a continuing unit." "Such a naked assertion devoid of further factual enhancement need not be credited when evaluating the sufficiency of enterprise allegations on a motion to dismiss." *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 473 (D. Md. 2012) (quotations omitted) (dismissing RICO claim where complaint contains no allegations about the defendants' relationships or how they "functioned as a continuing unit"). For this additional reason then, Kimberlin has failed to adequately plead the existence of a RICO enterprise and his § 1962(c) RICO claim is dismissed.

### 2.        Pattern of Racketeering Activity

Even if Kimberlin had pled the existence of an enterprise, he would also need to allege a pattern of racketeering activity. *See Brubaker v. City of Richmond*, 943 F.2d 1363, 1374 (4th Cir. 1991). The RICO Defendants have moved to dismiss Kimberlin's § 1962(c) claim because, according to them, he has failed to sufficiently plead the existence of racketeering activity, and, even if he did, he has failed to adequately plead a pattern of such activity. The Court agrees.

### a.        Racketeering Activity

A RICO claim requires a showing of racketeering activity. "Racketeering activity" is broadly defined under 18 U.S.C. § 1961(1) to include the commission of several federal statutory and state common law offenses, known as "predicate acts." *See* 18 U.S.C. § 1961(1). To support his § 1962(c) RICO claim, Kimberlin relies on the following predicate acts listed in § 1961(1): mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), obstruction of justice (18 U.S.C. § 1503), witness intimidation (18 U.S.C. § 1512), witness retaliation (18 U.S.C. § 1513), extortion (18 U.S.C. § 1951), and money laundering (18 U.S.C. § 1957). *See* ECF No. 135 at ¶¶ 170-96. In order to establish the existence of racketeering activity, Kimberlin must adequately plead the elements of each of these predicate acts. He has failed to do so.

### i.        Mail and Wire Fraud - 18 U.S.C. §§ 1341, 1343

First, Kimberlin alleges the predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. These statutes prohibit the use of the mails or interstate wires in furtherance of schemes to defraud. *See* 18 U.S.C. §§ 1341, 1343.  To plead mail or wire fraud, a plaintiff must show: (1) a scheme disclosing intent to defraud; and (2) the use, respectively, of the mails or interstate wires in furtherance of the scheme. *See Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). Thus, "[w]hen mail and wire fraud are asserted as the predicate acts for a civil RICO claim, the standards of Rule 9(b) apply." *Bhari Info. Tech. Sys. Private Ltd. v. Sriram*, 984 F. Supp. 2d 498, 505 (D. Md. 2013). Specifically, the complaint must allege the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784. Additionally, "[a] complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (citations omitted). To be clear, "[t]he requirement of 'particularity' does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Frison v. Ryan Homes*, No. 04-350, 2004 WL 3327904, at *4 (D. Md. Oct. 29, 2004). Here, Kimberlin has only provided threadbare allegations about the alleged fraud.

At most, Kimberlin alleges that the RICO Defendants, generally, made false statements about Kimberlin's alleged involvement in swatting for the purpose of inducing unknown citizens to send an undisclosed amount of money through the mail or wires to support the RICO Defendants' efforts to destroy Kimberlin's reputation. *See* ECF No. 135 at ¶¶ 170-179. Without more, these threadbare allegations are not enough to satisfy the particularity requirement imposed by Fed.R.Civ.P. 9(b). Specifically, the SAC fails to allege the time, place, and contents of any of the alleged mail and wire communications. Furthermore, "'[th]e Rule 9(b) problem is exacerbated in this [instance]' because multiple defendants are involved, but the complaint does not clearly identify 'which Defendant played which role.'" *Grant v. Shapiro & Burson, LLP*, 871

F. Supp. 2d 462, 474 (D. Md. 2012) (quoting *Davis v. Wilmington Fin., Inc.*, No. 09-1505, 2010 WL 1375363 (D. Md. Mar. 26, 2010)). Kimberlin has therefore failed to allege the predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.

### ii.      Obstruction of Justice - 18 U.S.C. § 1503

Kimberlin also alleges the predicate act of obstruction of justice pursuant to 18 U.S.C. § 1503. According to Kimberlin, the RICO Defendants attempted "to influence, obstruct, or impede, the due administration of justice by falsely accusing [Kimberlin] of swatting, and provided false evidence to the FBI and state and local law enforcement officials asserting that [Kimberlin] was involved in the swattings." ECF No. 135 at ¶ 180. Kimberlin maintains that this conduct violated § 1503(a) of the federal obstruction statute.

Section 1503(a) imposes criminal liability on anyone who:

> corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice.

18 U.S.C. § 1503(a). "To constitute an offense under th[e] [obstruction of justice] statute, the [offending] act must relate to a proceeding in a federal court of the United States." *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 707, 708 (2d Cir. 1990) (rejecting argument that obstruction of justice as a predicate act under RICO includes state proceedings).

Here, Kimberlin has failed to allege any acts relating to a federal judicial proceeding. Instead, he alleges only acts related to a state court proceeding, as well as various investigations, which are not covered under § 1503(a). *See* ECF No. 135 at ¶¶ 56, 180, 249; *see e.g.*, *United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("The action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority."). Kimberlin has therefore failed to plead obstruction of justice as a predicate act. *See In re Am. Honda Motor Co., Inc. Dealerships Relations Litig.*, 958 F. Supp. 1045, 1055 (D. Md. 1997) (recognizing that "because § 1503 applies only to obstruction of federal judicial proceedings, [defendant's] actions cannot constitute a predicate act under RICO"); *see also Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 918 (N.D. Ind. 2013) ("These statements are not obstruction of justice [as a predicate act in a civil RICO case], because they do not arise from a federal judicial proceeding.").

### iii.      Witness Intimidation – 18 U.S.C. § 1512

Kimberlin next alleges the predicate act of witness intimidation pursuant to 18 U.S.C. § 1512. Section 1512 has various subparts. It appears, however, that Kimberlin is attempting to support his RICO claim under subpart (b), which addresses intimidation of a witness in an "official proceeding." Specifically, Kimberlin alleges that "Defendants . . . have engaged in a multi-year campaign of retaliation against [him] in order to intimidate him from being a witness . . . ." ECF No. 135 at ¶ 186.

