UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| _____ <br> BRETT KIMBERLIN, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL BLOGGERS CLUB, *et al.*, <br><br> Defendants. <br> _____ | ) <br> ) <br> ) <br> ) <br> )   Civil Action No. 13cv3059-GJH <br> ) <br> ) <br> ) <br> ) <br> ) |

### REPLY IN SUPPORT OF
### MOTION TO QUASH SUBPOENA DUCES TECUM
### SERVED ON INTERMARKETS, INC. OR IN THE ALTERNATIVE
### FOR PROTECTIVE ORDER

      Non-Party Intermarkets, Inc. ("Intermarkets"), by counsel, and pursuant to Federal Rules

of Civil Procedure 26 and 45, submits its Reply in Support of Motion to Quash Subpoena Duces

Tecum Served on Intermarkets, or in the alternative, for Protective Order ("Motion").

### INTRODUCTION

      It is apparent that Plaintiff Brett Kimberlin's goal – since his claims against Ace of

Spades have been dismissed - is to exact revenge against Ace of Spades by exposing the identity

of Ace of Spades in order to cause Ace of Spades irreparable harm.  Indeed, Plaintiff admits in

his Opposition that this subpoena is designed purely to seek "documents ***in order to discover the***

***identity of Ace***…"  Kimberlin is attempting to use the subpoena issued to Intermarkets as the

vehicle for his revenge against Ace of Spades.  In support of this improper use of the Court's

procedures, Kimberlin alleges for the first time (after three different complaints and a Motion to

Identify)  that he believes there is some connection between Patrick Frey and Ace of Spades –

US_ACTIVE-122779031

without, of course offering any support for his "beliefs."[1]  Based on these bare assertions

Kimberlin asks this Court to trample Ace of Spades' First Amendment rights, Intermarkets'

Privacy Policy and allow him to expose Ace of Spades.  The Court should not countenance such

obvious abuse of its processes.  It would be chilling indeed if a non-party blogger can have

his/her anonymity stripped away by a self-serving declaration based on nothing more than one's

"belief" that exposing the blogger will somehow enable the party's case.

## BACKGROUND

Plaintiff served a subpoena duces tecum on Intermarkets on June 3, 2015 that requested

any documents relating to now-dismissed Defendant, Ace of Spades, ***two months after*** the Court

dismissed Plaintiff's claims against Ace of Spades and all other defendants, with the exception of

Assistant District Attorney Patrick Frey and two months after  the Court  simultaneously denied

Plaintiff's Motion to Identify any blogger associated with Ace of Spades.[2]  In dismissing the

RICO claims against Ace of Spades – and the other defendants – the Court found that Kimberlin

failed to allege any relationship between them.  In denying Kimberlin's Motion to Identify, the

Court held that the identity of Ace of Spades was unnecessary and that there was no prejudice to

Kimberlin in not having the identity of Ace of Spades.

Ignoring these previous decisions, and now faced with Intermarkets' Motion to Quash,

Plaintiff asserts new, naked and unsubstantiated "beliefs" that there may be some connection

between Patrick Frey and Ace of Spades.   According to Plaintiff, so long as *he* says exposing

Ace of Spades is relevant to his case, that is the end of the inquiry.  Kimberlin's specious and

after the fact arguments and assertions of what he believes provide no basis for this Court to take

---

[1] As discussed below, this Court previously dismissed the RICO claims because Kimberlin – after three attempts – failed to allege any relationship among the RICO defendants.

[2] Plaintiff appealed this decision; however, on June 16, 2015, the Fourth Circuit dismissed Plaintiff's appeal for lack of jurisdiction. (Dkt. 285.)

the extraordinary step of stripping Ace of Spades of his/her right to anonymity.    As set out

below, (1) Plaintiff's declaration  is based solely  on his unsupported beliefs and should be given

no consideration -  especially when these beliefs were not previously asserted in the long history

of this case; (2) the Court previously denied Plaintiff's Motion to Identify; (3) the Court

previously found that there were no allegations in the multiple Complaints of any relationship

between Ace of Spades and Defendant Frey in dismissing the RICO claims; (4) Intermarkets'

Privacy Policy does not waive its clients' privacy rights; and (5) The First Amendment protects

Ace of Spades' identity.

