## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

BRETT KIMBERLIN,

                Plaintiff,

vs.

PATRICK FREY,

                Defendant.

Civil Action No.: 8:13-CV-03059 (GJH)

### DEFENDANT'S CONSOLIDATED REPLY IN SUPPORT OF HIS MOTION FOR A PROTECTIVE ORDER AND RESPONSE TO PLAINTIFF'S MOTIONS FOR MISCELLANEOUS RELIEF  - CONTESTED

Defendant Patrick Frey, through the undersigned counsel, submits this consolidated paper by way of reply to the Response of Plaintiff to Defendant's Motion for a Protective Order, etc. ECF 298 as well as Plaintiff's Motion for a Court Order Allowing Plaintiff to (1) Receive Stamped Subpoenas from the Clerk and (2) File Via ECF (ECF 297).

Both issues can be addressed in one submission because the Court's decision should, it is respectfully submitted, hinge on its evaluation of Plaintiff's lack of good faith not only in the conduct of this litigation, including discovery, but his decades-long track record – set out exhaustively in earlier pleadings as well as in Plaintiff's Motion for a Protective Order  – of abusing the litigation process and utilizing the judicial system as a tool for ends that have nothing to do with vindication of bona fide legal claims.

In support of this Motion, the undersigned counsel note as follows:

1

1.      Plaintiff's Response to Defendant's motion (ECF 298) is deficient to the extent it is considered an application for sanctions because, like it predecessor, it fails to comply with the technical requirements of Local Rule 104.7, failing as it does to include a certification by Plaintiff as to the date time and persons present of a discovery conference, or good faith attempts to get the date, time and place of the discovery conference, and the names of all persons participating therein, counsel's attempts to hold such a conference without success; and an itemization of the issues sought to be resolved in that discovery conference – which indeed did not occur – requiring resolution by the Court.

2.      In fact, on July 29, 2015, Plaintiff explicitly refused to participate in a meet and confer to address his threatened renewal of his sanctions motion, breaking off discussions when counsel for Plaintiff wrote, in an exchange as follows (excerpted but available to this Honorable Court's inspection if desired):

> If for any reason you consider the discovery served today inadequate, you may – instead of proceeding with our planned 2 PM meet and confer – wish to formulate specific objections and responses based on what you consider to be deficiencies (with reference to the Federal Rules of Civil Procedure and applicable case law), and give us the opportunity to respond within a reasonable amount of time.
>
> By doing so, even if we do not resolve the issues through written correspondence and you conclude that a motion is still necessary, the meet and confer would be substantive. In other words, it will give us a final opportunity to resolve the outstanding issues so that you may avoid troubling the court and, ideally, get what you are entitled to faster.  This, of course, is what is contemplated by the Local Rules, which did not intend the meet and confer requirement to be treated as a pro forma exercise, i.e., a hoop which a party determined to make a motion must jump through before filing it.
>
> Let me know.  If you nonetheless wish to proceed with the 2 PM meet and confer, I will be waiting for your call.

3.      Rather than specifying the deficiencies or even declining to do so and going

forward with the telephone meet and confer scheduled for that day, Plaintiff instead responded as

follows:

> I will construe your email as our "confer and meet" under the rules. There is no
> reason to talk by phone.  You are playing games.  This is worse than bad faith.
> You are basically giving me the finger.  I am going to seek sanctions and a motion
> to compel.

After some delay Plaintiff nonetheless made good his threat to file his motion after Defendant

filed his request for a protective order.

4.      Substantively, while "fault" can be an amorphous concept in disputes involving

pretrial disputes, a court should not ignore the conduct by all parties, and sanctions should not be

imposed without consideration of all circumstances and parties' or counsel's good faith.  *Mill-*

*Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547 (S.D.N.Y. 1989).  Here there is no basis for

sanctions of any kind, based on the facts and law – at least not against Defendants, though

arguably Plaintiff should be sanctioned for repeatedly making meritless motions for sanctions

and imposing thousands of dollars in legal fees to oppose them without even "waving at"

compliance with Local Rule 104.7.

5.      Plaintiff sets out a narrative of supposed non-compliance by Defendant with

discovery demands, characterizing them as "boilerplate non-responses" – a phrase which is itself

mere boilerplate lifted from Plaintiff's ample personal library of litigation documents, but

completely inaccurate.  Plaintiff cites neither the Rules of Civil Procedure or applicable legal

precedent to establish the standard he claims Defendant failed to meet in responding to Plaintiff's

discovery demands, including the interrogatories served by Plaintiff, which were answered in

detail.  Nor does Plaintiff deign to provide specific examples of how Defendant's interrogatory

responses are insufficient either with reference to the appropriate legal standard or in any way at all, except to the extent they abide the entry of a protective order, discussed below.

