U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 JAN 13 PM 12: 16

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| BRETT KIMBERLIN, | * | |
| Plaintiff | * | |
| | * | |
| v. | * | CASE NO.: GJH-13-3059 |
| | * | |
| J. PATRICK FREY, | * | |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MR. WALKER'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND REQUEST FOR SHOW CAUSE ORDER (ECF NO. 324)

NOW COMES non-party Aaron J. Walker, Esq.,[1] and files this Opposition to the Plaintiff's Motion to Compel and Request for Show Cause Order (ECF No. 324) (hereafter "Motion to Compel") and states the following:

### I.
### THE PLAINTIFF DID NOT PROPERLY SERVE THE SUBPOENA ON MR. WALKER

1.     The Plaintiff is not entitled to a motion to compel until he successfully serves Mr. Walker in compliance with the rules and Mr. Walker has refused to comply. Fed. R. Civ. P. 45(b)(1) states in relevant part as follows: "Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person[.]" Sister courts have interpreted this language as requiring actual service of a subpoena before a motion to compel can be granted as its plain language suggests. See, e.g., *In re Subpoena to Huawei Techs. Co.*, 720 F.Supp.2d 969 (N.D. Ill.

---

[1] Mr. Walker refers to himself in the third person for stylistic purposes and to de-personalize this case.

2010) (denying a motion to compel on Huawei Technologies, Co., Ltd. because they had not been served).

2.      The Plaintiff's service is insufficient as a matter of law.  The Plaintiff claims to have served Mr. Walker as follows: "On or about November 16, 2015, Plaintiff served that subpoena on Walker via first class Priority Mail with a date of December 16, 2015 for compliance. See Plaintiffs Declaration at Exhibit B." It is worth noting that there is no Exhibit B, but there is a declaration which essentially repeats the allegation that the Plaintiff mailed service to Mr. Walker on November 16.

3.      First, whether he knows it or not, the Plaintiff has admitted that he did not serve Mr. Walker in compliance with Rule 45(b)(1).  The Plaintiff repeatedly claims that he carried out service of process himself, while Rule 45(b)(1) explicitly states that the person serving the subpoena cannot be a party to the case.  See Rule 45(b)(1) ("Any person who is... not a party may serve a subpoena.")

4.      Second, in *Benford v. American Broadcasting*, 98 F.R.D. 40, 41 n. 5 (D. Md. 1983) this Court held that service by mail was insufficient under Rule 45(b)(1); rather, service must be accomplished by personal service.  The Plaintiff should have hired a process server.

5.      Third, the Plaintiff's claim that he sent Mr. Walker the subpoena is factually false.  He did no such thing.  Mr. Walker did receive mail from the Plaintiff that appeared to be sent on or about November 16, 2015.  It contained service of process for a large number of filings by the Plaintiff, largely related to the current state court case of *Kimberlin v. National Bloggers Club, et al (II)*, No. 403868V (Md. Mont. Co. Cir. Ct. 2015),[2] but it contained no subpoena.  Mr. Walker will leave it to the Court's

_____

[2] By way of background, this Court will recall that it declined to exercise supplemental jurisdiction over state law claims in relation to all of the original Defendants in this case.  This Court further advised the Plaintiff that he could re-file those claims in state court if they were not barred by collateral estoppel or

judgment to determine whether the Plaintiff has perjured himself (again) or is genuinely confused on the subject, but Mr. Walker has not actually received the Plaintiff's subpoena. In any case, the Plaintiff's self-serving[3] allegation that he completed service should not be taken as credible given the "Plaintiff's checkered past with representations to the Court" Letter Order of July 28, 2014, p. 3, n. 2 (ECF No. 168). He has demonstrated that he is not to be trusted.

6.      Not only do these three failures in regard to service of process preclude a motion to compel, they also preclude any claim for contempt. Contempt in relation to subpoenas is governed by Rule 45(g) which states in relevant part that "The court for the district where compliance is required... may hold in contempt a person who, *having been served*, fails without adequate excuse to obey the subpoena or an order related to it" (emphasis added). The Plaintiff's admitted (and factual) failure to serve Mr. Walker bars any finding of contempt.

7.      Therefore, with the Plaintiff having admitted that he did not properly serve Mr. Walker and having not in fact delivered the subpoena to Mr. Walker, a motion to compel is not appropriate and a finding of contempt is barred as a matter of law.

---

res judicata. Despite the fairly clear application of both doctrines, *Kimberlin v. National Bloggers Club, et al (II)* mainly represents his attempt to re-file those state claims in Maryland state court.