Section 1512(b) provides, in relevant part:

> (b) Whoever knowingly uses intimidation . . . with intent to-
>
> > (2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document, or other object, from an *official proceeding*;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an *official proceeding*; or

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an *official proceeding*; or

(D) be absent from an *official proceeding* to which such person has been summoned by legal process; or

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512 (emphases added). Thus, the plain language of the statute makes clear that it is only a violation of § 1512 when one tampers with or intimidates a witness in an official proceeding. An "official proceeding" is defined as "a proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy judge, or a Federal grand jury; [] a proceeding before the Congress; or [] a proceeding before a Federal Government agency which is authorized by law . . . ." 18 U.S.C. § 1515.

Here, Kimberlin has failed to plead that he was retaliated against in relation to an "official proceeding." In fact, the only proceeding Kimberlin refers to in his SAC is one that occurred at the Montgomery County Circuit Court – a state court proceeding. *See* ECF No. 135 at ¶¶ 56, 249. Under § 1515, however, state court proceedings do not fall within the scope of § 1512. *See e.g.*, *Park South Associates v. Fischbein*, 626 F.Supp. 1108, 1113 (S.D.N.Y. 1986) (rejecting application of § 1512 to state court or state agency proceedings), *aff'd*, 800 F.2d 1128 (2d Cir. 1986); *Pettiford v. Sheahan*, No. 02-1777, 2004 WL 626151, at *12 (N.D. Ill. Mar. 26,

2004) (recognizing that an internal "investigation does not qualify as an official proceeding");

*McKinney v. State of Ill.*, 720 F. Supp. 706, 708-09 (N.D. Ill. 1989) (recognizing that

investigation launched by state agency "is not the type of official federal proceeding within the

scope of sections 1512 and 1513"). Kimberlin's allegations that the RICO Defendants violated §

1512 are therefore unsupported by the SAC.[3]

### iv.      Witness Retaliation – 18 U.S.C. § 1513

Next, Kimberlin alleges that the RICO Defendants engaged in unlawful witness

retaliation against him in violation of 18 U.S.C. § 1513. Specifically, Kimberlin alleges that the

RICO Defendants "retaliate[d] against him for providing information to law enforcement

officials regarding federal offenses committed by one or more of the Defendants." ECF No. 135

at ¶ 186.  In support of this claim, Kimberlin relies on § 1513(b)(2), which provides, in relevant

part:

> Whoever knowingly engages in any conduct and thereby causes
> bodily injury to another person or damages the tangible property of
> another person, or threatens to do so, with intent to retaliate against
> any person for—
>
>> (2) any information relating to the commission or possible
>> commission of a Federal offense . . . given by a person to a
>> law enforcement officer;
>
> or attempts to do so, shall be fined under this title or imprisoned
> not more than 20 years, or both.

---

[3] Recognizing that his SAC failed to identify an official proceeding, Kimberlin, in his opposition, attempts to salvage his claim by indicating that, in addition to his predicate act arising under § 1512(b), he was aslo alleging a predicate act arising under § 1512(d)(2). It is well-established, however, that a plaintiff cannot amend his or her complaint through the use of opposition briefs. *See Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n. 4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (unpublished table opinion); *see also Uzoukwu v. Prince George's Cmty. Coll. Bd. of Trustees*, No. 12-3228, 2013 WL 4442289, at *6 (D. Md. Aug.15, 2013). This is particularly true where, as here, the plaintiff has had multiple opportunities to amend his complaint. Kimberlin therefore cannot rely on § 1512(d)(2).

18 U.S.C. § 1513(b). Thus, to plead the predicate act of witness retaliation under § 1513(b)(2), Kimberlin must have been retaliated against for providing information to a "law enforcement" officer relating to a federal offense.

Section 1515(a)(4) defines "law enforcement officer" as "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government." 18 U.S.C. § 1515(a)(4). Nothing in Kimberlin's SAC suggests that he provided information to any such individual; rather, Kimberlin's SAC indicates that he provided information to state law enforcement officials, not federal. *See* ECF No. 135 at ¶ 115 ("Plaintiff has repeatedly informed the Los Angeles County District Attorney's Office and Internal Affairs about the tortious conduct of Defendant Frey but his supervisors have told Plaintiff that they have given Defendant Frey permission to act that way as long as he does not do it while physically at the District Attorney's Office."). Accordingly, Kimberlin cannot rely on § 1513(b)(2) as a predicate act.[4]

### v.     Extortion – 18 U.S.C. § 1951

The next predicate act Kimberlin alleges is extortion and/or attempted extortion under 18 U.S.C. § 1951(a). Kimberlin maintains that the RICO Defendants have extorted him in violation of § 1951 "by filing a malicious federal lawsuit against [him and his employer] . . . to limit his First Amendment right to redress and then demanding that his employer fire him and turn over protected business documents in exchange for a settlement . . . ." ECF No. 135 at ¶ 190.

Section 1951(a) provides, in relevant part: "Whoever . . . obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion . .

---

[4] To the extent Kimberlin is relying on § 1513(e) of the witness retaliation statute, this attempt would also fail.  Section 1513(e), like § 1513(b), requires that the witness provide information to a federal law enforcement officer. As discussed, Kimberlin has not alleged that he provided any information to federal law enforcement officer.

. shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a). Section 1951(b)(2), in turn, defines "extortion" as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . ." 18 U.S.C. § 1951(b)(2). A number of circuits have held that the mere act of filing a lawsuit and demanding a settlement agreement, however baseless the lawsuit or settlement demand may be, does not qualify as "extortion" under § 1951.  *See e.g.*, *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004) (holding that the filing of baseless litigation cannot constitute § 1951 extortion); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) ("recogniz[ing] that litigation can induce fear in a defendant" but electing to "join a multitude of other courts in holding that meritless litigation is not extortion under § 1951"); *United States v. Pendergraft*, 297 F. 3d 1198, 1208 (11th Cir. 2002) (holding threats to sue a public entity cannot constitute § 1951 extortion, even where supported by false testimony and fabricated evidence); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) (holding threats of groundless litigation cannot constitute extortion under § 1951). Kimberlin has therefore failed to plead the predicate act of extortion and/or attempted extortion.

### iv.     Money Laundering – 18 U.S.C. § 1957

The final predicate act upon which Kimberlin relies is money laundering under 18 U.S.C. § 1957. Specifically, Kimberlin alleges that the RICO Defendants fraudulently obtained thousands of dollars of donations from individuals to support the activities of Defendant National Bloggers Club based on the allegedly false representation that the National Bloggers Club was a non-profit organization under Section 501(1)(c)(3) of the United States Internal Revenue Code. *See* ECF No. 135 at ¶¶ 193-96.