Accordingly, for the reasons more fully set out below, Intermarkets respectfully requests

the Court to enter an Order quashing Plaintiff's subpoena duces tecum.

## I.    PLAINTIFF'S DECLARATION IS MERELY A STATEMENT OF UNSUPPORTED ALLEGATIONS THAT INCLUDES NO  EXHIBITS OR FACTS

Ignoring the Court's previous denial of his Motion to Identify**,** Plaintiff's opposition to

the Motion to Quash is based exclusively on his declaration that asserts certain new beliefs about

some  connection between Ace of Spades and Defendant Frey.  Plaintiff's sudden recollection of

these beliefs when confronted with the Motion to Quash is quite convenient.  Not surprisingly

then, a review of Plaintiff's declaration reveals that it does nothing more than set forth

unsupported allegations and provides *no exhibits or evidence* in support of the allegations that

Ace of Spades' identity is relevant to his § 1983 claim.  For example, Plaintiff alleges that

"[a]ccording to information [Plaintiff] ha[s] read and received, Ace of Spades is a personal friend

of Patrick Frey's and they were in close communication during the time frame set forth in the

Complaint." Kimberlin Decl. ¶ 1 (Dkt. 288). Plaintiff fails to describe any of this supporting

information and fails to attach any documents he allegedly read or received.  To be of any effect,

a declaration must set forth factual assertions. *See Wilson v. Susquehanna Bancshares, Inc.*, 2014

WL 2094039, at *5 (D. Md. May 19, 2014) (finding that declaration based upon the declarant's "information and belief… does not raise a genuine issue of material fact sufficient to defeat summary judgment."); *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978) ("Those facts alleged on 'understanding' like those based on 'belief' or on 'information and belief', are not sufficient to create a genuine issue of fact.") (finding that affidavit containing prefaces such as "I understand" and "I believe" to be mere "opinion" under Fed. R. Civ. P. 56(e)).

Likewise in the Motion to Dismiss context, allegations based solely "upon information and belief" are conclusory and cannot survive a motion to dismiss. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (allegations based "upon information and belief" that a party participated in the fabrication of defamatory statements failed to state a claim for defamation); *Harman v. Unisys Corp.*, 356 F. App'x 638, 640 (4th Cir. 2009) ("upon information and belief" allegations that employee suffered disparate treatment were "conclusory allegations [and] insufficient to defeat a motion to dismiss"); *Mandengue v. ADT Sec. Sys., Inc.*, 2010 WL 2365463, at *5 (D. Md. June 4, 2010) ("employee's conclusory assertion that "upon information and belief", a significantly younger employee replaced her, was insufficient to state an age discrimination claim under the ADEA based upon her termination). It is meaningless to simply state in a declaration what one "believes." What one believes is not evidence of anything. And it is surely insufficient to use as a basis to brush aside Ace of Spades' constitutional right to anonymity. The Court should disregard Plaintiff's declaration and grant Intermarkets' Motion to Quash.

## II.     THE COURT HAS ALREADY DENIED PLAINTIFF'S MOTION TO IDENTIFY ACE OF SPADES

Plaintiff argues that he should be able to discover the identity of Ace of Spades through his subpoena even though Ace of Spades has been dismissed because Ace of Spades is a relevant witness.  Tellingly, Plaintiff does not address the fact that the Court already denied Plaintiff's Motion to Identify Ace of Spades on March 17, 2015 when the Court dismissed Ace of Spades from this action.  Kimberlin did not seek reconsideration of this decision and should not now  be permitted to circumvent the  Court's decision.