6.      Plaintiff also complains that Defendant "did not show up for a scheduled deposition set for July 3, 2015." This supposed non-compliance, however, has already been explained to the Court and was deemed not to be grounds for sanctions in the Court's July 27, 2015 letter order (ECF 294).  Plaintiff never re-noticed the deposition for another date, nor did he agree to a protective order to as requested by Defendant, as discussed further below.

7.      Similarly, regarding documents, Defendant explained to Mr. Kimberlin numerous times prior to the service of Defendant's responses that documents would be produced under the umbrella of a protective order.  Plaintiff refused.

8.      In refusing to agree to a protective order, Plaintiff provides no justification.  It should be noted, before addressing what Plaintiff would have the Court believe is meant as argument on this point, that at no time did Plaintiff so much as suggest a counter-proposal such that any specific terms Plaintiff finds onerous or otherwise unacceptable could be discussed, considered and, if not amenable to compromise, placed before the Court for resolution.

9.      The closest Plaintiff comes to addressing these issues is by a series of non-sequiturs, starting with a cartoon authored by a third party that merely quotes allegations from the Amended Complaint and Defendant's answers to them, which Plaintiff bizarrely states "demonstrate how [Defendant] would respond to Plaintiff's discovery requests."  This illustration is of no relevance whatsoever to the relief sought by either party, there being no relation whatsoever between answers to a pleading and responses to discovery.

10.     Paragraph of Plaintiff's submission then addresses his rejection of Mr. Frey's settlement overtures, which is also of no relevance to this application.

11.     Next, in paragraph 8, Plaintiff argues that no protective order is necessary for two reasons.  The first cited reason is that Defendant "regularly appears in court," which has little to do with the motion for a protective order except perhaps with respect to the narrow topic of Defendant's concern about the use of photographs of Defendant that are likely to be uploaded onto the Internet or distributed if a video deposition is permitted.  Photographs are not, however, permitted in the courtrooms where Plaintiff tries gang cases.

12.     Plaintiff then states that Defendant is not entitled to protection from abuse of his likeness because his photo is "readily available on the Internet."  As proof of this, Plaintiff cites Exhibit A (http://web.archive.org/web/20150820140442/http://www.breitbartunmasked.com/2015/08/19/why-is-intermarkets-protecting-ace-of-spades/, last accessed August 20, 2015) to his submission, a grainy photograph of four men in dark light, of whom one, sitting in shadow and barely focused, is identified as Defendant.  The relevant detail of that photograph is reproduced at right.



13.     It should be obvious to the Court that this photograph, which is undated, is of very poor quality.  It is indeed regrettable to Defendant that it is on the Internet, considering the danger posed to him by publication of even a smudged approximation of his likeness.  But it is hardly a cogent argument to say that the posting of a single grainy, dark, old photo of a person whose work in public service places him personal safety at risk justifies the uploading of fresh

high-definition video – or any other photos – when there is no litigation value to Plaintiff whatsoever in making such public use of deposition media.

14.    Notably Plaintiff does not deny that it is, in fact, his intent to do just that – i.e., to use discovery in this case as fuel for his Internet campaign of revenge against those who do not bow to his will, as settling Defendants in this action have done, concerning what shall and shall not be said about Plaintiff on the Internet.

15.    This would explain Mr. Kimberlin's nonsensical insertion in Paragraph 8, after his cavalier dismissal of Defendant's safety concerns, of a sentence reading, "Defendant publishes a public blog and constantly uses that blog to attack those with whom he does not agree."  While this may appear to be a non-sequitur – being irrelevant, it seems, to the issue of a protective order, and describing entirely legal, indeed constitutionally privileged, conduct – to Plaintiff it is not a non-sequitur at all but in fact the basis of his motivation in making this motion.

16.    In fact, Plaintiff has already used the Internet to abuse the privileges afforded a litigant under the Federal Rules of Civil Procedure, as if he were following a script written by Defendant.  Demonstrating his utter lack of acceptance regarding what does and does not constitute a legitimate use of discovery,  as well as how litigants are supposed to conduct themselves, and not conduct themselves, in public while involved in litigation, Mr. Kimberlin – on August 19, 2015, even as this motion was pending – handed off Defendant's discovery responses to provide raw meat to a blog – i.e., "a public blog . . .  constantly use[d] . . . to attack those with whom he does not agree" – called Breitbart Unmasked, which reprinted portions of the responses interspersed with commentary and misstatements of fact.