[3] It is worth noting that Rule 45(b)(1)'s requirement that a non-party serve the subpoena on a person appears to be based on the assumption that any claim that service is completed by a party is self-serving and, therefore, inherently suspect. The Plaintiff's violation of this rule, therefore, is not a mere technicality. Instead, his conduct has created precisely the kind of "he said, he said" dispute that the rule makers wished to avoid.

## II.
## THE SUBPOENA IS UNENFORCEABLE BECAUSE IT IS OVERBROAD AND IMPOSES AN UNDUE BURDEN UPON MR. WALKER, JUSTIFYING SANCTIONS UNDER RULE 45(D)(1)

8.      Even if the subpoena had been properly and actually served on Mr. Walker, the subpoena cannot be enforced and, indeed, represents a sanctionable breach of the Plaintiff's duty to avoid unduly burdensome subpoenas.

9.      As a preliminary matter, as of December 1, 2015, the rules of civil procedure have changed. Where previously Rule 26(b)(1) arguably allowed for discovery if it "appears reasonably calculated to lead to the discovery of admissible evidence," the new rule has deleted that phrase in its entirety. This is how the rule reads today:

> the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The reason for the deletion of the "reasonably calculated" language is explained in the official commentary:

> The former provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of discovery." The 2000 amendments sought to prevent such misuse by adding the word "Relevant" at the beginning of the sentence, making clear that "'relevant' means within the scope of discovery as defined in this subdivision . . . ." The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments. It is replaced by the direct statement that "Information within this scope of discovery need not be admissible in evidence to be discoverable." Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery.

4

Adv. Comm. Notes—2015 Amend., Fed. R. Civ. P. 26.  The plain import of these changes is to tighten up the scope of discovery and rebuke the interpretation of the "reasonably calculated" language as setting the outer edge of the scope of discovery.  Meanwhile, Rule 45(d)(1) directs parties such as the Plaintiff to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and that "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."

10.    Additionally, it is worth taking a moment to examine the Plaintiff's theory of the case as it stands on this date, because one cannot determine what evidence might be relevant without first determining what it must be relevant to.  This case is not about whether Mr. Kimberlin SWATted Mr. Walker, Mr. Erickson, or any person other than Mr. Frey.  Rather, the case is about Mr. Frey allegedly engaging in a retaliatory investigation related to Mr. Frey's own SWATting.  That is, the Plaintiff alleges absurdly that rather than pursue the "real SWATter" and protect the public and his family from future SWATtings, Mr. Frey took the occasion of a crime being committed against him to retaliate against an allegedly innocent man, the Plaintiff, to punish the Plaintiff for complaints to Mr. Frey's public employer.

11.    Viewed in this light, the subpoena at issue is startling in its breadth.  As quoted in Exhibit A to the Plaintiff's Motion to Compel, it states that Mr. Walker must produce documents, electronically stored information, or objects containing "All communication between you and Patrick Frey concerning Brett Kimberlin from September 2011 through May 2013."  The Plaintiff adds that this "includ[es] those concerning swattings of you and Frey" but that is only a specific example of what he has requested: it is not language limiting the scope of the subpoena.  Indeed, that language is redundant.  Therefore,

properly understood, the Plaintiff is seeking all communications concerning Mr. Kimberlin in any way between those two individuals in that time period.

12.     According to the Plaintiff's subpoena, for example, if Mr. Frey and Mr. Walker communicated regarding the abusive subpoena against Mr. Walker filed in *Kimberlin v. Allen*, No. 339254V (Md. Mont. Co. Cir. Ct. 2011) that allegedly must be produced.  If Mr. Walker and Mr. Frey discussed efforts to keep their families safe from this convicted bomber, that allegedly must be produced.  If Mr. Walker and Mr. Frey discussed the merits of the two abusive peace orders that the Plaintiff sought against Mr. Walker in that period, or the three criminal charges (all dismissed voluntarily by the State of Maryland), that would be allegedly covered by the subpoena.  However, none of these communications that might or might not exist are relevant to the only question before this Court: did Mr. Frey allow the person who SWATted him to go free while he directed a retaliatory investigation against the Plaintiff?

13.     Likewise, even discussions of Mr. Walker's own SWATting are irrelevant.  Mr. Frey is a California prosecutor.  The crime committed against Mr. Walker was committed in Virginia.  Mr. Frey would have no power to direct any investigation by law enforcement in Virginia and there is no allegation in the surviving portions of the complaint that relate to Mr. Walker's SWATting.