Section 1957 prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). "Specified unlawful activity" is defined in § 1956(c)(7) and includes a number of different criminal activities. Although Kimberlin does not specifically identify the offense or offenses listed in § 1956(c)(7) upon which he relies, it is apparent from the SAC that he is basing his money laundering allegations on mail and wire fraud. *See* ECF No. 135 at ¶¶ 193-96. These allegations, however, are the same wire fraud and mail fraud allegations upon which Kimberlin relies to support his other independent predicate acts of mail and wire fraud. *See id.* at ¶¶ 173, 178. Because the Court has already concluded that Kimberlin failed to adequately plead facts to support the predicate acts of wire fraud and mail fraud (discussed above in Section III(A)(2)(a)(ii)), the predicate act of money laundering necessarily must fail, as it is based on the same set of facts and circumstances as were the mail and wire fraud predicate acts. *See e.g.*, *Fischbein v. Sayers*, No. 04-6589, 2009 WL 2170349, at *4 (S.D.N.Y. July 16, 2009) (declining to "reach the sufficiency of Plaintiff's allegations that Defendant's racketeering activity included predicate acts of money laundering in violation of Section 1957 on this Rule 12(b)(6) motion, in light of the Court's conclusion as to the sufficiency of the pleading of predicate acts of mail and wire fraud"); *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, No. 03-8606, 2004 WL 2187069, at *9 (S.D.N.Y. Sept. 29, 2004) (holding that "[b]ecause [plaintiff's] allegations of mail and wire fraud [were] insufficient . . . , the 'specified unlawful activity' required [for money laundering] may not be satisfied by reference to those allegations"); *Flores v. Emerich & Fike*, No. 05-0291, 2009 WL 900738, at *8 (E.D. Cal. Mar. 31, 2009) (holding that plaintiff cannot rely on the "specified

unlawful activity" of mail and wire fraud to support the predicate act of money laundering where "[t]he complaint's allegations of mail and wire fraud [were] inadequate").

Regardless, Kimberlin's allegations concerning the RICO Defendants' alleged money laundering are, in any event, insufficient. To establish money laundering under § 1957, a plaintiff must plead: (1) the defendant knowingly engaged or attempted to engage (2) in a monetary transaction (3) in criminally derived property that is of a value greater than $10,000 (4) knowing that the property is derived from unlawful activity, and (5) the property is, in fact, derived from specified unlawful activity. *See United States v. Johnson*, 971 F.2d 562, 567 n. 3 (10th Cir. 1992); *see also United States v. Perez*, 223 F. App'x 336, 344 (5th Cir. 2007). Thus, § 1957 prohibits one from engaging in a monetary transaction *in* criminally derived proceeds. Kimberlin's allegations, however, allege only *receipt* of proceeds derived from the alleged money laundering.

Specifically, Kimberlin alleges that the RICO Defendants engaged in a fraudulent scheme whereby the RICO Defendants would use false representations to obtain donations from unidentified persons to support the operations of the alleged enterprise. *See* ECF No. 135 at ¶¶ 193-96. That is, he alleges that the RICO Defendants obtained criminally-derived proceeds by perpetrating a fraud. But the SAC contains no allegations whatsoever that the RICO Defendants *engaged in* any monetary transactions with those proceeds. At most, the SAC alleges that the "donations . . . were funneled by various means in interstate commerce to a bank account controlled by Defendant Ali Akbar" (*id.* at ¶ 193), but nowhere in the SAC does Kimberlin allege *who* funneled the donations to Defendant Akbar or *how* those funds were allegedly funneled to him. Because Kimberlin has not alleged that the RICO Defendants engaged in any

monetary transactions with criminally-derived monies, he has failed to establish money laundering under § 1957.

In short, Kimberlin has failed to adequately plead the predicate acts of mail fraud, wire fraud, obstruction of justice, witness intimidation, witness retaliation, extortion, and money laundering. As such, Kimberlin's § 1962(c) claim must be dismissed for this additional reason. It bears noting that Kimberlin's § 1962(c) claim reflects more of an attempt to spin an alleged scheme to harm his reputation than it reflects a viable RICO claim. *See Kimm v. Lee*, No. 04-5724, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005) (dismissing RICO claim that is an attempt to "spin an alleged scheme to harm a plaintiff's professional reputation into a RICO claim"). Courts, however, are universally hostile to such attempts. *See id.; see also e.g.*, *Marks v. City of Seattle*, No. 03-17, 2003 WL 23024522, at *1 (W.D. Wash. Oct. 16, 2003); *Mansmann v. Smith*, No. 96-5768, 1997 WL 145009, at *2 (E.D. Pa. Mar. 21, 1997); *Manax v. McNamara*, 660 F.Supp. 657, 658 (W.D. Tex. 1978), *aff'd*, 842 F.2d 808 (5th Cir. 1988). This is because it is "firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violations." *Kimm*, No. 04-5724, 2005 WL 89386, at *5; *see e.g.*, *Contes v. City of New York,* No. 99-1597, 1999 WL 500140, at *8 (S.D.N.Y. July 14, 1999) ("Defamation is not a predicate act under § 1961."); *Mount v. Ormand*, No. 91-125, 1991 WL 191228, at *2 (S.D.N.Y. Sept. 18, 1991) ("Section 1961(1) does not include defamation[ ][or] libel . . . as predicate acts . . . ."). This case is no different. Thus, any alleged defamation that occurred cannot serve as the basis of Kimberlin's RICO claim.

### b.   *Pattern* of Racketeering Activity

Even if Kimberlin had adequately pled the existence of racketeering activity (which he has not), his § 1962(c) claim would still fail because he has not sufficiently alleged a *pattern* of

this activity. To establish a pattern of racketeering activity, the plaintiffs must establish that (1) the predicate acts are related, and (2) they pose a threat of continued criminal activity. *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Kimberlin has failed to satisfy both elements.

Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Mktg. Prod. Mgmt., LLC v. Healthandbeautydirect.com, Inc.*, 333 F.Supp.2d 418, 424 (D. Md. 2004). Kimberlin contends that the predicate acts are related because they shared the same purpose: to allow the RICO Defendants to profit from their alleged fraudulent scheme. *See* ECF No. 135 at ¶¶ 165, 200. Kimberlin's allegations, however, reveal that the majority of the predicate acts (*i.e.* obstruction, extortion, money laundering, retaliation, and intimidation) were not undertaken for that purpose.