Furthermore, Plaintiff's self-serving declaration deserves scrutiny because Plaintiff neglected to make his newfound assertions in his Motion to Identify.  In Plaintiff's Motion to Identify filed on December 12, 2013, Plaintiff asserts that he needs Ace of Spades' identity because Ace of Spades engaged in "wholesale and per se defamation against Plaintiff…"  (Dkt. 232.)  Plaintiff did not assert in his declaration in that Motion his suddenly discovered beliefs that there is some connection between Frey and Ace of Spades. (Dkt. 232-1.)   Likewise, Plaintiff did not offer any of the newly discovered beliefs  contained in his declaration in his previously filed Reply supporting his Motion to Identify (Dkt. 251).

Now faced with Intermarkets' Motion to Quash, Plaintiff fortuitously "discovers" this new information (not disclosed or described of course) supposedly suggesting that Ace of Spades is a relevant witness in his sole remaining claim against Defendant Frey.  Invariably, Plaintiff would suggest that this "newfound" discovery has revealed these connections.  The Court should see this  subpoena, Plaintiff's declaration and any such claims of "newfound" discovery for what they are – an abuse of the subpoena process in order to uncover the identity of Ace of Spades and cause him irreparable harm.

## III.   THE COURT ALREADY FOUND INSUFFICIENT EVIDENCE OF GROUP ACTION BETWEEN ACE OF SPADES AND DEFENDANT FREY

The Court already found insufficient evidence of a relationship between Ace of Spades and Defendant Frey. (Dkt. 263 at 6.)  In his three complaints (Dkts. 1, 2, 101-1), Plaintiff had three opportunities to allege a relationship between Ace of Spades and Defendant Frey sufficient to allege a RICO claim.  Furthermore, as discussed above, Plaintiff had an opportunity to allege a relationship between Defendant Frey and Ace of Spades in his Motion to Identify (Dkt. 232). Despite these opportunities, Plaintiff failed to allege such a relationship.  Indeed, when the Court dismissed Plaintiff's RICO claim against Ace of Spades (Dkt. 263), the Court found that

> Put simply, Kimberlin has failed to allege any material facts about the enterprise's structure. ***Nor has he alleged how the RICO Defendants are associated within the enterprise… the SAC contains no factual allegations regarding the relationships between or among the RICO Defendants, much less how they "functioned as a continuing unit."*** "Such a naked assertion devoid of further factual enhancement need not be credited when evaluating the sufficiency of enterprise allegations on a motion to dismiss."…

(Dkt. 263 at 6.)

Now, in Plaintiff's self-serving declaration and ***without any supporting exhibits or evidence***, Plaintiff alleges that he "believes" that there is a relationship between Ace of Spades and Defendant Frey.  Much like the insufficient RICO allegations; here, the allegations in Plaintiff's declaration are "naked assertions devoid of further factual enhancement" that are insufficient to compel disclosure of the identity of Ace of Spades and to allow the concomitant harm that would result to Ace of Spades.  Having already determined that Plaintiff failed to establish any relationship between Ace of Spades and Frey, the Court should grant Intermarkets' Motion to Quash.

IV.     **THE FIRST AMENDMENT PROTECTS ACE OF SPADES' ANONYMITY**

Plaintiff also ignores the important First Amendment right to anonymity for political

speech and incorrectly  asserts that the applicable case law permits the identification of Ace of

Spades' identity.[3]  In his faulty reasoning, Plaintiff misconstrues the applicable case law on the

First Amendment protections for anonymity. Contrary to Plaintiff's arguments, the First

Amendment protection afforded to anonymous speech mandates that Plaintiff's subpoena be

quashed.

"The First Amendment does appear to include some aspect of anonymity in protecting

free speech." *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 248 (4th Cir. 2009) (citing

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–43, 343 n. 6 (1995) ("[A]n author's

decision to remain anonymous ... is an aspect of the freedom of speech protected by the First

Amendment")). "Courts have typically protected anonymity under the First Amendment when

claimed in connection with literary, religious, or political speech." *Lefkoe*, 577 F.3d at 248; *see*

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1165 (9th Cir. 2010) ("Proponents have shown that

discovery would likely have a chilling effect on political association and the formulation of

political expression.").  While lesser protection is afforded to commercial speech, the alleged

statements of Ace of Spades are plainly political speech which is given great protection under the

First Amendment.