17.     That Breitbart Unmasked is permitted to report on, even where not defamatory to lie about, Brett Kimberlin and his litigation avocation is not questioned by Defendant, notwithstanding his recruitment of this Court to prevent Defendant from honest commentary of his own about Plaintiff.  But that Plaintiff views, and uses, discovery – in contrast, for example, to publicly-filed material found on ECF – as a tool to generate online calumny and to inflame a situation that has already resulted in so much waste and anguish is utterly unacceptable.

18.     It is also abusive of the litigation process, especially as concerns Defendant's likeness.  There is, in fact, no bona fide need for Plaintiff to take Defendant's deposition on video, and given his demonstrated attitude toward civil discovery – that it is meant to supply online partisans with grist for their vicious, ever-grinding mills – there is ample good cause for this Court to issue the requested protective order and to bar video testimony as well as any public dissemination of discovery materials until such time as they may become part of the record for legitimate litigation purposes.

19.     The use of videotape of a deposition may be properly restricted from abuse, and should be so restricted here, for Plaintiff not only refuses to agree to any restriction at all but has already shown that he intends no self-government at all.  Thus, for example, in *In re Daniels*, 69 F.R.D. 579; 1975 U.S. Dist. LEXIS 14606; 21 Fed. R. Serv. 2d (Callaghan) 774 (D. Neb. 2011), the court entered an order, such as the one sought by Defendant here, that "All parties and persons having access to the original [videotape of depositions] and any copies thereof . . . from exhibiting or showing the tape to anyone other than attorneys and others directly involved in the preparation and trial of this case, and after the trials are concluded, no other use shall be made of such tape."  *In Re Daniels* is a judicial acknowledgment of the potential for mischief implicated

by videotaped depositions as well as a reasonable approach to preventing abuse. Plaintiff,

however, has consistently refused – without explanation – to agree to such limits or to

compromise in any way with respect to Defendant's legitimate privacy and safety concerns.

20.     Indeed, in *Burgess v. Town of Wallingford*, 2012 U.S. Dist. LEXIS 135781 (D.

Conn. 2012), the court noted that "At the present stage of the proceedings, the parties are

engaged in discovery. This process has, however, been plagued throughout by heated disputes

over Plaintiff's attempts to make audio recordings of deposition testimony and his publication

thereafter of deposition transcripts on the Internet …" *Id.*, at *2.  In light of this background, as

well as the objection, *inter alia*, that "Plaintiff was likely to make inappropriate use of the

recording thereafter," the Court "sustained Defendants' objection [and] directed that no taped

recording be made of the deposition, and that the initial portion that had been recorded not be

published or promulgated by the [P]laintiff in any fashion." *Id.* at *3.  The court continued as

follows:

> Nowhere in the Federal Rules, however, is misuse of said deposition recordings
> deemed permissible. Most importantly, a Court, in its discretion, may "for good
> cause" limit discovery or the disclosure thereof for purposes of protecting a party or
> person from annoyance, embarrassment, oppression, or undue burden or expense."
> *Fed. R. Civ. 26 (c)*. . . .
>
> Given the lack of trust regarding potential misuse of tapes, the heated debates, and
> the pervasive hostility existing between the parties at depositions in this action, the
> Court finds "good cause" under Rule 26(c) to impose a ban on publication or
> dissemination of audio recordings . . .

*Id.* at *8-9.  These words aptly describe the situation before the Court and, it is submitted, the

direction that is appropriate for management of discovery and minimization of "trial by Internet"

as well as the inevitable skein of subsidiary motion and sanction practice certain to be spawned

absent the entry of a protective order – none of which will prejudice Plaintiff's "legitimate" litigation goals in the slightest.

21.     It should go without saying, in light of these considerations and given the record of litigation abuse that is uniquely Brett Kimberlin's, that Plaintiff's motion to be afforded the privilege to issue subpoenas as if he were an attorney (ECF 297) should be denied as well.  It is axiomatic that because "the power of attorneys to issue subpoenas is based on their status as an officer of the court, pro se litigants **must** request issuance of a subpoena from the Clerk of Court." Wright et al., 9A Fed. Prac. & Proc. Civ. § 2453 (3d ed.) (emphasis added).  Under Fed. R. Civ. P. 45(a)(2) and (3), "A pro se litigant who is not a licensed attorney with the appropriate federal district court has no power to issue subpoenas" *United States v. Meredith*, 182 F.3d 934 (Table), at *1 (10th Cir. 1999).