14.     Furthermore, the subpoena is duplicative and therefore presents an undue burden.  For instance, attached as Exhibit RC-3 is the second document request delivered to Mr. Frey's attorney, Ron Coleman.  It requests in relevant part that Mr. Frey provide: "A complete copy of any and all digital, electronic or stored media containing *any information* related to Brett Kimberlin and swattings from 2010 through 2013, including hard drives, CDs, DVD and thumb drives" (emphasis in original).  Obviously, the term "any information related to Brett Kimberlin" would include documents containing

"All communication between you [Mr. Walker] and Patrick Frey concerning Brett Kimberlin from September 2011 through May 2013" as sought in the subpoena to Mr. Walker.

15.      Meanwhile, attached as Exhibit RC-1 is the interrogatories posed to Mr. Frey.  In interrogatory number 23, the Plaintiff instructs Mr. Frey to "State the dates, times, and subject matter of your conversations with Aaron Walker concerning Brett Kimberlin before during [sic] and after your swatting incident, and provide copies of those communications."  Since there is no time limitation asserted in relation to the time "before" or "after" Mr. Frey's SWATting the time frame is unlimited.  For instance, technically, Mr. Frey was born "before" his SWATting.  Likewise, technically, yesterday was "after" his SWATting.  Therefore, requesting a catalogue of all communications "before[,] during and after" Mr. Frey's SWATting is to request a catalogue of all communications, period.  Further, even if it was deemed improper to make a request for documents in an interrogatory, the first set of document production requests included a request for "All documents identified, referenced, or relied upon in Defendants' Answers to Plaintiff's First Set of Interrogatories and/or concerning the subject matter of said Interrogatories, and all documents requested in said Interrogatories."  See RC-2.  So, therefore, the Plaintiff has already asked Mr. Frey to provide copies of all communications between Mr. Walker and Mr. Frey long before he obtained the instant subpoena.  There is no reason to obtain these documents twice, and therefore the entirety of the subpoena violates the Plaintiff's duty to avoid imposing an undue burden on Mr. Walker.

16.      Indeed, it is even significantly redundant with prior discovery requests directed to Mr. Walker in another case.  Attached as Exhibit DB-1 is the document request filed against Mr. Walker by Mr. Kimberlin in the case of *Walker v. Kimberlin*, No. 12000631-00 (Pr. Wm. Co. Cir. Ct. 2012), a Virginia case.  As this Court can see, the Plaintiff asked Mr. Walker to "Produce all records of

7

correspondence in any form Plaintiff has had with any other party regarding Defendant Kimberlin since January 1, 2011." This was interpreted by Mr. Walker to include communications between Mr. Walker and Mr. Frey regarding the instant Plaintiff, and since that case ended on December 4, 2012, it represents a prior disclosure of precisely the same material in that time period. So, in essence, the Plaintiff has asked Mr. Walker to produce the same documents that Mr. Frey was required to produce and many of the same documents that Mr. Walker had *already* previously produced.

17.    This is not permitted by the Rules. Rule 26(b)(2)(C) governs when this Court *must* limit discovery as follows:

> (2)    *Limitations on Frequency and Extent....*
>
> (C)    *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii)    the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Both Rule 26(b)(2)(C)(i) and (ii) are implicated by the instant facts. The discovery is deeply duplicative. Additionally, the Plaintiff has had ample opportunity to obtain the information by discovery from Mr. Frey. Upon information and belief, Mr. Frey has complied when appropriate and objected when appropriate and will comply with any motion to compel that this Court might issue as appropriate. Thus, the Plaintiff has received, or will receive, any documents he is entitled to from Mr. Frey regarding any correspondence with Mr. Walker and has no need to obtain the same information from Mr. Walker

as well.  Therefore, this Court must deny any motion to compel this subpoena—Rule 26(b)(2)(C)(i) and

(ii) are not discretionary rules.

18.     Likewise, a duplicative subpoena violates Rule 45(d)(1), which requires the Plaintiff to

avoid imposing an undue burden on third parties such as Mr. Walker.  The same rule also states that

"The court for the district where compliance is required must enforce this duty[.]"  Id.  This is again a

non-discretionary rule, requiring the Court to enforce the duty—by refusing to enforce the subpoena.

See, e.g., *Elliott v. Superior Pool Prods., LLC*, No. 15-cv-1126 at *5 (C.D. Ill., October 7, 2015)

("Ordering NEXTCHEX to produce duplicate records is unnecessary and would impose an undue

burden on NEXTCHEX"); *Bada Co. v. Montgomery Ward & Co.*, 32 F.R.D. 208, 209-10 (S.D. Cal.