Specifically, Kimberlin alleges that the RICO Defendants obstructed justice for the purpose of "influenc[ing] obstruct[ing], or imped[ing], the due administration of justice by falsely accusing [Kimberlin] of swatting." *Id.* at ¶ 180. He does not allege, however, that they obstructed justice in order to derive profits. The same must be said of the RICO Defendants' alleged extortion. Kimberlin maintains that the alleged extortion was done to limit his First Amendment rights and to get him fired (*see id.* at ¶ 190-91) – not to allow the RICO Defendants to profit. As for the alleged money laundering, the fundamental purpose of this activity, as with any money laundering operation, was to disguise the illegal origin of criminally derived proceeds; it was not to allow the RICO Defendants to profit, though obviously some profit may be derived from such an operation. *See id.* at ¶ 193-96. Finally, with respect to the witness intimidation and retaliation allegations, Kimberlin contends that these actions were undertaken

"to intimidate him from being a witness, and to retaliate against him for providing information to law enforcement." *Id.* at ¶ 186. Again, Kimberlin does not allege that these actions were taken for the purpose of allowing the RICO Defendants to profit.  Thus, because the RICO Defendants' alleged obstruction,  extortion, money laundering, retaliation, and intimidation were not undertaken for the purpose of allowing them to profit, Kimberlin cannot rely on these predicate acts to support his showing of a pattern of racketeering activity.

Kimberlin is therefore left to rely on the predicate acts of wire fraud and mail fraud, which, according to him, were undertaken for the shared purpose of allowing the RICO Defendants to profit from the false narratives about him. These acts, however, are insufficient to establishing a pattern of racketeering activity. "Simply proving two related acts of mail or wire fraud does not necessarily plead an actual violation of RICO." *Baker v. Sturdy Built Mfg., Inc.*, No. 07-212, 2007 WL 3124881, at *4 (E.D. Va. Oct. 23, 2007). In fact, "courts are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice." *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000). The caution exists to prevent application of the RICO statute to "garden-variety fraud claims better prosecuted under state law." *Id*. "Concern that RICO not be applied to so-called 'garden-variety fraud' is a recurring theme in Fourth Circuit jurisprudence." *Baker*, No. 07-212, 2007 WL 3124881, at *4 (citing *Maryland-Nat'l Capital Park and Planning Comm'n v. Boyle*, 63 Fed. Appx. 98, 101 (4th Cir. 2003) ("claims advanced by the plaintiffs amounted to nothing more than ordinary or garden-variety fraud"); *see also Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). Such is the case here.

The thrust of Kimberlin's SAC is that individual consumers were induced to give money to support a cause based upon false representations that were made to them. RICO, however

"was never intended to be applied to commonplace commercial controversies" such as these. *Baker*, No. 07-212, 2007 WL 3124881, at *4; *see also Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) ("[T]his circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims [because] . . . the heightened civil and criminal penalties of RICO are reserved for schemes whose scope and persistence set them above the routine." (internal quotation omitted)). Rather, RICO is reserved for "ongoing unlawful activities whose scope and purpose pose a special threat to social well-being." *Menasco*, 886 F.2d at 684. This case does not present such a situation; instead, this case presents a "garden-variety" fraud claim, similar to the ones that the Fourth Circuit has eschewed in the RICO context. Accordingly, Kimberlin has failed to establish a pattern of racketeering activity.

### 3.      Cognizable RICO Injury

Finally, even if Kimberlin had pled the existence of a RICO enterprise and a pattern of racketeering activity, his § 1962(c) would still fail because he has not pled a cognizable RICO injury. To make out a civil action for damages under the RICO statute, a private plaintiff must demonstrate not only that the defendants have violated § 1962, but also that he has been "injured in his business or property by reason of [the alleged] violation of section 1962." 18 U.S.C. § 1964(c). Section 1964(c) requires a plaintiff to make two closely related showings: (1) that he or she has suffered injury to his or her business or property; and (2) that this injury was caused by the predicate acts of racketeering activity that make up the violation of § 1962. *See Nodine v. Textron, Inc.,* 819 F.2d 347, 348 (1st Cir. 1987). Kimberlin has failed to satisfy both showings.

a.        **Injury to Business or Property**

To plead an injury to one's business or property, a plaintiff must allege that he suffered a "tangible business loss." *In re Am. Honda Motor Co., Inc. Dealerships Relations Litig.*, 941 F. Supp. 528, 540 (D. Md. 1996). Kimberlin has not done so.

First, Kimberlin claims he was injured by "having his name falsely associated with swatting and other crimes and false narratives . . . ; [and by] having to spend untold hours, days, weeks, months and years defending against the false narratives" spread by the RICO Defendants. ECF No. 135 at ¶ 204. These allegations, however, relate to personal harm. "RICO is not available for the redress of purely personal injuries." *Hickman v. Obama*, No. 13-1284, 2013 WL 2390869, at *1 (D. Md. May 29, 2013) (citing *Drake v. B.F. Goodrich Company*, 782 F.2d 638, 644 (6th Cir. 1986)). At most, these allegations concern alleged reputational harm suffered by Kimberlin; but, "[d]amage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)." *Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 954 (8th Cir. 1999); *see e.g.*, *City of Chicago Heights, Ill. v. Lobue*, 914 F. Supp. 279, 285 (N.D. Ill. 1996) ("Personal injury, such as injury to reputation, generally is not an injury to 'business or property' that is compensable under § 1964(c)."); *Callan v. State Chem. Mfg. Co.*, 584 F. Supp. 619, 623 (E.D. Pa. 1984) ("mental anguish, loss of self-esteem and confidence, or damaged reputations are [not] recoverable under RICO"); *Padilla Rodriguez v. Llorens Quinones*, 813 F. Supp. 924, 929 (D.P.R. 1993) ("conclud[ing] that damages relating to injury to reputation are personal injuries not recoverable under RICO"). Accordingly, these allegations of harm are insufficient to establish an injury to Kimberlin's business or property.

Kimberlin also alleges that he "spen[t] money defending against the false narrative." ECF No. 135 at ¶ 204. This, too, is insufficient for establishing an injury to one's business or property. Any money Kimberlin spent defending against the alleged defamatory statements made by the RICO Defendants resulted from the personal (*i.e.* reputational) harm Kimberlin suffered in his individual capacity. RICO does not permit a plaintiff to recover for pecuniary losses resulting from personal injury. *See Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) ("An allegation of personal injury and *pecuniary losses occurring therefrom* are not sufficient to meet the statutory requirement of injury to 'business or property.'") (emphasis added); *see also Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 564 (6th Cir. 2013) (recognizing that "the phrase 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom"); *Pilkington v. United Airlines*, 112 F.3d 1532, 1536 (11th Cir. 1997) ("To the extent that Gieschen, or any other plaintiff, seeks to recover under RICO for . . . pecuniary losses resulting from personal injury, this claim is not cognizable under RICO."). Thus, the money Kimberlin spent defending against the alleged defamatory statements made by the RICO Defendants does not constitute an injury to his "business or property" for purposes of RICO.