---

[3] Plaintiff also suggests that Intermarkets does not have standing to oppose the subpoena. Opp. ¶ 5. This is incorrect. *In re Drasin*, No. CIV.A. ELH-13-1140, 2013 WL 3866777, at *2 (D. Md. July 24, 2013) (finding that internet blog administrator has "standing to assert these rights on behalf of the John Doe defendants.") (citing *Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980) ("Given a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court."); *see, e.g., Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 786 (M.D. Pa. 2008) (finding that newspaper had standing to assert First Amendment rights of anonymous website commenters in challenging subpoena seeking disclosure of commenters' names because commenters "face[d] practical obstacles to asserting their own First Amendment rights" while retaining anonymity; disclosure would "compromise the vitality of the newspaper's online forums, sparking reduced reader interest and a corresponding decline in revenues"; and newspaper would "zealously argue an d frame the issues")).

Even in the context of defamatory or false and misleading commercial speech by anonymous speakers – which is not the case here - courts have employed a balancing test and evaluated whether there is a substantial governmental interest in the disclosure that outweighs the First Amendment right of anonymity. *See In re Drasin,* 2013 WL 3866777, at \*5 (compelling disclosure because party's interest in "pursu[ing] its legal claims" concerning allegedly defamatory speech outweighed the First Amendment protection for commercial speech); *Lefkoe*, 577 F.3d at 249. When a court is confronted with a "defamation action in which anonymous speakers… are involved", Maryland has established a five part test to determine if disclosure is required:

> (1) require the plaintiff to undertake efforts to notify the anonymous posters that they are the subject of a subpoena or application for an order of disclosure, including posting a message of notification of the identity discovery request on the message board;
> (2) withhold action to afford the anonymous posters a reasonable opportunity to file and serve opposition to the application;
> (3) require the plaintiff to identify and set forth the exact statements purportedly made by each anonymous poster, alleged to constitute actionable speech;
> (4) determine whether the complaint has set forth a prima facie defamation per se or per quod action against the anonymous posters; and
> (5), if all else is satisfied, balance the anonymous poster's First Amendment right of free speech against the strength of the prima facie case of defamation presented by the plaintiff and the necessity for disclosure of the anonymous defendant's identity, prior to ordering disclosure.

*Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 457 (Md. 2009).

Importantly, under this balancing test, ***even when a plaintiff makes allegations of defamation against the anonymous speaker***, the court must consider whether the complaint "has set forth a prima facie defamation" action and then balance "the anonymous poster's First Amendment right of free speech against the strength of the prima facie case of defamation presented by the plaintiff and the necessity for disclosure of the anonymous defendant's identity, prior to ordering disclosure." *Id.* Moreover, in each of the cases cited by Plaintiff, the courts

contemplated the disclosure of the identity of defendants who allegedly uttered defamatory speech.  *See In re Drasin,* 2013 WL 3866777, at *5 (ten anonymous John Does sued for allegedly defamatory speech); *Hadley v. Doe*, 2014 IL App (2d) 130489, ¶ 1, 12 N.E.3d 75, 78 (defamation claim pursued against anonymous defendant), *appeal allowed sub nom. Hadley v. Subscriber Doe*, 20 N.E.3d 1253 (Ill. 2014) and  aff'd, 2015 IL 118000, ¶ 1.

Here, Ace of Spades' speech is political in nature.[4]  Consequently, Ace of Spades' anonymous identity is entitled to First Amendment protection. *Lefkoe*, 577 F.3d at 248; *see Perry*, 591 F.3d at 1165.  "Given the importance of political speech in the history of this country, it is not surprising that courts afford political speech the highest level of protection." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citing *Meyer v. Grant*, 486 U.S. 414, 422 (1988) as "describing the First Amendment protection of 'core political speech' to be 'at its zenith[.]'"); *see Doe v. Cahill*, 884 A.2d 451, 460-63 (Del. 2005) (applying "summary judgment standard" to plaintiff's defamation claim before disclosure of anonymous speaker in case involving political speech"); *SI03, Inc. v. Bodybuilding.com, LLC*, 441 F. App'x 431, 432 (9th Cir. 2011) ("We have recently explained that the rigorous Cahill standard is 'understandable' in a case 'involv[ing] political speech.'") (citing *In re Anonymous Online Speakers*, 661 F.3d at 1177). Given the heightened protection to which Ace of Spades' political speech is entitled, Ace of Spades' anonymity cannot be brushed aside with a self-serving declaration based upon Plaintiff's unsubstantiated beliefs.