22.     Plaintiff's lament that "The current system for issuing subpoenas in this case is not working" does not empower this Court to empower a non-attorney, or even an attorney not admitted in this District, to take on the unique power of issuing subpoenas.  It should be recalled that subpoenas are not technically "issued by" attorneys but, rather, in the name of the Court through its officers – members of the Court's bar.

23.     This privilege and the trust on which it is based are justified by years of training, by virtue of professional licensure and upon pain of discipline or even disbarment if it is abused. Unsurprisingly, Plaintiff cites no authority for the proposition that the Court even has the power to grant Plaintiff's request.

24.     The legal and policy arguments for rejecting Plaintiff's request would be compelling enough even with respect to the most earnest, meticulous, courteous, respectful and

reluctant lay litigant.  Regarding Brett Kimberlin, however, they are not just compelling – they

are acute in the extreme, raising a positively terrifying specter of "inmates running the asylum"

in no less than the United States District Court for the District of Maryland.

25.     Indeed, the Court need not even address the question of whether a convicted

violent felon and adjudicated abuser of litigation should be given the power to issue process,

unsupervised,  in the name of the United States District Court under **any** circumstances.  It is

enough to observe that Plaintiff's record – of serially meritless pleadings, frank

misrepresentation to the tribunal, forgery, non-compliance with basic procedure, and zeal for

abuse of process –  **in this case alone** is reason enough to deny his request.  Plaintiff should not,

as a reward for the violence he has already wrought on this Court's dignity, be elevated to the

level of a member of this Court's bar and be granted the use of tools as potentially destructive,

intrusive and – it should not be forgotten – rife with complex procedural and technical

requirements as subpoena privileges.

26.     The same goes for Plaintiff's motion to be permitted to file papers via ECF and

thereby to immediately and, without review of any official of the Court, to publish, worldwide,

whatever papers or other materials he deems "appropriate" in a litigation matter brought entirely

for the purpose, as he has admitted repeatedly, of harassment.

27.     The undersigned counsel enclose two additional exhibits that should be useful for

this Honorable Court's analysis of the merits of a protective order to prevent abuses:

   a.     Exhibit B - a factual declaration by Defendant Patrick Frey regarding *inter alia*

          the safety concerns that he and his family continue to bear regarding this entire

          matter

b.   Exhibit B-1 - a copy of the blog post of Patterico's Pontification by Defendant

Patrick Frey ([http://patterico.com/2013/03/11/brett-kimberlins-stalkerish-behavior-towards-aaron-walker-and-his-wife/](http://patterico.com/2013/03/11/brett-kimberlins-stalkerish-behavior-towards-aaron-walker-and-his-wife/), last accessed August 26, 2015)

discussing in March 2013 the confrontation by Plaintiff Mr. Kimberlin against

former co-Defendant in this proceeding Aaron Walker, Esq., in the Montgomery

County, Maryland, Circuit Court.

WHEREFORE Defendant Patrick Frey respectfully requests that this Honorable Court enter an order reflecting the substance of the model Confidentiality Order provides in the Local Rules of this Honorable Court, denying Plaintiff's motion for sanction and denying Plaintiff's motion for to be granted, despite not being admitted to any bar, much less the bar of this Court, his request for ECF and subpoena privileges.

Respectfully submitted,

T. Bruce Godfrey #24596
Jezic & Moyse LLC
2730 University Blvd. West, #604
Silver Spring, MD 20902
240-292-7200
facsimile:  (888) 241-3135
godfrey@jezicfirm.com

ARCHER & GREINER
A Professional Corporation

Ronald D. Coleman (Pro Hac Vice)
21 Main Street, Suite 353
Hackensack, NJ  07601
201- 342-6000
rcoleman@archerlaw.com

Dated: August 31, 2015                    Attorneys for Defendant Patrick Frey

12

## **CERTIFICATE OF ELECTRONIC FILING AND REGARDING WAIVER OF MAILINGS**

I, T. Bruce Godfrey, hereby certify that I have filed a copy of this document with the United States District Court electronically and by so doing have provided compliant notice to those parties who are registered with ECF through counsel as of this filing consistently with Local Rule 102.1(c) on August 31, 2015.  All parties, including pro se parties, have agreed to accept service by electronic mail only and an electronic copy has been distributed to all parties.

/s/

_____
T. Bruce Godfrey #24596