1963) (a non-party "should not be burdened with the annoyance and expense of producing the

documents sought unless the plaintiff is unable to discover them from the defendant"); and *Countryman

v. Community Link Federal Credit Union*, 2012 WL 1143572, at *5 (N.D. Ind. April 3, 2012) ("A

party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it

from burdening a non-party with production of those same documents").

19.     However, that is not all that this provision requires: the entire sentence says: "The court

for the district where compliance is required must enforce this duty *and impose an appropriate

sanction*—which may include lost earnings and reasonable attorney's fees—on a party or attorney who

fails to comply." id. (emphasis added).  Mr. Walker asks for this Court to impose such sanctions at this

time in a separate motion filed simultaneously with this opposition, including $500 for lost earnings as

he was forced to respond to his frivolous motion to compel, rather than serve paying clients.[4]

---

[4] Mr. Walker does not ask for attorneys' fees because there is doubt that a pro se is entitled to them.
However, nothing in the statutory language indicates that Mr. Walker cannot be compensated for his

20.     Finally, Mr. Walker notes that he doesn't know at this time how many documents are responsive to the subpoena and whether any privilege or other objection applies to them. He asks to reserve such document-specific objections for the future, should any subpoena be upheld implicating such potential objections.[5]

21.     Accordingly, this Court should refuse to compel enforcement of the subpoena for the additional reason that it is wholly duplicative of other discovery and, therefore, places an undue burden on Mr. Walker. Further, Mr. Walker is entitled to sanctions to compensate him for lost earnings and suggests a sanction of not less than $500 as well be laid out in a separate motion.

## CONCLUSION

22.     The Plaintiff is not only not entitled to a motion to compel or a finding of contempt, but the Plaintiff's behavior in relation to the subpoena has itself been sanctionable. First, the Plaintiff did not in fact serve the subpoena on Mr. Walker. Second, the Plaintiff admits he did not *properly* serve the subpoena on Mr. Walker, claiming that he attempted to perform service himself and attempted to perform such service by mail in violation of Rule 45(b)(1). In addition, the Plaintiff violated his duty to avoid imposing an undue burden under Rule 45(d)(1) on Mr. Walker by seeking a subpoena that is

---

time just like the average plumber. The fact that Mr. Walker happens to work in the legal profession should not give him less right to recover than other persons.

[5] Mr. Walker's reasoning in deciding not examine the documents to determine if any issue of privilege or other objection applied, now, is as follows. It is an axiom of law that one has a duty to mitigate the damage they seek to pass to another person. Mr. Walker believes that the subpoena is so clearly duplicative that it is highly unlikely to be enforced and that Mr. Walker would be entitled to sanctions including lost wages to compensate him for his time. If he also went through every document that might be responsive, that will add a great deal to those lost wages, but if Mr. Walker is right—that this Court will not enforce such a clearly duplicative subpoena—then that would have been a wasted effort. Thus, to avoid the potential waste of Mr. Walker's time—which then Mr. Walker would want compensation from the Plaintiff for—Mr. Walker asks to reserve this issue in the unlikely event that the Plaintiff is allowed to obtain any documents subpoenaed from Mr. Walker.

entirely duplicative with two document requests directed to Mr. Frey, and partially duplicative with a document request in a prior case involving Mr. Walker. The Plaintiff's failure to avoid imposing an undue burden in turn imposes two duties on this Court. First, this Court must enforce the duty to avoid an undue burden by refusing to enforce the subpoena at issue. Second, this Court must sanction the Plaintiff for having violated that duty. Mr. Walker has suggested a sanction of no less $500 to compensate Mr. Walker for lost earnings.

WHEREFORE, the Plaintiff's motion to compel and for sanctions should be denied; the Plaintiff should be sanctioned not less than $500 for Mr. Walker loss of earnings; and this Court should grant any other relief that is just and equitable.

Wednesday, January 13, 2016                    Respectfully submitted,

Aaron J. Walker, Esq
Va Bar# 48882
P.O. Box 3075
Manassas, Virginia  20108
(703) 216-0455
AaronJW72@gmail.com
(No fax)

## VERIFICATION

I, Aaron Walker, state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that all exhibits are true and correct copies of the originals.

Executed on Wednesday, January 13, 2016.

_____

## CERTIFICATE OF SERVICE

I certify that on the _____13th_____ day of _____January_____, 2016, I served copies of this document on Brett Kimberlin at 8100 Beech Tree Road, Bethesda, Maryland 20817 and Ron Coleman, Esq. for Patrick Frey by email with his permission.

_____

12