Additionally, Kimberlin makes reference to apparent harm he suffered in his professional capacity. These allegations, however, are far too vague to survive the RICO Defendants' motions to dismiss. For example, Kimberlin alleges, without any specifics, that he was harmed because he "los[t] employment and funding opportunities" and because the RICO Defendants' conduct "interfere[d] with prospective business [relations]." ECF No. 135 at ¶ 204. These references to lost "opportunities" and "prospective" business relationships are entirely speculative and demonstrate, at most, an "[i]njury to mere expectancy interests" which is "not sufficient to confer

RICO standing." *Regions Bank v. J.R. Oil Co., LLC,* 387 F.3d 721, 730 (8th Cir. 2004)

(quoting *Price v. Pinnacle Brands,* 138 F.3d 602, 607 (5th Cir. 1998)). Without more, Kimberlin

cannot rely on these purported lost business opportunities to establish a RICO injury. *See e.g.*,

*Anderson v. Kutak, Rock & Campbell (In re Taxable Mun. Bond Sec. Litig.)*, 51 F.3d 518, 523

(5th Cir. 1995) ("Anderson's suit shows only a lost opportunity to obtain a . . . loan. Such lost

opportunity by itself does not constitute an injury that confers standing to bring a RICO cause of

action."); *Steele v. Hospital Corp. of Am.,* 36 F.3d 69, 70 (9th Cir. 1994) (holding that, for RICO

standing, the plaintiffs must prove a "concrete financial loss," an actual loss "of their own

money," and "not mere 'injury to a valuable intangible property interest'"); *Hecht v. Commerce

Clearing House, Inc.,* 897 F.2d 21, 24 (2d Cir. 1990) ("[I]njury in the form of lost business

commissions . . . is too speculative to confer standing, because Hecht only alleges that he would

have lost commissions in the future, and not that he has lost any yet."); *Corporate Healthcare

Fin., Inc. v. BCI Holdings Co.*, 444 F. Supp. 2d 423, 429 (D. Md. 2006) (recognizing that an

"expectancy interest" "is insufficient to confer standing" under RICO).

### b.   Proximate Cause

Finally, Kimberlin has failed to allege that his injuries – to the extent they are even

recognized as such – were proximately caused by the predicate acts of racketeering activity that

make up the violation of § 1962(c).

To state a civil RICO claim, a plaintiff is required to show that a RICO predicate act "not

only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Sec.

Investor Protection Corp.*, 503 U.S. 258, 268 (1992). Proximate cause for RICO purposes should

be evaluated in light of its common-law foundations; proximate cause thus requires "some direct

relation between the injury asserted and the injurious conduct alleged." *Id.* A link that is "too

23

remote," "purely contingent," or "indirec[t]" is insufficient. *Id.* at 271. As the Supreme Court has made clear, "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 12 (2010); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries"). Here, there is nothing to suggest that the RICO Defendants' predicate acts led directly to Kimberlin's injuries.

First, the wire fraud, mail fraud, and money laundering allegedly perpetrated by the RICO Defendants against unidentified "citizens" did not directly lead to Kimberlin's injuries. Furthermore, the Supreme Court has also observed that the requirement of a direct causal connection is especially warranted where, as here, "the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Anza*, 547 U.S. at 460. Here, the direct victims of the mail fraud, wire fraud, and money laundering are the individuals who were induced into making donations. If Kimberlin's allegations are true, these individuals may pursue their own remedies under the law. As it relates to the remaining predicate acts – obstruction, intimidation, retaliation, and extortion – it is unclear how Kimberlin's injuries to his name and reputation were directly caused by these actions.  Put simply, Kimberlin's alleged injuries are far too attenuated to support his RICO claim. Kimberlin has therefore failed to plead a cognizable RICO injury and, as a result, has failed to state a claim under § 1962(c).

In reaching this conclusion, the Court notes that Kimberlin's § 1962(c) claim is not much more than an attempt to plead a RICO suit from an ordinary civil wrong. Opining on the increase of these types of lawsuits, one court in the Eastern District of New York recently observed:

> It is unfortunate – to say nothing of expensive and time consuming
> – to have watched the proliferation of alleged RICO claims. While

some show a degree of creativity, they are more frequently an effort to construct a treble damage suit from what, at best, is a civil wrong, something that was never the intention of those who drafted the statute in the Justice Department or of Congress when it became law. Organized Crime Control Act of 1970, Pub.L. No. 91-451, § 1, 84 Stat. 922, 1073 (1970) (Statement of Findings and Purpose) ('It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.'); *Russello v. United States,* 464 U.S. 16, 25 (1983) ('The legislative history clearly demonstrates that the RICO statute was intended to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots.').

*Kimm*, No. 04-5724, 2005 WL 89386, at *5. Kimberlin's RICO claim is a case-in-point.

Accordingly, the Court must dismiss this claim.

### B.     Section 1983 Claim (Count II)

Count II of Kimberlin's SAC involves alleged violations of 42 U.S.C. § 1983 by Defendant Patrick Frey ("Frey").[5] To state a claim for a violation of § 1983, a plaintiff must allege a deprivation of "rights, privileges, or immunities secured by the Constitution and laws" by one acting "under color of state law." 42 U.S.C. § 1983. The gist of Kimberlin's § 1983 claim is that Frey, an Assistant District Attorney for the Los Angeles County District Attorney's Office, chilled his First Amendment right to free speech by retaliating against him after Kimberlin reported to Frey's supervisors his belief that Frey had been defaming him through various blog and internet postings. *See* ECF No. 135 at ¶¶ 206-12. Frey has moved to dismiss Kimberlin's §1983 claim on the basis that Frey was not acting under color of state law and that, even if he was, Kimberlin has not been deprived of any federally protected rights. *See* ECF No.

---

[5] Unlike Kimberlin's other counts, Count II is limited to one specific defendant – Frey.

180-8 at 30-35. For the reasons stated below, the Court will deny Frey's motion to dismiss as to Count II.