Even assuming *arguendo* that Ace of Spades' speech was commercial, a declaration based upon nothing more than Plaintiff's unsubstantiated beliefs is woefully insufficient to

---

[4] *See* https://en.wikipedia.org/wiki/Ace_of_Spades_HQ (July 10, 2015 10:46 a.m.) ("Ace of Spades HQ, Ace of Spades, or AoS is a conservative and humor-driven U.S.-based Political Blog covering current events, legal issues, military hardware, and salacious topics in popular culture.").

overcome Ace of Spades First Amendment rights – especially since Ace of Spades is a non-party to this case.  The cases relied upon by Plaintiff address the balancing of the disclosure of an anonymous blogger when the blogger himself is a party to the underlying lawsuit.  In such instances, the courts must balance Plaintiff's prima facie case against the blogger and the necessity of disclosure against the First Amendment protection afforded to anonymous speech. *Indep. Newspapers, Inc.*, 966 A.2d at 457.  These cases make clear that more than mere allegations are required to overcome the First Amendment right to anonymity.  Of course, the Court has long since dismissed Plaintiff's claims against Ace of Spades – finding that after three attempts Plaintiff could not make out a prima facie case against Ace of Spades.[5]

As a non-party to this case, Ace of Spades' First Amendment right to anonymity must be afforded even greater protection. *See In re Anonymous Online Speakers*, 661 F.3d at 1176 (citing *Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001) because that court "recognized that a higher standard should apply when a subpoena seeks the identity of an anonymous Internet user who is not a party to the underlying litigation.").  It would be chilling indeed for someone like Kimberlin – or any other would-be plaintiff - to engage in a fishing expedition of exposing anonymous non-party bloggers merely upon his belief that by doing so, information relevant to his sole remaining claim may be obtained.  Plaintiff has not provided this court with any facts to support his assertions that there is some relationship between Patrick Frey and Ace of Spades – an assertion previously rejected by the court – or that he is unable to obtain evidence of his assertions from another source (like Patrick Frey himself) or through a means that would not require exposing Ace of Spades and causing the damage that would flow from that exposure.  Accordingly, even if the court considers Ace of Spades to engage in commercial

---

[5] Notably, Plaintiff fails to identify the exact statements by Ace of Spades that connect Ace of Spades to his § 1983 claim against Defendant Frey.

speech, Plaintiff fails to justify the disclosure of Ace of Spades' identity in light of the clear First

Amendment protection that attaches to Ace of Spades' anonymity.

V.      **PLAINTIFF DISTORTS AND IGNORES INTERMARKETS' PRIVACY POLICY
        WITH ITS WEBSITE PUBLISHERS**

       Plaintiff argues in his Opposition that Intermarkets "makes clear in its Privacy Policy to

all of its clients that it will honor subpoenas seeking information about its clients" thereby

suggesting that Intermarkets' keen interest in protecting the anonymity of its website partners is

without merit. Opp. ¶ 3.[6]  In making this argument Kimberlin intentionally misleads the Court

by creating a privacy policy that conflates two separate Intermarkets documents.  Further,

Kimberlin ignores the importance of Intermarkets website publishers to Intermarkets' business

and the strong desire of these publishers to protect their private information and identifiers.