1.      **State Action**

First, Frey contends that the "SAC does not allege facts sufficient to establish that Mr. Frey's conduct . . . qualifies as action taken under color of state law . . . ." *Id.* at 31.  Specifically, Frey maintains that the conduct of which Kimberlin complains was undertaken in his private capacity as an internet blogger and that "there is no plausible allegation that Mr. Frey's conduct [was] related to his duties as an Assistant District Attorney[.]" *Id.* at 32. The Court disagrees.

The "under color of state law" requirement is synonymous with state action. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "While it certainly is true that '[a]cts of [government employees] in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983,' the lack of the outward indicia suggestive of state authority . . . are not alone determinative of whether a [government employee] is acting under color of state law." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Robinson v. Davis*, 447 F.2d 753, 759 (4th Cir. 1971) (internal citations omitted)). Rather, in determining whether a government employee is acting under color of state law, the Court must examine "the nature and circumstances of the defendant's conduct to determine whether it is 'fairly attributable to the state.'" *Rossignol v. Voorhaar*, 199 F. Supp. 2d 279, 286 (D. Md. 2002), *rev'd on other grounds*, 316 F.3d 516 (4th Cir. 2003) (citing *Revene*, 882 F.2d at 872 (when determining whether a defendant acted under color of state law "the nature of the act performed is controlling")).

Here, Kimberlin's allegations, which must be accepted as true, suggest that Frey's conduct was "fairly attributable to the state." *Rossignol*, 199 F. Supp. 2d at 286. Specifically,

Kimberlin alleges that Frey, acting in his capacity as an Assistant District Attorney, encouraged his supervisors at the Los Angeles County District Attorney's Office, as well as other prosecutors and investigators, to launch criminal investigations into Kimberlin. *See* ECF No. 135 at ¶¶ 43-50. In fact, Kimberlin maintains that on December 22, 2011, Frey met with an Assistant U.S. Attorney and FBI investigators in Dallas where they discussed Kimberlin's alleged involvement in swatting and the criminal investigation relating thereto. *See* ECF No. 231-4 at 2.[6] Following this meeting, Frey apparently sent an e-mail to various individuals describing this encounter with law enforcement in which he boasts that "[s]oon high tech investigators from my office [at the Los Angeles County District Attorney's Office] will be on [the case]." *Id.* Kimberlin also alleges that on January 5, 2012, Frey sent an e-mail to Defendant Walker ("Walker"), using his pseudonym Aaron Worthing, in which Frey asks Walker if he would "be willing to send [Frey] a short just-the-facts-ma'am email summarizing [his] interactions with Ron and Brett [Kimberlin] including their threats to sue/file bar complaints/etc. with your real name, suitable for providing to my supervisors and possibly law enforcement?" *Id.* at 14; *see also* ECF No. 135 at ¶ 51.

Far from suggesting that Frey was acting solely in his capacity as a private citizen, these allegations support a plausible inference that Frey used his position as an Assistant District

---

[6] The Court notes that Kimberlin attached various e-mails to his omnibus opposition to Defendants' motions to dismiss. These e-mails, which were not attached to the SAC, were referenced therein and are therefore integral to the SAC. The Court can therefore consider these e-mails without converting Defendants' motions to dismiss into one for summary judgment. *See U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (recognizing that in reviewing a motion to dismiss the court is "not confined to the four corners of the complaint" but "may also consider documents incorporated into the complaint by reference") (internal quotations omitted); *see also Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (considering materials attached to plaintiff's opposition to defendant's motion to dismiss that were integral to the complaint without converting defendant's motion into one for summary judgment).

Attorney, and the authority and credibility derived therefrom, to galvanize law enforcement into launching criminal investigations into Kimberlin's alleged involvement in swatting. Surely, the average citizen who was not an Assistant District Attorney in the Los Angeles County District Attorney's Office, or otherwise involved in law enforcement, would not so easily be able to obtain this type of access to scarce governmental resources. Thus, accepting Kimberlin's allegations as true, Frey appears to have invoked the powers of his state office when he encouraged law enforcement to launch criminal investigations into Kimberlin. Under these circumstances then, and at this stage of the proceeding, Kimberlin has plausibly alleged that Frey's conduct was "fairly attributable to the state." *Rossignol*, 199 F. Supp. 2d at 286[7]; *see also McDade v. W.*, 223 F.3d 1135, 1140 (9th Cir. 2000) (finding that an employee of a District Attorney's Office acted under color of law when she accessed a government database during working hours using a computer and a password issued by her employer "[b]ecause [her] status as a state employee enabled her to access the information" thereby "invok[ing] the powers of her office to accomplish the offensive act").

### 2.    Deprivation of Rights

Even if he was acting under color of law, Frey argues that Kimberlin's § 1983 claim must still be dismissed because he has "fail[ed] to plead facts establishing the deprivation of a right protected by the Constitution of the United States by anything allegedly done by Mr. Frey." ECF No. 180-8 at 35. Kimberlin disagrees. According to Kimberlin, Frey chilled his First Amendment rights by creating a realistic threat of arrest and retribution following Kimberlin's decision to contact Frey's supervisors to complain about Frey's conduct. *See* ECF No. 135 at ¶¶ 43, 50, 100, 115-118, 208.

---

[7] Of course, if Frey was acting under color of state law, it raises the possibility that his actions are shielded by prosecutorial immunity. Because neither party has raised this issue, however, the Court will not address this possibility at this current juncture.

It is well settled that "[t]he First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). "However, not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation." *Id.* Accordingly, the Fourth Circuit has held that a First Amendment retaliation claim brought under 42 U.S.C. § 1983 must include three elements.

> First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between [the] speech and the defendant's retaliatory action.

*Id.* (internal citations omitted).

In this case, there is no apparent dispute concerning the first and third prongs. Concerning the second prong, the key inquiry is "whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez*, 202 F.3d at 686.