       To support his argument, Plaintiff disingenuously and intentionally mixes excerpts from

Intermarkets' Publisher Guidelines and Intermarkets' Privacy Policy and recreates the mixed

excerpts as a false privacy policy attached as Exhibit B to the Opposition. *Compare* Opp.,

Exhibit B *with* Intermarkets' Privacy Policy (attached hereto as Exhibit A) and Intermarkets'

Publisher Guidelines (attached hereto as Exhibit B). For example, paragraphs 4, 7 and 8 of

Plaintiff's Exhibit B appear in Intermarkets' Publisher Guidelines but paragraphs 1-3, 5-6, and 9

of Plaintiff's Exhibit B appear in Intermarkets Privacy Policy. Furthermore, Plaintiff omits

relevant passages from Intermarkets Privacy Policy which demonstrate that the policy is intended

to apply to third party advertisers who buy ads to display on the "websites included with the

Intermarkets Portfolio" or visitors to the Intermarkets' websites. Exhibit A at 1.  Intermarkets'

Privacy Policy, thus, applies to these advertisers or visitors to the Intermarkets website, ***not to***

---

[6] Plaintiff also suggests that Intermarkets fails to comply with Fed. R. Civ. P. 45 because it moved to quash the
subpoena rather than produce a privilege log. Opp. ¶ 4.  This argument is baseless. Fed. R. Civ. P. 45(d)(3) clearly
sets out procedures for a non-party to move to quash a subpoena on the basis of privileged information.

*the publishers* of the websites in its portfolio.  Plaintiff intentionally combines the Publisher Guidelines with the Privacy Policy in order to suggest that the Privacy Policy is directed at Intermarkets' website publishers, such as Ace of Spades – which it is not.[7]

The business of Intermarkets is predicated on placing ads – for a fee – on certain websites based upon agreements between Intermarkets and its website publishers.  These publishers highly value anonymity which is why they are not subject to the Privacy Policy and why it is critical to Intermarkets to protect the confidential information of its website publishers.    As a result, Intermarkets agrees to keep confidential its agreements, records and documents relating to website owners or internet blogs.  If Intermarkets is forced to reveal documents which disclose the identity of anyone "associated with the blog Ace of Spades," this will undermine Intermarkets' ability to protect the confidential information it obtains from its website partners. This in turn will adversely impact Intermarkets' ability to maintain and to expand its website publisher relationships because these entities require that their identity not be revealed. Accordingly, Intermarkets will be irreparably harmed if forced to disclose Ace of Spades' identity.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Intermarkets' Motion, Intermarkets, Inc. respectfully requests the Court to enter an Order quashing Plaintiff's subpoena duces tecum, or in the alternative, for the Court to issue a protective order.

---

[7] Further, Intermarkets' Privacy Policy does not indicate that Intermarkets blindly turns over information in response to subpoenas as Plaintiff suggests. See Opp. ¶ 3. Instead, the policy dictates that Intermarkets will comply with "government and law enforcement officials and private parties to enforce and comply with the law[,]" and that Intermarkets reserves the right to turn over information gathered from visitors to the Intermarkets' websites or advertisers in response to "court orders and subpoenas". Exhibit A at 3. Thus, the Privacy Policy is not a waiver of Intermarkets' right to object to an improper subpoena.

Dated:  July 13, 2015                              Respectfully submitted,

                                                   INTERMARKETS, INC.
                                                   By Counsel

REED SMITH LLP


   ___/s/ Stephen T. Fowler_____
Stephen T. Fowler, Esq. (Md. Bar No. 16881)
3110 Fairview Park Drive Suite 1400
Falls Church, Virginia  22042
(703) 641-4200
(703) 641-4340 FAX
sfowler@reedsmith.com
*Counsel for Intermarkets, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2015, a true and correct copy of the foregoing will be filed using the Court's ECF system, which will then send a notification of such filing to all counsel of record. Further, I hereby certify that on July 13, 2015 a true and correct copy of the foregoing will be sent via first-class mail, postage prepaid, to

Brett Kimberlin
8100 Beech Tree Road
Bethesda, MD 20817

   /s/ Stephen T. Fowler
Stephen T. Fowler, Esq.(Md. Bar No. 16881)
3110 Fairview Park Drive Suite 1400
Falls Church, Virginia  22042
(703) 641-4200
(703) 641-4340 FAX
sfowler@reedsmith.com
*Counsel for Intermarkets, Inc.*