When the Court considers the *Suarez* factors, particularly Frey's status as an Assistant District Attorney and Kimberlin's status as a private citizen, the Court concludes that Kimberlin's allegations plausibly suggest that a similarly situated person of "ordinary firmness" would be chilled by Frey's conduct and the consequences thereof. Specifically, by galvanizing

law enforcement to open criminal investigations into Kimberlin, Frey created a realistic threat of arrest that would likely instill fear in an individual of ordinary firmness. Indeed, in July 2012, two FBI agents came to Kimberlin's home to question him about his alleged role in various swattings. *See* ECF No. 135 at ¶ 99.  As such, the Court concludes that by creating a realistic threat of arrest, Frey's conduct could reasonably be expected to chill the exercise of one's First Amendment rights. *See e.g.*, *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) ("The Supreme Court has often noted that a realistic threat of arrest is enough to chill First Amendment rights." (citing *City of Houston, Tex. v. Hill*, 482 U.S. 451, 459 n. 7 (1987); *Steffel v. Thompson*, 415 U.S. 452, 462 (1974)); *Gardner v. Long*, No. 09-2563, 2010 WL 5691645, at *3 (D.S.C. Nov. 3, 2010) ("The initiation of criminal charges and subsequent arrest constitute conduct that would deter a person of ordinary firmness from exercising his constitutional rights."), *report and recommendation adopted*, No. 09- 2563, 2011 WL 379757 (D.S.C. Feb. 2, 2011); *McCormick v. City of Lawrence,* 253 F.Supp.2d 1172, 1197 (D. Kan. 2003) (holding that "the threat of arrest by a police officer is exactly the sort of act that would deter a person of ordinary firmness from exercising his or her First Amendment right to orally challenge that officer").

Furthermore, Kimberlin alleges that his First Amendment rights were chilled when he received a threatening e-mail message from someone at the Los Angeles County Sheriff's Department after he reported Frey's conduct to Frey's supervisors. *See* ECF No. 135 at ¶ 116. According to Kimberlin, on May 23, 2012, he received an anonymous message on his website saying: "Leave him alone. Don't go there." *Id.*; *see also* ECF No. 231-14. Believing this message to be in retaliation for reporting Frey's conduct to his supervisor, Kimberlin checked the IP address associated with the sender, which revealed that the message came from someone at the

Los Angeles County Sheriff's Department with the IP Address 146.233.0.202. *See* ECF No. 135 at ¶ 116; *see also* ECF No. 231-14. Drawing all reasonable inferences in Kimberlin's favor, the Court believes that a person of ordinary firmness who received such an apparent threat from someone at the Los Angeles County Sheriff's Department would likely be chilled in the exercise of his or her First Amendment rights. Accordingly, the Court will deny Frey's motion to dismiss Count II of the SAC.

C.      **Section 1985 Claim (Count III)**

Count III of Kimberlin's SAC involves alleged violations of 42 U.S.C. §§ 1985(2) and (3). As it relates to § 1985(3), Kimberlin alleges that several "Defendants conspired, agreed, planned and coordinated with Defendant Frey, acting under color of law, for the purpose of depriving [him] of his constitutional and civil rights, including his First Amendment right to seek redress from the courts, his Fifth Amendment right to due process, his constitutional right to privacy, his First Amendment right to speech, his fundamental right to liberty, and his overarching right to be safe in his everyday activities." ECF No. 135 at ¶ 215.

Section 1985(3) creates a private cause of action where "two or more persons . . . conspire . . . for the purposes of depriving, either directly or indirectly, any person . . . of the equal protection of the law, or of equal privileges and immunities under the law." In order to establish a claim under § 1985(3), the plaintiff must prove that:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).

Here, there is no allegation in the SAC that Kimberlin is a member of a protected class. At most, Kimberlin alleges that, because of his political views, he is a member of a protected class. The Fourth Circuit, however, has squarely rejected such an expansive interpretation of § 1985(3). Specifically, in *Harrison v. KVAT Foods Management, Inc.*, 766 F.2d 155 (4th Cir. 1985), the Fourth Circuit found that Republicans were not members of a protected class for purposes of § 1985(3). In *Harrison*, the Court relied heavily on the Supreme Court's decision in *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825 (1983), in which the Court "adopted the view that the original objective of the 1871 Civil Rights Act and § 1985(3) was the protection of blacks and their supporters in the South." *Harrison*, 766 F.2d at 161 (quoting *Scott*, 463 U.S. at 836). Accordingly, Kimberlin's claim under § 1985(3) must be dismissed as he has failed to plead facts that plausibly suggest he is a member of a protected class. *See Johnson v. Hettleman*, 812 F.2d 1401 (4th Cir. 1987) (recognizing that "Section 1985(3) does not encompass conspiracies motivated by economic, political or commercial animus" and affirming district court's dismissal of § 1985(3) claim where plaintiff "alleged no racial or class-based invidious discrimination").

As for Kimberlin's claim arising under 42 U.S.C. § 1985(2), that claim is similarly deficient. Like § 1985(3), to state a claim under § 1985(2) a plaintiff must allege that the defendants "were motivated by racial or other class-based, invidiously discriminatory animus." *Sellner v. Panagoulis*, 565 F.Supp. 238, 245 (D. Md. 1982). As discussed, Kimberlin has failed to satisfy this pleading burden. His § 1985(2) claim must therefore be dismissed. *See Scott v. Mountain Mission Sch.*, 809 F.2d 786 (4th Cir. 1987) (*per curiam*) (affirming district court's dismissal of § 1985(2) claim for failure to allege a racial or other class-based animus); *see also*

*Johnson v. Baltimore City Police Dep't*, No. 12-0646, 2013 WL 6048991, at *9 (D. Md. Jan. 29, 2013); *Sellner*, 565 F.Supp. at 245.

**D.    State Law Claims (Counts IV, V, VI, VII, VIII, IX, X)**

Having dismissed the majority of Kimberlin's federal claims, the Court "enjoys wide latitude in determining whether or not to retain supplemental jurisdiction over [the remaining] state claims." *Crosby v. City of Gastonia*, 635 F.3d 634, 644 n. 11 (4th Cir. 2011). Here, the Court elects not to exercise supplemental jurisdiction over the remaining state claims, which account for the majority of claims remaining in the SAC.

Section 28 U.S.C. § 1367(a) provides that "[i]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."[8]

Here, Kimberlin's remaining state law claims substantially predominate over the single remaining claim for which the Court has original jurisdiction. In fact, there are seven state law

---

[8] The Court notes that although Kimberlin has purportedly invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332 in his SAC, there is no diversity jurisdiction. Courts have consistently interpreted § 1332  to require complete diversity such that the state of citizenship of each plaintiff must be different from that of each defendant. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978); *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). Because diversity jurisdiction depends on the citizenship status of the parties at the time an action commences, the Court must focus its jurisdictional inquiry solely on that time. *See Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). At the time this action was filed, multiple Defendants, including Defendants Robert McCain and William Hoge, shared the same state of citizenship as Kimberlin. *See* ECF No. 1. Kimberlin therefore could not rely on § 1332 to invoke this Court's jurisdiction.

claims as compared to the single federal claim. *See UMC Dev., LLC v. District of Columbia*, 982 F. Supp. 2d 13, 20 (D.D.C. 2013) (declining to exercise supplement jurisdiction under § 1367(c)(2), in part, because plaintiffs' state "claims are four times as numerous as their federal claims"). Furthermore, there is no federal policy that would be furthered by this Court presiding over Kimberlin's remaining state law claims. Indeed, it is apparent that the Maryland state court system has recently heard similar state law claims brought by Kimberlin against several of the defendants involved in this action. *See Kimberlin v. Walker*, CV 380996 (Montgomery County Circuit Court, filed August 30, 2013). Importantly, the Supreme Court has cautioned that district courts should avoid "[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966). Concerns of comity therefore strongly militate in favor of Maryland state courts deciding the remaining issues, to the extent they have not already been decided. Thus, the Court will decline to exercise supplemental jurisdiction over Kimberlin's state law claims and will dismiss those counts (Counts IV, V, VI, VII, VIII, IX, X) without prejudice to Kimberlin's right to re-file in state court, should he so choose, and should those claims not be barred under principles of *res judicata* and/or collateral estoppel.

        **E.**    **Remaining Motions and Requests**

Finally, the Court must address the other motions and requests that are currently pending on the docket, most of which are now moot as a result of the dismissal of the majority of Kimberlin's claims.

First, the Court will DENY, as moot, Kimberlin's Motion to Identify Defendant Ace of Spades. *See* ECF No. 232. In doing so, the Court notes that Kimberlin has not been prejudiced in any meaningful way by his failure to obtain the identity of blogger Ace of Spades. That is, even

if Kimberlin had the identity of Defendant Ace of Spades, his claims would still be subject to dismissal for the same reasons stated above.

Second, the Court will DENY, as moot, Defendant Ace of Spades' Motion for Extension of Time to File Response to Kimberlin's Motion to Identify Defendant, ECF No. 234.

Third, the Court will deny Kimberlin's Request for Default Against Defendants Ali Akbar and the National Bloggers Club for their failure to answer Kimberlin's SAC. *See* ECF No. 237. In his request for entry of default, Kimberlin asserts that when "a defendant fails to plead or otherwise defend, default *must* be entered." *Id.* (emphasis added). Kimberlin is mistaken. As one court recently explained:

> A plaintiff is not entitled to default judgment simply because the defendant fails to respond to the complaint. A default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover. Foremost, a court must be satisfied that the complaint states a legitimate cause of action. Although the Court must accept the facts alleged in a complaint as true and construe them in the light most favorable to the plaintiff, threadbare legal conclusions are not entitled to the assumption of truth. Moreover, the well-pleaded facts of a complaint must permit the court to infer the plausibility rather than the mere possibility of misconduct entitling the plaintiff to relief.

*Richardson v. William Sneider and Associates, LLC*, No. 12-25, 2012 WL 3525625, at *2 (E.D. Va. July 24, 2012) (internal quotations and citations omitted). Accordingly, the fact that Defendants Ali Akbar and the National Bloggers Club have chosen not to answer Kimberlin's complaint does not automatically entitle Kimberlin to an entry of default judgment. Because Kimberlin has failed to state claims against Defendants Ali Akbar and the National Bloggers Club, the Court will decline Kimberlin's request to enter a default judgment against them.[9]

---

[9] Having declined to exercise supplemental jurisdiction over Kimberlin's state law claims, the Court expresses no opinion as to whether or not he has stated claims against Defendants Ali Akbar and the National Bloggers Club as it relates to those state law claims.

Fourth, the Court will DENY, as moot, Kimberlin's Request to Substitute Defendant Mandy Nagy with Defendant Ginny Nagy (*see* ECF No. 246), as all of the claims brought by Kimberlin against Defendant Mandy Nagy have been dismissed.

Fifth, the Court will DENY, as moot, Kimberlin's Request for Default Judgment Against Defendant Robert McCain (*see* ECF No. 247), which was subsequently withdrawn by Kimberlin on January 20, 2015 (*see* ECF No. 259).

Sixth, the Court will DENY Kimberlin's Motion to Enforce Settlement with Defendant Lynn Thomas, ECF No. 248. As the Supreme Court has recognized, the enforcement of a contractual settlement agreement "is more than just a continuation or renewal of the dismissed suit." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). "If the obligation to comply with the terms of the agreement is not made part of an order of the court, jurisdiction to enforce the settlement agreement will not exist absent some independent basis of jurisdiction." *Smyth ex. rel. Smyth v. Rivero,* 282 F.3d 268, 281 (4th Cir. 2002). In entering its Order dismissing Defendant Lynn Thomas from this action on November 22, 2014, the Court did not explicitly or implicitly maintain jurisdiction to enforce the parties' settlement. Nor did the Court incorporate the terms of the settlement agreement in its November 22, 2014 Order. Because there appears to be no independent basis for federal jurisdiction over this contract dispute between Kimberlin and Defendant Lynn Thomas, the Court is without power to enforce its terms. The Court will therefore deny Kimberlin's Motion to Enforce Settlement with Defendant Lynn Thomas and will not reopen the case against her, as requested by Kimberlin.

Seventh, the Court will DENY, as moot, Defendants William Hoge's and Aaron Walker's Joint Request to File Motion to Strike or Disregard ECF No. 249 or to File a Response to ECF No. 249. *See* ECF No. 250.  Similarly the Court will DENY, as moot, Defendants

William Hoge's and Aaron Walker's Joint Request to File Motion to Strike or Disregard ECF No. 259 or to File a Response to ECF No. 259. *See* ECF No. 260.

Finally, the Court will DENY, as moot, the Motion to Withdraw as Attorney by Counsel for Defendant The Franklin Center (*see* ECF No. 252), as Defendant The Franklin Center is no longer a party to this action.

## IV.   CONCLUSION

For the reasons stated above, the Court will GRANT all of Defendants' motions to dismiss, except that it will DENY Defendant Frey's motion to dismiss as to Count II, which will proceed into discovery. Thus, Count I (RICO) and Count III (§ 1985) are dismissed, with prejudice, as to all Defendants. The remaining state law claims (Counts IV, V, VI, VII, VIII, IX, X) are also dismissed as to all Defendants, without prejudice to Kimberlin's right to re-file in state court, should he so choose.

Dated: <u>March 17, 2015</u>                    <u>            /S/                    </u>
                                                        George Jarrod Hazel
                                                        United States District Judge